IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

RICHARD KAPELA DAVIS; et al.,    )    CV. NO. 11-00144 LEK-BMK
                                 )
            Plaintiffs,          )    ORDER DENYING
                                 )    DEFENDANTS' MOTION TO
    vs.                          )    TRANSFER VENUE
                                 )
NEIL ABERCROMBIE, in his         )
official capacity as the Governor of  )
the State of Hawaii; et al.,     )
                                 )
            Defendants.          )
_____ )

## ORDER DENYING DEFENDANTS' MOTION TO TRANSFER VENUE

Before the Court is Defendants the Governor of Hawaii Neil

Abercrombie ("Governor"), Interim Director of the Hawaii Department of Public

Safety Jodie Maesaka-Hirata ("DPS Director"), and Corrections Corporation of

America's ("CCA") (collectively "Defendants") Motion to Transfer Venue.

(Doc. # 7.)  The Court heard the motion on May 10, 2011.  After careful

consideration of the motion, the supporting and opposing memoranda, and the

arguments of counsel, the Court DENIES Defendants' Motion to Transfer Venue.

## BACKGROUND

A.    Factual and Procedural Background

Plaintiffs Richard Kapela Davis, Michael Hughes, Damien Kaahu, Robert A. Holbron, James Kane, III, and Ellington Keawe (collectively "Plaintiffs") are Hawaii prisoners who were convicted and sentenced under Hawaii law. (Compl. ¶¶ 17, 25-30; Opp'n at 3.) Pursuant to a contract entered into between the Hawaii Department of Public Safety ("DPS") and the CCA ("DPS-CCA contract"), Plaintiffs were transferred to one of two correctional facilities located in Arizona, which are owned and operated by the CCA ("CCA correctional facilities"). (Compl. ¶¶ 11, 16-17, 25-30; Answer ¶¶ 9, 17; Mem. in Supp. of Mot. at 1; Opp'n at 3-4.) The CCA correctional facilities are Saguaro Correctional Facility ("Saguaro") and Red Rock Correctional Center ("Red Rock"). (Compl. ¶¶ 25-30.) The DPS-CCA contract governs the confinement, custody, and care of Hawaii prisoners at Saguaro and Red Rock. (See Opp'n Ex. 1.)

On February 7, 2011, Plaintiffs filed a complaint in the Circuit Court of the First Circuit, State of Hawaii ("state court"). (Doc. # 1 Ex. A.) Plaintiffs, who maintain they are indigent, are represented by attorneys from the Native Hawaiian Legal Corporation ("NHLC") on a pro bono basis. (Sprenger Decl. ¶ 5.) The NHLC is located in Hawaii, and is the only private, non-profit law firm in the nation that specializes in native Hawaiian rights. (Id. ¶¶ 2-3.) None of its attorneys are licensed to practice law in the District of Arizona. (Id. ¶ 2.)

The complaint names the Governor and DPS Director in their official capacities as Defendants.  (Compl. ¶¶ 12-13.)  The complaint also names the CCA as a Defendant.  (Id. ¶ 16.)  The Governor and DPS Director are Hawaii residents. (Opp'n at 3-4.)  The CCA is a Maryland corporation with its principal place of business in Tennessee.  (Answer ¶ 17; Mem. in Supp. of Mot. at 1.)

The complaint alleges that Plaintiffs are native Hawaiian and that they practice the native Hawaiian religion.  (Compl. ¶¶ 9, 31.)  The complaint alleges that Defendants are enforcing a policy, or engaging in a practice, that prevents Plaintiffs from practicing the native Hawaiian religion, and that gives preference to inmates who practice other religions.  (See, e.g., id. ¶¶ 144-48, 156-60, 162-65, 168-72, 174-77, 180-84, 187-91, 199-203, 206-10, 212-15, 218-22, 224-27, 230-34, 237-41.)  For example, the complaint alleges that Plaintiffs are prevented from: meeting with other native Hawaiian practitioners on a daily basis for group worship (see, e.g., id. ¶¶ 144-48); observing the opening and closing of the Makahiki season with certain religious protocol (see, e.g., id. ¶¶ 156-60); meeting with a spiritual advisor to observe the opening and closing of the Makahiki season with certain religious protocol (see, e.g., id. ¶¶ 162-65); accessing certain sacred items that are critical to the practice of their religion (see, e.g., id. ¶¶ 168-72); meeting with a spiritual advisor to assist in the use of certain sacred items critical

to the practice of their religion (see, e.g., id. ¶¶ 174-77); establishing a sacred outdoor space with at least two spiritually significant stones for group worship (see, e.g., id. ¶¶ 180-84); and meeting with a spiritual advisor on a regular basis (see, e.g., id. ¶¶ 187-91). The complaint alleges that inmates who practice other religions are permitted to do the foregoing. (See, e.g., id. ¶¶ 199-203, 206-10, 212-15, 218-22, 224-27, 230-34, 237-41.) Plaintiffs, thus, allege that Defendants violated their rights to the free exercise of religion and equal protection of the law under the First and Fourteenth Amendments and article I, sections 4 and 5 of the Hawaii Constitution. (Id. ¶¶ 139-346.)

Plaintiffs also allege that Defendants violated their rights guaranteed by article XII, section 7 of the Hawaii Constitution. (Id. ¶¶ 347-59.) This section provides, "The State reaffirms and shall protect all rights, customarily and traditionally exercised for subsistence, cultural and religious purposes and possessed by ahupuaʻa tenants who are descendants of native Hawaiians who inhabited the Hawaiian Islands prior to 1778, subject to the right of the State to regulate such rights." Haw. Const. art. XII, § 7. Plaintiffs allege that Defendants violated this section by preventing them from participating in the opening and closing of the Makahiki season with certain religious protocol, and using certain sacred items. (Compl. ¶¶ 356-57.)

Defendants removed the case from state court to this Court on March 8, 2011. (Doc. # 1.)

B.    Defendants' Motion to Transfer Venue

On March 23, 2011, Defendants moved to transfer this case to the District of Arizona pursuant to 28 U.S.C. §§ 1391(b) and 1406(a), and 28 U.S.C. § 1404(a). (Doc. # 7.) Defendants argue that this case should be treated in the same manner that two prior cases, to which Plaintiff Richard Kapela Davis ("Davis") was a party, were treated. (Mot. at 2; Reply at 5-6.) In the first case, Bush v. Hawaii, Civ. No. 04-00096 DAE-KSC, Davis and other Hawaii prisoners filed a lawsuit in this Court, alleging that the defendants violated their rights under the federal Constitution and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), by preventing them from practicing the native Hawaiian religion during a Makahiki festival at a CCA correctional facility located in Oklahoma. 2011 WL 563564, at *1 (D. Haw. Jan. 20, 2011). A settlement was reached and final judgment was entered. Id. However, one of the plaintiffs later sought to reopen the case so that he could supplement the amended complaint with allegations relating to his inability to participate in a Makahiki festival at a CCA correctional facility located in Arizona. Id. at *2-3. The magistrate judge recommended denying the request because this Court lacked jurisdiction to

entertain the motion or grant the relief sought.  Id.  The magistrate judge further recommended that even if the Court had jurisdiction, supplementation was inappropriate.  Id. at *3.  The magistrate judge concluded that, among other things, venue in Hawaii was improper under § 1391(b) because the events and omissions alleged occurred substantially, if not entirely, in Arizona.  Id. at *5.  The district judge adopted the magistrate judge's recommendations.  See Bush v. Hawaii, Civ. No. 04-00096 DAE-KSC, 2011 WL 563093 (D. Haw. Feb. 8, 2011).

In the second case, Davis v. Hawaii, Civ. No. 08-00434 JMS-BMK, Davis, proceeding *pro se*, filed a lawsuit in this Court against individuals and agencies located in Hawaii and Arizona.  2009 WL 1227841, at *1 (D. Haw. May 4, 2009).  The defendants included the governors of Hawaii and Arizona, the CCA, the DPS and its Director, the Arizona Department of Corrections ("ADC") and its Director, and DPS and Saguaro employees.  Id.  In his complaint, Davis alleged that the defendants violated his rights under the federal Constitution and the RLUIPA.  Id.  Specifically, he alleged that CCA and Saguaro employees prevented him from practicing his native Hawaiian religion when they failed to hold a Makahiki closing ceremony feast, failed to distribute food for that ceremony, and later distributed the food to other inmates who were not associated with the Makahiki festival or the native Hawaiian religion.  Id. at *2.  The

6

defendants moved to transfer the case to the District of Arizona, and this Court granted their motion. Id. at *1. First, the Court concluded that venue in Hawaii was improper pursuant to § 1391(b) because the events and omissions complained of occurred substantially in Arizona. Id. at *4. The Court concluded that the interest of justice, however, favored transferring the case pursuant to § 1406(a), rather than a dismissal. Id. Second, the Court concluded that even if venue in Hawaii were proper, the case should be transferred to the District of Arizona pursuant to § 1404(a) for the convenience of the parties and witnesses, and in the interest of justice. Id. at *5.

Here, Defendants move to transfer this case to the District of Arizona pursuant to §§ 1391(b) and 1406(a), and § 1404(a). Specifically, Defendants argue that because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Arizona, venue in Hawaii is improper under § 1391(b). (Mem. in Supp. of Mot. at 2-7.) Defendants thus argue that the case should be transferred to the District of Arizona pursuant to § 1406(a) as it could have been brought there. (See id. at 6-7.) Defendants argue that even if venue in Hawaii is proper, the Court should nevertheless transfer the case as a matter of convenience and in the interest of justice pursuant to § 1404(a). (Id. at 7-10.)

Plaintiffs filed their opposition to Defendants' motion on

April 19, 2011, and on April 26, 2011, Defendants replied. (Docs. ## 21, 22.)

## DISCUSSION

A.    Improper Venue

Defendants argue that venue in Hawaii is improper under § 1391(b).

(Mem. in Supp. of Mot. at 2-7.) This section provides:

> A civil action wherein jurisdiction is not founded solely
> on diversity of citizenship may, except as otherwise provided
> by law, be brought only in (1) a judicial district where any
> defendant resides, if all defendants reside in the same State,
> (2) a judicial district in which a substantial part of the events or
> omissions giving rise to the claim occurred, or a substantial part
> of property that is the subject of the action is situated, or (3) a
> judicial district in which any defendant may be found, if there is
> no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). Defendants appear to argue that because they do not reside in

the same state, venue must be determined by reference to § 1391(b)(2), where a

substantial part of the events or omissions giving rise to Plaintiffs' claims occurred,

or § 1391(b)(3), if the former subsection does not apply. (See Mem. in Supp. of

Mot. at 2-4.) Defendants argue that as to § 1391(b)(2), a substantial part of the

events or omissions giving rise to Plaintiffs' claims occurred at the CCA

correctional facilities, which are located in Arizona. (Id. at 6-7.) Defendants argue

that, as such, venue in Hawaii is improper, and the case should be transferred to the

District of Arizona pursuant to § 1406(a).  (Id.)  This section provides, "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).

Plaintiffs argue in opposition that § 1391(b) does not apply because this is a removed case and therefore, venue is governed by 28 U.S.C. § 1441(a). (Opp'n at 14-16.)  The Court agrees with Plaintiffs.  "The general removal statute, Section 1441 of Title 28, provides that the venue of a removed case is 'the district and division embracing the place where such action is pending.'"  14C Charles Alan Wright et al., Federal Practice and Procedure § 3732 (quoting 28 U.S.C. § 1441(a)).  "Accordingly, the general venue statutes, Section 1391 through Section 1393, do not apply to cases that have been initiated in a state court and removed to a federal court."  Id.

These principles were articulated by the Supreme Court in Polizzi v. Cowles Magazines, Inc., 345 U.S. 663 (1953).  In Polizzi, a Florida resident filed a libel action against the defendant publisher, an Iowa corporation, in the Circuit Court of Dade County, Florida.  Id. at 664.  The defendant removed the case to the United States District Court for the Southern District of Florida.  Id.  The district

court dismissed the action on the ground that the defendant was not, at the time of

service of the summons, "doing business" in the Southern District of Florida, and

therefore, the venue requirements of 28 U.S.C. § 1391(c) were not met. Polizzi, Id.

at 664-65. The Fifth Circuit affirmed, and the Supreme Court granted certiorari.

Id. at 665 (citations omitted). The Supreme Court noted that the question before it

was whether the district court correctly dismissed the action for lack of

jurisdiction. Id. The Supreme Court noted:

> Both courts below held that the District Court lacked
> jurisdiction, but they reached that conclusion by deciding that
> Respondent was not 'doing business' in Florida within the
> meaning of [28 U.S.C. § 1391(c)]. Section 1391 is a general
> venue statute. In a case where it applies, if its requirements are
> not satisfied, the District Court is not deprived of jurisdiction,
> although dismissal of the case might be justified if a timely
> objection to the venue were interposed. ***But even on the
> question of venue, § 1391 has no application to this case
> because this is a removed action. The venue of removed
> actions is governed by [28 U.S.C. § 1441(a)], and under that
> section venue was properly laid in the Southern District of
> Florida. . . . Section 1391(a) limits the district in which an
> action may be 'brought.' Section 1391(c) similarly limits the
> district in which a corporation may be 'sued.'*** This action was
> not 'brought' in the District Court, nor was Respondent 'sued'
> there; the action was ***brought*** in a state court and ***removed*** to
> the District Court. ***Section 1441(a) expressly provides that the
> proper venue of a removed action is 'the district court of the
> United States for the district and division embracing the place
> where such action is pending.'*** The Southern District of
> Florida is the district embracing Dade County, the place where
> this action was pending.

Id. at 665-66 (emphases added, footnotes and citations omitted).  Because the

district court based its holding on a statute that had no application to the case, and

the Fifth Circuit affirmed on the same reasoning, the Supreme Court reversed and

remanded the case to the district court.  Id. at 666-67.

Here, Defendants argue that venue in Hawaii is improper under

§ 1391(b).  (Mem. in Supp. of Mot. at 2-7.)  However, § 1391(b), like § 1391(a),

limits the district in which an action may be "brought."  See 28 U.S.C. § 1391(b).

This action was not "brought" in this district court.  Rather, the action was brought

in Hawaii state court and removed to the district court for the District of Hawaii.

(See Doc. # 1.)  Because the District of Hawaii is the district embracing the place

where the action was pending, venue is proper pursuant to § 1441(a) and § 1391

does not apply.  See, e.g., Global Satellite Commc'n Co. v. Starmill U.K. Ltd.,

378 F.3d 1269, 1271 (11th Cir. 2004) (noting that "[§] 1441(a), and not the

ordinary federal venue statute, 28 U.S.C. § 1391, governs venue in removed

cases"); Kubin-Nicholson Corp. v. Gillon, 525 F. Supp. 2d 1071, 1075

(E.D. Wis. 2007) (noting that "§ 1441(a) governs the venue of a removed action"

and § 1391 does not apply) (citation omitted); Keston v. FirstCollect, Inc.,

523 F. Supp. 2d 1348, 1355 (S.D. Fla. 2007) (noting that the "proper venue statute

in a removal action is 28 U.S.C. § 1441(a)") (citation omitted); Kotan v. Pizza

Outlet, Inc., 400 F. Supp. 2d 44, 46 (D.D.C. 2005) (noting that "[w]hile questions of venue are generally resolved in accordance with § 1391, when a case is removed from state court to federal court, the removal statute, 28 U.S.C. § 1441, dictates venue") (citation omitted); see also Kerobo v. Sw. Clean Fuels, Corp., 285 F.3d 531, 534 (6th Cir. 2002) (noting that "[v]enue in removed cases is governed solely by § 1441(a)") (citation omitted). This case is distinguishable from Bush, 2011 WL 563564, at *1, and Davis, 2009 WL 1227841, at *1, because those cases were brought in federal district court and therefore § 1391 applied.

Based on the foregoing, the Court denies Defendants' request to transfer the case to the District of Arizona pursuant to § 1406(a). Section 1406(a) applies only when a case is filed in the wrong division or district. See 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case lying **venue in the wrong division or district** shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.") (emphasis added).

B.    Convenience

Although venue in Hawaii is proper, the action may still be transferred to the District of Arizona pursuant to § 1404(a). See 14C Wright et al., supra, § 3732 ("Even when venue is proper in the federal court, a removed action may be

transferred to another federal district court in accordance with various federal transfer provisions, most notably Section 1404(a) . . . .").  This section provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  Plaintiffs do not dispute that this action could have been brought in the District of Arizona.  Rather, Plaintiffs argue that transferring the action to the District of Arizona will not serve the convenience of the parties and witnesses nor promote the interest of justice.  (See Opp'n at 17-37.)

   "Under § 1404(a), the district court has discretion to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness."  Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000) (quoting Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29 (1988)) (quotation marks omitted).  In determining whether to transfer a case pursuant to § 1404(a), the court must weigh multiple factors, including, the following:  (1) the plaintiff's choice of forum; (2) the location where the relevant agreements were negotiated and executed; (3) the respective parties' contacts with the forum; (4) the contacts relating to the plaintiff's cause of action in the chosen forum; (5) the differences in the costs of litigation in the two forums; (6) the availability of compulsory process to compel attendance of unwilling non-party witnesses; (7) the

ease of access to sources of proof; and (8) the state that is most familiar with the governing law. Id. at 498-99. "Ultimately, the moving party has the burden of showing that an alternative forum is the more appropriate forum for the action." Tamashiro v. Harvey, 487 F. Supp. 2d 1162, 1168 (D. Haw. 2006) (citation omitted). The Court addresses the foregoing factors in turn.

As to the first factor, the plaintiff's choice of forum, Plaintiffs filed this lawsuit in Hawaii. (Doc. # 1 Ex. A.) "[T]here is normally a strong presumption in favor of honoring the plaintiff's choice of forum." Tamashiro, 487 F. Supp. 2d at 1169 (quoting Hi-Pac, Ltd. v. Avoset Corp., 980 F. Supp. 1134, 1140 (D. Haw. 1997)) (alteration in original, quotation marks omitted). "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice . . . ." Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986) (citation omitted). The Court recognizes that courts have accorded less weight to the plaintiff's choice of forum when it is not the plaintiff's state of residence. See, e.g., Healey v. Spencer, No. CV 09-7596 AHM(DTBX), 2010 WL 669220, at *1 (C.D. Cal. Feb. 22, 2010); Owner-Operator Indep. Drivers Ass'n, Inc. v. C.R. England, Inc., No. CV F 02-5664 AWI SMS, 2002 WL 32831640, at *6-7 (E.D. Cal. Aug. 19, 2002). The Court, however, finds that this case is distinguishable because while Plaintiffs do not reside in Hawaii, they are

Hawaii prisoners who were convicted and sentenced under Hawaii law. Thus, although the Court does not accord great weight to Plaintiffs' choice of forum, the Court concludes that this factor still weighs in Plaintiffs' favor.

As to the second factor, the location where the relevant agreements were negotiated and executed, Plaintiffs allege, and Defendants do not dispute, that the DPS-CCA contract, which governs the confinement, custody, and care of Hawaii prisoners at Saguaro and Red Rock, was negotiated and executed in Hawaii. (See Opp'n at 4, 31-32; Opp'n Ex. 1.) Defendants, however, argue that this factor is irrelevant because Plaintiffs do not assert a breach of contract claim. (Reply at 6-7.) Nevertheless, the Court finds that the DPS-CCA contract serves as a basis for Plaintiffs' claims. For example, the complaint alleges:

> 17. Since at least 2002, [Defendants] have been parties to various contracts executed in the State of Hawaii in which [the CCA] accepted responsibility of supervising and controlling those individuals who have been convicted and sentenced under the criminal statutes of the State of Hawaii and have been involuntarily transferred by [the Governor and DPS Director] to CCA prison facilities in exchange for substantial payments made by the State of Hawaii.
>
> . . . .
>
> 19. . . . Plaintiffs' claims arise out of said contracts between [Defendants] which also allows this Court to properly exercise its long arm jurisdiction.

15

20.    As the contractually authorized legal custodian of those individuals incarcerated under the laws of the State of Hawaii, [the CCA] is charged with a task and function that is traditionally and fundamentally performed by the government and/or are sufficiently intertwined with the government to the extent that [the CCA] and its employees at [Saguaro] and [Red Rock] are state actors.  Consequently, [the CCA] and its employees of [Saguaro] and [Red Rock] must guarantee to those individuals under its supervision and control the rights, privileges, or immunities secured by the Hawaii State Constitution, the United States Constitution and federal and state laws in a manner that is not inconsistent with their status as institutionalized persons, or with the legitimate penological objectives of the corrections system.

(Compl. ¶¶ 17, 19-20.)  Based on the foregoing, the complaint asserts that the Governor and DPS Director "are enforcing an official policy, or in the alternative, engaging in a persistent widespread practice of illegally delegating all of their Constitutional and statutory responsibilities owed to Plaintiffs . . . ."  (See, e.g., id. ¶¶ 144, 156, 162, 168, 174, 180, 187.)  The complaint thus requests that Defendants be ordered "to develop a comprehensive plan and promulgate official policy guidelines on how Native Hawaiians who have been convicted and sentenced under the laws of the State of Hawai'i can practice their religion on a regular and equal basis with all other religions represented at [the CCA] correctional facilities . . . ."  (Prayer for Relief ¶ 11.)  After reviewing the complaint, the Court concludes that where the relevant agreements were negotiated

and executed is a factor that may be considered, and such factor weighs in favor of maintaining the case in Hawaii.

Defendants argue that the third factor, the parties' contacts with the forum, weighs in favor of transferring the case to the District of Arizona because Plaintiffs are incarcerated in Arizona, and the CCA correctional facilities are located in Arizona.  (Mem. in Supp. of Mot. at 8-9; Reply at 8.)  As stated above, although the Court recognizes that Plaintiffs are incarcerated in Arizona, the Court also recognizes that Plaintiffs are Hawaii prisoners who were convicted and sentenced under Hawaii law.  (Compl. ¶¶ 17, 25-30; Opp'n at 3.)  Furthermore, Plaintiffs are represented by attorneys from the NHLC, which is located in Hawaii. (Sprenger Decl. ¶¶ 3-5.)  The NHLC is the only private, non-profit law firm in the nation that specializes in native Hawaiian rights, and its attorneys have agreed to represent Plaintiffs pro bono because they are indigent.  (Id. ¶¶ 2, 5.)  Lastly, none of Defendants are Arizona residents.  The Governor and DPS Director are Hawaii residents, and the CCA is a Maryland corporation with its principal place of business in Tennessee.  (Answer ¶ 17; Mem. in Supp. of Mot. at 1; Opp'n at 3-4.)  Based on the foregoing, the Court concludes that this factor weighs slightly in favor of Plaintiffs.

Defendants argue that the fourth factor, contacts relating to the plaintiff's cause of action in the chosen forum, weighs in favor of transfer because the complaint focuses on Plaintiffs' inability to practice the native Hawaiian religion while incarcerated in Arizona. (Reply at 5-7.) Plaintiffs argue in opposition that their complaint, instead, focuses on a policy that was promulgated by the Governor and DPS Director, which governs native Hawaiian religious practices of Hawaii prisoners. (See Opp'n at 5-6, 18-19, 31-32.) The Court notes that the complaint alleges that the Governor and DPS Director are enforcing a policy that prevents Plaintiffs from practicing the native Hawaiian religion, and that gives preference to inmates who practice other religions. (See, e.g., Compl. ¶¶ 144, 156, 162, 168, 174, 180, 187, 199, 206, 212, 218, 224, 230, 237.) The Court, however, notes that the complaint also challenges the way in which the policy was implemented at Saguaro and Red Rock. For example, the complaint asserts that Saguaro and Red Rock employees prevented Plaintiffs from: meeting with other native Hawaiian practitioners on a daily basis for group worship (id. ¶¶ 144-48); observing the opening and closing of the Makahiki season with certain religious protocol (id. ¶¶ 156-60); meeting with a spiritual advisor to observe the opening and closing of the Makahiki season with certain religious protocol (id. ¶¶ 162-65); accessing certain sacred items that are critical to the

18

practice of their religion (id. ¶¶ 168-72); meeting with a spiritual advisor to assist in the use of certain sacred items critical to the practice of their religion (id. ¶¶ 174-77); establishing a sacred outdoor space with at least two spiritually significant stones for group worship (id. ¶¶ 180-84); and meeting with a spiritual advisor on a regular basis (id. ¶¶ 187-91). Based on the foregoing, the Court concludes that this factor weighs slightly in favor of transferring the case to the District of Arizona.

Turning to the fifth factor, the costs of litigation in the two forums, Defendants argue that because the complaint focuses on Plaintiffs' inability to practice their religion while incarcerated in Arizona, most of the witnesses are located in Arizona and therefore, this factor weighs in favor of transfer. (Mem. in Supp. of Mot. at 8-9; Reply at 8-11.) Defendants note that the Arizona witnesses include Plaintiffs and CCA employees and inmates. (Mem. in Supp. of Mot. at 8; Reply at 8-11.) Defendants argue that the Governor's and DPS Director's Hawaii residency should be discounted because they have agreed to try the case in Arizona. (Reply at 10.) The Court, however, notes that the same could be said of Plaintiffs who, although are incarcerated in Arizona, choose to try the case in Hawaii. As to the CCA employees, the Court "accords less weight to the inconvenience of party witnesses . . . as they can be compelled to testify regardless of the forum in which the lawsuit is ultimately litigated." Amini Innovation Corp.

v. JS Imps. Inc., 497 F. Supp. 2d 1093, 1111 (C.D. Cal. 2007) (emphasis omitted);

see also Applied Elastomerics, Inc. v. Z-Man Fishing Prods., Inc., No. C 06-2469

CW, 2006 WL 2868971, at *4 (N.D. Cal. Oct. 6, 2006) (citation omitted).

Moreover, there is no reason that at least some of their testimony, as well as the

testimony of any CCA inmates, cannot be presented by way of videotaped

depositions.  It is also likely that the case will be resolved through summary

judgment, and there will be no need for a trial.  Lastly, the Court finds that

transferring the case to the District of Arizona will merely shift the cost of

litigation to Plaintiffs.  This is of particular concern here because Plaintiffs are

indigent and they are represented pro bono by attorneys from a non-profit law firm

located in Hawaii.  Accordingly, the Court concludes that this factor weighs in

favor of maintaining the case in Hawaii.  See DIRECTV, Inc. v. EQ Stuff, Inc.,

207 F. Supp. 2d 1077, 1083-84 (C.D. Cal. 2002) (deciding against a transfer of

venue because, among other things, it would "merely shift the costs of litigation");

K-Tel Int'l, Inc. v. Tristar Prods., Inc., 169 F. Supp. 2d 1033, 1045

(D. Minn. 2001) (noting that "a transfer should not be granted if the effect is

simply to shift the inconvenience to the party resisting the transfer") (citation and

quotation marks omitted); RMS Titanic, Inc. v. Geller, No. 3:99CV2401(JCH),

2000 WL 306997, at *6 (D. Conn. Jan. 10, 2000) (noting that "where an increase

in convenience to the moving parties would result only in an equivalent decrease in convenience to the plaintiffs, a transfer motion will not be granted").

As to the sixth factor, the availability of compulsory process to compel attendance of unwilling non-party witnesses, Defendants argue that this factor weighs in favor of transfer because the Arizona witnesses are beyond this Court's subpoena power. (Mem. in Supp. of Mot. at 9; Reply at 11.) Again, Defendants list the Arizona witnesses to include Plaintiffs and CCA employees and inmates. (Mem. in Supp. of Mot. at 8-9; Reply at 8-11). The Court, however, notes that this factor applies only to ***non-party*** witnesses. As mentioned above, party witnesses can be compelled to testify. See Tamashiro, 487 F. Supp. 2d at 1171. Thus, the Arizona non-party witnesses are limited to any CCA inmates. Because Defendants do not specify who such witnesses are, and there is no reason to assume that such witnesses would be unwilling to testify, the Court concludes that this factor bears little consideration. See id.; see also 15 Wright et al., supra, § 3851 (noting that "[t]he party seeking the transfer must specify clearly, typically by affidavit, the key witnesses to be called and their location and must make a general statement of what their testimony will cover").

Defendants argue that the seventh factor, ease of access to sources of proof, weighs in favor of transfer because most of the relevant documents are in

Arizona, including Plaintiffs' and the CCA correctional facilities' records.  (Mem. in Supp. of Mot. at 9; Reply at 11.)  Defendants also argue that should the trial judge find that a view of Saguaro and Red Rock would aid the jury in deciding the case, such a view can be conducted only in Arizona.  (Mem. in Supp. of Mot. at 9.)  As to the relevant documents, the Court finds that most, if not all, documents can be easily produced and at a reasonable cost.  As to Defendants' argument that a view of Saguaro and Red Rock may be required, such argument is speculative, and there is no reason why the jury cannot view the CCA correctional facilities through various forms of media.  Based on the foregoing, the Court concludes that this factor also bears little consideration.

Turning to the final factor, the state that is most familiar with the governing law, the Court concludes that this factor weighs in favor of maintaining the case in Hawaii.  Plaintiffs' complaint alleges violations of not only the federal Constitution, but also the Hawaii Constitution.  (Compl. ¶¶ 3, 4, 244-359; Prayer for Relief ¶¶ 3-5.)  Specifically, the complaint alleges that Defendants violated Plaintiffs' rights under article I, sections 4 and 5, and article XII, section 7 of the Hawaii Constitution.   (Compl. ¶¶ 244-359.)  Although Defendants contend that the District of Arizona is competent to apply Hawaii law, this Court is more familiar with the relevant provisions of the Hawaii Constitution and the rights afforded to

native Hawaiians. See Television Events & Mktg., Inc. v. Amcon Distrib. Co., 416 F. Supp. 2d 948, 971 (D. Haw. 2006) (noting that another district court does not have the same level of experience with Hawaii law as this Court); Hi-Pac, Ltd., 980 F. Supp. at 1142 (same). This is particularly the case with respect to article XII, section 7, which discusses native Hawaiian customary and traditional rights. This section provides, "The State reaffirms and shall protect all rights, customarily and traditionally exercised for subsistence, cultural and religious purposes and possessed by ahupua'a tenants who are descendants of native Hawaiians who inhabited the Hawaiian Islands prior to 1778, subject to the right of the State to regulate such rights." Haw. Const. art. XII, § 7. Accordingly, this factor favors Plaintiffs.

In addition to the factors set forth above, courts also consider the private and public interest factors derived from the common law doctrine of *forum non conveniens*. See Decker Coal Co., 805 F.2d at 843 (noting that "*forum non conveniens* considerations are helpful in deciding a § 1404 transfer motion"). "Section 1404(a) essentially is a codification of the common law doctrine of *forum non conveniens* that allows transfer, rather than requiring dismissal, where the alternative forum is another federal district." Lung v. Yachts Int'l, Ltd., 980 F. Supp. 1362, 1370 (D. Haw. 1997). The private interest factors include:

> (1) relative ease of access to sources of proof; (2) the
> availability of compulsory process for attendance of unwilling
> witnesses, and cost of obtaining attendance of willing
> witnesses; (3) possibility of viewing subject premises; (4) all
> other factors that render trial of the case expeditious and
> inexpensive.

Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd., 61 F.3d 696, 703 (9th Cir. 1995)

(citation omitted).  The public interest factors include:

> (1) administrative difficulties flowing from court congestion;
> (2) imposition of jury duty on the people of a community that
> has no relation to the litigation; (3) local interest in having
> localized controversies decided at home; (4) the interest in
> having a diversity case tried in a forum familiar with the law
> that governs the action; (5) the avoidance of unnecessary
> problems in conflicts of law.

Id. at 703-04 (citation omitted).

The Court notes that many of the private interest factors are subsumed in the factors that were previously discussed.  As to the public interest factors, the Court concludes that such factors weigh in favor of maintaining the case in Hawaii.  For example, Plaintiffs present statistics showing that there is less congestion in this District than in the District of Arizona, and therefore, it take less time for a case to go to trial here.  See Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1337 (9th Cir. 1984) (noting that a court should consider "whether a trial may be speedier in another court because of its less crowded docket").  In addition, transferring the case would impose jury duty on the people of a community that has

little relation to the case. While this case concerns the operation of CCA correctional facilities located in Arizona, this case also concerns rights afforded to native Hawaiians under Hawaii law, and a policy enforced by Hawaii officials, which allegedly infringes upon such rights. Lastly, there is a local interest in having this controversy decided at home. As the Hawaii Supreme Court declared, "It is undisputed that the rights of native Hawaiians are a matter of great public concern in Hawaii." Pele Def. Fund v. Paty, 73 Haw. 578, 614, 837 P.2d 1247, 1268 (1992).

The Court notes that this case is distinguishable from Davis, 2009 WL 1227841, at *5, in which the Court concluded that the § 1404(a) factors weighed in favor of transferring the case to the District of Arizona. First, in that case, Davis named as defendants, several individuals and agencies located in Arizona, including Arizona's governor, the ADC and its Director, and Saguaro employees. Id. at *1. Thus, as the Court noted, most of the defendants were located in Arizona. Id. at *5. Here, none of Defendants are Arizona residents. Second, Davis was proceeding *pro se* in Arizona, whereas here, Plaintiffs are represented pro bono by attorneys from the NHLC. See id. at *1. The NHLC is located in Hawaii, and is the only private, non-profit law firm in the nation that specializes in native Hawaiian rights. (Sprenger ¶¶ 2-3.) Because none of its

attorneys are licensed to practice law in the District of Arizona, should the case be transferred to that District, Plaintiffs' counsel might be forced to withdraw. (Id. ¶¶ 2, 10.) Given Plaintiffs' indigency and the limitations they face due to their incarceration, transferring the case would not appear to be in the interest of justice. Third, Davis's claims were limited to violations of the federal Constitution and the RLUIPA. 2009 WL 1227841, at *1. As such, Arizona's interest in resolving the case was at least equal to that of Hawaii. Id. at *5. In this case, Plaintiffs allege violations of not only federal law, but also Hawaii law. (See Compl. ¶¶ 244-359.) For example, Plaintiffs allege that Defendants violated their native Hawaiian rights guaranteed by article XII, section 7 of the Hawaii Constitution. (Compl. ¶¶ 347-59.) Not only are native Hawaiian rights "a matter of great public concern in Hawaii," Pele Def. Fund, 73 Haw. at 614, 837 P.2d at 1268, but also this Court has more experience with the relevant provisions of the Hawaii Constitution. See Pai 'Ohana v. United States, 875 F. Supp. 680 (D. Haw. 1995).

        For the reasons set forth above, the Court concludes that, on balance, the relevant factors weigh in favor of maintaining the case in Hawaii. Accordingly, Defendants' Motion to Transfer Venue is DENIED.

        DATED: Honolulu, Hawaii, May 27, 2011.

IT IS SO ORDERED.



  /S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

Richard Kapela Davis, et al. v. Neil Abercrombie, et al, CV. NO. 11-00144 LEK-BMK; ORDER DENYING DEFENDANTS' MOTION TO TRANSFER VENUE.