IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RICHARD KAPELA DAVIS, MICHAEL HUGHES, DAMIEN KAAHU, ROBERT A. HOLBRON, JAMES KANE, III, and ELLINGTON KEAWE,<br><br>          Plaintiffs,<br><br>     vs.<br><br>NEIL ABERCROMBIE, in his official capacity as the Governor of the State of Hawaii; JODIE MAESAKA-HIRATA, in her official capacity as Interim Director of the Hawaii Department of Public Safety, CORRECTIONS CORPORATION OF AMERICA,<br><br>          Defendants. | CIVIL NO. 11-00144 LEK/BMK (Declaratory and Injunctive Relief and Other Civil Action)<br><br><br>MEMORANDUM OF POINTS AND AUTHORITIES |

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## **TABLE OF CONTENTS**

TABLE OF CONTENTS......................................................................i - ii

TABLE OF AUTHORITIES ...........................................................iii- iv

I.    INTRODUCTION ................................................................... 1

II.   FACTS ...................................................................................... 2

      A.    The Parties And Key Witnesses ............................................ 2

      B.    CCA Has Not Produced Relevant Emails Between Its Wardens and
            CCA's Native Hawaiian Spiritual Advisor ......................................... 5

      C.    Defendants Have Not Produced The Wardens' Emails With The State
            Official With Whom They Consult About Native Hawaiian Religious
            Practices ........................................................................ 6

      D.    CCA Rejected Plaintiffs' Proposed Solutions To Obtain the Requested
            Documents ...................................................................... 7

III.  ARGUMENT ........................................................................ 12

      A.    The Wardens' Emails With Its Native Hawaiian Spiritual Advisor
            Contain Highly Relevant Information ................................................ 12

      B.    The Wardens' Emails With State Officials Contain Highly Relevant
            Information ...................................................................... 14

      C.    The Costs Of Producing This Electronic Evidence Should Not Be
            Shifted To Plaintiffs ........................................................... 15

            1.    All Reasonably Accessible Emails And All Paper Documents
                  Should be Produced Now........................................................ 15

            2.    Plaintiffs Cannot Assess the Accessibility of Warden's Emails
                  or the Burden of Production Because Defendants Have Not
                  Disclosed Sufficient Information About Their Email Archive
                  System ...................................................................... 17

3.   Cost Shifting Is Not Appropriate Because Defendant's Actions Have Increased Production Costs ........................................... 20

4.   The Other Factors Weigh Against Cost-Shifting..................... 22

IV.   CONCLUSION.............................................................................. 25

# TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE NO.**

*Bratka v. Anheuser-Busch Co.*, 164 F.R.D. 448 (S.D. Ohio 1995) ........................ 16

*Capitol Records, Inc. v. MP3tunes, LLC*, 261 F.R.D. 44 (S.D.N.Y. 2009)............ 16

*Cardenas v. Dorel Juvenile Group, Inc.*, No. 04-2478-KHV-DJW, 2006 U.S. Dist. LEXIS 37465, 2006 WL 1537394 (D. Kan. June 1, 2006) ................................. 16

*FTC v. Affiliate Strategies, Inc.*, No. 09-4104-JAR, 2011 U.S. Dist. LEXIS 7689, (D. Kan. Jan. 26, 2011) ...................................................................................... 16

*In re Indep. Serv. Orgs. Antitrust Litig.*, 168 F.R.D. 651 (D. Kan. 1996).............. 16

*Jacobson v. Starbucks Coffee Co.*, No. 05-1338-JTM, 2006 U.S. Dist. LEXIS 98174 (D. Kan. Oct. 31, 2006)............................................................................ 16

*Moon v. SCP Pool Corp.*, 232 F.R.D. 633 (C.D. Cal. 2005).................................. 12

*Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 98 S. Ct. 2380, 57 L. Ed 2d 253 (1978) ........................................................................................................ 17

*Peskoff v. Faber*, 251 F.R.D. 59 (D.D.C. 2008) ............................................... 15, 20

*Quinby v. WestLG AG*, 245 F.R.D. 94 (S.D.N.Y. 2006) .................................. 20, 21

*Semsroth v. City of Wichita*, 239 F.R.D. 630 (D. Kan. 2006)................................ 20

*Survivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625 (9th Cir. 2005) ................ 12

*Thomas v. Cate*, 715 F. Supp. 2d 1012 (E.D. Cal. 2010) ...................................... 18

*Treppel v. Biovail Corp.*, 233 F.R.D. 363 (S.D.N.Y. 2006) ............................. 15, 20

*Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309 (S.D.N.Y. 2003).. 2, 18, 19, 22, 24

## RULES

Federal Rule of Civil Procedure 26(b)(1) ................................................................ 12

Federal Rule of Civil Procedure 26(b)(2) ............................................ 17, 18, 19, 22

Federal Rule Civil Procedure 26(b)(2)(B) ................................................. 15, 17, 20

Federal Rule Civil Procedure 26(c)(1).................................................................... 17

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This motion concerns outstanding discovery of electronic evidence that Defendants Neil Abercrombie, Jodie Maesaka-Hirata and Corrections Corporation of America (CCA) will not make available unless Plaintiffs, who are inmates, agree to pay for it.

A year ago Plaintiff Richard Davis asked for the private prison wardens' emails about religious practices at CCA's facilities.  These wardens often used email to communicate with state officials and a Native Hawaiian spiritual advisor when deciding whether to grant or deny requests to practice Native Hawaiian religion.  So far, CCA has produced over 50 pages of emails, all of which are undisputedly relevant.  The rest, CCA says, cannot be produced without expensive processing by outside vendors.  CCA, a billion-dollar corporation and the nation's largest operator of private prisons, conditioned its production of the Wardens' emails on Plaintiffs' ability to pay for it.  This demand is unreasonable and unjustified.

Requiring Plaintiffs to pay to obtain emails, other than those already produced by Defendants, would allow Defendants to cherry-pick the emails they want Plaintiffs, and ultimately the jury, to see.  "Courts must remember that cost-shifting may effectively end discovery, especially when private parties are engaged

in litigation with large corporations.... [T]he frequent use of cost-shifting will have the effect of crippling discovery in discrimination and retaliation cases. This will....undermine the strong public policy favoring resolving disputes on their merits." *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 317 (S.D.N.Y. 2003).

Defendants refuse to acknowledge that they have made the relevant electronically-stored information more expensive to produce. CCA routinely "archives" its emails – which purportedly makes them more difficult to retrieve and ultimately to produce. CCA never suspended this routine policy, even though it could have anticipated this litigation as early as 2009, when Plaintiffs' counsel asked for judicial relief against CCA's exclusion of certain inmates from the facility's sanctioned-Makahiki observances. CCA should have anticipated that the Wardens' emails and their other electronic records should have been preserved in an accessible format, given the role of the Wardens in this case. For that reason alone, the Court should deny this request.

Plaintiffs move this Court to order CCA to produce its Wardens' emails and other electronically-stored information at its own expense.

## II.   **FACTS**

### A.   The Parties And Key Witnesses

Plaintiffs are inmates detained in facilities operated by Corrections

Corporation of America in Arizona.  Though they are Native Hawaiians convicted of violating the laws of Hawaii, they were shipped to Arizona to serve their terms. The State of Hawaii has delegated to CCA the responsibility for detaining these men.  These men are Native Hawaiian religious practitioners housed at two CCA facilities in Arizona: Red Rock Correctional Facility (Red Rock) and Saguaro Correctional Facility (Saguaro).

CCA runs prisons for-profit.  CCA is a billion dollar corporation with operations in 20 states.  That makes it the "nation's largest owner and operator of privatized correctional and detention facilities and one of the largest prison operators in the United States behind only the federal government and three states."[1]  Last year alone, it raked in about $1.74 billion dollars in revenue. [2]

The wardens of CCA's prisons are key witnesses in this case.  The Warden of Saguaro, Todd Thomas; the Assistant Warden of Saguaro Ben Griego; the Warden of Red Rock, Bruno Stolc; and the Assistant Warden of Red Rock Jody Bradley have all been identified by Defendants as witnesses that they will call at trial to establish their defenses (referred to collectively hereafter as "Wardens"). Defendants will rely on their testimony to justify the restrictions they have placed

---

[1]     Declaration of Sharla Manley ("Manley Decl."), Ex. 14, p. 5.
[2]     Manley Decl., Ex. 14, p. F-4.

on Plaintiffs' rights to practice Native Hawaiian religion.[3]  The Wardens are also, by Defendants' own admission, the highest ranked CCA-officials charged with the final review of an inmate's request to practice Native Hawaiian religion.  They are also responsible for making decisions regarding the religious freedoms of their inmates of all faiths.[4]

These Wardens recognize one Native Hawaiian spiritual advisor (or kahu) as a bona fide authority on Native Hawaiian religious practices:  Ka`iana Haili.  Mr. Haili was identified by Defendants as a witness who will testify in this lawsuit on their behalf.[5]

These Wardens consult regularly with Shari Kimoto, the "Mainland Branch Administrator" for the State's Department of Public Safety.  She is the "highest ranking State official" with whom they consult when considering a request to practice Native Hawaiian religion.[6]  Ms. Kimoto was identified by Defendants as a

_____

[3]      Manley Decl., Ex. 12, pp. 7-9 (identifying the Wardens as key witnesses concerning CCA's policies and procedures, including those relating to "religious programs and services provided to the Native Hawaiian religious practitioner inmate populations" and "restrictions placed upon Plaintiffs' practice of the Native Hawaiian religion").
[4]      Manley Decl., Ex. 13, p. 5 (Response to Interrogatory No. 2).
[5]      Manley Decl., Ex. 12, p. 6.
[6]      Manley Decl., Ex. 13, p. 5 (Response to Interrogatory No. 3).

witness who will testify about "religious programs and services provided to the Native Hawaiian religious practitioner inmate populations at RRCC and SCC."[7]

### B.     CCA Has Not Produced Relevant Emails Between Its Wardens and CCA's Native Hawaiian Spiritual Advisor

Plaintiff Davis asked for certain emails between the Wardens and Mr. Haili since June 2009, about:  (i) all inmates' requests to practice the Native Hawaiian religion (CCA Request Nos. 6-7); and (ii) the six Plaintiffs' requests to practice Native Hawaiian religion in particular (CCA Request Nos. 9-14).  Plaintiff Davis also asked for their emails about funding for Native Hawaiian religious programming (CCA Request No. 8).[8]

Initially, CCA responded by producing about 49 pages of emails between Saguaro's Warden and Mr. Haili.  CCA represented further that more emails from the Wardens to Mr. Haili were being compiled and searched.  CCA did not assert that these emails were inaccessible.[9]

After months of Plaintiffs' counsel meeting and conferring with CCA's counsel, CCA agreed to produce some documents, including one more email chain

---

[7]     Manley Decl., Ex. 12, p. 4 (Defendants' Initial Rule 26 Disclosure Statement).
[8]     Manley Decl., Ex. 1, pp. 11-15.
[9]     Manley Decl., Ex. 3, p. 11-18.

between Saguaro's assistant warden and Mr. Haili, without a protective order.[10]

CCA has produced emails dating back to April 2009.[11]

CCA has identified more responsive emails, including emails between the facilities' chaplains and Mr. Haili but they say that these emails cannot be produced without retaining a vendor to complete this production.[12]

C.  Defendants Have Not Produced The Wardens' Emails With The State Official With Whom They Consult About Native Hawaiian Religious Practices

Plaintiff asked for documents (including emails) generated by the Wardens about:  (i) Native Hawaiian religious practitioners' requests (CCA Request Nos. 15, 16, 21, 26-31); and (ii) requests made by inmates of other faiths (CCA Request Nos. 17-20, 22-25).[13]

Correspondingly, Plaintiff asked specifically for the Wardens' emails about these same matters with Ms. Kimoto, the Department of Public Safety official with whom they consult regularly about inmate requests for religious services, and her employees.  Plaintiff asked for their emails about Native Hawaiian religious requests (Maesaka-Hirata Request Nos. 6, 10, 13, 15, 17, 21, 24, 26, 31, 34, 36, 37, 41, 44, 46, 47, 51, 54, 56, 57, 64, 66, 67, 75, 78, 80, 90, 93, 95); the plaintiffs' requests (Maesaka-Hirata Request Nos. 149, 158, 161, 163, 172, 175, 177, 186,

---

[10]    Manley Decl., Ex. 5.
[11]    Manley Decl., Ex. 16.
[12]    Manley Decl., Ex. 5, p. 3; Ex. 10.
[13]    Manley Decl., Ex. 1, pp. 13-14.

189, 191, 200, 203, 205, 214, 217, 219);  and requests relating to inmates of other faiths (Maesaka-Hirata Request Nos. 103,  105, 106, 113, 115, 116, 123, 125, 126, 133, 135, 136, 144, 147).[14]

Some emails were also produced by CCA.  Some emails were produced by Defendant Jodie Maesaka-Hirata.  However, during the meet and confer process, Plaintiffs learned that CCA did not recognize their responsibility for searching and preserving the Wardens' emails in an accessible format.[15]

D.     CCA Rejected Plaintiffs' Proposed Solutions To Obtain the Requested Documents

Counsel for Plaintiffs have engaged in extended negotiations with counsel for Defendants to obtain all responsive emails, focusing on CCA's electronically-stored information.  Defendants have made no representations as to whether they have searched the State's sources of electronically-stored information.

After producing about 57 pages of emails, CCA resisted making further productions until Plaintiffs agreed to share in the costs and develop a search protocol for the rest, presumably because the other emails are inaccessible.  Since June 2011, Defendants have been searching for and "compiling" emails with Mr.

---

[14]     Manley Decl., Ex. 2, pp. 12-45.
[15]     Manley Decl., Ex. 10 at:  Email of March 6, 2012 from A. Luria to S. Manley and A. Sprenger, stating "The 70,000 files do not include a search for files relating to wardens' emails" and Email of April 5, 2012 from A. Luria to S. Manley and A. Sprenger, stating "Though it's beyond the scope of your formal requests to-date, we are exploring pulling all RRCC and SCC Wardens and AWs emails at this time, solely to ensure preservation."

Haili.  CCA said that it had identified "over 70,000 **pages**" of "potentially relevant" emails.  They demanded that Plaintiffs share in the costs of retrieving and processing these archived emails.  CCA also asked Plaintiffs to "identify search parameters to ensure that processing is accomplished in one effort."[16]

On November 17, 2011, Plaintiffs' counsel met with Defendants' counsel about this representation.  At the meeting and in a follow-up letter, Plaintiffs' counsel asked Defendants' counsel to:  (1) clarify whether the 70,000 **pages** of electronically-stored information was responsive to all of Plaintiffs' requests or just the requests for emails with Mr. Haili; and (2) to identify the sources of these electronically-stored files.[17]  Defendants did not respond to either question.

Plaintiffs asked Defendants to produce all 70,000 pages, which was not a large production if responsive to all of Plaintiffs' requests.[18]

Instead of making this production, Defendants' counsel continued to offer to make all responsive documents available if Plaintiffs provided search terms that could be used to yield electronically-stored documents responsive to all of Plaintiffs' outstanding and future document requests.[19]  To resolve the concern that CCA capture all relevant documents from its electronically stored files in "one effort," on December 7, 2011, Plaintiffs sent a list of relevant search terms,

---

[16]   Manley Decl., Ex. 5, p. 3.
[17]   Manley Decl., ¶¶ 11-12 and Ex. 6.
[18]   Manley Decl., Ex. 6, pp. 1-2.
[19]   Manley Decl., ¶ 13.

including the term "Hawaiian." [20]   After another three months passed, Defendants' counsel never responded and did not produce the promised documents.[21]

When Plaintiffs pressed Defendants about their failure to produce the electronic discovery in March 2013, Defendants changed their story.  This time, they said they had "70,000 electronically-stored files (not pages)" of responsive emails between the chaplains of Red Rock and Saguaro and Mr. Haili.[22]  Though they did not contest the relevancy of the 70,000 electronically-stored files they have retrieved, they continued to complain about costs.

Defendants claimed that these archived emails would require expensive processing because they were no "longer in a readable format" and thus not fit to be produced.  Despite this representation, they were able to determine that use of Plaintiffs' search term "Hawaiian" would yield "in the neighborhood of 250,000 files."[23]

---

[20]    Manley Decl., Ex. 7.

[21]    Manley Decl., ¶ 15.

[22]    Until March 30, 2012, discovery of electronically stored information was focused upon 70,000 electronically stored documents. Defendant has, over the past six months, represented at various times that the 70,000 documents (1) include only documents responsive to CCA Requests 7-14; (2) represent the full universe of responsive documents in CCA's possession; and (3) are a subset of potentially responsive emails *exclusive* of the wardens' emails.  The discovery dispute over requests 7 to 14 shifted from production of the 70,000 pages originally identified by Defendant to production of 250,000 emails containing the term "Hawaiian."

[23]    Manley Decl., Ex. 10 (Email of March 6, 2012 from April Luria to Sharla Manley).

Defendants did not, and still have not, searched "for files relating to the wardens' emails." To date, Defendants still refuse to acknowledge that the Wardens' emails and other electronic and paper documents were the focus of the Plaintiff Richard Davis' First Set of Requests for Production of Documents to Defendant CCA. After months of meeting and conferring, Defendants' counsel stated: "**Though it's beyond the scope of your formal requests to-date**, we are exploring pulling all RRCC and SCC Wardens and AWs emails at this time, solely to ensure preservation." (emphasis added).[24]

To resolve this dispute, Plaintiffs made several requests. Plaintiffs asked for a meet and confer with CCA's IT personnel. Plaintiffs also proposed that Defendants "dump" the 70,000 "files" onto a file-sharing system, without de-duplicating them. Plaintiff also requested a sample of the emails containing the search term "Hawaiian" as an interim measure.[25]

Defendants refused all proposed solutions. They continued to insist on replacements for Plaintiffs' proposed search terms, asking Plaintiffs to design a

---

[24]    Manley Decl., Ex. 10 at:  Email of March 6, 2012 from A. Luria to S. Manley and A. Sprenger, stating "The 70,000 files do not include a search for files relating to wardens' emails") and Email of April 5, 2012 from A. Luria to S. Manley and A. Sprenger, stating "Though it's beyond the scope of your formal requests to-date, we are exploring pulling all RRCC and SCC Wardens and AWs emails at this time, solely to ensure preservation."

[25]    Manley Decl., Ex. 10.

search that would yield less documents.  They also wanted Plaintiffs to help foot the bill.[26]

Plaintiffs also asked Defendants to confirm that they had completed a search of all paper files and reasonably accessible electronic formats (like computers issued to the wardens).  Defendants refuse to confirm that their production of documents from these accessible sources is complete.[27]

To fully exhaust the efforts to resolve this dispute, Plaintiffs developed a detailed search protocol by which Defendants could search the email accounts of two individuals:  Todd Thomas, the warden of Saguaro Correctional Center and Bruno Stolc, the warden of Red Rock Correctional Center.[28]  Under the protocol, Plaintiffs also limited the recipients of any emails from Mr. Thomas or Mr. Stolc. Defendants responded by asking for further revised search terms, including asking that the search term "Hawaiian" be eliminated.  Plaintiffs refused to narrow the search any further, having limited the ESI custodians and recipients.

Plaintiffs now bring this motion to prevent further delay in production of responsive emails.  CCA has used cost-sharing as an excuse for failing to producing responsive documents but has refused to provide Plaintiffs with sufficient information to independently assess the accessibility issue. Though

_____

[26]      Manley Decl., Ex. 10.
[27]      Manley Decl., Ex. 10.
[28]      Manley Decl., Ex. 11.

counsel for Plaintiffs have negotiated extensively with counsel for Defendants, no resolution has been reached and a genuine disagreement about cost-shifting persists.

## III.   **ARGUMENT**

### A.   The Wardens' Emails With Its Native Hawaiian Spiritual Advisor Contain Highly Relevant Information

To facilitate the goals of Rule 26, "relevant information, for purposes of discovery, is information reasonably calculated to lead to the discovery of admissible evidence." *Survivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005).   Federal Rule of Civil Procedure 26(b)(1) permits discovery of "any matter, not privileged, that is relevant to the claim or defense of any party…."   "Toward this end, Rule 26(b) is liberally interpreted to permit wide-ranging discovery of information even though the information may not be admissible at trial." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 635 (C.D. Cal. 2005).

It is undisputed that the Wardens' emails with Mr. Haili are relevant.  First, the Wardens are key players.  They have been identified by Defendants as key witnesses in their defense.  They are also, by defendants' own admission, the highest ranking CCA employees who consider requests relating to Native Hawaiian religious practices.  Their emails concerning Native Hawaiian practices would likely lead to the discovery of relevant evidence, if they are not relevant

themselves.  Their emails with the only kahu recognized by CCA, who himself has been identified by Defendants as a key witness in their defense, thus must contain highly relevant information to this case.  These emails would help Plaintiffs to discover the evidence that Defendants will likely introduce to support their defenses.  Further, there is ample evidence that email was often used as a means of communication by the wardens and Mr. Haili, based on Defendants' production thus far.

These emails are contemporaneous records of the Defendants' decision-making process, which makes them highly relevant and they go to the core of Plaintiffs' legal claims against Defendants.  This information is directly relevant to showing that Defendant CCA has denied Plaintiffs the right to practice central tenets of the Native Hawaiian religion in violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA), the Equal Protection and Free Exercise clauses of the State and Federal Constitution, and section VII of the Hawaii State Constitution.  Any emails between Mr. Haili and the wardens about inmate requests to practice Native Hawaiian religion would shed light on the basis for their decisions to deny these requests—that decision-making process is at the heart of Plaintiffs' legal claims.

Further any and all documents generated by the Wardens concerning Native Hawaiian religious requests and the religious requests of inmates of other faiths are

relevant and should be produced.  This would include all emails from the Wardens to the Assistant Wardens and the chaplains.  Plaintiffs provided Defendants with a search methodology for finding these emails.  (*See* Manley Decl., Ex. 11.)

> B.   The Wardens' Emails With State Officials Contain Highly Relevant Information

Ms. Kimoto is the "highest ranking State official" with whom the wardens of CCA-operated facilities consult when considering a request to practice Native Hawaiian religion.[29]  They confer weekly.  Ms. Kimoto was identified by Defendants as a witness who would testify about "religious programs and services provided to the Native Hawaiian religious practitioner inmate populations at RRCC and SCC."[30]  Any emails between Ms. Kimoto, or her employees, and the Wardens would shed light on the grounds for their denial of Plaintiffs' requests, which is at the heart of this case.  Also, the Wardens' emails with Ms. Kimoto about requests from inmates of other religions are necessary to prove Plaintiffs' equal protection claim.

The few emails produced by Defendants indicate that email was often used to communicate about the decisions to grant or deny inmate requests to practice Native Hawaiian religion.  Indeed, Defendants themselves recognized the relevance of these emails, because they produced them.  Defendants should not be

---

[29]    Manley Decl., Ex. 13, p. 5 (Response to Interrogatory No. 3).
[30]    Manley Decl., Ex. 12, p. 4 (Defendants' Initial Rule 26 Disclosure Statement).

allowed to cherry pick which emails it will produce and which it will not.

Plaintiffs are entitled to this discovery.

C.    The Costs Of Producing This Electronic Evidence Should Not Be Shifted To Plaintiffs

Though Defendants insist that accessing the relevant electronically stored information is a cost-prohibitive factor, they have not made this showing in the meet and confer process. "Accessible information must be produced at the cost of the producing party; cost-shifting does not even become a possibility unless there is first a showing of inaccessibility." *Peskoff v. Faber*, 251 F.R.D. 59, 63 (D.D.C. 2008). Defendant CCA has used cost-sharing as an excuse for not producing responsive documents but has refused to provide Plaintiffs with sufficient information to independently assess the accessibility issue.

1.    All Reasonably Accessible Emails And All Paper Documents Should Be Produced Now

Under Federal Rule of Civil Procedure 26, a party must "conduct a diligent search" for requested electronic documents. *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006).

> A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost.

Fed.R.Civ.P. 26(b)(2)(B). "If that showing is made, the burden shifts to the requesting party to show good cause for the production of the not-reasonably-accessible [electronically stored information]." *Capitol Records, Inc. v. MP3tunes, LLC*, 261 F.R.D. 44, 51 (S.D.N.Y. 2009).

To adequately respond to a request for production, the respondent must "conduct a reasonable search for responsive documents." *FTC v. Affiliate Strategies, Inc.*, No. 09-4104-JAR, 2011 U.S. Dist. LEXIS 7689, (D. Kan. Jan. 26, 2011). Parties must work with their attorneys "to identify all employees likely to have been authors, recipients or custodians of documents" responsive to the requests for production. *Cardenas v. Dorel Juvenile Group, Inc.*, No. 04-2478-KHV-DJW, 2006 U.S. Dist. LEXIS 37465, 2006 WL 1537394, at *6-7 (D. Kan. June 1, 2006). Parties "jeopardize the integrity of the discovery process by engaging in halfhearted and ineffective efforts to identify and produce relevant documents." *Bratka v. Anheuser-Busch Co.*, 164 F.R.D. 448, 461 (S.D. Ohio 1995). A party does not "meet its discovery obligations by sticking its head in the sand and refusing to look for [documents]." *In re Indep. Serv. Orgs. Antitrust Litig.*, 168 F.R.D. 651, 653 (D. Kan. 1996). It is inexcusable, furthermore, to respond to a request for production without reviewing the computer of a primary actor in the sequence of events leading to litigation. *Jacobson v. Starbucks Coffee Co.*, No. 05-1338-JTM, 2006 U.S. Dist. LEXIS 98174 (D. Kan. Oct. 31, 2006). At

a minimum, Defendants must search the computers of the Wardens and the State's

Mainland Branch, starting with Ms. Kimoto and her employees.

>    2.    Plaintiffs Cannot Assess the Accessibility of Wardens' Emails
>          or the Burden of Production Because Defendants Have Not
>          Disclosed Sufficient Information About Their Email Archive
>          System

Under the federal rules, "the presumption is that the responding party must

bear the expense of complying with discovery requests." *Oppenheimer Fund, Inc.*

*v. Sanders,* 437 U.S. 340, 358, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978). However,

the court has discretion to limit discovery of information which is "not reasonably

accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). The

burden is on the party resisting discovery to show that "the identified sources are

not reasonably accessible in light of the burdens and costs required to search for,

retrieve and produce whatever responsive information may be found." Advisory

Committee's Notes on 2006 Amendment to Fed. R. Civ. P. 26(b)(2).  If the

responding party makes this threshold showing, the court may consider a range of

options, including cost-shifting, to alleviate the responding party's hardship. Fed.

R. Civ. P. 26(c)(1).

The 2006 amendments to the federal rules provide heightened guidance on

the management of e-discovery disputes:

>    a responding party should produce electronically stored information that is
>    relevant, not privileged, and reasonably accessible, subject to the (b)(2)(C)
>    limitations that apply to all discovery. The responding party must also

> identify, by category or type, the sources containing potentially responsive information that it is neither searching nor producing. The identification should, to the extent possible, provide enough detail to enable the requesting party to evaluate the burdens and costs of providing the discovery and the likelihood of finding responsive information on the identified sources.

Advisory Committee's Notes on 2006 Amendment to Fed. R. Civ. P. 26(b)(2).

The disclosure and identification requirement imposed by revised rule 26(b) echoes *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309 (S.D.N.Y. 2003), the leading case on cost-shifting. The court in *Zubulake* developed the two-tiered approach to cost-shifting, applying the cost-shifting factors only after a *factual inquiry* into (1) the accessibility of the responding party's computer system and (2) the data which may be found on inaccessible media. *Id.* at 324.

CCA has refused to identify the sources containing responsive information so as to enable Plaintiff's to independently assess the accessibility issue.  They also refuse to state what format these archived emails are stored on (e.g. optical disk or back-up tape).  Instead, CCA has focused on the volume of potentially relevant documents and the costs of obtaining an outside vendor. "The fact that a responding party maintains records in different locations . . . or that responsive documents might be voluminous does not suffice to sustain a claim of undue burden." *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1033 (E.D. Cal. 2010).  Plaintiffs attempted to gain more information about the defendant's electronic storage system by requesting a meet and confer with CCA's IT personnel.  Plaintiffs also

18

asked for a sample of the 250,000 emails to evaluate the costs and burdens of searching the purported inaccessible data.  Sampling is an appropriate solution for determining the likelihood of finding relevant documents on inaccessible media. *Zubulake,* 217 F.R.D. at 324; Advisory Committee's Notes on 2006 Amendment to Fed. R. Civ. P. 26(b)(2).  Nonetheless, Defendant rejected both of Plaintiffs' proposed solutions.

Further, Defendants never raised inaccessibility as an objection in their original responses to Plaintiff Davis' request for the Wardens' emails with Mr. Haili.  CCA represented that they were searching and compiling those emails.[31]

Finally, CCA's representation that these highly relevant emails are not reasonably accessible are undermined by two facts.  First, CCA produced emails dating back to April 2009.[32]  Also, they assert that the search term "Hawaiian" would yield over 250,000 emails.[33]

It is erroneous to assume that because things are electronic they are burdensome to produce.  *Zubulake* , 217 F.R.D. at 322-323 (S.D.N.Y. 2003).  They in fact state the opposite is true, as electronic evidence is usually more efficient and cheaper to produce.  *Id.*

---

[31]     Manley Decl., Ex. 3, pp. 11-18.
[32]     Manley Decl., Ex. 16.
[33]     Manley Decl., Ex. 10.

3.   Cost-Shifting Is Not Appropriate Because Defendant's Actions Have Increased Production Costs

"[I]f a party creates its own burden or expense by converting into an accessible format data that it should have reasonably foreseen would be discoverable material at a time when it would have anticipated litigation, then it should not be entitled to shift costs of restoring and searching data." *Quinby v. WestLG AG*, 245 F.R.D. 94, 104 (S.D.N.Y. 2006). *Accord Peskoff v. Faber*, 251 F.R.D. 59, 63 (D.D.C. 2008); *Semsroth v. City of Wichita*, 239 F.R.D. 630, 635 (D. Kan. 2006); The Sedona Conference Commentary on Proportionality in Electronic Discovery, 11 Sedona Conf. J. 289, 298 (2010) ("In assessing whether a particular discovery request or requirement is unduly burdensome or expensive, a court should consider the extent to which the claimed burden expense grow[s] out of the responding party's action or inaction."). In *Treppel v. Biovail*, the court reasoned that downgrading emails from an accessible to an inaccessible format is a sanctionable violation of a litigant's duty to preserve evidence. 233 F.R.D. 363, 372 n.4 (S.D.N.Y., Feb. 6, 2006); *see also Semsroth*, 239 F.R.D. at 635 n.4 ("The Advisory Committee considered the possibility that the revised Rule 26(b)(2)(B) might encourage companies to "bury" information in some inaccessible format in order to keep it from being discovered in litigation, but noted that this conduct would be subject to sanctions under both the present and the proposed rules"). Many courts agree that cost-shifting is not warranted where the responding party

converts evidence into a less accessible format after the preservation duty has attached. *Quinby*, 245 F.R.D. at104. Here, Defendants refused to acknowledge their role in rendering the electronic data more inaccessible. They refuse to preserve the emails in an accessible form. Yet, Defendants knew that litigation was likely. The State produced an email dating back to the summer of 2009 in which its officials anticipated future litigation over Native Hawaiian practices.[34] Further in the fall of 2009, some of the Plaintiffs asked for judicial relief against CCA's exclusion of certain inmates from the facility's sanctioned-Makahiki observances. CCA should have maintained electronic evidence in an accessible form. CCA should not be allowed to take "unfair advantage of a self-inflicted burden by shifting part of the costs of undoing the burden to an adversary." *Quinby*, 245 F.R.D. at 104.

In light of the case law, Plaintiffs refused to agree to cost-sharing measures absent the court's intervention. Defendant has failed to disclose information about the accessibility of electronically stored information and has unduly delayed production of responsive documents which may have been downgraded to less accessible storage sites during the time lapse.[35]

Recognizing that accessibility is a threshold issue, Plaintiffs ask the Court to deny any request by Defendants' to shift their costs of production to Plaintiffs.

---

[34]    Manley Decl., Ex. 15.
[35]    Manley Decl., Ex. 10.

### 4.   The Other Factors Weigh Against Cost-Shifting

Assuming that the information sought is truly difficult to access, the following seven factors are often used to determine whether cost-shifting is appropriate: (1) the specificity of the discovery request; (2) the quantity of information available from other and more easily accessed sources; (3) the failure to produce relevant information that seems likely to have existed but is no longer available on more easily accessed sources; (4) the likelihood of finding relevant responsive information that cannot be obtained from other more easily accessed sources; (5) predictions as to the importance and usefulness of the further information; (6) the importance of the issues at stake in the litigation; and (7) the parties' resources. *See Zubulake,* 217 F.R.D. at 322; Advisory Committee's Notes on 2006 Amendment to Fed. R. Civ. P. 26(b)(2).  These factors weigh against cost-shifting.

**Specificity of the request**.  The discovery requests are specific.  Plaintiff asked for emails and other electronic documents "generated" by the Wardens.  To respond, CCA could have simply searched the computers and email accounts of only two key CCA employees: the warden of Saguaro, Todd Thomas and the warden of Red Rock, Bruno Stolc.[36]

---

[36]   There are two additional assistant wardens that have been identified as key witnesses by defendants:  Assistant Warden Bradley and Assistant Warden Griego. Manley Decl., Ex. 12.

Plaintiffs had defined and restricted the time frame of these emails.[37]

Plaintiffs provided Defendant with a list of suggested search terms but after

ignoring this list for months, they eventually asked for replacement terms.  To

further narrow this request, Plaintiffs provided Defendants with detailed search

protocol which included the names of recipients or senders of emails from or to the

wardens and more search terms, as described above.

**Quantity of Information Available From Other and More Easily**

**Accessible Sources And Likelihood Of Finding That Information.**  Defendants

refuse to confirm that they have completed production of any and all paper files

maintained by Defendants.  Defendants also refuse to answer one basic question

posed again and again by Plaintiffs:  have they searched the hard drives or active

email accounts of these key witnesses?  Plaintiffs have pointed out since

November 2011 that Defendants should start with a search of the computers or

personal device assistants issued to the Wardens for accessible data.  Also,

Defendants have focused the meet and confer discussions on the "inaccessible"

emails in CCA's archival system but they refuse to disclose whether they have

searched the active email accounts of Mr. Haili (who is employed by the State

Defendants) or Ms. Kimoto (who is also employed by the State Defendants) to

---

[37]     Manley Decl., Ex. 1, requests 7 to 14 ("communications between the Wardens of [Saguaro/Red Rock] and Mr. Ka`iana Haili concerning [Plaintiff's] request to practice Native Hawaiian religion . . . from June 2009 to present.").

obtain these emails.  Defendants must identify the custodians they believe may

potentially have relevant e-mails, and disclose whether any e-mails from these

custodians for the relevant time period, currently reside on backup tapes or other

inaccessible media.  If all the emails from the pertinent time period are still on

active servers or other accessible media, there is no issue concerning backup tapes

and the Court should not even consider cost-shifting.  *Zubulake*, 217 F.R.D. at 319-

20 (back-up tapes are inaccessible whereas other electronic data storage formats

are accessible).

**The failure to produce relevant information that seems likely to have
existed but is no longer is available on more easily accessed sources.**  This is a

significant factor but difficult to evaluate without more information from CCA as

to the availability of emails from easily accessed sources.  What one can discern

from observing the documents produced thus far is that the State Defendants

produced a number of emails between themselves and the Warden of Saguaro so

there are emails that exist.  CCA however has not produced them, citing its policy

of making all emails less accessible after a number of days.  These gaps in the

production indicate that CCA has failed to produce relevant information.

**Predictions As To The Usefulness Of The Information.**  This information

will be useful, as set forth in sections II, III.A and III.B, *supra*.  The key decision-

makers in this case communicated with one another about the right to practice Native Hawaiian religion by email.

**Importance of the Issues in the Litigation and the Parties' Resources.** If the State delegated its authority to a jailer who is discriminating against Native Hawaiian religious practitioners or denying them their rights under federal and state constitutional law, that is a matter of public interest. It would be grossly unfair to shift the costs for vindicating this public interest to men who are detained in these facilities with little opportunity to earn money. In comparison, the jailer here, CCA, has vast resources. These factors weigh against cost-shifting.

## IV.   CONCLUSION

Plaintiffs ask that the Court grant this motion to compel Defendant CCA to produce its Wardens' electronically-stored information at its own expense. Plaintiffs ask for the following specifically:

- Compel Defendants to search reasonably accessible formats, which under the weight of authority, are: the hard drives of key players, active email servers, and archived emails on optical disks, for documents responsive to Plaintiff Richard Davis' First Set of Production of Documents to Defendant CCA; Plaintiff Richard Davis' First Set of Production of Documents to Defendant Jodie Maesaka-Hirata; and Plaintiff

Richard Davis' First Set of Production of Documents to Defendant Neil Abercrombie.  Order Defendants to identify each individual who is likely to have documents responsive to the First RFP, conduct a sufficient search for paper documents from them, and provide a supplemental response to the First RFP which indicates that it has done so.  Defendants shall review their network files, emails, and local hard drives for all individuals who are likely to have responsive documents, including Warden Todd Thomas, Warden Bruno Stolc, Assistant Warden Ben Griego, Assistant Warden Bradley, Shari Kimoto, and other members of the State of Hawaii's Mainland Branch.Plaintiffs ask that the Court order Defendants to submit an affidavit detailing all steps taken in furtherance of this search and describing the format on which these emails are stored within 10 days of this order.

- Compel Defendants to produce all accessible data and documents found through this search within 10 days of this order.

26

- Rule that Defendants could have reasonably anticipated this litigation as early as June 2009 and the duty to preserve electronic evidence arose then.

- Defendants solely bear the responsibility for costs of producing emails dating back to June 2009.

- Compel Defendants to identify information contained on inaccessible media like back-up tapes.

- Award Plaintiffs their fees and costs for this motion.

DATED:   Honolulu, Hawaii, April 24, 2012.


/s/ Sharla A. Manley
ANDREW B. SPRENGER
SHARLA A. MANLEY
Attorneys for Plaintiffs