IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

RICHARD KAPELA DAVIS, MICHAEL )    CIVIL NO. 11-00144 LEK-BMK
HUGHES, DAMIEN KAAHU, ROBERT )
A. HOLBRON, JAMES KANE, III, )
ELLINGTON KEAWE, KALAI POAHA, )
TYRONE KAWAELANILUA`OLE )
NA`OKI GALDONES, )
                   )
         Plaintiffs, )
                   )
     vs. )
                   )
NEIL ABERCROMBIE, in his )
official capacity as the )
Governor of the State of )
Hawaii; TED SAKAI, in his )
official capacity as the )
Director of the Hawaii )
Department of Public Safety; )
CORRECTIONS CORPORATIONS OF )
AMERICA, )
                   )
         Defendants. )
_____ )

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS FOR FAILURE TO EXHAUST**

Before the Court is Defendants Neil Abercrombie, in his official capacity as the Governor of the State of Hawai`i, Ted Sakai, in his official capacity as Director of the Hawai`i Department of Public Safety, and Corrections Corporation of America's (collectively, "Defendants") Motion to Dismiss for Failure to Exhaust ("Motion"), filed on December 31, 2012. [Dkt. no. 220.] Plaintiffs Richard Kapela Davis, Michael Hughes, Damien Kaahu, Robert A. Holbron, James Kane, III, Ellington Keawe, Kalai Poaha, and Tyron Kawaelanilua`ole Na`oki Galdones

(collectively, "Plaintiffs") filed a memorandum in opposition to the Motion on March 4, 2013. [Dkt. no. 235.] Defendants filed a reply on March 18, 2013.[1] [Dkt. no. 256.]

This matter came on for hearing on March 25, 2013. Appearing on behalf of Plaintiffs were Andrew W. Sprenger, Esq., Sharla Ann Manley, Esq., and Leinaala L. Ley, Esq., and appearing on behalf of Defendants were Jodie D. Roeca, Esq., and David Lewis, Esq.  After careful consideration of the motion, supporting and opposing memoranda, and the arguments of counsel, Defendants' Motion is HEREBY GRANTED IN PART AND DENIED IN PART for the reasons set forth below.

## BACKGROUND

Plaintiffs are all Native Hawaiians and inmates currently incarcerated at Saguaro Correctional Center ("SCC") or Red Rock Correctional Center ("RRCC").  In their Second Amended Complaint and Supplemental Complaint, Plaintiffs allege that Defendants violated Plaintiffs' rights to the free exercise of their Native Hawaiian religion under the Hawai`i State Constitution and the United States Constitution.  The specifics of the relevant factual and procedural background in this case are set forth in this Court's September 30, 2012 Order Denying Plaintiff Richard Kapela Davis's and Plaintiff James Kane III's

---

[1] The Court granted Defendants' Motion for Extension of Time to File Response/Reply on March 11, 2013.  [Dkt. no. 246.]

Motion for Preliminary Injunction.  2012 WL 4715307.  The Court therefore will not repeat them here, and will only discuss the background as it is relevant to the instant Motion.

     A.   **Grievance Process at SCC and RRCC**[2]

     The inmate grievance procedure contained in Corrections Corporation of America's ("CCA") Policy 14-5 (the "Grievance Policy") governs the claims asserted in Plaintiffs' Second Amended Complaint and Plaintiff Galdones's Supplemental Complaint.  [Mem. in Supp. of Motion, Exh. A (Aff. of Juan Valenzuela[3] ("Valenzuela Aff.")), Attachment A (CCA Policy 14-5); Exh. B (Aff. of Carl Richey[4] ("Richey Aff.")), Attachment A (CCA Policy 14-5).]  Upon an inmate's arrival at the facility, SCC provides an Inmate Handbook, which contains a summary of the facility grievance policies and procedures.  [Valenzuela Aff. at ¶¶ 7-8; Richey Aff. at ¶¶ 7, 10-11.]  Copies of the grievance policy are also made available in the library and housing units. [Id.]

---

   [2] The grievance policies in place at SCC and RRCC are substantially similar; unless any difference is specifically mentioned in this section, the SCC grievance policy described applies equally at RRCC.

   [3] Juan Valenzuela is the Grievance Coordinator for SCC. [Valenzuela Aff. at ¶ 2.]

   [4] Carl Richey is the Grievance Coordinator for RRCC. [Richey Aff. at ¶ 2.]

Under both the SCC and RRCC grievance policies, the following are considered grievable matters: (1) violation of state and federal laws, regulations, or court decisions; (2) application of rules, policies, and/or procedures to inmates; (3) individual staff and inmate actions, including any denial of access to the grievance processes; (4) reprisals against inmates for utilizing the grievance processes; and (5) any other matter relating to the conditions of care and supervision within the authority of CCA.  [Valenzuela Aff. at ¶ 10; Richey Aff. at ¶ 12.]

The grievance policies at SCC and RRCC require that inmates attempt to resolve problems informally, prior to filing a formal grievance.  First, inmates must submit a Request for Service.  [Id. at ¶ 13.]  If an inmate is not satisfied with the outcome of the Request for Service, he may then attempt to resolve the issue by filling out a 14-5A Informal Resolution form, with a copy of the Request for Service attached, and submitting it to his Case Manager.  [Id. at ¶ 14.]

The inmate must submit the 14-5A Informal Resolution form within seven calendar days of the alleged incident.  [Id. at ¶ 15.]  When the Grievance Coordinator receives a 14-5A form, he or she assigns a Case Manager to investigate the inmate's allegations.  [Id. at ¶ 16.]  The Case Manager has seven working days to investigate.  The Grievance Coordinator has an additional

4

8 days to return a decision ("Informal Resolution") to the inmate. [Id.]

If the inmate is dissatisfied with the outcome of the Informal Resolution, he may file a Formal Grievance by filling out a 14-5B form and submitting it to the Grievance Officer within five calendar days of the Informal Resolution. [Id. at ¶¶ 17-18.] Within fifteen days of the submission of the Formal Grievance, the Grievance Coordinator investigates the complaint and renders a decision. [Id. at ¶ 19.]

If the inmate is dissatisfied with the decision of the Grievance Coordinator, the inmate has five days from the date he receives the decision to submit an appeal to the Warden. [Id. at ¶¶ 19-20.] The Warden then has fifteen days to respond to the inmate's appeal. [Id. at ¶ 21.] The Warden's decision is final and results in the exhaustion of administrative remedies.[5] [Id.]

I.    **Motion to Dismiss**

In the instant Motion, Defendants argue that certain of the claims in the Second Amended Complaint must be dismissed for failure to exhaust available administrative remedies as required

---

[5] The Grievance Policy includes additional procedures for inmates to file Emergency Grievances, bypassing the first step in the grievance process if the subject matter of the grievance is such that compliance with the regular time guidelines would subject the inmate to risk of personal injury. [Valenzuela Aff. at ¶ 24.]

by the Prison Litigation Reform Act of 1996 ("PLRA").[6] [Mem. in Supp. of Motion at 4.]

### A. **Plaintiff Richard Davis**

Defendants argue that Plaintiff Davis's grievance file reveals that, although he filed informal and formal grievances concerning a number of religious issues in July and August of 2009, he did not submit an Informal Resolution or Formal Grievance with respect to his claim that Native Hawaiian inmates should be able to regularly meet with a respected religious leader to assist in worship activities, and thus failed to properly exhaust that claim. [Id. at 6 (citing Valenzuela Aff. at ¶ 35).]

### B. **Plaintiff Michael Hughes**

Defendants argue that Plaintiff Hughes similarly failed to exhaust the spiritual advisor claim. [Id. at 7 (citing Valenzuela Aff. at ¶¶ 43-60).] Thus, Defendants argue that Hughes's spiritual advisor claim must also be dismissed as unexhausted.

### C. **Plaintiff Damien Kaahu**

Defendants argue that Plaintiff Kaahu likewise did not exhaust his spiritual advisor claim. Specifically, Kaahu's only grievances (an Informal Grievance and Formal Grievance filed in

_____

[6] Plaintiff Holbron is the only plaintiff whose claims are not challenged in the Motion. [Mem. in Supp. of Motion at 4.]

2009) related to claims for daily congregation, Makahiki participation, access to certain religious items, and an outdoor altar, but did not raise the issue of his need to meet regularly with a religious leader.  [Id. (citing Valenzuela Aff., Attachment N (Grievance #09-08-02)).]

> D.   **Plaintiff Kalai Poaha**

Defendants argue that Plaintiff Poaha filed a Formal Grievance requesting additional "Religious Practices" (religious classes) to assist with his spiritual growth, but did not mention in that grievance the subject of regular meetings with a spiritual advisor.  [Id. at 8 (citing Valenzuela Aff. at ¶ 67, Attachment O (Grievance #0032-09)).]  As such, Defendants argue that Poaha's spiritual advisor claim must be dismissed for failure to exhaust.

> E.   **Plaintiff Tyrone Galdones**

Defendants argue Galdones failed exhaust his available administrative remedies with respect to four of the five claims alleged in the Second Amended Complaint, specifically: (1) congregating with other practitioners on a daily basis; (2) participating in certain ritual and ceremonies marking the beginning and end of the Makahiki season; (3) access to certain sacred items; and (4) establishing an out-of-doors altar.

Defendants explain that on August 5, 2009, Galdones submitted an Informal Resolution regarding his requests to: (1)

7

gather with other Native Hawaiian inmates on a daily basis; (2) construct an altar and construct and maintain a garden of Native Hawaiian plants; (3) participate in certain ritual and ceremonies marking the beginning and end of the Makahiki season; and (4) access certain sacred items.  Defendants argue, however, that Galdones failed to then file a Formal Grievance and, therefore, did not exhaust his available administrative remedies with respect to those four claims.  [Id. at 8-9.]

        Defendants also argue that Galdones's retaliation claim, brought under the Supplemental Complaint, was likewise not properly exhausted.  Galdones petitioned the Court to file the Supplemental Complaint on July 5, 2012, [dkt. no. 110,] was granted permission, and filed the Supplemental Complaint on August 22, 2012.  [Dkt. no. 146.]  Galdones filed Informal Resolution #12-06-13 on June 21, 2012, requesting for the first time regular meetings with a spiritual advisor and personal retention of certain sacred items.  [Mem. in Supp. of Motion at 9.]  He subsequently filed a Formal Grievance from the denial of the Informal Resolution on July 10, 2012, which the Warden denied July 19, 2012.  [Valenzuela Aff., Attachment Q (Grievance #098-12).]  Defendants point out, however, that this series of informal and formal grievances came after July 5, 2012, the date when Galdones first entered this litigation by petitioning the Court for leave to file the Supplemental Complaint.  As such,

Defendants argue that Galdones cannot satisfy the PLRA's pre-suit litigation requirement with respect to the spiritual advisor claim, as well as the other four claims. Thus, Defendants argue that all of Galdones's claims should be dismissed for failure to exhaust.[7]

### F. **Plaintiff James Kane**

Plaintiff Kane filed both an Informal Grievance (#09-132) and Formal Grievance (#09-132) in September 2009, challenging the five religious claims at issue in the Second Amended Complaint. He did not, however, appeal the denial of his Formal Grievance to the Warden. [Mem. in Supp. of Motion at 11 (citing Richey Aff. at ¶¶ 36-37).] As such, Defendants argue that all of Kane's claims must be dismissed for failure to exhaust.

### G. **Plaintiff Ellington Keawe**

On September 7, 2010, Plaintiff Keawe filed Informal Resolution #10-161 regarding religious observances for certain Hawaiian holidays but, after Chaplain Moore advised Keawe that

---

[7] Defendants state that Galdones also filed an appeal from the Disciplinary Report that resulted in his placement in segregation, claiming that he was being punished in retaliation for his protected advocacy. [Valenzuela Aff. at ¶ 77, Attachment R.] Defendants state that retaliation claims are grievable, but not in the context of an appeal from a disciplinary charge and classification decision—Galdones was required to file a separate grievance raising retaliation or the other claims alleged in the Supplemental Complaint. [Mem. in Supp. of Motion at 11 n.7 (citing Valenzuela Aff., Attachment A at Policy 14-5.4(F) and (G)(5)).]

RRCC recognized Kamehameha, Makahiki, and Prince Kuhio Days, and

that special meals were served on those holidays, Keawe indicated

the Informal Resolution was resolved on September 13, 2010.

[Richey Aff. at ¶ 42.]  On November 11, 2010, Keawe submitted

Formal Grievance #10-161 regarding communal religious services,

as well as new allegations, including claims for an altar for

prayer and a space to practice spiritual dance, language, arts

and crafts, and Hawaiian studies.  [Id. at ¶ 43.]  In a

November 19, 2010 memorandum, Keawe was informed that he had the

opportunity to study the Native Hawaiian religion every Thursday

in the unit where he is housed.  Keawe was also told that he was

given four special meals in 2010 for the closing and opening of

Makahiki, Prince Kuhio Day, and King Kamehameha Day.  [Id.]

Keawe failed to appeal Formal Grievance #10-161.  [Id.]

Defendants argue that Keawe thus failed to properly exhaust his

religious claims.

In sum, Defendants argue that Plaintiffs Galdones,

Kane, and Keawe should have all of their claims dismissed for

failure to exhaust.  Defendants additionally argue that the

spiritual advisor claims brought by Plaintiffs Davis, Hughes,

Kaahu, and Poaha should likewise be dismissed as unexhausted.

## II.  **Plaintiffs' Opposition**

In their memorandum in opposition, Plaintiffs argue

that the individual plaintiffs either actually exhausted, or

should be deemed to have exhausted all administrative remedies, given the particular circumstances of their cases.

### A.   <u>Plaintiff James Kane</u>

Plaintiffs argue that Plaintiff Kane should be deemed to have exhausted all administrative requirements because RRCC did not follow its own procedures and Warden Stolc decided Kane's procedurally flawed grievance on its merits.  Plaintiffs state that on or about July 20, 2009, Kane made four Requests for Service asking (1) that he be allowed to gather daily with fellow Native Hawaiian inmates to observe the Native Hawaiian religion in an outdoor location; (2) that he be allowed to observe the opening and closing of Makahiki with certain protocol; (3) for access to sacred items; and (4) to construct an outdoor altar and garden.  [Mem. in Opp. at 7 (citing Kane Decl., Exhs. 1-4 (9/09 Inmate Request Forms)).]  These requests were denied in part and granted in part by the Chaplain.  [<u>Id.</u>]

Kane next sent four identical Requests for Service to RRCC Warden Stolc.  [Kane Decl. at ¶ 9, Exh. 7 (9/16/09 Inmate Request Form).]  Kane simultaneously submitted an Informal Grievance asking that his Requests for Service be forwarded to the Warden.  [Kane Decl., Exh. 5 (Informal Resolution #09-132).]  Kane's Informal Grievance was denied by Carl Richey.  [Kane Decl., Exh. 5.]  Kane next submitted a Formal Grievance on the 14-5B Form, claiming a right to "practice my Native Hawaiian

11

religion." [Kane Decl., Exh. 6.]  The Formal Grievance was denied on September 29, 2009 by RRCC Assistant Warden Hart, who stated that RRCC follows the state's policy on Hawaiian religion. [Id.] The same day, however, Warden Stolc wrote the following disposition/response on Kane's Inmate Request Form: "I have attached the guidelines to be used for the observance [of] the Native Hawaiian Religion.  We will follow these guidelines as written." [Kane Decl., Exh. 7.]  Plaintiffs argue that Warden Stolc's decision on the Inmate Request Form should be considered a final decision on the merits, such that Kane has met his exhaustion requirements.

### B.  **Plaintiff Ellington Keawe**

Plaintiffs argue that Plaintiff Keawe exhausted his administrative remedies in 2008, and that his requests for sacred items, the observance of Makahiki, and access to a spiritual advisor were granted, thus no further appeals were necessary for exhaustion.

First, Plaintiffs state that in October 2008, Keawe submitted an Informal Grievance requesting adequate time and space to study and practice Native Hawaiian religion and culture. [Keawe Decl., Exh. 1 (Informal Resolution #08-0190).]  The chaplain of RRCC, Christopher Aguirre, responded to the grievance, stating that "Inmate is agreeing to work through the chaplaincy to observe and participate in Hawaiian Religious

12

activities." [Id.] Plaintiffs claim that "Mr. Keawe followed the grievance appeal through to the Warden of [RRCC] Bruno Stolc," and that Warden Stolc "made a final decision on Mr. Keawe's grievance," denying it "based on the State's guidelines for Native Hawaiian religion." [Id. at 12 (citing Keawe Decl. ¶¶ 8-10, Exh. 2 (Form 14-5A Informal Resolution #08-190)[8], Exh. 3 (Form 14-5B Inmate Grievance #08-190)[9].] Plaintiffs argue that, when Warden Stolc denied Keawe's 2008 request, that was a final decision on the merits, and Keawe exhausted his administrative remedies as to his 2008 grievance. [Id. at 13-15.]

Second, Plaintiffs argue that when some of Keawe's requests were granted, he was not required to further appeal those requests for purposes of exhaustion. Specifically, Plaintiffs state that Keawe's requests for certain sacred items were granted in part and, thus, no further administrative action was required, even though the prison officials ultimately failed to give him the requested sacred items. [Id. at 16 (citing Keawe

---

[8] The "Grievance Officer Response" on the Informal Resolution states "Your Informal was due back on 10-29-08. It was returned on 10-29-08. It was indicated as resolved." [Keawe Decl., Exh. 2.]

[9] The "Warden/Administrator's Decision" on the Inmate Grievance form states "Attached you will find the guidelines provided by the Department of Public Safety as they related to Makahiki. There is no discrimination as you have been allowed to celebrate Makahiki as a Native Hawaiian holiday. Your grievance is denied." The decision is dated December 15, 2008. [Keawe Decl., Exh. 3.]

Decl., Exh. 8).]  Similarly, Plaintiffs argue that Keawe's
request for access to a spiritual advisor was granted on August
8, 2010, when he received a letter from Chaplain Aguirre stating
that RRCC has a "Hawaiian cultural advisor Ka`iana Haili" and
that he visits RRCC when he "visits the mainland from Hawaii."
[Id.; Keawe Decl. ¶ 15, Exh. 9.]  Keawe's request for
accommodations for the opening of Makahiki for November 2010 were
likewise granted in part, Plaintiffs argue. [Id.; Keawe Decl.,
Exh. 6.]  Plaintiffs argue that when, ultimately, prison
officials failed to actually provide Keawe with these
accommodations, he was not required to undertake any further
administrative action, as prisoners have exhausted their
available remedies when they are granted the requested
administrative relief.  [Id. at 15-16.]

   C.   **Plaintiff Richard Davis**

        With respect to Plaintiff Davis, Plaintiffs argue that
he is entitled to an exception to the general exhaustion rule
because "improper screening by prison officials render[ed]
administrative remedies 'effectively unavailable.'"  [Id. at 21.]
Plaintiffs first argue that Davis filed a Request for Service and
Informal Grievance for access to a spiritual advisor that, if
pursued through all administrative appeals, would have been
sufficient for exhaustion, but that Grievance Coordinator
Valenzuela "improperly screened" his grievances, incorrectly

14

classifying them as to their content, and warning him against abusing the grievance system. [Id. at 21-23.]

Plaintiffs further argue that: (1) because Valenzuela stated on Davis's Informal Resolution "please refrain from abuse of the grievance system," after repeating that Davis's requests were denied because SCC policies addressed his previous requests, Davis was not required to further exhaust his claim, [id. at 19 (citing Davis Decl., Exh. 4)]; and (2) because the State Defendants told him he could "go back to court" if he disagreed with the SCC response, he had effectively exhausted. [Id. at 20.]

**D.  Plaintiff Michael Hughes**

Plaintiffs argue that Plaintiff Hughes's claim for a spiritual advisor should not be dismissed because Hughes should also be excused from the exhaustion requirement because of an inadvertent mistake he made when listing the date on his Informal Grievance form, and because the prison librarian to whom he gave the form turned it in late. [Id. at 24-25 (citing Hughes Decl., Exhs. 1, 3.] Plaintiffs argue that the grievance was "improperly screened when it was rejected for timeliness and, thus [Hughes's] claim should be decided on the merits." [Mem. in Opp. at 25.]

**E.  Plaintiff Tyrone Galdones**

First, Plaintiffs argue that Plaintiff Galdones

15

properly exhausted all available administrative remedies for his retaliation claim.  Galdones appealed his disciplinary action to the SCC Warden; the appeal was denied.  [Id. at 26 (citing Motion, Valenzuela Aff., Attachment R, p. 145 (Disciplinary Appeal Dated 5/18/2012)).]  Galdones also filed a Formal Grievance on June 11, 2012.  [Id. (citing Motion, Valenzuela Aff., Attachment R, p. 143-144 (Formal Grievance #072-12)).]  The Formal Grievance was denied because "disciplinary is not grievable per Policy 14-5."  [Id.]  Plaintiffs emphasize that Galdones made a good faith effort to exhaust but was "stymied by prison officials' unreasonable interpretation of grievances and hyper-technical application of the grievance policy."  [Id. at 29.]  Plaintiffs argue that Galdones gave prison officials sufficient information regarding the nature of his grievance and that, as such, this claim should be deemed to be exhausted. [Id. at 30-32.]

Plaintiffs further argue that Galdones's claims regarding religious rights should likewise not be dismissed, as he exhausted those claims as well.  Plaintiffs state that Galdones submitted an Informal Grievance in June 2012, while in segregation, regarding access to religious items and advisors in segregation.  [Id. at 32 (citing Motion, Valenzuela Aff., Attachment Q (Inmate Grievance #098-12)).]  Galdones was released from segregation on June 21, 2012, thus rendering his claims

moot.  [Id.]  Plaintiffs argue that it was "reasonable" for
Galdones to seek leave to file a Supplemental Complaint two weeks
after he was released, as it was unclear whether he was required
to exhaust his claims related to segregation once he was back in
general population.  [Id. at 33.]  As to his claims regarding
religious practice (daily gatherings, a sacred space, sacred
items, and observing Makahiki) when in general population,
Plaintiffs point to the grievance logs provided with the Manley
Declaration (Exhibits Q and N) and state that Galdones's name
appears on both the Informal and Formal Grievance Logs.  [Id. at
33-34.]

     **F.**   **Arguments Regarding State Claims**

      Plaintiffs argue that all of their state law claims
survive Defendants' exhaustion arguments, as the PLRA does not
apply to state law claims.  [Id. at 38 (citing 42 U.S.C.
§ 1997e(a)).]

**III. Reply**

     **A.**   **Plaintiff Kane**

      In their Reply, Defendants argue that, while Plaintiffs
argue that there is a lack of "guidance" on the grievance
procedure in the Inmate Handbook, Kane specifically availed
himself of Policy 14-5 by filing an Informal and Formal Grievance
regarding the five religious claims at issue in this case.
[Reply at 3 (citing Mem. in Supp. of Motion, Exh. B (Richey Aff.)

17

at ¶¶ 11, 36-37).]  Defendants argue that Warden Stolc's "commendable practice of responding to requests for services which are technically just the first step of the grievance process" did not excuse Kane from exhausting each level of the grievance process.  [Id. at 4 (quoting Mem. in Opp. at 8).]

B.   **Plaintiff Keawe**

Defendants note that Plaintiff Keawe does not dispute his failure to exhaust either his 2009 or 2010 grievances, [id. at 5 (citing Mem. in. Opp., Keawe Decl. at ¶¶ 15-16),] but rather argues that his partially successful 2008 grievance satisfied the PLRA exhaustion requirements and that the alleged "continuing violation" justifies the Court in reaching the merits of his claims.  [Id. (citing Mem. in Opp. at 15).]  The 2008 grievances, however, Defendants argue, do not exhaust the same religious claims he seeks to assert in this action, and should not be considered because of Hawaii's two-year statute of limitations governing Section 1983 claims.  [Id. at 6.]  As such, Defendants argue that Keawe's federal claims must be dismissed.

C.   **Plaintiff Galdones**

First, Defendants argue that Galdones's 2009 grievance was not exhausted.  Defendants agree that the side-by-side analysis Plaintiffs conduct of the Formal Grievances Log and the Informal Resolutions Log creates a factual issue suggesting that Galdones may have filed a Formal Grievance (Formal Grievance

(#0036-09) on August 11, 2009) related to his August 5, 2009 Informal Grievance denial.  Defendants argue, however, that the mere filing of a Formal Grievance is insufficient for exhaustion; he must appeal the denial of his Formal Grievance to the Warden within 5 days in order to exhaust.  Galdones has presented no evidence suggesting such an appeal was filed.  [Id. at 9-10.]

Second, Defendants argue that Galdones's arguments regarding his two separate 2012 grievances are also without merit.  Defendants emphasize that, while the timing of the filing of his Supplemental Complaint may have precluded exhaustion pre-filing, this is not a legal excuse for filing suit before exhausting the claim.  [Reply at 10-11.]  As such, Defendants argue that Galdones's religious claims must be dismissed as unexhausted.

With respect to Galdones's retaliation claims, Defendants argue that when Galdones was placed in segregation he could have, but did not, file grievances complaining of retaliation and seeking something other than reversal of disciplinary conviction.  [Id. at 12 (citing Motion, Exh. 1, Attachment A (Policy 14-5(F)(1))).]  Instead, his May 31, 2012 Formal Grievance was focused solely on his liberty interest in avoiding segregation and his requested action involved only disciplinary relief.  [Id. at 12-13 (citing Motion, Exh. A, Attachment R).]  Because the redress Galdones sought was focused

19

solely on quasi-criminal remedies, he failed to exhaust his protected speech/retaliation claim through the grievance process. [<u>Id.</u> at 13-14.]

   D.   **Plaintiff Davis**

      Defendants note that Plaintiffs correctly state that Davis submitted an August 11, 2010 Informal Resolution regarding his claim that he should be permitted to meet regularly with a spiritual advisor, but that the document was lost.  [<u>Id.</u> at 14 (citing Mem. in Opp., Davis Decl., Exhs. 1 & 9).]  Defendants emphasize, however, that the fact that Davis filed an Informal Resolution fails to show that he exhausted the grievance process, as he does not show that he filed a Formal Grievance and appealed any adverse decision to the Warden.  Defendants note that Davis was informed that the Informal Resolution was lost and instructed to resubmit it in a Memorandum dated August 27, 2010.  Davis's argument that he did not resubmit because Valenzuela told him he was abusing the system is belied by the fact that, after Valenzuela told him not to abuse the system, Valenzuela granted Davis an extension and instructed him to "please re-file on case #10-08-12 . . . As we discussed in the library office with Librarian Whatley as witness, I need you to file again.  The faster you re-file the quicker I can get to you a resolution." [<u>Id.</u> at 15-16 (quoting Mem. in Opp., Davis Decl., Exh. 9).] Similarly, Defendants argue that the statement by Hawai`i

20

Contract Monitor Kimura, dated August 25, 2010, that Davis "may go back to court to seek legal action" does not legally excuse him from exhausting. [Id. at 16-17.]

E. **Plaintiff Hughes**

Defendants accept as true Hughes's testimony that he timely delivered his August 2010 Informal Resolution form to the librarian for delivery to the Grievance Coordinator, and that the delayed filing was not attributable to Hughes. [Id. at 18.] Defendants argue, however, that the mere filing of an Informal Resolution, and Hughes's subsequent filing of a Formal Grievance, were not enough, as Hughes failed to file an appeal to the Warden from the denial of the Formal Grievance. [Id.]

F. **Plaintiffs Kaahu and Poaha's Spiritual Advisor Claims**

Defendants note that Plaintiffs' memorandum in opposition does not dispute the Motion with respect to the unexhausted spiritual advisor claims of Plaintiffs Kaahu and Poaha. [Id. at 19.]

**STANDARD**

The PLRA provides that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The United States Supreme Court has held that

exhaustion is mandatory, "regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741 (2001) (footnote and citation omitted); see also Jones v. Bock, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). The Supreme Court has also recognized that:

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).

Woodford v. Ngo, 548 U.S. 81, 90 (2006) (citation and quotation marks omitted).

Proper exhaustion means that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." Id. at 88. The Supreme Court has rejected, however, the notion that a prisoner's entire complaint must be dismissed if any one claim was not exhausted—the "total exhaustion" rule—concluding that only non-exhausted claims need to be dismissed. Jones, 549 U.S. at 223-224. In reaching that conclusion, the Supreme Court

22

emphasized that a prisoner's complaint must be reviewed claim by claim for exhaustion purposes.  Id. at 224.

## DISCUSSION

### I.   State Law Claims

Plaintiffs note that the PLRA, by its own terms, applies only to claims under federal law, and not to any state law claims.  See 42 U.S.C. § 1997e(a).  For purposes of the Motion only, Defendants do not disagree.  [Reply at 19.]  As such, the Court DENIES the Motion as to the following claims in the Second Amended Complaint: (1) Counts XI-XV under Article I, Section 5 of the Hawai`i Constitution; (2) Counts XVI-XX under Article I, Section 6 of the Hawai`i Constitution; (3) Counts XXI-XXVI under Article XII, Section 7 of the Hawai`i Constitution; and (4) Count XXVII of the Supplemental Complaint seeking relief for unlawful retaliation under Hawai`i law.

### II.   Plaintiff Davis

Defendants argue that Plaintiff Davis failed to exhaust his claim regarding the right to meet regularly with a spiritual advisor.  The Court agrees.  The record indicates that Davis submitted an Informal Resolution regarding his spiritual advisor claim on August 11, 2010, but that the document was lost.  [Mem. in Opp., Davis Decl., Exhs. 1 & 9.]  By memorandum dated August 27, 2010, Davis was informed that the Informal Resolution had been lost, and was instructed resubmit the Informal

Resolution.  [Id. Exh. 9.]  Specifically, Grievance Coordinator

Valenzuela granted Davis an extension to file his grievance and

instructed him to "please re-file . . . . The faster you re-file

the quicker I can get to you a resolution." [Id.]  Davis did

not, however, refile, nor did he file a Formal Grievance or

subsequent Warden appeal regarding his spiritual advisor claim.

The fact that Davis filed Formal Grievances and Warden appeals

concerning his other challenges (regarding Makahiki protocols and

registration as a Native Hawaiian Practitioner) undermines his

arguments that he did not believe he was required or permitted to

exhaust his administrative remedies as to his spiritual advisor

claim.  [See Davis Decl. at ¶ 16.]  The Court therefore GRANTS

the Motion as to Plaintiff Davis's spiritual advisor claim.

## III. **Plaintiff Hughes**

Defendants argue that Plaintiff Hughes similarly failed

to exhaust his spiritual advisor claim.  The Court agrees.

Hughes submitted an untimely Informal Resolution requesting

access to a spiritual advisor on September 7, 2010; the Informal

Resolution was filed 25 days after Hughes's Inmate Request Form

regarding the same issue, dated August 13, 2010.  [Motion,

Valenzuela Aff. at ¶ 50.]  Even taking as true Hughes's testimony

that he timely delivered the Informal Resolution form to the

librarian for delivery to the Grievance Coordinator, Hughes still

failed to exhaust the claim, as he never filed any Formal

24

Grievance or Warden appeal subsequent to the filing of his Informal Resolution.  As such, the Court GRANTS the Motion as to Plaintiff Hughes's spiritual advisor claim.

## IV.  Plaintiffs Kaahu and Poaha

Defendants argue that Plaintiffs Kaahu and Poaha likewise failed to exhaust their spiritual advisor claims. Plaintiffs do not dispute this in their memorandum in opposition. Because there is no evidence that Plaintiffs Kaahu and Poaha filed any grievances regarding access to a spiritual advisor, the Court GRANTS the Motion as to Plaintiffs Kaahu and Poaha's spiritual advisor claims.

## V.  Plaintiff Galdones

First, as to Plaintiff Galdones's claims for religious rights, Defendants argue that Plaintiff Galdones failed to exhaust the following claims: (1) congregation with other practitioners on a daily basis, (2) participation in certain Makahiki rituals and ceremonies, (3) access to sacred items, and (4) establishment of an outdoor altar.  Galdones filed religion-related grievances in 2009 and 2012.

On August 5, 2009, Galdones submitted Informal Resolution #09-08-10 regarding his requests to gather daily with other Native Hawaiian inmates, construct an altar and garden of Native Hawaiian plants, participate in Makahiki rituals and ceremonies, and access certain sacred items.  On August 7, 2009,

25

the Informal Resolution was denied, and Galdones was informed
that SCC already had a religious program in place that was
approved by the Hawaii Department of Public Safety.  [Valenzuela
Aff., Attachment P.]  As evidence that Galdones filed a
subsequent Formal Grievance after the denial of his Informal
Resolution, Plaintiffs point to pages from the SCC Informal
Resolution Tracking Sheet and Formal Grievance Tracking Sheet.
On the Informal Resolution Tracking Sheet, Informal Resolution
#09-08-10 is classified as "Religious" and "Unresolved," and
under the "Comments" section, "#0036-09" is listed.  [Mem. in
Opp., Manley Decl., Exh. N.]  This number is apparently referring
to Formal Grievance #0036-09, listed on the Formal Grievance
Tracking Sheet as submitted on August 11, 2009.  [Id.]  Formal
Grievance #0036-09 is listed as "Found not in favor" on the
Formal Grievance Tracking Sheet; however, neither party has
offered evidence of the actual denial of Galdones's 2009 Formal
Grievance.  Plaintiffs argue that Galdones was not required to
appeal to the Warden, as no evidence of a denial of the 2009
Formal Grievance exists.  The Court agrees that, absent proof
that Galdones was given notice that his 2009 Formal Grievance was
denied, he was not required to make any appeal to the Warden.  As
such, the Court DENIES the Motion as to Galdones's federal
religious claims contained in his 2009 grievances, namely, for
(1) congregation with other practitioners on a daily basis, (2)

26

participation in certain Makahiki rituals and ceremonies, (3) access to sacred items, and (4) establishment of an outdoor altar.

Galdones submitted Informal Resolution #12-06-13 in June 2012, grieving his inability to meet with a spiritual advisor and his lack of access to sacred items while in segregation.  [Valenzuela Aff., Attachment Q.]  He left segregation on June 21, 2012.  Plaintiffs argue that, because "Defendants' policies are silent as to whether Mr. Galdones was required to exhaust his claims relating to his ability to practice Native Hawaiian religion while he was in segregation once he had been released into general population," it was reasonable for Galdones to seek leave of the court to supplement the Complaint with his claims on July 5, 2012, prior to further exhausting his administrative remedies.  [Mem. in Opp. at 33.] Galdones did, however, submit a Formal Grievance and a Warden appeal subsequent to the denial of his Informal Grievance on July 5, 2012.  [Valenzuela Aff., Attachment Q.]  The Court is therefore unpersuaded by Galdones's argument that he did not believe administrative relief was still available to him once he was released back into general population.  Because Galdones failed to exhaust his administrative remedies prior to filing his motion for leave to supplement the complaint, the Court FINDS that Galdones failed to exhaust his administrative remedies as to

27

his claim in his 2012 grievance for access to a spiritual

advisor.  See Vaden v. Summerhill, 449 F.3d 1047, 1050 (9th Cir.

2006).  As such, the Court GRANTS the Motion as to Galdones's

spiritual advisor claim.

Second, as to Galdones's claims for retaliation,

Galdones filed a Formal Grievance (#072-12) on May 31, 2012.

[Valenzuela Aff., Attachment R.]  Plaintiffs do not contend that

Galdones filed an Informal Resolution or Warden appeal regarding

his claim for retaliation, but argue that he nevertheless made a

"good faith effort" to exhaust because of his filing of the

Formal Grievance, and his utilization of the disciplinary appeal

process.  [Mem. in Opp. at 29-30.]  Galdones's Formal Grievance,

while stating that he was "being harassed, discriminated against,

falsely and viciously accused, and confined to segregation for

sincerely exercising faith in [his] Native Hawaiian religious

beliefs," requested relief in the form of a reconsideration of

his disciplinary conviction, copies of the investigation report

and witness statements related to his disciplinary matter, and

dismissal and expungement of "all charges." [Valenzuela Aff.,

Attachment R.]  Because the relief sought was disciplinary in

nature, CCA officials rejected his Formal Grievance, noting that

disciplinary issues are non-grievable pursuant to the Grievance

Policy.  Because Galdones never filed an Informal Grievance,

Formal Grievance, or Warden appeal requesting some relief other

than reversal of his disciplinary conviction, the Court FINDS that he failed to exhaust his retaliation claim.  The Court thus GRANTS the Motion as to Galdones's retaliation claim.

## VI.  <u>Plaintiff Kane</u>

Defendants argue that Plaintiff Kane failed to exhaust his administrative remedies because he failed to appeal the September 29, 2009 denial of his Formal Grievance.  Kane filed both an Informal Grievance (#09-132) and Formal Grievance (#09-132) challenging the five religious claims at issue in the instant action in September of 2009.  [Kane Decl., Exhs. 5 & 6.] His Informal Grievance was denied and forwarded, per Kane's request, to Warden Stolc.  [Kane Decl., Exh. 5.]  His Formal Grievance was likewise denied on September 29, 2009.  On the same day, Warden Stolc rendered a decision on Kane's Informal Grievance, stating "I have attached the guidelines to be used for the observance of the Native Hawaiian Religion.  We will follow these guidelines as written."  [Kane Decl., Exh. 7.]  Plaintiffs contend that this decision constituted satisfaction of Kane's exhaustion requirement.  The Court agrees.  According to the RRCC grievance procedure, Kane's Informal Grievance was procedurally ineligible to be reviewed by the Warden until it had gone through the formal grievance process.  By nevertheless reviewing Kane's procedurally defective Informal Grievance, Warden Stolc bypassed the RRCC grievance procedure and issued Kane a decision on the

29

merits of his grievance. As such, the prison waived its right to raise an exhaustion defense as to Kane's grievance. <u>See Rodenhurst v. State of Hawai`i</u>, No. 08-00396 SOM-LEK, 2009 WL 2365433, at *5 n.6 (D. Hawai`i July 30, 2009) (noting that defendants waived their challenges to certain grievances based on technical defects where they nevertheless processed the technically defective grievances); <u>Bradley v. Williams</u>, No. 07-1870 HU, 2009 WL 198014, at *2 (D. Or. Jan. 23, 2009) ("[T]his court finds that defendants waived their right to reject plaintiff's grievance by responding to the defective grievance and then responding to both appeals of the grievance."); <u>Hammett v. Cofield</u>, 681 F.3d 945, 947 (8th Cir. 2012) ("PLRA's exhaustion requirement is satisfied if prison officials decide a procedurally flawed grievance on the merits."). The Court therefore DENIES the Motion as to all of Plaintiff Kane's claims.

## VII. <u>Plaintiff Keawe</u>

Defendants argue that Plaintiff Keawe failed to exhaust all five of the religious claims he seeks to assert in this action ((1) daily religious congregation, (2) Makahiki participation, (3) regular meetings with a spiritual advisor, (4) access to certain sacred items, and (5) establishment of an outdoor altar). In October 2008, Keawe submitted an Informal Grievance complaining that Native Hawaiians were "being denied consent and facilitation by RRCC staff to prepare for and execute

30

formal communal religious observances, feasts, and fund raisers for our Hawaiian cultural heritage.  This includes all recognized Hawaiian holidays such as Kamehameha Day, Prince Kuhio day, and Makahiki."  Keawe requested that RRCC "[p]ermit formal communal religious observances, feasts, and fund raisers."  [Keawe Decl., Exh. 1.]  In response to the Informal Grievance, the chaplain of RRCC, Christopher Aguirre, stated that "Inmate is agreeing to work through the chaplaincy to observe and participate in Hawaiian Religious activities."  [Id.]  Keawe then followed the grievance appeal through to Warden Stolc, listing the requested action on the Formal Grievance as "Hold Makahiki Opening Feast for Hawaiian RRCC population."  [Keawe Decl., Exh. 3.]  Warden Stolc denied the grievance on December 15, 2008, citing the State's guidelines for Native Hawaiian religious practice.  [Id.]  Plaintiffs argue that Keawe thus exhausted his administrative remedies for certain of his religious claims in 2008.

Defendants correctly note, however, that because the instant suit was filed on February 7, 2011, Hawaii's two-year statute of limitations governing 42 U.S.C. § 1983 renders Keawe's § 1983 claims untimely if related to his 2008 grievances.  See Linville v. State of Hawai`i, 874 F. Supp. 1095, 1104 (D. Hawai`i 1994).  Keawe thus cannot rely upon his 2008 grievances for exhaustion of his § 1983 claims.  Keawe's Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc, *et seq.*

("RLUIPA") claims, however, are subject to the four-year statute of limitations under 28 U.S.C. § 1658, as RLUIPA was enacted in 2000. See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382 (2004) (concluding that "a cause of action "aris[es] under an Act of Congress enacted" after December 1, 1990—and therefore is governed by § 1658's 4-year statute of limitations—if the plaintiff's claim against the defendant was made possible by a post-1990 enactment."); see also United States v. Maui County, 298 F. Supp. 2d 1010, 1012 (D. Hawai`i 2003). As such, the Court FINDS that Keawe exhausted his RLUIPA-based Makahiki claim.

As to Keawe's other claims, in August of 2010, Keawe submitted four inmate request forms requesting daily group outdoor gatherings for worship, items and services for the celebration of Makahiki, construction of an outdoor garden of Native Hawaiian plants and altar, regular meetings with a spiritual advisor, and access to sacred items. Most of Keawe's requests were denied, with reference made to existing guidelines and regulations related to the practice of the Native Hawaiian religion in RRCC. [Keawe Decl., Exhs. 5-9.] Keawe failed to further pursue or exhaust those claims that were denied.[10]

---

[10] On September 7, 2010, Keawe filed Informal Resolution #10-161 regarding religious observances for certain Hawaiian holidays but, after Chaplain Moore advised Keawe that RRCC recognized Kamehameha, Makahiki and Prince Kuhio Days and that special meals were served on those holidays, Keawe indicated by signing the form that the Informal Resolution was resolved on
(continued...)

Keawe was, however, told that he would be permitted to celebrate the opening and closing of the Makahiki season and to meet with the RRCC's Hawaiian Cultural advisor, Ka`iana Haili, in accordance with the RRCC guidelines, [Keawe Decl., Exhs. 6, 9,] and that his request for access to sacred items for ceremonial use (but not daily use) was granted.  [Keawe Decl., Exh. 8.] Plaintiffs argue that Keawe was not required to exhaust his spiritual advisor, Makahiki, and sacred items requests further because they were granted.  The Court agrees.  See Harvey v. Jordan, 605 F.3d 681, 686 (9th Cir. 2010) (finding that an inmate "exhausted the administrative process when prison officials purported to grant relief that resolved his due process grievance to his satisfaction."); Rodenhurst v. State of Hawai`i, No. 08-00396 SOM-LEK, 2009 WL 2365433, at *4 (D. Hawai`i July 30, 2009) ("No further administrative action is required of an inmate who is successful in a grievance proceeding.").  As such, the Motion is DENIED as to Keawe's spiritual advisor, Makahiki, and sacred items claims.  The Motion is GRANTED as to Keawe's claims for

---

[10](...continued)
September 13, 2010.  [Richey Aff., Attachment E.]  On November 11, 2010, however, Keawe submitted Formal Grievance #10-161 regarding communal religious services, including new requests, such as having an altar for prayer and a space to practice spiritual dance, language, arts and craft and Hawaiian studies. [Id.]  The Formal Grievance was resolved through a memorandum dated November 19, 2010, stating that inmates are given the opportunity to study the Native Hawaiian religion every week, and that certain holidays are observed pursuant to RRCC guidelines. [Id.]  Keawe did not appeal the Formal Grievance.

daily religious congregation and establishment of an outdoor altar.

## CONCLUSION

On the basis of the foregoing, Defendants' Motion to Dismiss for Failure to Exhaust, filed on December 31, 2012, is HEREBY GRANTED IN PART AND DENIED IN PART.  The Motion is GRANTED as to: (1) the claims for regular meetings with a spiritual advisor made by Plaintiffs Davis, Hughes, Kaahu, and Poaha; (2) Plaintiff Galdones's retaliation claims and claims for regular meetings with a spiritual advisor; and (3) Plaintiff Keawe's claims for daily religious congregation and establishment of an outdoor altar.  The Motion is DENIED as to: (1) the state law claims; (2) Plaintiff Galdones's claims for congregation with other practitioners on a daily basis, participation in certain Makahiki rituals and ceremonies, access to sacred items, and establishment of an outdoor altar; (3) Plaintiff Keawe's claims for participation in certain Makahiki rituals and ceremonies, regular meetings with a spiritual advisor, and access to sacred items; and (3) all of Plaintiff Kane's religious claims.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, April 11, 2013.



   /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

RICHARD KAPELA DAVIS, ET AL. V. NEIL ABERCROMBIE, ETC., ET AL;
CIVIL NO. 11-00144 LEK-BMK; ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO EXHAUST