IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RICHARD KAPELA DAVIS, MICHAEL )<br>HUGHES, DAMIEN KAAHU, ROBERT )<br>A. HOLBRON, JAMES KANE, III, )<br>ELLINGTON KEAWE, KALAI POAHA, )<br>TYRONE KAWAELANILUA`OLE )<br>NA`OKI GALDONES, )<br> )<br>       Plaintiffs, )<br> )<br>   vs. )<br> )<br>NEIL ABERCROMBIE, in his )<br>official capacity as the )<br>Governor of the State of )<br>Hawaii; TED SAKAI, in his )<br>official capacity as the )<br>Director of the Hawaii )<br>Department of Public Safety; )<br>CORRECTIONS CORPORATIONS OF )<br>AMERICA, )<br> )<br>      Defendants. )<br>_____ ) | CIVIL NO. 11-00144 LEK-BMK |

**ORDER GRANTING DEFENDANT NEIL ABERCROMBIE'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

On June 7, 2013, Defendant Neil Abercrombie, in his

official capacity as the Governor of the State of Hawai`i

("Defendant Abercrombie"),[1] filed his Motion for Judgment on the

Pleadings ("Motion").  [Dkt. no. 322.]  Plaintiffs Richard Kapela

Davis, Tyrone Galdones, Michael Hughes, Damien Kaahu, Robert A.

Holbron, James Kane, III, Ellington Keawe, and Kalani Poaha

---

[1] This Court will refer to Defendant Abercrombie, together
with Defendant Ted Sakai, in his official capacity as Director of
the Hawai`i Department of Public Safety ("Defendant Sakai" and
"DPS"), and Defendant Corrections Corporation of America ("CCA")
collectively as "Defendants."

(collectively "Plaintiffs") filed their Memorandum in Opposition on June 24, 2013, and Defendant Abercrombie filed his Reply on July 1, 2013.  [Dkt. nos. 338, 341.]  Pursuant to leave of Court, Plaintiffs filed a supplemental opposition to the Motion ("Supplemental Opposition") on July 15, 2013, and Defendant Abercrombie filed a response to the Supplemental Opposition ("Supplemental Response") on July 26, 2013.  [Dkt. nos. 350, 360.]  This matter came on for hearing on August 5, 2013. Appearing on behalf of Defendant Abercrombie were David Lewis, Esq., and April Luria, Esq., and appearing on behalf of Plaintiffs were Sharla Manley, Esq., and Alan Murakami, Esq. After careful consideration of the Motion, supporting and opposing memoranda, and the arguments of counsel, Defendant Abercrombie's Motion is HEREBY GRANTED for the reasons set forth below.

## BACKGROUND

Plaintiffs Davis, Hughes, Kaahu, Holbron, Kane, Keawe, and Poaha filed the Second Amended Complaint for Damages and for Classwide Declaratory and Injunctive Relief ("Second Amended Complaint") on August 22, 2012.  [Dkt. no. 145.]  Plaintiff Galdones also filed his Supplemental Complaint for Damages and for Classwide Declaratory and Injunctive Relief ("Supplemental Complaint") on August 22, 2012.  [Dkt. no. 146.]

Plaintiffs are all Hawai`i residents who were convicted and sentenced for violating Hawai`i law, and they are detained at either Saguaro Correctional Center ("Saguaro") or Red Rock Correctional Center ("Red Rock").  Each Plaintiff is of native Hawaiian ancestry and is a practitioner of the native Hawaiian religion.  Saguaro and Red Rock are private prisons in Arizona, operated by CCA.  The State of Hawai`i houses inmates at CCA's facilities pursuant to various contracts.  [Second Amended Complaint at ¶¶ 7-10, 12(c), 17-18; Supplemental Complaint at ¶¶ 7-10, 12(c), 17-18.]  In the instant case, Plaintiffs allege that, during each Plaintiff's incarceration at either Saguaro or Red Rock, Defendants have prohibited and/or are prohibiting him from exercising his constitutional and statutory right to practice his faith.

## I.    **Second Amended Complaint**

The Second Amended Complaint alleges the following claims:

- Violation of Plaintiffs' right to the free exercise of their religion pursuant to the First and Fourteenth Amendments of the United States Constitution as to daily worship practices ("Count I"), the observance of Makahiki[2] ("Count II"), access to sacred items ("Count III"), access to sacred space

_____

[2] "The Makahiki season is signaled by the rising of the Makali`i (Pleiades) Constellation in October-November of each year.  The Makahiki season ends by the setting of Makali`i (Pleiades) Constellation in February-March of each year." [Second Amended Complaint at ¶ 47.]  There are ceremonies, including customary and traditional activities, marking the beginning and the end of the Makahiki season.  [Id. at ¶ 48.]

3

("Count IV"), and access to a spiritual advisor ("Count V");

- Violation of Plaintiffs' equal protection rights pursuant to the Fourteenth Amendment of the United States Constitution as to daily worship practices ("Count VI"), the observance of Makahiki ("Count VII"), access to sacred items ("Count VIII"), access to sacred space ("Count IX"), and access to a spiritual advisor ("Count X");

- Violation of Plaintiffs' right to free exercise of their religion pursuant to Article I, § 4 of the Hawai`i State Constitution as to daily worship practices ("Count XI"), the observance of Makahiki ("Count XII"), access to sacred items ("Count XIII"), access to sacred space ("Count XIV"), and access to a spiritual advisor ("Count XV");

- Violation of Plaintiffs' equal protection rights pursuant to Article I, § 5 of the Hawai`i State Constitution as to daily worship practices ("Count XVI"), the observance of Makahiki ("Count XVII"), access to sacred items ("Count XVIII"), access to sacred space ("Count XIX"), and access to a spiritual advisor ("Count XX");

- Violation of Plaintiffs' rights relating to native Hawaiian customary and traditional practices pursuant to Article XII, § 7 of the Hawai`i State Constitution and Haw. Rev. Stat. § 1-1 as to the observance of Makahiki ("Count XXI");

- Violations of the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc, *et seq.* ("RLUIPA"), as to daily worship practices ("Count XXII"), the observance of Makahiki ("Count XXIII"), access to sacred items ("Count XXIV"), access to sacred space ("Count XXV"), and access to a spiritual advisor ("Count XXVI").

The Second Amended Complaint prays for the following relief:

- certification of the case as a class action, appointment of Plaintiffs as the class representatives, and appointment of class counsel;
- declaratory relief that Defendants violated Plaintiffs' and the class members' rights under: the Free Exercise Clauses of the First Amendment and the Hawai`i State Constitution; the Equal Protection Clauses of the Fourteenth Amendment and the Hawai`i State Constitution; Article XII, § 7 of the Hawai`i State Constitution and Haw. Rev. Stat. § 1-1; and RLUIPA;
- injunctive relief allowing Plaintiffs and the class members to gather once daily in observance of their native Hawaiian religion, participate in certain specific ceremonies critical to the annual Makahiki Season, use and maintain

customary and traditional objects and items, construct and access an outdoor sacred space, and meet a spiritual leader on a daily basis;

• injunctive relief requiring Defendants to develop a comprehensive plan and to promulgate policy guidelines allowing inmates to practice their native Hawaiian religion "on a regular and equal basis with all other religions represented at correctional facilities[;]" [id. at pgs. 128-29, ¶ 13;]

• the appointment of a special master to monitor Defendants' compliance with the relief ordered in this case;

• compensatory damages;

• reasonable attorneys' fees and costs, as authorized by statute; and

• any other appropriate relief.

## II.  **Supplemental Complaint**

The Supplemental Complaint states that Plaintiff Galdones "hereby joins in and asserts COUNTS I through XXVI of the Amended Complaint on his own behalf and on behalf of all those similarly situated." [Supplemental Complaint at ¶ 124.] The Supplemental Complaint also asserted an additional retaliation claim. [Id. at ¶¶ 125-37.]  The Supplemental Complaint contains the same prayers for relief as the Second Amended Complaint, but it also seeks declaratory relief, injunctive relief, damages, and other relief related to the retaliation claim. [Id. at pgs. 33-34, ¶¶ 17-23.]

This Court dismissed Galdones's retaliation claim for failure to exhaust his administrative remedies. [Order Granting in Part and Denying in Part Defendants' Motion to Dismiss for Failure to Exhaust, filed 4/11/13 (dkt. no. 286), at 28-29.] Thus, Plaintiff Galdones's only remaining claims are the same

5

claims that are asserted in the Second Amended Complaint.
Plaintiff Galdones, however, is not one of the named Plaintiffs
in the Second Amended Complaint, although he is within the
proposed Class and Segregation Subclass described in the Second
Amended Complaint. [Second Amended Complaint at ¶¶ 23-24.]

## I.   **Motion**

In the instant Motion, Defendant Abercrombie seeks
judgment on the pleadings as to all counts against him in the
Second Amended Complaint and the Supplemental Complaint. He also
argues that this Court should dismiss Plaintiffs' Article XII,
§ 7 claim as to all Defendants.

Defendant Abercrombie first points out that Plaintiffs
have only sued him in his official capacity, and neither a state
nor a state official sued in his official capacity is a "person"
for purposes of a 42 U.S.C. § 1983 claim for monetary damages.
[Mem. in Supp. of Motion at 4-5.] Defendant Abercrombie
therefore argues that this Court must grant judgment on the
pleadings as to all of Plaintiffs' § 1983 claims for monetary
damages against him.

Defendant Abercrombie acknowledges that state
officials, in their official capacity, are persons for purposes
of a § 1983 claim for prospective injunctive relief. Further, a
claim against a state official in his official capacity is
essentially a claim against the state itself. Respondeat

superior and vicarious liability do not apply to § 1983 claims. In order to establish § 1983 liability against a state official, a plaintiff must prove that the official is an agent of the state with regard to a state policy or custom that was the moving force behind the violation of the plaintiff's rights. [Id. at 5-6.]

Defendant Abercrombie argues that Plaintiffs failed to sufficiently plead their claims against him because Plaintiffs failed to present any factual allegations that, if proven, would support the legal conclusions in Plaintiffs' pleadings. [Id. at 6.] In particular, the Second Amended Complaint's allegations relate to CCA's policies, and Plaintiffs have not alleged that the Governor's Office was involved in developing or maintaining those policies. [Id. at 7; Second Amended Complaint at ¶¶ 198-207, 210-19.] Defendant Abercrombie asserts that the only alleged misconduct by the State is that it allegedly "engag[ed] in a 'widespread practice of illegally delegating all of their Constitutional and statutory responsibilities owed to Plaintiffs that permits its contractor, Defendant CCA, to authorize [decisions or policies harmful to prisoners].'" [Mem. in Supp. of Motion at 7 (some alterations in Mem. in Supp.) (quoting Second Amended Complaint at ¶ 198); id. at 8 (citing paragraphs in the Second Amended Complaint pleading similar allegations).]

Defendant Abercrombie argues that the allegedly illegal delegation is insufficient to establish a nexus between the

Governor's Office and CCA's actions.  Even assuming, *arguendo*, that DPS has oversight and monitoring responsibilities over CCA under Haw. Rev. Stat. § 353-16.2, Defendant Abercrombie asserts that his office is not involved in the oversight.  [Mem. in Supp. of Motion at 8-9.]  Defendant Abercrombie emphasizes that this district court has ruled that general oversight by the Governor's Office over state laws was not enough to render the Governor a proper defendant in an action seeking an injunction against the enforcement of a gun regulation.  [Id. at 9-10 (discussing Young v. Hawai`i, 548 F. Supp. 2d 1151 (D. Haw. 2008)).]  Defendant Abercrombie emphasizes that the Governor's Office has no role in the custody of Hawai`i prisoners.  Pursuant to Haw. Rev. Stat. § 353C-2, the director of DPS has sole authority over the custody of Hawai`i prisoners.  Plaintiffs themselves acknowledge that it was DPS that negotiated the incarceration agreement with CCA. According to Defendant Abercrombie, if this Court were to grant the injunctive relief that Plaintiffs seek, Defendant Abercrombie would not be the proper party to implement the relief.  [Id. at 10-11.]

        In a related argument, Defendant Abercrombie also asserts that Plaintiffs lack Article III standing to bring federal constitutional claims against him.  Defendant Abercrombie contends that the recent decision in Hartmann v. California Department of Corrections & Rehabilitation, 707 F.3d 1114, 1117

(9th Cir. 2013), is fatal to Plaintiffs' attempt to seek relief from him in this action.  [Id. at 12-14.]  He also argues that "[c]ases from across the country—particularly those applying Ninth Circuit law—recognize that RLUIPA cannot be invoked against a state governor who had no involvement in the challenged conduct."  [Id. at 15-16 (citing cases).]  Thus, Defendant Abercrombie argues that, even assuming *arguendo* that RLUIPA allows suits for monetary damages against a state government, Plaintiffs' RLUIPA claims for monetary, declaratory, and injunctive relief against him all fail.  [Id. at 16.]

Similarly, Defendant Abercrombie also argues that he is not a proper defendant in Plaintiffs' state constitutional and state statutory claims.  Hawai`i courts consider federal case law addressing issues arising under the United States Constitution to be analogous and persuasive when applying similar provisions of the state constitution.  Defendant Abercrombie argues that the principles articulated in Hartmann apply with equal force to the state constitutional and statutory claims in this case.  [Id. at 17-19.]

Finally, Defendant Abercrombie argues that this Court should dismiss Plaintiffs' claim under Article XII, § 7, which addresses traditional usage/gathering rights.  [Id. at 19-21.] Defendant Abercrombie argues that, under Hawai`i case law, Article XII, § 7 rights only apply to undeveloped land.  Allowing

9

the practice of customary and traditional native Hawaiian rights on fully developed land is inconsistent with "'our understanding of the traditional Hawaiian way of life in which cooperation and non-interference with the wellbeing of other residents were integral parts of the culture.'" [Id. at 20 (emphasis and some citations omitted) (quoting Pub. Access Shoreline Hawai`i v. Hawai`i Cnty. Planning Comm'n, 79 Hawai`i 425, 450, 903 P.2d 1246, 1271 (1995)).] Defendant Abercrombie asserts that Saguaro and Red Rock are "fully developed, private property owned by CCA and [are] located entirely outside of Hawaii in the State of Arizona[,]" and therefore Article XII, § 7 rights do not apply. [Id. at 21 (footnote omitted).]

Defendant Abercrombie argues that he is entitled to judgment on the pleadings, and he urges this Court to dismiss all claims against him. Further, he argues that this Court should dismiss Plaintiffs' Article XII, § 7 claim against all parties.

## II.  <u>Memorandum in Opposition</u>

Plaintiffs first argue that this Court should not consider the instant Motion because Defendant Abercrombie failed to raise his arguments in a timely manner. Plaintiffs assert that Defendant Abercrombie could have presented these arguments in: Defendants' March 23, 2011 motion to transfer venue; Defendants' oppositions to Plaintiffs' motions to amend the complaint, filed on September 14, 2011, June 15, 2012, July 5,

10

2012 (supplemental complaint), and July 31, 2012; and Defendants'
December 31, 2012 motion to dismiss for failure to exhaust
administrative remedies.  [Mem. in Opp. at 3-5.]  Plaintiffs
argue that Fed. R. Civ. P. 12(g)(2) precludes this type of
successive attack on a plaintiff's pleadings.  [Id. at 7-8.]  If
this Court is inclined to consider the Motion, Plaintiffs ask
this Court to give Defendants notice that this Court will deny
any further Fed. R. Civ. P. 12 motions.  [Id. at 10.]

       As to Defendant Abercrombie's argument that he is not a
person for purposes of § 1983 claims for damages, Plaintiffs
argue that Defendant Abercrombie waived his sovereign immunity by
removing this case to federal court.  [Id. at 10-11.]

       Plaintiffs also argue that they have sufficiently pled
a nexus between the deprivation of their rights and Defendant
Abercrombie's actions.  [Id. at 14-17.]  For example, the Second
Amended Complaint alleges that:

• Defendant Abercrombie "is responsible for the supervision and
     management of all state instrumentalities and employees
     charged with (a) executing the State of Hawaii's prison
     regulations and procedures; and (b) monitoring out-of-state
     public and private correctional facilities where Hawaii
     state inmates are serving their sentences[;]" [Second
     Amended Complaint at ¶ 13;]

• Defendant Abercrombie "must guarantee to those individuals the
     rights, privileges, or immunities secured by the Hawaii
     State Constitution, the United States Constitution and
     federal and state laws in a manner that is not inconsistent
     with their status as institutionalized persons, or with the
     legitimate penological objectives of the corrections
     system[;]" [id. at ¶ 16;]

- Defendant Abercrombie is responsible for the involuntary transfer of inmates to CCA facilities and, but for this "involuntary seizure" from Hawai`i, Plaintiffs would have continued to practice their native Hawaiian faith in Hawai`i; [id. at ¶¶ 18, 406;]

- Defendant Abercrombie is "enforcing an official policy, or in the alternative, engaging in a persistent widespread practice of illegally delegating all of [his] Constitutional and statutory responsibilities owed to Plaintiffs which permits [his] contractor, Defendant CCA to" violate Plaintiffs' rights; see, e.g., id. at ¶ 198;

- CCA's execution of discriminatory policies is a result of Defendant Abercrombie's actions or omissions; see, e.g., id. at ¶ 201; and

- Article XII, § 7 requires the State to protect "all rights, customarily and traditionally exercised for subsistence, cultural and religious purposes and possessed by ahupua`a tenants who are decedents of native Hawaiians who inhabited the Hawaiian Islands prior to 1778,[3] subject to the right of the State to regulate such rights" [id. at ¶ 402 (quoting Haw. Const. art. XII, § 7)].

---

[3] The Intermediate Court of Appeals has stated:

> As discussed in Kalipi [v. Hawaiian Trust Co.] and earlier cases, in ancient Hawai`i, the ahupua`a was a division of land that usually ran from the sea to the mountains, allowing a chief and his people access to the resources of both, as well as all lands in between.  The ahupua`a tenants were allowed to cultivate land in exchange for services to their chief or the King, and all benefitted from the shared access to undeveloped lands so that the items naturally found there could be used for subsistence and cultural purposes.

State v. Pratt ("Pratt I"), 124 Hawai`i 329, 343, 243 P.3d 289, 303 (Ct. App. 2010) (some citations omitted) (citing Kalipi v. Hawaiian Trust Co., 66 Haw. 1, 6–7, 656 P.2d 745, 748–49 (1982)), aff'd, State v. Pratt ("Pratt II"), 127 Hawai`i 206, 212, 277 P.3d 300, 306 (2012).

Plaintiffs therefore argue that they have suffered irreparable injury as a result of these violations by Defendant Abercrombie. [Mem. in Opp. at 19 (citing various paragraphs of the Second Amended Complaint)].

Plaintiffs contend that these allegations are not conclusory and that they sufficiently describe Defendant Abercrombie's role in the policies at issue in this case. Further, Defendant Abercrombie is an indispensable party because Plaintiffs ask this Court for an order requiring Defendant Abercrombie's office to abandon its unconstitutional and illegal policies regarding prisoners.  Plaintiffs therefore assert that their allegations against Defendant Abercrombie would survive a Fed. R. Civ. P. 12(b)(6) motion.  [Id. at 19-20.]

In addition, although the Motion claims that Defendant Abercrombie is not involved in the policies at issue in this case, Plaintiffs argue that Defendant Abercrombie's claim is contrary to "recent testimony from . . . [Defendant] SAKAI, his Mainland Branch Administrator Kimoto, and the Wardens of [Saguaro] and [Red Rock], all of whom assert that it was the State of Hawaii's continued policy and custom from 2008 to present dictating the scope of accommodations for Native Hawaiian practitioners at Hawaii's mainland prisons." [Id. at 21.] Plaintiffs acknowledge that a Fed. R. Civ. P. 12(c) motion only tests the pleadings, but they ask this Court to take judicial

13

notice of extrinsic evidence which Plaintiffs did not have when
they filed the Second Amended Complaint.  [Id.]

Plaintiffs ask this Court to take judicial notice of
the following:

1)   redacted excerpts of the transcript of the March 11, 2013
     deposition of Shari Kimoto, who Plaintiffs state is
     Defendant Abercrombie's Mainland Branch Administrator; [Mem.
     in Opp., Decl. of Andrew B. Sprenger ("Sprenger Decl."),
     Exh. 1;]

2)   a redacted memorandum dated July 17, 2008 to the warden of
     Saguaro from Kimoto, transmitting the "PSD Basic Makahiki
     Guidelines" - "the approved Department's basic guidelines
     for the Makahiki season to be implemented in both in-state
     and out-of-state facilities[;]" [id., Exh. 2 at 1;]

3)   a redacted e-mail dated August 4, 2009 from Kimoto to the
     wardens of Saguaro and Red Rock advising them that any
     native Hawaiian religious activities not addressed in the
     PSD Basic Makahiki Guidelines were not authorized; [id.,
     Exh. 3; Mem. in Opp. at 23;]

4)   redacted excerpts of the transcript of the May 7, 2013
     deposition of Defendant Sakai ("Sakai Transcript");
     [Sprenger Decl., Exh. 4;]

5)   redacted excerpts of the transcript of the April 5, 2013
     deposition of Todd Thomas, warden of Saguaro ("Thomas
     Transcript"); [id., Exh. 5;] and

6)   redacted excerpts of the transcript of the April 3, 2013
     deposition of Warden Stolc of Red Rock ("Stolc Transcript")
     [id., Exh. 6].

In particular, Plaintiffs ask this Court to take judicial notice
of the following facts: the PSD Makahiki Guidelines are still in
effect at Red Rock and Saguaro; Warden Thomas must obtain
Kimoto's approval before he makes any policy decisions regarding
the native Hawaiian religion; and Warden Stolc adopted the

positions of the PSD Makahiki Guidelines when deciding upon Plaintiffs' requests for religious accommodations.  [Mem. in Opp. at 23-24 (citing Sakai Trans. at 64-66; Thomas Trans. at 241-42; Stolc Trans. at 43, 72-77).]  Plaintiffs therefore argue that there is a genuine issue of material fact regarding whether Defendant Abercrombie's office participated in the decisions at issue in this case, as well as other genuine issues of material fact that preclude judgment on the pleadings.  [Id. at 24.]

Plaintiffs also argue that there is a genuine issue of material fact regarding whether the situs of the Article XII, § 7 claim is CCA's facilities in Arizona or Defendants' offices in Hawai`i.  [Id.]  According to Plaintiffs, the alleged constitutional and statutory violations occurred in Hawai`i:

> the State's development and enforcement of its
> out-of-state transfer policy; the State's failure
> to impose appropriate conditions to protect Native
> Hawaiian traditional and customary cultural and
> religious practices in its contract with Defendant
> CCA; the State's failure to monitor CCA's
> performance of that contract with regard to Native
> Hawaiian traditional and customary cultural and
> religious practices; and the State's so-called
> "Makahiki guidelines" which have been used to ban
> any traditional and customary practices not
> identified in that document.

[Id. at 24-25.]  In addition, the State negotiated its contract with CCA in Hawai`i, and formulated and issued the Makahiki guidelines in Hawai`i.  [Id. at 25.]

Further, Plaintiffs contend that there is a genuine issue of material fact as to whether Red Rock and Saguaro are

15

located on fully developed, private lands or public lands for purposes of the Article XII, § 7 analysis.  Plaintiffs assert that those facilities are instrumentalities of the State because they are publicly funded and they perform tasks and functions that are traditional and fundamental functions of the State. Plaintiffs also emphasize that the facilities take direction from State officials, and the State government refers to Saguaro and Red Rock as its "Mainland Facilities."  [Id. at 25-26 (citing Sprenger Decl., Exh. 9 (audit report) at 2, Exh. 10 (Honolulu Advertiser article)).]

As to Defendant Abercrombie's argument that Plaintiffs lack Article III standing to pursue claims against him, Plaintiffs concede that a governor's general supervisory powers over a state's department of corrections do not create a sufficient nexus to render the governor a proper defendant in a civil rights action challenging a corrections policy. Plaintiffs, however, argue that the cases following that general rule are distinguishable because Defendant Abercrombie: 1) "has purposefully availed himself and his office in acknowledging that his Department of Public Safety's continued policy of transferring a disproportionate number of Native Hawaiians to private prisons is wrong, and therefore must be corrected[;]" 2) carries out the transfer policy without sufficient oversight and safeguards; and 3) "has an affirmative and non-delegable duty

under the Hawaii Constitution to ensure that to preserve and protect the customary and traditional practices of Native Hawaiians even if they are inmates of the State." [Id. at 27-28.]  Plaintiffs also argue that "a governor is a necessary and indispensable party in matters which concern widespread prison reform and affects the entire state inmate population." [Id. at 28.]

Plaintiffs point to the fact that, when Defendant Abercrombie took office, he recognized the special relationship between the State and the native Hawaiian people, and he acknowledged the negative effects of the practice of transferring inmates out-of-state.  He has also stated publicly that the out-of-state transfer policy was contrary to Hawaii's basic values. [Id. at 29-30 (citing Sprenger Decl., Exh. 7 (excerpts of Defendant Abercrombie's New Day in Hawai`i Plan), Exh. 8 (Star Advertiser article)).]  In addition, the State Auditor's December 2010 report to the Governor and the Legislature, titled "Management Audit of the Department of Public Safety's Contracting for Prison Beds and Services" ("Audit"), states, inter alia, that: there were no written policies and procedures to regulate the care, custody, and confinement of Hawai`i inmates in out-of-state facilities; Kimoto failed to verify CCA's statements about its compliance with contract requirements; and there was no formal process to evaluate CCA's performance. [Id.

17

at 30-31 (citing Sprenger Decl., Exh. 9).]  Plaintiffs argue that Defendant Abercrombie's failure to act upon the Audit, Defendant Abercrombie's tender of his defense in this case to CCA's counsel, and Defendant Abercrombie's allowing DPS to renew the State's contract with CCA for another three years without any additional requirements constitute sufficient involvement in the contested policies to render Defendant Abercrombie a proper defendant in this action.  [Id. at 31-32.]

In the alternative, Plaintiffs argue that Article XII, § 7 imposes an affirmative duty on Defendant Abercrombie, and on the director of DPS, to protect and preserve the customary and traditional rights of the native Hawaiians.  [Id. at 33.] Plaintiffs emphasize that the Governor is responsible "'for the faithful execution of the laws.'"  [Id. (quoting Haw. Const. art. V, §§ 1, 5).]  Plaintiffs emphasize that the customary and traditional rights referenced in Article XII, § 7 include religious and cultural practices, and they urge the Court to reject Defendant Abercrombie's argument that the provision only protects gathering rights.  [Id. at 34.]

Further, Plaintiffs contend that this constitutional duty is non-delegable, and the duty applies even though Saguaro and Red Rock are in Arizona.  Plaintiffs reiterate that Defendant Abercrombie's actions, as well as the actions of other State officials, occurred in Hawai`i and deprived them of their rights.

Plaintiffs contend that, at the very least, there is a genuine issue of fact as to Defendant Abercrombie's obligations under Article XII, § 7, and therefore judgment on the pleadings is not appropriate in this case. [Id. at 35-36.]

Plaintiffs urge the Court to deny the Motion.  However, if the Court does find that any of their claims against Defendant Abercrombie are defective, Plaintiffs argue that the Court should grant leave to amend because judgment on the pleadings is disfavored, and the amendment of their claims against Defendant Abercrombie would not be futile.  [Id. at 37-39.]

## III. Reply

In his Reply, Defendant Abercrombie first argues that this Court should limit its consideration to the allegations of the pleadings, and this Court should not consider any of the exhibits submitted.  If this Court is inclined to consider exhibits, Defendant Abercrombie objects that Plaintiffs' Exhibits 7, 8, 9, and 10 lack foundation, are inadmissible hearsay, and violate Fed. R. Evid. 403.  Defendant Abercrombie also emphasizes that Plaintiffs have had ample opportunity to amend their complaint, and the deadline to amend pleadings was June 15, 2012. [Reply at 1 n.2, 13.]  Defendant Abercrombie also argues that this Court should reject Plaintiffs' argument that the previous motions should have incorporated his current arguments because all of those motions were post-pleading motions which did not

19

implicate Fed. R. Civ. P. 12(g) or (h).  Further, Rule 12 clearly states that a motion for judgment on the pleadings may be brought at any time.  [Id. at 4-5.]

As to Plaintiffs' arguments about the waiver of sovereign immunity, Defendant Abercrombie notes that the Motion itself did not raise any immunity issues because immunity issues are irrelevant to the question of whether Defendant Abercrombie, in his official capacity, is a "person" for purposes of § 1983. [Id. at 7-8.]  Defendant Abercrombie argues that this Court must dismiss the § 1983 claims for damages against him, and he requests an award of fees incurred in responding to this argument.  [Id. at 11-12.]

Defendant Abercrombie argues that Plaintiffs have only identified conclusory statements and legal theories about his alleged role in CCA's religious programming decisions.  If this Court accepts Plaintiffs' position, the governor could be a defendant in any civil rights action based upon the acts or policies of his subordinates or state contractors.  Defendant Abercrombie emphasizes that the Second Amended Complaint does not set forth any specific allegations of what he personally did with respect to the programming and policy decisions at issue in this case.  [Id. at 13-14.]  Defendant Abercrombie also asserts that Plaintiffs have not identified any state law or regulation allocating him "any specific role in combating religious

20

discrimination involving inmates." [Id. at 15.] Defendant Abercrombie argues that this Court must dismiss the § 1983 claims, RLUIPA claims, and "corresponding state law claims" against him because Plaintiffs' allegations regarding his involvement in the decisions at issue in this case are merely unsupported legal conclusions about his general oversight authority. [Id. at 15-16.]

If the Court is inclined to consider Plaintiffs' exhibits, Defendant Abercrombie argues that the exhibits do not show that his office was involved in the decisions giving rise to Plaintiffs' claims. [Id. at 16-20.]

Defendant Abercrombie also contends that Plaintiffs' "purposeful availment" argument is misplaced because that is part of the due process minimum contacts analysis. Defendant Abercrombie further argues that he has not availed himself of anything that would render him culpable for the decisions at issue in this case. At most, Plaintiffs have established that Defendant Abercrombie has expressed frustration with the mainland transfer of inmates and that the State Auditor has criticized the management of the contract facilities. Neither of these points addresses the alleged infringement of Plaintiffs' free exercise of their religion. [Id. at 20.]

Defendant Abercrombie argues that, to allege plausible constitutional claims against him, Plaintiffs must allege facts

that link him "to the adoption, regulation, and revision" of the allegedly discriminatory policies.  Defendant Abercrombie argues that Plaintiffs have not done so.  [Id. at 23 (citation and quotation marks omitted).]  Defendant Abercrombie also points out that Plaintiffs did not respond to his argument that they failed to establish a nexus to or his participation in the conduct giving rise to their RLUIPA claims.  [Id. at 24 n.12.]

In addition, Defendant Abercrombie argues that Plaintiffs lack Article III standing to pursue claims against him because his presence in this action is not necessary to their pursuit of injunctive relief.  This jurisdictional defect provides another basis for the dismissal of all claims against him.  [Id. at 24-25.]

Finally, Defendant Abercrombie asserts that Plaintiffs' claim that there are issues of fact as to whether Saguaro and Red Rock are public lands is frivolous.  The challenged practices occur in Arizona, where there is no history of the exercise of customary and traditional native Hawaiian rights on those lands, which are privately owned and fully developed.  Defendant Abercrombie contends that Plaintiffs are bound by their previous admissions in their Preliminary Statement of CCA's private ownership of the lands.  [Id. at 25-27.]  Defendant Abercrombie argues that accepting Plaintiffs' argument would illogically require Arizona courts and government offices "to recognize a

unique Hawaii Constitutional right and somehow harmonize native Hawaiian rights with Arizona statutes governing adverse possession, criminal trespass, prison escape, criminal damage and other laws." [Id. at 28 n.15.]  Defendant Abercrombie therefore urges this Court to dismiss Plaintiffs' Article XII, § 7 claim, in its entirety, with prejudice.  [Id. at 28.]

## IV.  Supplemental Filings

In their Supplemental Opposition, Plaintiffs deny they admitted that Saguaro and Red Rock are privately owned, and they argue that the Second Amended Complaint contains numerous allegations that the "actions and omissions of the Governor, and other state officials . . . caused . . . the formulation of the policy and practice of transferring prisoners out-of-state, and [the] negotiati[on of] a contract for their care and custody to a private contractor without imposing adequate safeguards to protect Native Hawaiian religious and cultural resources." [Suppl. Opp. at 3.]  Plaintiffs also argue that, even assuming that they did admit Saguaro and Red Rock are private, fully developed properties, this Court cannot consider Defendant Abercrombie's argument that the admission requires dismissal of the Article XII, § 7 claim because Defendant Abercrombie did not raise that argument in the Motion.  Further, Plaintiff argues that this Court must reject Defendant Abercrombie's argument because of admissions in Defendants' Answer to the Second Amended

Complaint that CCA is a governmental or a state actor as to the facts of this case.

In his Supplemental Response, Defendant Abercrombie argues that it is ultimately irrelevant whether CCA is a state actor based upon its contract to house Hawai`i inmates at Saguaro and Red Rock because Article XII, § 7 rights are exercised on native Hawaiians' ancestral lands and are not applicable to private, fully developed land used for prisons in Arizona.

### **STANDARD**

Federal Rule of Civil Procedure 12(c) permits parties to move for judgment on the pleadings.  "After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  The standard governing a Rule 12(c) motion for judgment on the pleadings is "functionally identical" to that governing a Rule 12(b)(6) motion.  United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1054 n.4 (9th Cir. 2011).  A court evaluating a Rule 12(c) motion must construe the factual allegations in the complaint in the light most favorable to the nonmoving party.  Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009).  "Judgment on the pleadings under Rule 12(c) is proper when the moving party establishes on the face of the pleadings that there is no material issue of fact and that the moving party is entitled to judgment as a matter of law."  Jensen Family

Farms, Inc. v. Monterey Bay Unified Air Pollution Control Dist.,
644 F.3d 934, 937 n.1 (9th Cir. 2011).

Courts have applied the Ashcroft v. Iqbal, 556 U.S. 662
(2009), standard for Fed. R. Civ. P. 12(b)(6) motions to Rule
12(c) motions.  See, e.g., Peelua v. Impac Funding Corp., Civil
No. 10-00090 JMS/KSC, 2011 WL 1042559, at *2 (D. Hawai`i Mar. 18,
2011) ("Following Iqbal, courts have applied Iqbal to Rule 12(c)
motions." (citations omitted)); Point Ruston, L.L.C. v. Pac. Nw.
Reg'l Council of the United Bhd. of Carpenters & Joiners of Am.,
658 F. Supp. 2d 1266, 1273 (W.D. Wash. 2009) ("The standard
applied on a Rule 12(c) motion is essentially the same as that
applied on a Rule 12(b)(6) motion[.]" (citation omitted)).  To
survive a motion to dismiss under Iqbal, "a complaint must
contain sufficient factual matter, accepted as true, to 'state a
claim to relief that is plausible on its face.'"  Iqbal, 556 U.S.
at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544,
570, 127 S. Ct. 1955 (2007)).  "[T]he tenet that a court must
accept as true all of the allegations contained in a complaint is
inapplicable to legal conclusions."  Id.  Accordingly,
"[t]hreadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice."  Id.
(citing Twombly, 550 U.S. at 555, 127 S. Ct. 1955).  Rather, "[a]
claim has facial plausibility when the plaintiff pleads factual
content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." <u>Id.</u>
(citing <u>Twombly</u>, 550 U.S. at 556, 127 S. Ct. 1955).  Factual
allegations that only permit the court to infer "the mere
possibility of misconduct" do not constitute a short and plain
statement of the claim showing that the pleader is entitled to
relief as required by Fed. R. Civ. P. 8(a)(2).  <u>Id.</u> at 679.

        "Dismissal without leave to amend is improper unless it
is clear that the complaint could not be saved by any amendment."
<u>Harris v. Amgen, Inc.</u>, 573 F.3d 728, 737 (9th Cir. 2009)
(citation and quotation marks omitted).  "But courts have
discretion to deny leave to amend a complaint for futility[.]"
<u>Johnson v. American Airlines, Inc.</u>, 834 F.2d 721, 724 (9th Cir.
1987) (citation and quotation marks omitted).

<b><u>DISCUSSION</u></b>

I.   <b><u>Preliminary Rulings</u></b>

        At the outset, this Court rejects Plaintiffs' argument
that the instant Motion is an improper successive motion,
prohibited by Fed. R. Civ. P. 12(g)(2).  A motion for judgment on
the pleadings does not need to be filed before filing a
responsive complaint.  <u>See</u> Fed. R. Civ. P. 12(c).  Further, a
motion for judgment on the pleadings is "[o]ne of the exceptions
to which Rule 12(g)(2) does not apply[.]"  <u>Shein v. Canon U.S.A.,
Inc.</u>, No. CV 08-07323 CAS (Ex), 2009 WL 3109721, at *6 n.9 (C.D.
Cal. Sept. 22, 2009) (citing Fed. R. Civ. Proc. 12(h)(2)(B)).

This Court also denies Plaintiffs' request for this Court to issue a cautionary instruction to Defendants that this Court will deny any further Fed. R. Civ. P. 12 motions.  Should Defendants bring any further Rule 12 motions, the Court will rule upon the motions on a case-by-case basis.

As to the exhibits submitted with Plaintiffs' Memorandum in Opposition and with Defendant Abercrombie's Reply, this Court declines to consider them because this Court finds that converting the instant Motion into a motion for summary judgment is not warranted in this case.  See Graham v. Orozco, No. CV 10-4618-RGK (E), 2012 WL 1813390, at *2 (C.D. Cal. May 17, 2012) ("As a general rule, the Court may not consider material beyond the pleadings without converting the motion to a motion for summary judgment." (citing Fed. R. Civ. P. 12(c); Heliotrope General, Inc. v. Ford Motor Co., 189 F.3d 971, 979-80 (9th Cir. 1999); Qwest Communications Corp. v. City of Berkeley, 208 F.R.D. 288, 291 (N.D. Cal. 2002))).  In addition, the materials in the exhibits are not properly subject to judicial notice.  Id. (stating that, in ruling on a motion for judgment on the pleadings, a court "may consider matters properly the subject of judicial notice" (citing United States v. 14.02 Acres of Land More or Less in Fresno County, 547 F.3d 943, 955 (9th Cir. 2008))).

27

This Court now turns to the merits of Defendant Abercrombie's Motion.

## II.  Claims Against Defendant Abercrombie

Plaintiffs allege: twenty claims under 42 U.S.C. § 1983 for violation of their civil rights under the United States Constitution and under the Hawai`i State Constitution; a claim alleging violations of Article XII, § 7 of the Hawai`i State Constitution and Haw. Rev. Stat. § 1-1;[4] and five claims for RLUIPA violations.

### A.  Section 1983 Claims

It is well settled that a state official sued in his official capacity is not a "person" for purposes of a § 1983 action seeking monetary damages.  See, e.g., Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).

#### 1.  Sovereign Immunity and the Definition of "Person"

This district court has recognized:

> As stated by the United States Supreme Court in Will v. Michigan Dep't of State Police, Congress did not abrogate the States' Eleventh Amendment immunity when enacting 42 U.S.C. § 1983:
>
>> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil

---

[4] This Court will address Defendant Abercrombie's argument that this Court should dismiss Count XXI, Plaintiffs' claim regarding Article XII, § 7 and Haw. Rev. Stat. § 1-1, in its entirety, *supra* Discussion section III.

> liberties . . . .

> > Will v. Michigan Dep't of State Police, 491 U.S. 58, at 65–66 (1989).

> > Agencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court. In re Pegasus Gold Corp., 394 F.3d 1189, 1195 (9th Cir. 2005). A state agency or an official acting in her official capacity, except where sued for prospective injunctive relief, is not a "person" for purposes of liability under § 1983. Id.

Oyama v. Univ. of Hawai`i, Civ. No. 12–00137 HG–BMK, 2013 WL 1767710, at *6 (D. Hawai`i Apr. 23, 2013) (alteration in Oyama) (some citations omitted).

Plaintiffs acknowledge that this is the general rule, but they argue that the general rule does not apply because Defendants waived their sovereign immunity by removing this action from state court.  Although Plaintiffs are correct that removal waives a state defendant's sovereign immunity, this district court has recognized that "'such waiver does not make a state or its agencies "persons" under § 1983.'"  Honokaia `Ohana v. Park, Civ. No. 09–00395 ACK–LEK, 2010 WL 4273083, at *10 (D. Hawai`i Oct. 25, 2010) (quoting Lutz v. Delano Union Sch. Dist., No. 1:08 CV 01787 OWW DLB, 2009 WL 2525760, at *7 n.3 (E.D. Cal. Aug. 7, 2009)) (citing Itagaki v. Frank, Civil No. 09–00110 SOM/LEK, 2010 WL 2640110, at *3–5 (D. Hawai`i June 29, 2010)); see also Itagaki, 2010 WL 2640110, at *4 ("The scope of liability under § 1983 and the scope of the Eleventh Amendment are

29

'separate issues,' even if closely related." (quoting <u>Will</u>, 491 U.S. at 64)).

Thus, Defendants' waiver of their sovereign immunity through the removal of this action from state court does not preclude Defendant Abercrombie from arguing that he is not a "person" for purposes of § 1983.  This Court concludes that Defendant Abercrombie, as a state official sued in his official capacity, is not a "person" for purposes of § 1983, and therefore Plaintiffs cannot obtain damages or retrospective injunctive relief against him.  This Court GRANTS Defendant Abercrombie's Motion as to Plaintiffs' § 1983 claims for damages and retrospective injunctive relief against Defendant Abercrombie. Insofar as it would be futile to amend those claims, they are DISMISSED WITH PREJUDICE.

### 2. <u>Prospective Relief</u>

As noted, *supra*, a state official, sued in his official capacity for prospective declaratory or injunctive relief is a "person" for purposes of § 1983 because "official-capacity actions for prospective relief are not treated as actions against the State." <u>Will</u>, 492 U.S. at 71 n.10.  Defendant Abercrombie acknowledges that he may be sued under § 1983 for prospective injunctive relief, but he argues that he is not the proper defendant in light of the type of injunctive relief that Plaintiffs seek.

30

The Ninth Circuit has recognized that the proper state defendant in a § 1983 action seeking prospective injunctive relief is the one who "would be responsible for ensuring that injunctive relief was carried out, even if he was not personally involved in the decision giving rise to [the plaintiff's] claims." Pouncil v. Tilton, 704 F.3d 568, 576 (9th Cir. 2012) (citing Gonzalez v. Feinerman, 663 F.3d 311, 315 (7th Cir. 2011) (the prison warden was the proper defendant for a claim of injunctive relief, notwithstanding his lack of personal involvement in the challenged conduct, because he would be responsible for ensuring that the injunctive relief was carried out)), petition for cert. filed, 81 U.S.L.W. 3643 (Apr. 25, 2013); see also Hartmann v. Cal. Dep't of Corr. & Rehab., 707 F.3d 1114, 1127 (9th Cir. 2013) (holding that official who the defendants admitted was "the 'most appropriate' defendant to execute court-ordered injunctive relief" and the official who "would have the authority to ensure execution of any order issued" were "proper official-capacity defendants for Plaintiffs' Establishment Clause claim").

Haw. Rev. Stat. § 353C-2 sets forth the powers and duties of the director of DPS and states, in pertinent part:

> [(a)]    **The director of public safety** shall administer the public safety programs of the department of public safety and **shall be responsible for the formulation and implementation of state goals and objectives for correctional and law enforcement programs, including ensuring that**

**correctional facilities and correctional services meet the present and future needs of persons committed to the correctional facilities.** In the administration of these programs, the director may:

. . . .

(2) Train, equip, maintain, and supervise the force of public safety officers, including law enforcement and correctional personnel, and other employees of the department;

. . . .

(4) Perform other duties as may be required by law;

(5) Adopt, pursuant to chapter 91, rules that are necessary or desirable for the administration of public safety programs; and

(6) Enter into contracts in behalf of the department and take all actions deemed necessary and appropriate for the proper and efficient administration of the department.

(Emphasis added.) In addition, it is the director of DPS who has the authority to "effect the transfer of a committed felon to any correctional institution located in another state . . . ." Haw. Rev. Stat. § 353-16.2(a); Haw. Rev. Stat. § 353-1. Thus, if Plaintiffs prevail in this case, it is Defendant Sakai (as DPS director) who has the statutory authority to execute the requested injunctive relief and to remedy any violations identified in any declaratory relief.

Plaintiffs essentially rely on Defendant Abercrombie's general oversight duties over state matters. This is

32

insufficient to render him subject to suit for the prospective

declaratory and injunctive relief Plaintiffs seek here.   In <u>Young</u>

<u>v. Hawaii</u>, where the plaintiff sought to enjoin the enforcement

of Haw. Rev. Stat. Chapter 134, this district court ruled that it

lacked jurisdiction over the claims against the Governor and the

State Attorney General of Hawai`i because:

> Allegations of general oversight of State laws are
> insufficient to establish the required nexus
> between the State officials, the Governor and the
> Attorney General, and the alleged violation of
> Plaintiff's civil rights through the enforcement
> of HRS Chapter 134.  A state official's connection
> to the enforcement of the statutes "must be fairly
> direct, a generalized duty to enforce state law or
> general supervisory power over the persons
> responsible for enforcing the challenged provision
> will not subject an official to suit." <u>Los</u>
> <u>Angeles County Bar Ass'n v. Eu</u>, 979 F.2d 697, 704
> (9th Cir. 1992).

548 F. Supp. 2d 1151, 1164 (D. Hawai`i 2008), *overruled on other*

*grounds by* <u>Dist. of Columbia v. Heller</u>, 554 U.S. 570 (2008).

Plaintiffs have not alleged any direct involvement by Defendant

Abercrombie in the decisions at issue in this case or direct

responsibility to implement any injunctive relief or to act upon

any declaratory relief awarded in this case.

      Based on the foregoing, this Court concludes that

Defendant Abercrombie is not the proper defendant for Plaintiffs'

claims seeking prospective declaratory and injunctive relief.

Further, in light of the fact that Defendant Sakai is the proper

defendant for those claims, and Plaintiffs have already had

33

multiple opportunities to amend their complaint, this Court

concludes that allowing Plaintiffs to amend their claims for

prospective declaratory and injunctive relief against Defendant

Abercrombie would be futile.  This Court therefore GRANTS

Defendant Abercrombie's Motion as to Plaintiffs' § 1983 claims

for prospective declaratory and injunctive relief against him.

Those claims are DISMISSED WITH PREJUDICE.[5]

###     B.    **RLUIPA Claims**

Under RLUIPA, "[a] person may assert a violation of

this chapter as a claim . . . in a judicial proceeding and obtain

appropriate relief against a government."  42 U.S.C. § 2000cc(a).

The general rules of Article III standing apply to RLUIPA claims.

Id.  Defendant Abercrombie argues that he is entitled to judgment

on the pleadings as to Plaintiffs' RLUIPA claims because

Plaintiffs lack Article III standing to pursue those claims

and/or because the claims are meritless.

The Ninth Circuit's analysis in Hartmann of the

plaintiffs' standing to bring a § 1983 claim for First Amendment

- Establishment Clause violations applies to the analysis of

Plaintiffs' standing to bring the RLUIPA claims in the instant

case.  In Hartmann, the district court dismissed the claims

---

[5] Insofar as this Court has dismissed all of Plaintiffs'
§ 1983 claims, this Court need not address Defendant
Abercrombie's separate, but related, argument that Plaintiffs
lack Article III standing to pursue their § 1983 claims.

against the five California State Personnel Board members, in

their official capacities ("SPB Members") because the plaintiffs

"did not allege a causal connection between the SPB Members and a

constitutional or statutory violation."  707 F.3d at 1127.  In

affirming the district court's ruling, the Ninth Circuit stated:

> Article III requires a plaintiff asserting
> claims in federal court to have suffered an
> "injury in fact" that is fairly traceable to the
> conduct of a named defendant and that will be
> "likely" "redressed by a favorable decision."
> Lujan v. Defenders of Wildlife, 504 U.S. 555,
> 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992).
>
> . . . .
>
> . . . EEOC v. Peabody Western Coal Co., 400
> F.3d 774 (9th Cir. 2005), [is] a narrow exception
> to the causation and traceability requirements of
> Article III standing.  See Lujan, 504 U.S. at
> 560-61, 112 S. Ct. 2130.  In Peabody, this court
> considered whether the Navajo Nation was a
> necessary party to an EEOC action brought against
> Peabody under Title VII, 42 U.S.C. § 2000e-2(a)(1)
> (2012), challenging discriminatory hiring
> provisions in coal-mining leases executed between
> Peabody and the Navajo Nation.  Id. at 776.  The
> Peabody court held that, although the EEOC had no
> cause of action against the Navajo Nation, it was
> a necessary party under [Federal] Rule [of Civil
> Procedure] 19(a) because to hold otherwise would
> permit the Navajo Nation to collaterally attack
> any injunctive relief ordered by the court.  Id.
> at 780.  This court clarified its holding in
> Peabody during a subsequent appeal from the
> district court's grant of summary judgment.  EEOC
> v. Peabody W. Coal Co., 610 F.3d 1070 (9th Cir.
> 2010).  There, we stated that "[a]n absentee can
> be joined under Rule 19 in order to subject it,
> under principles of res judicata, to the 'minor
> and ancillary' effects of a judgment."  Id. at
> 1079 (citing Gen. Bldg. Contractors Ass'n, Inc. v.
> Pennsylvania, 458 U.S. 375, 399, 102 S. Ct. 3141,
> 73 L. Ed. 2d 835 (1982)).

> The case at bar is distinguishable.  Unlike
> in <u>Peabody</u>, there is no concern that the SPB
> Members will collaterally attack court-ordered
> relief.  Further, Plaintiffs argue myopically that
> if the court orders the [California Department of
> Corrections and Rehabilitation ("CDCR")] to create
> a paid full-time Wiccan chaplain position, the SPB
> Members would first be required to approve the
> proposed civil service position.  This argument
> elides the court's ability to impose alternative
> remedies, such as requiring Cate or Lattimore[6]
> to procure a personal services contract with a
> Wiccan chaplain.  Adoption of Plaintiffs' argument
> would also establish the broad precedent that any
> entity or individual participating in a
> court-ordered remedy constitutes a necessary
> party.  This court is satisfied that Cate and
> Lattimore could and would sufficiently execute any
> court-ordered relief.
>
> Because Plaintiffs lack Article III standing
> with respect to the SPB Members, we affirm their
> dismissal from this action.

<u>Id.</u> at 1128 (some alterations in <u>Hartmann</u>).

Similarly, in the instant case, Plaintiffs have not
alleged a causal connection between Defendant Abercrombie's
actions or omissions and the alleged RLUIPA violations.  Further,
Plaintiffs have not alleged any facts which would suggest that
Defendant Abercrombie might collaterally attack any relief
ordered in this case, and Plaintiffs have also named Defendant
Sakai, the state official who would have the authority to execute
any court-ordered relief in this case.  This Court therefore
concludes that Plaintiffs lack the Article III standing necessary

---

[6] Matthew Cate was the CDCR Secretary, and Mary Lattimore
was the warden of the facility where one of the plaintiffs was
incarcerated.  <u>Hartmann</u>, 707 F.3d at 1119.

to bring their RLUIPA claims against Defendant Abercrombie.
Under the circumstances of this case, including the multiple
opportunities to amend their complaint, allowing Plaintiffs to
amend their RLUIPA claims against Defendant Abercrombie would be
futile.  This Court therefore GRANTS Defendant Abercrombie's
Motion as to Plaintiffs' RLUIPA claims against him.  Those claims
are DISMISSED WITH PREJUDICE.

## III. <u>Customary and Traditional Native Hawaiian Practices</u>

Count XXI of the Second Amended Complaint alleges that
Defendants' restrictions of Plaintiffs' observance of the
Makahiki season constitute violations of Article XII, § 7 of the
Hawai`i Constitution and Haw. Rev. Stat. § 1-1.

Article XII, § 7 states: "The State reaffirms and shall
protect all rights, customarily and traditionally exercised for
subsistence, cultural and religious purposes and possessed by
ahupua`a tenants who are descendants of native Hawaiians who
inhabited the Hawaiian Islands prior to 1778, subject to the
right of the State to regulate such rights."

Haw. Rev. Stat. § 1-1 states:

> The common law of England, as ascertained by
> English and American decisions, is declared to be
> the common law of the State of Hawaii in all
> cases, except as otherwise expressly provided by
> the Constitution or laws of the United States, or
> by the laws of the State, or fixed by Hawaiian
> judicial precedent, or established by Hawaiian
> usage; provided that no person shall be subject to
> criminal proceedings except as provided by the
> written laws of the United States or of the State.

The Hawai`i Supreme Court has recognized that "[c]ustomary and traditional rights in these islands flow from native Hawaiians' pre-existing sovereignty. . . . and were not abolished by their inclusion within the territorial bounds of the United States." Pub. Access Shoreline Hawai`i v. Hawai`i Cnty. Planning Comm'n ("PASH"), 79 Hawai`i 425, 449, 903 P.2d 1246, 1270 (1995) (citations omitted).

The Hawai`i Supreme Court has also stated that Article XII, § 7

> places an affirmative duty on the State and its agencies to preserve and protect traditional and customary native Hawaiian rights, and confers upon the State and its agencies "the power to protect these rights and to prevent any interference with the exercise of these rights." Stand. Comm. Rep. No. 57, in 1 Proceedings of the Constitutional Convention of 1978, at 639 (1980). See also PASH, 79 Hawai`i at 437, 903 P.2d at 1258; HRS §§ 1-1 and 7-1 (providing two additional sources from which gathering rights are derived).[7] Article

---

[7] Although Plaintiffs do not allege a violation of any rights pursuant to Haw. Rev. Stat. § 7-1, the terms of § 7-1 are important to the understanding of Hawai`i case law applying Article XII, § 7 and Haw. Rev. Stat. § 1-1. Section 7-1 states:

> Where the landlords have obtained, or may hereafter obtain, allodial titles to their lands, the people on each of their lands shall not be deprived of the right to take firewood, house-timber, aho cord, thatch, or ki leaf, from the land on which they live, for their own private use, but they shall not have a right to take such articles to sell for profit. The people shall also have a right to drinking water, and running water, and the right of way. The springs of water, running water, and roads shall be free to
> (continued...)

> XII, section 7's mandate grew out of a desire to
> "preserve the small remaining vestiges of a
> quickly disappearing culture [by providing] a
> legal means by constitutional amendment to
> recognize and reaffirm native Hawaiian rights."
> Stand. Comm. Rep. No. 57, in 1 Proceedings of the
> Constitutional Convention of 1978, at 640.  The
> Committee on Hawaiian Affairs, in adding what is
> now article XII, section 7, also recognized that
> "[s]ustenance, religious and cultural practices of
> native Hawaiians are an integral part of their
> culture, tradition and heritage, with such
> practices forming the basis of Hawaiian identity
> and value systems."  Comm. Whole Rep. No. 12, in 1
> Proceedings of the Constitutional Convention of
> 1978, at 1016.
>
> In the judicial decisions following its
> enactment, this court reemphasized that "the
> reasonable exercise of ancient Hawaiian usage is
> entitled to protection under article XII, section
> 7."  See PASH, 79 Hawai`i at 442, 903 P.2d at
> 1263.  See also Kalipi v. Hawaiian Trust Co.,
> Ltd., 66 Haw. 1, 656 P.2d 745 (1982) (recognizing
> Hawai`i's constitutional mandate to protect
> traditional and customary native Hawaiian rights);
> Pele Defense Fund [v. Paty], 73 Haw. [578,] 620,
> 837 P.2d [1247,] 1272 [(1992)] (reaffirming the
> "rudiments of native Hawaiian rights protected by
> article XII, § 7" of the Hawai`i Constitution).

Ka Pa`akai O Ka`Aina v. Land Use Comm'n, State of Hawai`i, 94

Hawai`i 31, 45-46, 7 P.3d 1068, 1082-83 (2000) (some alterations

in Ka Pa`akai) (footnotes omitted).

Whether a person's exercise of native Hawaiian rights

is constitutionally protected is an issue of law.  See Pratt II,

---

[7](...continued)
> all, on all lands granted in fee simple; provided
> that this shall not be applicable to wells and
> watercourses, which individuals have made for
> their own use.

127 Hawai`i 206, 212, 277 P.3d 300, 306 (2012).  In <u>Pratt II</u>, the

Hawai`i Supreme Court stated:

> In . . . <u>State v. Hanapi</u>, 89 Hawai`i 177, 970 P.2d
> 485 (1998), we held that a criminal defendant
> asserting [the legal privilege for native
> Hawaiians to engage in customary or traditional
> native Hawaiian practices when such practices
> conflict with State statutes or regulations] as a
> defense to criminal charges must satisfy, "at
> minimum", the following three-prong test: (1) the
> defendant must be "native Hawaiian" according to
> the criteria established in <u>PASH</u>, (2) the claimed
> right must be "constitutionally protected as a
> customary or traditional native Hawaiian
> practice," and (3) the conduct must occur on
> undeveloped property.  <u>Id.</u> at 185-86, 970 P.2d at
> 493-94.  In that case, we held that Hanapi had not
> satisfied this test, so the court's analysis
> stopped there.  <u>Id.</u> at 187, 970 P.2d at 495.

<u>Id.</u> at 207, 277 P.3d at 301 (footnote omitted).[8]  <u>Pratt II</u> took

the <u>Hanapi</u> analysis one step further, articulating "the analysis

the courts must undertake when a defendant has made the 'minimum'

showing from <u>Hanapi</u>."  <u>Id.</u>  If a defendant satisfies the three-

part <u>Hanapi</u> test, the court must balance the defendant's and the

state's competing interests under the totality of the

circumstances.  <u>Id.</u> at 213-18, 277 P.3d at 307-12.  The Hawai`i

Supreme Court also emphasized that

> the constitutional protection is not absolute; it
> only protects the "reasonable" exercise of native

---

[8] Although <u>Pratt</u> and <u>Hanapi</u> involved Article XII, § 7 as a
defense to criminal prosecution, the analysis also applies in
civil cases, as evidenced by the fact that <u>Hanapi</u> articulated the
three-factor test based on the Hawai`i Supreme Court's analysis
in <u>PASH</u>, which was not a criminal case.  <u>See Hanapi</u>, 89 Hawai`i
at 186-87, 970 P.2d at 494-95.

> Hawaiian rights. [PASH, 79 Hawai`i] at 442, 903
> P.2d at 1263. Then, the court pointed out that
> the constitution gives the State the "power to
> regulate the exercise of customarily and
> traditionally exercised Hawaiian rights," and that
> the same provision obligates the State to protect
> the exercise of those rights "to the extent
> feasible." Id. at 450 n.43, 903 P.2d at 1271
> n.43.

Id. at 215, 277 P.3d at 309.

In the instant case, Plaintiffs are native Hawaiians

who declare the native Hawaiian religion as their faith.[9]

[Second Amended Complaint at ¶¶ 8, 12(c).] Plaintiffs allege

that Defendants have prevented, and are preventing, them from

engaging in certain practices that are critical to the tenets of

the native Hawaiian religion. Count XXI alleges that religious

practices at issue are also protected by Article XII, § 7 and

§ 1-1. In order for Count XXI to survive Defendant Abercrombie's

Motion, the Second Amended Complaint must have alleged sufficient

facts to allow this Court to draw the reasonable inference that:

Plaintiffs' activities are customary and traditional native

Hawaiian practices protected by Article XII, § 7 and § 1-1; and

Plaintiffs have a protected right to engage in those activities

at Saguaro and Red Rock.

---

[9] "PASH defines 'native Hawaiians' as 'descendants of native
Hawaiians who inhabited the islands prior to 1778[.]'" Pratt II,
127 Hawai`i at 207, 277 P.3d at 301 (alteration in Pratt II)
(quoting PASH, 79 Hawai`i 425, 449, 903 P.2d 1246, 1270 (1995)).

In the instant case, Plaintiffs argue that there is a genuine dispute of material fact as to whether Saguaro and Red Rock are developed private lands or should be deemed undeveloped, or less than fully developed, public lands.  Defendant Abercrombie argues that the prisons are private, developed property, and, moreover, the right to continue customary and traditional native Hawaiian practices is associated with a native Hawaiian's ahupua`a of familial residence.  Thus, Defendant Abercrombie argues that Article XII, § 7 and § 1-1 do not provide Plaintiffs with the right to continue customary and traditional native Hawaiian practices at Saguaro and Red Rock.

With regard to what is considered undeveloped or less than fully developed public land, the Hawai`i Supreme Court has stated:

> we hold that if property is deemed "fully developed," i.e., lands zoned and used for residential purposes with existing dwellings, improvements, and infrastructure, it is **always** "inconsistent" to permit the practice of traditional and customary native Hawaiian rights on such property.  In accordance with PASH, however, we reserve the question as to the status of native Hawaiian rights on property that is "less than fully developed." [79 Hawai`i] at 450, 903 P.2d at 1271.

Hanapi, 89 Hawai`i at 186-87, 970 P.2d at 494-95 (1998) (footnote omitted) (emphasis in Hanapi).  The Hawai`i Supreme Court noted that, although it referred to residential property "as an example of 'fully developed' property[,] [t]here may be other examples of

42

'fully developed' property as well where the existing uses of the property may be inconsistent with the exercise of protected native Hawaiian rights." Id. at 187 n.10, 970 P.2d at 495 n.10. However, since Hanapi, the Hawai`i Supreme Court has not revised the issues of what constitutes "less than fully developed" property and what customary and traditional rights native Hawaiians may exercise on "less than fully developed" property. See, e.g., Pratt II, 127 Hawai`i at 208, 277 P.3d at 302 (the defendant was cited for violating a Hawai`i Administrative Rules provision regarding closed areas of state parks "when he was found in a closed area of the Kalalau Valley in the Nâ Pali Coast State Wilderness Park on Kaua`i").

Although there is no state court precedent directly on point as to the issue of whether privately owned correctional institutions, which house state inmates pursuant to contract, constitute less than fully developed property, based on the state courts' analyses in cases addressing other types of property, Saguaro and Red Rock arguably fall within the class of non-residential, fully developed property. This Court, however, need not rule upon this issue because Count XXI fails on another ground.

The protection of customary and traditional rights requires either: 1) that the native Hawaiian asserting the protected right practices that right within the ahupua`a in which

43

he resides and which his family historically resided; or 2) if the native Hawaiian seeks protection of a right extending beyond that ahupua`a, the right must "have been customarily and traditionally exercised in this manner."  See Pele Defense Fund, 73 Haw. at 620, 837 P.2d at 1272.

With regard to the relationship between customary and traditional rights and a native Hawaiian's ahupua`a, the Hawai`i Supreme Court has stated:

> We held that HRS § 7-1 contains two types of rights: "gathering rights which are specifically limited and enumerated, and rights to access and water which are framed in general terms." [Kalipi, 66 Haw.] at 5, 656 P.2d at 748.  With respect to these rights, we stated that "lawful occupants of an ahupuaa may, for the purposes of practicing native Hawaiian customs and traditions, enter undeveloped lands within the ahupuaa to gather those items enumerated in the statute." Id. at 7-8, 656 P.2d at 749.  The "undeveloped lands" limitation was imposed by the court to balance the concept of land ownership with that of native rights.  Id.  Because Kalipi asserted his rights based on ownership of land and not residence in the ahupua`a, we held that he was not entitled to exercise native gathering rights in Ohia.  Id. at 9, 656 P.2d at 750.
>
> We further held that HRS § 1-1's "Hawaiian usage" clause may establish certain customary Hawaiian rights beyond those found in HRS § 7-1. Id. at 9-10, 656 P.2d at 750.  Thus, we "believe that the retention of a Hawaiian tradition should in each case be determined by balancing the respective interests and harm once it is established that the application of the custom has continued in a particular area." Id. at 10, 656 P.2d at 751.  Noting testimony that "there have continued in certain ahupuaa a range of practices associated with the ancient way of life which required the utilization of the undeveloped

property of others and which were not found in § 7-1," we held that HRS § 1-1 insures the continuance of these enduring practices "for so long as no actual harm is done thereby."  <u>Id.</u>

. . . .

Like Kalipi, [Pele Defense Fund ("PDF")] members assert native Hawaiian rights based on article XII, § 7 and HRS § 1-1 in an ahupua`a other than the ones in which they reside.  Unlike Kalipi, PDF members claim these rights based on the traditional access and gathering patterns of native Hawaiians in the Puna region.  Because Kalipi based his claims entirely on land ownership, rather than on the practiced customs of Hawaiians on Molokai, the issue facing us is somewhat different from the issue in <u>Kalipi</u>.  In <u>Kalipi</u>, we foresaw that "[t]he precise nature and scope of rights retained by § 1-1 would, of course, depend upon the particular circumstances of each case."  66 Haw. at 12, 656 P.2d at 752.

Thus, we upheld the rights of native Hawaiians to enter undeveloped lands owned by others to practice continuously exercised access and gathering rights necessary for subsistence, cultural or religious purposes so long as no actual harm was done by the practice.  As found by the <u>Kalipi</u> court, and reported by the Constitutional Convention committee that drafted article XII, § 7, these rights are associated with residency within a particular ahupua`a.  <u>See</u> Stand. Comm. Rep. No. 57, reprinted in 1 Proceedings of the Constitutional Convention of Hawaii of 1978, 637.

The Committee on Hawaiian Affairs added what is now article XII, § 7 to reaffirm customarily and traditionally exercised rights of native Hawaiians, while giving the State the power to regulate these rights.  <u>Id.</u> at 639.  Although these rights were primarily associated with tenancy within a particular ahupua`a, the committee report explicitly states that the new section "reaffirms all rights customarily and traditionally held by ancient Hawaiians."  <u>Id.</u> at 640 (emphasis added).  The committee contemplated

45

that some traditional rights might extend beyond
the ahupua`a; "[f]or instance, it was customary
for a Hawaiian to use trails outside the ahupua`a
in which he lived to get to another part of the
Island." Id. The committee intended this
provision to protect the broadest possible
spectrum of native rights[.]

. . . .

If, as argued by PDF, the customary and
traditional rights associated with tenancy in an
ahupua`a extended beyond the boundaries of the
ahupua`a, then article XII, § 7 protects those
rights as well.  The drafters of the
constitutional amendment emphasized that all such
rights were reaffirmed and that they did not
intend for the provision to be narrowly construed.
We therefore hold that native Hawaiian rights
protected by article XII, § 7 may extend beyond
the ahupua`a in which a native Hawaiian resides
where such rights have been customarily and
traditionally exercised in this manner.

Id. at 617-19, 837 P.2d at 1270-72 (some alterations in Pele

Defense Fund) (footnotes omitted).

In the instant case, none of the Plaintiffs alleges

that his respective correctional facility is within the ahupua`a

where his ancestral land was located.[10]  Nor does the Second

---

[10] For example, in Pratt II, where the defendant was cited
after being found in a closed area of a state wilderness park,
the defendant presented the following evidence:

Pratt testified that he was born in Waimea to
parents from O`ahu and the island of Hawai`i.  He
presented a family tree and testified that he is
75% native Hawaiian.  Pratt named Kupihea as a
family line, though that name does not appear on
his family tree.  The defense then presented its
Exhibit 4, a book published by the State of
Hawai`i called "An Archaeological Reconnaissance
(continued...)

Amended Complaint allege that, in the native Hawaiian culture, the religious practices that Plaintiffs seek to engage in at Saguaro and Red Rock have been customarily and traditionally exercised outside of the ahupua`a under circumstances analogous to the instant case.  This Court therefore concludes that, to the extent that Plaintiffs allege they are entitled to engage in customary and traditional practices, pursuant to Article XII, § 7 of the Hawai`i State Constitution and Haw. Rev. Stat. § 1-1, at either Saguaro or Red Rock, Plaintiffs' claim fails because they have not pled the requisite connection between the customary and traditional practices and the land where they seek to engage in those practices.

There is also another theory set forth in Count XXI. Although Plaintiffs have represented that they are not challenging the practice of transferring native Hawaiian inmates to out-of-state facilities, Count XXI does present such a challenge.  The Second Amended Complaint alleges that, "[b]ut for Plaintiffs' involuntary seizure from the State of Hawaii to the State of Arizona, Plaintiffs would have continued to practice

---

[10](...continued)
      Survey: Na Pali Coast State Park, Island of
      Kaua`i."  The book lists a land grant sold to the
      Kupihea family for part of the ahupua`a for the
      Kalalau Valley.  Pratt testified that this is his
      family's land, and that this is where he spends
      time in the Park.

127 Hawai`i at 208, 277 P.3d at 302.

critical tenets of their Native Hawaiian faith in their respective ahupua`a as their ancestors had done before them." [Second Amended Complaint at ¶ 406.]  Implicit in Count XXI is the claim that, if Plaintiffs cannot engage in practices protected by Article XII, § 7 and § 1-1 at Saguaro and Red Rock, Plaintiffs' transfers to those facilities violated their rights under Article XII, § 7 and § 1-1.  This argument, however, also fails.

As previously noted, the rights protected by Article XII, § 7 and § 1-1 are not absolute.  Pratt II, 127 Hawai`i at 213, 277 P.3d at 307 ("For example, the constitutional language protecting the right to traditional and customary practices is qualified by the phrase 'subject to the right of the State to regulate such rights.'").  Hawai`i law recognizes that the State may have important interests that require transferring State inmates to out-of-state correctional institutions.  Pursuant to Haw. Rev. Stat. § 353-16.2(a), the director of DPS may only transfer a committed felon to an out-of-state institution if

the transfer is either:

(1)  In the interest of the security, management of the correctional institution where the inmate is presently placed, or the reduction of prison overcrowding; or

(2)  In the interest of the inmate.

Plaintiffs essentially ask this Court to rule that the State's affirmative duty under Article XII, § 7 "to preserve and

48

protect traditional and customary native Hawaiian rights," <u>Ka Pa`akai</u>, 94 Hawai`i at 45, 7 P.3d at 1082, supercedes any of the State's interests which may favor the transfer of committed felons who are native Hawaiians to out-of-state correctional institutions.  Further, taking Plaintiffs' argument to its logical conclusion, because Article XII, § 7 protects a native Hawaiian's practice of customary and traditional rights in his ahupua`a, the State would have to maintain a correctional facility in every ahupua`a to allow native Hawaiian inmates to practice their customary and traditional rights.  Neither Article XII, § 7, § 1-1, nor Hawai`i case law interpreting those provisions requires such a rule.  <u>See, e.g.</u>, <u>Pratt I</u>, 124 Hawai`i 329, 356, 243 P.3d 289, 316 (Ct. App. 2010) ("Without question, under Hawai`i law, the State must protect the reasonable exercise of customary or traditional native Hawaiian rights, to the extent feasible, but the State is authorized to impose appropriate regulations to govern the exercise of these rights." (citing article XII, § 7; <u>PASH</u>, 79 Hawai`i at 450-51, 903 P.2d at 1271)).  Thus, to the extent that Count XXI challenges the State's authority to transfer Plaintiffs to out-of-state correctional institutions, Count XXI fails as a matter of law.

This Court concludes that Count XXI does not state a plausible claim.  Further, under the circumstances of this case and in light of the nature of the claim in Count XXI, allowing

49

Plaintiffs the opportunity to amend Count XXI would be futile. This Court therefore GRANTS Defendant Abercrombie's Motion as to Count XXI, which is DISMISSED WITH PREJUDICE as to all Defendants.

**IV.   <u>Defendant Abercrombie's Request for Sanctions</u>**

In his Reply, Defendant Abercrombie argued that Plaintiffs raised a groundless argument that he waived the right to argue that he is not a "person" for purposes of 48 U.S.C. § 1983 when Defendants removed this action.  He contends that this Court should sanction Plaintiffs, and he asks this Court to award him the fees he incurred responding to Plaintiffs' waiver argument.  [Reply at 12.]

Defendant Abercrombie does not identify the legal authority he relies upon for the requested sanctions.  To the extent that he seeks sanctions pursuant to Fed. R. Civ. P. 11, Defendant Abercrombie must file a separate motion for sanctions because this Court cannot award Rule 11 sanctions requested in a reply memorandum.  <u>See</u> Fed. R. Civ. P. 11(c)(2).  Defendant Abercrombie's request for sanctions is therefore DENIED WITHOUT PREJUDICE to the filing of a motion for sanctions that complies with the requirements of Rule 11.  This Court emphasizes that it expresses no opinion at this time as to the merits of such a motion.

## CONCLUSION

On the basis of the foregoing, Defendant Abercrombie's Motion for Judgment on the Pleadings, filed June 7, 2013, is HEREBY GRANTED.  All of Plaintiffs' claims against Defendant Abercrombie in the Second Amended Complaint and the Supplemental Complaint are HEREBY DISMISSED WITH PREJUDICE.  Further, Count XXI (Plaintiffs' claim alleging violations of Article XII, § 7 of the Hawai`i State Constitution and Haw. Rev. Stat. § 1-1) in the Second Amended Complaint and incorporated into the Supplemental Complaint is HEREBY DISMISSED WITH PREJUDICE as to all Defendants.  In addition, Defendant Abercrombie's request for sanctions is HEREBY DENIED WITHOUT PREJUDICE.

This Court directs the Clerk's Office to terminate Defendant Abercrombie as a party.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, September 13, 2013.



/S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**RICHARD KAPELA DAVIS, ET AL. V. NEIL ABERCROMBIE, ETC., ET AL; CIVIL NO. 11-00144 LEK-BMK; ORDER GRANTING DEFENDANT NEIL ABERCROMBIE'S MOTION FOR JUDGMENT ON THE PLEADINGS**