NATIVE HAWAIIAN LEGAL CORPORATION
1164 Bishop Street, Suite 1205
Honolulu, Hawaii  96813
Telephone:  (808) 521-2302
Fax:  (808) 537-4268

SHARLA A. MANLEY          8868
shmanle@nhlchi.org
LEINA`ALA L. LEY          9710
leley@nhlchi.org

KAWAHITO SHRAGA & WESTRICK LLP
1990 S. Bundy Drive, Suite 280
Los Angeles, California  90025
Telephone:  (310) 746-5300
Fax:  (310) 593-2520

JAMES KAWAHITO          9099
jkawahito@kswlawyers.com
SHAWN C. WESTRICK          (Admitted Pro Hac Vice)
swestrick@kswlawyers.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RICHARD KAPELA DAVIS, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>TED SAKAI, in his official capacity as Director of the Hawaii Department of Public Safety; CORRECTIONS CORPORATION OF AMERICA,<br><br>Defendants. | CIVIL NO. 11-00144 LEK/BMK<br>(Declaratory and Injunctive Relief and Other Civil Action)<br><br>DECLARATION OF EXPERT WITNESS JEANNE WOODFORD; EXHIBITS A and B |

## DECLARATION OF EXPERT WITNESS JEANNE WOODFORD

I, Jeanne Woodford, hereby declare as follows:

1.      I am competent to testify to the matters herein, and unless otherwise indicated, I make this declaration based upon my personal knowledge, skill, experience, training and education.

### EDUCATION AND EXPERIENCE

2.      I received my B.A. from Sonoma State University in 1978.  Since that time, I have had experience working at all levels of correctional facilities.

3.      In 1978, I was a correctional officer at San Quentin.  For the next 27 years, I held various positions, including Correctional Counselor, Program Administrator, Captain, Litigation Coordinator, Associate Warden.  Chief Deputy Warden, and eventually Warden of San Quentin.

4.      I was Warden of San Quentin from 1999 through 2004.

5.      In 2004, I was appointed Director of the California Department of Corrections.  That department was reorganized and renamed the California Department of Corrections and Rehabilitation.  I was appointed to be the Undersecretary for the CDCR and then the acting Secretary of the Department.  I retired in 2006.

1

6.     I am currently a Senior Distinguished Fellow at the Chief Justice Earl Warren Institute on Law and Social Policy at the University of California-Berkeley.

7.     I taught courses on corrections policy through Stanford University's Continuing Studies Program in 2011.  I have taught courses on corrections policy at Sonoma State University in 2009 and 2010 in California.  I will teach a course in criminology and criminal justice studies in Spring 2014 at Sonoma State University.

8.     I participated in investigations of various civil rights complaints filed by ICE detainees throughout the country, to include a county correctional facility in Pinal County, Arizona in 2011.  I have been involved in evaluations and needs studies for state, and local correctional facilities, including jail needs studies for the Placer County Jail and for the cities of Kirkland and Bellevue, Washington.

9.     In the past seven years, I have spoken at more than 60 meetings and conferences regarding correctional issues.

10.     I testified as an expert witness in the three-judge court that presided over the overcrowding trial in the *Plata v. Brown* and *Coleman v. Brown* cases.

11.     Attached hereto as Exhibit A is a copy of my resume.

12.     When I began working at San Quentin, it was a Level 4 facility. Level 4 facilities have a secure perimeter with internal and external armed

coverage.  As warden, I was responsible for reception level housing and the largest death row in the country as well as a very large general population.  San Quentin held 5800 inmates on average.

13.    At San Quentin, there were three chapels:  one was devoted to the observance of the Protestant faith, another was devoted to the observance of the Catholic faith and the third chapel was an inter-faith chapel.

14.    San Quentin employed full-time spiritual advisors for the following faiths:  Catholics and Protestants.  We also hired part-time spiritual advisors for inmates of Native American, Muslim, and Jewish faith.  In addition to having these spiritual advisors on staff, we had relied on the assistance of hundreds of volunteers.

15.    Training of staff is essential.  If staff is properly trained as to the religious exercises to be accommodated, they can allow practices to proceed and can discern and distinguish a bona fide threat to security from an inmate engaging in their religious practices.

<u>STONE ALTAR</u>

16.    When I was warden of San Quentin, inmates were permitted to participate in the sweat lodge ceremonies at least once a week.  The sweat lodge was located on the lower yard, fenced off from the rest of the yard.  Fencing this

area off from the rest of the prison yard promoted security. Plants, including tomatoes, were grown near the sweat lodge.

17.     In my experience, this designated separate space did not provoke inmate resentment or cause unrest among the different faith groups. If other inmates wanted to disrespect the sweat lodge they could have. At times, there were often over 1000 inmates out on that yard. However, I did not observe problems arising from the designation of this sweat lodge area during my time at San Quentin.

18.     Furthermore, standard search protocols were used to keep the sweat lodge area secure and to prevent traffic in contraband.

19.     Search protocols used throughout the rest of the Saguaro facility should also effectively prevent introduction of contraband into Native Hawaiian religious meetings.

20.     In my opinion, providing this separate space for this religious practice at San Quentin reduced tension and conflict among the inmates in my care. All inmates understood that this space was set aside for the sweat lodge ceremonies and knew what to expect. Designating a separate space for Native American religious practices ensured that these religious practices did not interfere with recreational time for other inmates.

21.    I am surprised that the warden of one of the prisons in this case closes the recreation yard off to other inmates when the native Hawaiian ceremonies are taking place.  That practice is more likely to breed resentment among the inmates because they are locked away while a group of inmates is observing their religion.

22.    In my opinion, the prison officials here should have allowed the rock altar.

23.    The rock altar can be secured in a number of different ways to promote security.  For example, the rocks can be moved off the yard when not in use, or fenced off from inmates when not in use.

24.    The denial of the request for the rock altar is arbitrary and irrational in light of the fact that the lava rocks are used in the sweat lodge ceremonies that are permitted in these two prisons.

25.    In my opinion, there is not a logical connection between the interest in maintaining the safety of the institution and Defendants' practice of prohibiting a Native Hawaiian stone altar because it could be used as a weapon, in light of all the items permitted for secular reasons and for religious practices in these prisons.

26.    For instance, one of the wardens in this case testifies that inmates in general population are allowed to take a Styrofoam container to their cells.  Styrofoam can be melted down and fashioned into a weapon.

27.    Also, inmates in these prisons are allowed to have a television in their cells.  A television could be used as a weapon to knock a person in the head.

28.    Further, inmates at these prisons have access to tools that could be used as weapons.  There are carpentry, electrical, plumbing and hobby shops within the prisons allowing inmates access to tools like hammers and power tools. There is also a horticulture program at which inmates have access to gardening tools.[1]

29.    If the prison is classifying inmates properly, inmates in general population should be permitted to engage in practicing their religion by gathering in the yard and engaging in worship at a stone altar.

30.    The classification system for inmates operates such that inmates in general population can engage in activities like going to woodshop and using tools that could be used as weapons.  If you have an appropriate classification system, you can manage the security risks that may be presented by these activities.

## RELIGIOUS ITEMS

31.    Access to sacred items can be provided through donations.  As long as each prison has a process for searching items, it is not material whether an item is sent by a donor or by a vendor.  If these prisons have a process for searching

---

[1]    Stolc Dep. 63:6-65:10.

packages sent by vendors, these prisons can apply that process for searching to items that are donated by Native Hawaiian spiritual advisors or family members.[2]

## GROUP WORSHIP

32.    Warden Thomas testified that six additional staff persons would need to be hired to accommodate the requests for outside group worship.  The Warden does not provide specific facts about the actual duties and responsibilities these additional staff members would undertake to accommodate these requests.  Also, the Warden may not have considered alternatives like installing cameras to assist with supervision of group worship.

33.    A staggered yard schedule is another option that could likely be implemented at de minimus cost.  A yard option might allow for the first half hour or hour of yard time only to inmates participation in religious practices.  These same inmates could be recalled from the yard 30 to 60 minutes early.  This schedule would address security concerns.  Staggered yard hours is a means of accommodating these practices without requiring more work hours by staff.

## SEGREGATION

34.    Accommodations for religious practices must necessarily be restricted when inmates are in segregation.  But inmates should not be ignored simply because they are in segregation.

---

[2] P. 11 Section E.1 (k) ( E. Acquisition 1. Allowable Property k. Special Packages).

35.     Inmates in segregation need to have access to planned religious programming.  Providing religious accommodations to inmates in segregation only upon request, as the prisons appear to do in this case, is not a program and can lead to frustration among inmates which, in turn, can cause behavioral problems.

36.     Programming is an essential part of prison operations.  Effective programming is necessary for effective rehabilitation.  Prison programs contribute to improved public safety, improve the functioning of inmates which can in turn improve family and community functioning and reduce recidivism.  It should be provided in a planned and predictable manner.

37.     A request-based system for inmates in segregation can undermine the benefits of providing religious programming in the first place because it can create anxiety for the inmate about whether and when requests will be fulfilled.  Inmates in segregation have less control over their housing assignment and their programming options which is a mental health stressor.  Thus, a coherent, predictable religious program, although limited, should be in place.

38.     In San Quentin, for instance, during Ramadan, the inmates who were of Muslim faith in segregation knew for a certainty that they would receive the evening meal at a regular time.

39.     The request- based system at Saguaro does not guarantee that inmates in segregation will be able to consult with the Native Hawaiian spiritual advisor

during his quarterly visits because requests can lapse or be lost during the long interim stretches between his visits. Such visits should not be conditioned upon an inmate making an advance request.

40.     In my experience, the standard for inmates in segregation is that they should be permitted out-of-cell for ten hours a week. The standard set for these prisons is five hours a week. The ACA standards state: Inmates have access to exercise opportunities and equipment including at least one hour daily of physical exercise outside the cell, and outdoors when weather permits.

41.     It is possible to allow inmates in segregation to meet as a group among themselves in some circumstance without undermining security. For instance, some inmates have group therapy in cells in segregation in California. Also, if inmates are in administrative segregation as opposed to disciplinary segregation, they can be permitted to meet within the housing unit or on their yards. Federal standards require that you not punish inmates who are in segregation for their own protection and that they be treated similar to general population inmates. For instance, inmates who are in segregation for their own protection can be allowed to meet on prison yards at a time designated for them. The federal standards contemplate allowing group worship between inmates who cannot mingle with inmates in general population but do not pose a risk to one

another after prison officials have confirmed that there are not enemy problems among those inmates.

42.     Access to a spiritual advisor is even more pressing for the inmates in segregation who are not permitted to gather with other inmates.  Here, only one chaplain is provided for one of the prisons and the Native Hawaiian spiritual advisor is only available when he can pay to be there.

43.     In California, great effort is made to provide access to spiritual advisors of different faiths.

<u>Religious Programming and Rehabilitation</u>

44.     A concept that works well in prison management is rewards and sanctions.  Inmates know that if they misuse the accommodations made for them for religious purposes, they will lose those accommodations.  This is powerful motivator that, combined with an effective classification system, allows prisons to accommodate religious practices like those requested in this case without undue threat to prison safety and security.

45.     Rewards are a necessary part of rehabilitation and encouraging positive inmate behavior.  Religious accommodations are particularly important in this respect and can in and of themselves increase prison safety and security by encouraging positive behavior.  The Warden at Saguaro testified that he has seen this result among the Native Hawaiian practitioner population.  Therefore,

reasonable accommodations for religious practices can promote rather than endanger prison security.

46.    In my experience with accommodating religious practices in prison, inmates are well-behaved when engaging in their religious practices.

<u>The State Officials' Responsibility</u>

47.    I have reviewed the transcript of the deposition of Shari Kimoto, the contracts between the State of Hawaii and CCA, the PSD Makahiki guidelines, and an email memorandum from Warden Thomas in arriving at this opinion.

48.    It is my opinion that the State must set the standard for the care and treatment of inmates when it is contracting with a private prison and that the State has failed to set these standards for the accommodation of Native Hawaiian religions practices in this case.

49.    The performance of a private prison is dependent on the contracting agency's process for structuring the contract and monitoring performance under the contract.

50.    Through my participation as an expert witness in lawsuits about prisoner rights, it has become apparent to me that a government agency remains responsible for the care and treatment of inmates, even when those inmates are in the physical custody of another entity like a private prison or correctional facilities operated by another branch of government.

51.     Private prisons, like CCA, answer to stockholders, so in order to ensure that private prisons are accountable to the public, the state or contracting agency needs to set the requirements for the care of each inmate, which includes religious accommodations.  It is important for the State to define the standards for the care of the inmate because when contracting with private prisons, you're only going to get what you pay for.  The state must be responsible for and define through policies what the care and treatment of an inmate looks like.

52.     In the federal system, private prisons must be in compliance with federal policies in effect during the contract.  Private prisons cannot unilaterally change the applicable federal policies.  Further private prisons must update their policies to conform to any updates in federal standards when contracts are renewed.

53.     According to the contracts between the state and CCA, the state does not review CCA policies before delegating its duty to provide for the safe care and custody of Hawaii inmates to CCA.

54.     In my opinion, the problem in this case is that the Wardens do not see themselves as being responsible for solving the problems of the inmates in their care.  The Wardens see themselves only as responsible for carrying out a contract with the state of Hawaii.  Meanwhile, the state officials in Hawaii have told CCA

to do what it thinks is right.  The state officials in Hawaii have refused to direct the Warden's decisions.

55.     A memo from Warden Thomas, dated April 3, 2008, highlights the problem.  Warden Thomas does not feel empowered to address the care and treatment of the inmates under his care unless it is spelled out in the contract.

56.     To ensure that inmates are treated properly, the State of Hawaii must have a system for measuring whether the prisons that it has contracts with are operating lawfully.  There must be a system for ensuring that programming is being provided.

57.     When I worked for the California Department of Corrections, I focused on applying performance-based standards to our prisons.  I implemented the COMPSTAT (Computerized Statistics) process as a means of measuring the performance of our prisons.  First used in New York, COMPSTAT was a method of policing that relied on the analysis of crime data and other quantitative measures of how police were performing.

58.     With COMPSTAT, we were able to analyze the complaints made by prisoners to determine whether prison staff was complying with the standards set for all prisoners in California.  We held regular meetings with all Wardens to discuss these trends and develop solutions to problems together.  It was a forum for problem-solving and holding wardens accountable.  The COMPSTAT processes

were in place in addition to regular audits.  Although COMPSTAT might not work for every prison system, the Hawaiian State officials must have a system that allows headquarters staff to identify problems and concerns in the CCA prisons.

59.     Based on Ms. Kimoto's testimony, the State has no analogous measure for evaluating the performance of the CCA prisons to which Hawaii inmates are sent.

## CONCLUSIONS

60.     Based upon my review of the documents in Exhibit B, and my experience, skills, training, and education, I have arrived at the following opinions.

61.     The State of Hawaii failed to set standards for the housing of inmates from Hawaiʻi in CCA facilities.  This failure is allowing each individual Warden to set his own standards.  In turn, the Wardens have testified that they will not accommodate practices that are not required by contract.  It is clear no one is taking responsibility for understanding the Native Hawaii Religion and developing policies to accommodate the basic tenets of the faith.  Giving wardens unfettered discretion results in arbitrary decision-making and wardens should only be given the discretion to deviate from standards based on well-documented security justifications and wardens should be required to request these exemptions in writing from the State of Hawaii.

62.     The State of Hawaii has delegated most decisions including decisions about religious practices to CCA.  CCA is only going to do what they are paid to do or required to do under the contract.  Warden Thomas and Warden Stolc testified to the fact that if an accommodation is not in the contract or in the Makahiki policy sent from Hawai'i, it is not required.

63.     The requests for religious accommodation of a stone altar, sacred items, and group worship are reasonable and can be accommodated safely.  The Wardens state that the altar cannot be allowed because rocks could be used as a weapon but there are many items allowed in these prisons that could be used as weapons.  Surveillance of group worship can be accomplished with cameras instead of hiring additional staff.  It appears that there are cameras used to videotape the Makahiki observances that are permitted.  Providing a separate space for engaging in religious practices can reduce, rather than breed inmate resentment and the appearance of favoritism.

64.     The State is transferring these inmates out of state and is not setting the standard for addressing how Native Hawaiian religion is to be accommodated. These inmates are so far away from home.  It appears that family is important in this religion.  The impact of the transfer on the mental health of these inmates must be great.  The State officials must also understand that failing to accommodate reasonable requests for religious practices can impact an inmate's effort toward

rehabilitation.  The absence of religious services can also impact the mental health of individuals.

DATED:  Benicia, California, October _29_, 2013.

_Jeanne Woodford_
JEANNE WOODFORD

16

**Exhibit A**

*Jeanne S. Woodford*

*Post Office Box 732*
*Benicia, CA 94510*
*Home: (707) 746-1712*
*Cell: (707) 853-0928*
*E-mail: jeannewoodford@comcast.net*

**OBJECTIVE:**   **Utilize my experience in criminal justice to improve public safety through evidence based practices and reform.**

**EDUCATION:**

*1974 - Associate of Arts Degree*
*Santa Rosa Junior College*
*Santa Rosa, California*
*Liberal Arts*

*1978 - Bachelor of Arts Degree*
*Sonoma State University*
*Rohnert Park, California*
*Criminal Justice, emphasis on Psychology and Sociology*

**CAREER EXPERIENCE:**

**11/10 to Present**   **Senior Fellow Berkeley Center for Criminal Justice**

Work on a variety of criminal justice projects. Provide leadership and assistance to Student interns engaged in criminal justice policy development.

**4/11 to May 2013**   **Executive Director Death Penalty Focus**

Death Penalty Focus
870 Market St. Suite 859
San Francisco, Ca. 94102

Provide leadership and management of Death Penalty Focus, a non-profit dedicated to the mission of ending the death penalty.

*5/86 to PRESENT*   ***Correctional Consultant and Educator***

*Involved in volunteer and contract work to improve the criminal justice system. I have been a guest speaker at UC Berkeley Law School, Stanford Law School, Stanford School of Public Policy, Santa Clara School of Law and various community groups. I have written Op-Ed pieces and testified in front of US Congress and the California Legislature. I have taught criminal justice classes at Sonoma State University and Stanford. I am currently consulting on a federally funded Women's Reentry grant for the City and County of San Francisco. I have served as an expert witness in death penalty cases.*

**EXHIBIT "A"**   1

| | |
|---|---|
| *11/06 to 05/08* | **Chief Adult Probation Officer, San Francisco Adult Probation Department** |

Management and leadership of the San Francisco Adult Probation Department: I lead staff through a strategic planning process to establish the goals, values and mission of the San Francisco Adult Probation Department. Assisted staff with implementation of evidence based practices and began caseload management focused on successfully completing probation. I also meet with the Mayor, the Courts, the District Attorney, the Public Defender, the Sheriff and Community Groups to improve communication and the effectiveness of the Probation Department. Budget: Eleven Million Dollars.

| | |
|---|---|
| *07/05 to 07/06* | **Appointed by Governor Arnold Schwarzenegger: Undersecretary of the California Department of Corrections and Rehabilitation (CDCR)** |

Responsibilities included leading major policy, program and organization change; representing the Administration before the Legislature, Department of Finance, and other state, federal, and local government, and constituent group. Provide administrative direction to all CDCR staff. Chaired the Corrections Standard Authority and the Prison Industries Board. I also lead efforts to bring accountability to the CDCR through data driven decision-making. I continued my efforts to advocate for rehabilitation and a sentencing commission for California. Budget: Eight billion dollars.

| | |
|---|---|
| *03/04 to 07/05* | **Appointed by Governor Arnold Schwarzenegger: Director Department of Corrections** |

Responsible for the administration of 32 State prisons, 38 conservation camps, more than 185 parole units, and contracts with 50 public or private community-based facilities or centers. In this capacity, I served as the Chair, Prison Industry Board. As the Director I worked with the Secretary of the Agency to add Rehabilitation to the mission of the CDC. I also lead efforts to address conditions of confinement for inmates to include overcrowding, health care and mental health care. I advocated for the expansion of visiting for the incarcerated and their families. I also started the gender responsive commission to create policies and appropriate programs for women incarcerated in the CDC. Budget: Six billion dollars.

2

| | |
|---|---|
| *02/99 to 02/04* | ***Warden San Quentin State Prison*** |

*Responsible for the leadership and management of San Quentin State Prison. San Quentin has three primary missions: Reception Center, condemned housing, and a level II general population. Developed and implemented programs for prisoners including The Success Dorm; the first reentry program in a California prison. Budget: One hundred and ten million dollars.*

| | |
|---|---|
| *08/97 to 02/99* | ***Chief Deputy Warden*** <br> ***San Quentin State Prison*** <br> ***San Quentin, CA  94964*** |

*Directly responsible for the day-to-day operation of San Quentin State Prison: 1,500 staff and a prisoner population of 5,800. Budget: $110,000,000*

| | |
|---|---|
| *04/96 to 8/97* | ***Associate Warden, Correctional Facility*** <br> ***San Quentin State Prison*** <br> ***San Quentin, California  94964*** |

*Directly responsible for managing San Quentin's Central Services Division. Primary responsibility for perimeter security, yards, gates, wall posts, dining hall, Receiving and Release and visiting and mail programs. Additional responsibilities include the position of San Quentin's Equal Employment Opportunity (EEO) Coordinator. Managed a custody personnel budget of $56,000,000.*

| | |
|---|---|
| *06/78 to 4/96* | ***Held a variety of positions within the California Department of Corrections to include: Correctional Officer, Correctional Counselor, Program Administrator and Captain. I was also the Litigation Coordinator for three years, which provided extensive experience with court compliance and monitoring.*** |

### *APPOINTMENTS:*

- *Walden House Board of Directors*
- *Prison Industries Authority Board Member (appointed by California Senate Rules Committee)*
- *Governors Leadership Institute*
- *Class A (non-alcoholic) Trustee with the General Services Board for Alcoholic Anonymous*
- *John Jay College of Criminal Justice Advisory Committee*
- *Governors Technology Services Board for the Department of technology Services*
- *Council on Mentally Ill Offenders (Chair)*
- *Correctional Standards Authority (Chair)*
- *Friends Outside Sacramento Chapter (Honorary Chair)*

# CURRICULUM VITAE OF JEANNE S WOODFORD

| DATE | TITLE |
|---|---|
| March 19, 2004 | California Judicial Council in Monterey - Speaker |
| April 21, 2004 | Senate Budget Sub 2 Committee Hearing - Speaker |
| April 22, 2004 | Briefing Director's Introduction Remarks Little Hoover Commission |
| May 4, 2004 | Opening Statement (Senator Romero) Hearing |
| May 5, 2004 | Assembly Oversight Hearing-Budget - Speaker |
| May 21, 2004 | Medal of Valor-California State Capitol-Speaker |
| June 1, 2004 | Joint Hearing Assembly Committee on Health - Speaker |
| June 8, 2004 | Friends Outside Annual Dinner-Keynote Speaker |
| June 23, 2004 | Confirmation Opening Remarks Senate Rules |
| June 28, 2004 | Statewide Training of Chief Probation Officers – Keynote Speaker |
| August 16, 2004 | Mule Creek State Prison Media Event with the Governor - Speaker |
| August 23, 2004 | NOVA Conference Speaker |
| September 13, 2004 | 5th Annual Centerforce Inside/Out Summit – Keynote Speaker |
| September 15, 2004 | League of Women Voters-Speaker |
| September 17, 2004 | Odyssey-Speaker |
| September 29, 2004 | Legislative Hearing "The Inmate Health Care Challenge:  Fixing a Broken System in Light of the Deukmejian Report" (Senate Select Committee on Government Oversight and Senate Select Committee on the California Correctional System) - Speaker |
| October 9, 2004 | California Judges Association Conference in Monterey-Panel w/Senator Jackie Speier |
| December 8, 2004 | Sonoma State University Perspective on the Future - Speaker |
| January 2005 | Article:  Managing Death Row – co-writer.  Appeared in Managing Special Populations in Jails & Prisons text |
| February 8, 2005 | Senate Select Committee on the California Correctional System (Hearing on Racial Segregation in Prisons) – Speaker |
| February 23, 2005 | Sonoma County Peace Officer of the Year Banquet-Keynote Speaker |
| March 10, 2005 | Harvard University, John F. Kennedy School |

## CURRICULUM VITAE OF JEANNE S WOODFORD

|  |  |
|---|---|
|  | of Government Forum-Panel on Corrections – Panel Member |
| March 16, 2005 | Forensic Mental Health Conference Speaker |
| DATE | TITLE |
| April 21, 2005 | Citizen's Advisory Committee Conference, Opening Remarks |
| April 23, 2005 | California Correctional Supervisor's Organization Keynote Speaker |
| April 24, 2005 | Hospitals & Institutions Conference Speech |
| May 12, 2005 | Alcoholic's Anonymous Volunteers in Parole Keynote Speaker |
| May 25, 2005 | Rehabilitation Conference Speaker |
| June 6, 2005 | National Institute of Corrections Faith-Based Conference. Washington D.C. – Speaker |
| June 14, 2005 | Friends Outside Annual Dinner Speaker |
| June 24, 2005 | Basic Correctional Officer Academy Graduation – Speaker |
| July 20, 2005 | California Youth Authority Medal of Valor – Speaker |
| July 27, 2005 | Channel City Club Keynote Speaker |
| October 17, 2005 | Educators Keynote Speaker-Lake Tahoe |
| October 20, 2005 | Employers Forum "San Diego County's Undiscovered Labor Resource" (Community Reentry Project) Keynote Speaker |
| October 21, 2005 | Basic Correctional Officer Academy Graduation – Speaker |
| January 25, 2006 | Little Hoover Commission (Sacramento) Opening Remarks |
| February 1, 2006 | Fire Chiefs Return to Work Coordinators Conference – Opening Remarks |
| February 2, 2006 | Senate Hearing "Have California's Prisons Been Rehabilitated" – Speaker |
| May 19, 2006 | Medal of Valor Speaker-California State Capitol |
| May 23, 2006 | Coalition of Alcohol and Drug Associations Public Policy Conference – Morning Speaker |
| May 27, 2006 | Sonoma State Commencement Exercises |
| June 8, 2006 | American Institute of Architects National Convention and Design Exposition – Speaker |
| August 2006 | Los Angeles Times article titled: "Why I quit the Prison System" |
| November 27, 2006 | Speaker at USC Annenberg Institute for Justice and Journalism |

## CURRICULUM VITAE OF JEANNE S WOODFORD

| | |
|---|---|
| February 4, 2007 | Article:  The Future of Prison Design featured in the American Institute of Architect's magazine |
| May 18, 2007 | Sonoma Learning – Sonoma State University Speaker |
| July 14, 2007 | Judicial Council of California Symposium – Speaker |
| July 17, 2007 | Sonoma State – Speaker |
| September 6, 2007 | Northern California Service League – 12th Annual Reentry Conference – Speaker |
| September 11, 2007 | Hastings Law School, San Francisco – Speaker |
| October 23, 2007 | Eighth Annual Inside/Out Summit – Critical Juncture – Innovative Solutions for Addressing the Impacts of Youth & Adult Incarceration in our communities – Speaker |
| November 2007 | Association of Women Executives in Corrections – Speaker |
| November 28, 2007 | White House Faith & Community Initiatives National Summit on Prisoner Re-entry – Speaker |
| January 23, 2008 | USC Annenberg Institute for Justice and Journalism – Speaker |
| March 4, 2008 | Center for Collaborative Solutions (CCS) Annual Labor Management Conference – Presenter/Speaker |
| March 14, 2008 | UC Berkeley – Violence Conference – Speaker |
| March 15, 2008 | USF – Symposium – Solutions for California Prisons – Speaker |
| March 31, 2008 | John Jay College of Criminal Justice – Speaker |
| April 22, 2008 | Testified before the US Subcommittee on Crime, Terrorism, and Homeland Security in support of revising the Prison Litigation Reform Act |
| May and June 2008 | Review and audit of the San Mateo Youth Services Center following and escape of a youth facing an adult trial as an adult |
| September 24, 2008 | Testified before the California Legislative Subcommittee in support of Proposition 5 |
| October 7, 2008 | Centerforce Summit Forum panel participant, Rohnert Park California |
| October 10, 2008 | Berkeley Law Center Conference panel |

## CURRICULUM VITAE OF JEANNE S WOODFORD

| | |
|---|---|
| October 2008 | Signed rebuttal to argument in favor of Proposition 9 for the California General Election official voter information guide |
| November 6, 2008 | American Institute of Architects speaker regarding design influence on corrections |
| November 8, 2008 | Panel participant with American Institute of Art and Design discussing the influence of Architectural design on criminal justice reform |
| January 2009 | Appointing to the Prison Industries Authority (PIA) Board by Senate Rules |
| February 3, 2009 | Testified as an expert before the Federal Three Judge Panel regarding the impact of overcrowding on health care and mental health treatment. |
| February 27, 2009 | Speaker Berkeley Criminal Justice Forum |
| March 9, 2009 | Speaker Sonoma State University Criminal Justice Forum |
| March 19, 2009 | Speaker Hastings School of Law, Defining the Problem-The State of Criminal Justice in Ca. |
| April 2009 | Entered into 5 month contract with Drug Policy Alliance to develop criminal justice policy strategy for Ca. |
| May 2009 through August 2009 | Volunteered consulting services at the request of Legislators working on Ca. Correctional budget issues |
| May 2009 | Editorial in San Diego Tribune regarding corrections and accountability |
| June 30, 2009 | Guest speaker The Fellowship Forum, a group of Stanford graduates and Hewitt Packard executives |
| August 12, 2009 | Interviewed for Time Magazine regarding corrections in Calif.  (On-line edition) |
| August 13, 2009 | Interviewed for NPR- All Things Considered, regarding correctional issues in Ca. |
| September and October 2009 | Taught a series of classes at Sonoma State University entitled Overview of Corrections |
| September 2009 | Jail needs study Cities of Kirkland and Bellevue, Washington. |
| October 1, 2009 | Guest Speaker Saint Mary's College Moraga, Ca. |
| October 2, 2009 | Guest Speaker University of California Berkeley |
| October 21, 2009 | Taught class to Los Angeles Public Defenders |

## CURRICULUM VITAE OF JEANNE S WOODFORD

|  |  |
|---|---|
|  | Office "An Overview of California Prisons" |
| October 27, 2009 | Lead panel discussion regarding Criminal Justice and the State of California |
| October 2009 to present | Contracted for Needs Study Placer County Jail |
| February 2010 | Contracted to assist implementing the Second Chance Reentry Grant for the City and County of San Francisco |
| February 2010 | ABA Criminal Justice Standards on Treatment of Prisoners completed. I was a member of the task force for a portion of the five-year project. |
| April 12, 2010 | Appeared on Pod Cast regarding Correctional Reform for the UC Berkeley Criminal Justice Center |
| April 13, 2010 | Taught six week course at Sonoma State University regarding the State of Corrections in California |
| May 11, 2010 | Testified before the Ca. Legislature regarding Options for Improving Prison Operations and Outcomes |
| June 30, 2010 | Testified before the Ca. Legislature regarding SB 399, The Fair Sentencing for Youth Act. |
| September and October 2010 | Taught six week course at Sonoma State University regarding the State of Corrections in California |
| November 3, 2010 | Attend Cal RAPP training and participate in strategic planning to assist SF Adult Probation to implement evidence based practices and procedures. |
| November 9, 2010 | Began as a Senior Fellow at the Berkeley Center for Criminal Justice. |
| November 15, 2010 | Guest speaker for Dr. Barbara Bloom regarding corrections in California; Sonoma State University |
| November 17, 2010 | Panelist at the American Society of Criminologist. |
| November 18, 2010 | Testified before the Little Hoover Commission Topic: Reorganization of the California Department of Corrections |
| December 2, 2010 | Three Strikes Conference Stanford University |
| January 4, 2010 | Speaker Hastings Law School Topic: Corrections in California |
| January 7, 2011 | Presenter SALT Award to the Prison Law Office for Human Rights work. |
| January 20, 2011 | Speaker UC Irvine Topic: Death Penalty and California Criminal Justice |

# CURRICULUM VITAE OF JEANNE S WOODFORD

| | |
|---|---|
| February 8, 2011 | Speaker-Stanford for Professor Nation, Public Policy class |
| February 22, 2011 | Speaker-Stanford School of Law, Joan Petersilia class on Criminal Justice |
| March 31, 2011 thru May 19, 201116, 2011 | Attorney General transition team meeting-Smart on Crime Project |
| April 5, 2011 | Speaker-1st Congregation Church of Sonoma |
| April 6, 2011 | Speaker-UC Berkeley Criminal Justice Course |
| April 18, 2011 | Speaker-UC Berkeley, Dr. Krisberg Class |
| April 26, 2011 | Speaker-Mills College, Death Penalty Symposium |
| April 2011 to present | Expert Armstrong v. Brown, United States District Court Northern District of California C-94-2307 CW ADA Case. |
| May 2011 to present | Expert for New York State Office of Children and Family Services regarding violence in NY Juvenile Secure facilities. |
| May 2, 2011 | Speaker-USC 3-Strikes Conference |
| May 3, 2011 | Speaker Oakmont Symposium Topic: The State of Corrections |
| May 10, 2011 | Speaker-SF Public Defender's Conference on Criminal Justice |
| June 7, 2011 | Guest Speaker-Bob Edwards KQED |
| June 26, 2011 | Guest Speaker-CVS Channel 5 |
| June 28, 2011 | Guest Speaker National Latino Peace Officers Sonoma County Chapter |
| August 1, 2011 | Guest Ron Owen Radio Show KGO |
| August 4, 2011 | Guest Pacifica Radio |
| August 8, 2011 | Guest KCEO Radio, Kent Peters Show |
| August 10, 2011 | Speaker Chevron Retirees Luncheon Topic Criminal Justice in California |
| August 11, 2011 | Speaker Junior State of America, Sacramento, Ca. |
| August 14, 2011 | Guest KGO Lara Starr Producer |
| August 17, 2011 | Testified before Ca. Legislative Appropriations Committee regarding SB 490 bill to place death penalty on the Ca. ballot |
| August 30, 2012 | Debate San Mateo DA Wagstaff SF ACLU |
| September 13, 2011 | Speaker Fountain Grove Men's Club topic: Criminal Justice in Calif. |
| September 15, 2011 | Speaker Solano Reentry Council Topic: The importance of Reentry Councils |
| September 22, 2011 | Guest KGO Peter Collins Show |
| September 24, 2011 | Guest Speaker PAX Christi Event in LA |

## CURRICULUM VITAE OF JEANNE S WOODFORD

|  | regarding the Death Penalty |
|---|---|
| October 13, 2011 | Speaker Hastings Law School Professor Blocks class |
| October 27, 2011 | Participated in Realignment Panel Hastings Law School. |
| November 3, 2011 | Speaker Mt. Diablo Peace and Justice Conference |
| November 6, 2011 | Speaker Ignatius Church San Francisco |
| November 13, 2011 | Speaker Grace Episcopal Church Bakersfield, Ca. Topic: The Death Penalty |
| November 14, 2011 | Speaker California State University Bakersfield |
| November 29, 2011 | Speaker Rotary Club of San Francisco |
| November 30, 2011 | Speaker Berkeley Women's Club |
| December 6, 2011 | Speaker Marin Bar Association Topic: The Death Penalty in California |
| December 14, 2011 | Guest KCBS Jeff Ball Host |
| January 9, 2012 | Guest KQED Cate Cochran CBC Radio Canada |
| January 10, 2012 | Speaker Saint Mary's College Speakers Series |
| January 17, 2012 | Speaker Trinity United Methodist Church |
| January 17, 2012 | Speaker Sisters of Saint Joseph of Orange |
| January 18, 2012 | Speaker Law Offices of the Public Defender Riverside |
| January 18, 2012 | Speaker Scripps College Balch Hall |
| January 25, 2012 | Speaker for the showing of the movie Incendiary, The Metreon San Francisco |
| January 26, 2012 | Speaker San Ramon Valley Democratic Club |
| January 31, 2012 | Speaker Women of Westminster Tiburon |
| February 1, 2012 | Speaker Merage School UC Irvine event held in SF |
| Fall Semester 2012 | Professor UC Hastings School of Law Course: Overview of Criminal Justice |
| February 6, 2012 | UCLA Law School Forum on the death penalty |
| February 11, 2012 | Panel Hastings School of Law Topic: Realigning California's Criminal Justice System |
| February 16, 2012 | Speaker Los Altos Country Club |
| February 24, 2012 | LMU Restorative Justice Panel |
| February 26, 2012 | Speaker Berkeley Sunday Gathering Topic: Death Penalty |
| March 1, 2012 | Safe Ca Signature Filing Press Conference |
| March 7, 2012 | Speaker Sacramento Jesuit High School |
| March 14, 2012 | Speaker SF Academy of Architecture for Justice |

# CURRICULUM VITAE OF JEANNE S WOODFORD

| | |
|---|---|
| March 16, 2012 | Speaker Caleb Foote Symposium UC Berkeley Topic: Realignment |
| April 5, 2012 | Guest Canadian Radio the Matt Holmes Show |
| April 12, 2012 | Debate Saint Mary's College Death Penalty LA Deputy DA Stirling |
| April 16, 2012 | Speaker UC Berkeley Professor C Gardner |
| April 19, 2012 | Speaker Santa Clara University School of Law |
| April 24, 2012 | Panel Golden Gate University topic: Death Penalty |
| April 27, 2012 | Speaker ACLU Sonoma County Annual Dinner |
| May 8, 2012 | Speaker The Arthur Benjamin High School Sacramento |
| May 10, 2012 | Guest Student Radio Station El Cerrito |
| May 14, 2012 | Speaker Heald College Concord |
| May 16, 2012 | Guest Bruce Robinson Radio Show Rohnert Park |
| May 17, 2012 | Speaker Diocese of San Diego |
| May 20, 2012 | Speaker Sunday Gathering Pacific Palisades |
| May 21, 2012 | Speaker Young Democrats LA. |
| June 5, 2012 | Speaker Ron Owen Show KGO Radio |
| June 7, 2012 | Speaker Sheriffs Association Meeting Placer Co. |
| June 17, 2012 | Speaker  Unitarian Universalist Breakfast Forum San Francisco |
| June 27, 2012 | LA Press Victims Press Conference |
| July 25, 2012 | KTVU Radio Interview |
| July 26, 2012 | Speaker Vanguard Court Watch of Yolo County |
| August 13, 2012 | Guest KRXA Hal Ginsberg show |
| August 16, 2012 | Speaker Democratic Women Club Monterey |
| August 17th, 2012 | Speaker St. Paul's Episcopal Church Monterey |
| August 18, 2012 | Speaker Old Mission Church Monterey |
| August 19, 2012 | Speaker United Methodist Church Atascadero |
| August 30, 2012 | Debate Death Penalty DA Wagstaff |
| September 7, 2012 | Speaker Marin Library Mill Valley |
| September 12, 2012 | KQED Forum Radio Guest |
| September 13, 2012 | Speaker UC Berkeley, Professor David Onek |
| September 18, 2012 | Testified before California Legislature Prop 34 |
| September 20, 2012 | Speaker Safe Ca. Event LA |
| September 25, 2012 | Speaker USF ST Thomas More Society |
| September 25, 2012 | Speaker Christ the King Church Pleasant Hill |
| September 27, 2012 | Speaker Stanford University Law School |
| September 27, 2012 | Speaker Stanford Chapter of the NAACP |
| September 30, 2012 | Debate Asian Pacific Islander Political Forum |

## CURRICULUM VITAE OF JEANNE S WOODFORD

|  |  |
|---|---|
|  | Sacramento Deputy Sacramento DA |
| October 2, 2012 | NPR Richard Gonzales |
| October 5, 2012 | Speaker California Agriculture Leadership |
| October 7, 2012 | Speaker Holy Families Catholic Church LA |
| October 9, 2012 | Catholic Press Conference Church of Saint Raphael and Mission San Rafael |
| October 23, 2012 | Debate Prop 34 Congregation Sha'ar DA Wagstaff |
| October 24, 2012 | Speaker Alamo Woman's Club Walnut Creek |
| October 25, 2012 | Guest Democracy Now |
| October 25, 2012 | San Jose Mercury News on line Debate Death Penalty McGregor Scott |
| October 26, 2012 | Guest Fox Radio |
| October 29, 2012 | Guest KALW Radio |
| November 1, 2012 | Guest KCBS Radio |
| November 8, 2012 | Capitol Weekly Panel Post-Mortem Conference 2012 Election |
| November 13, 2012 | Guest KQED radio |
| November 21, 2012 | Guest KQED radio host Dick Gordon |
| November 28, 2012 | Faculty Miller Implementation Training Conference Atlanta, Georgia |
| December 9, 2012 | Recipient of the Chief Justice Earl Warren Civil Liberties Award ACLU of Northern California |
| January 31, 2013 | Speaker UC Berkeley Wine and Crime event |
| February 6, 2013 | Panelist in Sonoma State University career day |
| February 8, 2013 | Awarded the June Morrison-Tom Gitchoff Founders Award Western Society of Criminologist |

**Exhibit B**

## Pleadings

- Second Amended Complaint for Damages and for Classwide Declaratory and Injunctive Relief
- Answer to Second Amended Complaint
- Defendants Motion for Summary Judgment and attachments

## Documents

- Defendant CCA's Response to Plaintiff Richard Davis' First Set of Interrogatories to Defendant Corrections Corporation of America dated December 19, 2011
- Defendant Corrections Corporation of America's Response to Plaintiff Richard Davis' Second Set of Interrogatories to Defendant Corrections Corporation of America dated February 2, 2012
- Defendant Corrections Corporation of America's Response to Plaintiff Richard Davis' Third Set of Interrogatories dated December 11, 2012
- Defendant Jodie Maesaka-Hirata's Response to First Set of Interrogatories to Defendant Jodie Maesaka-Hirata dated February 6, 2012
- Expert Report of Ty Tengan dated July 16, 2012
- Saguaro Policy 10-100, Special Management of Inmates, Segregation Management, dated March 15, 2009 (DAVIS_SCC004100-4114)
- Attachment to Saguaro Policy 10-100, 10-100F, "Commissary Items" (DAVIS_SCC008552)
- Attachment to Saguaro Policy 10-100, 10-100G, "Segregation Valuables Locker Accountability" (DAVIS_SCC008553)
- Saguaro Policy 10-101, Special Management of Inmates, Special Housing Incentive Program (S.H.I.P), datede July 20, 2009 (DAVIS_SCC004115-4121)
- Attachment to Saguaro Policy 10-101, 10-101BB , "SHIP Property Matrix" (DAVIS_SCC008574-75)
- Saguaro Policy 14-6, Inmate/Resident Property, dated November 15, 2008. (DAVIS_SCC008478-8497)

**EXHIBIT "B"**

- Saguaro Policy 18-2, Classification and Inmate/Resident Management, dated January 1, 2009 (DAVIS_SCC004138-4146)
- Saguaro Policy 20-4, Chaplaincy and Religious Services, dated October 1, 2012 (DAVIS_SCC005738-5750)
- Saguaro Policy 20-102, Inmate/Resident Services and Programs, Chaplain/Religious Services, dated June 1, 2007 (DAVIS_SCC000050-53)
- Saguaro Religious Vendors (DAVIS_0005671, 5672, 5675-5681)
- Red Rock Policy 10-100-1, Special Management of Inmates, Special Housing Unit (Hawaii Inmates Only), dated November 1, 2010 (DAVIS_RRCC002156-2164)
- Red Rock Policy 18-2, Classification and Inmate/Resident Management, dated August 31, 2010 (DAVIS_RRCC002181-2190)
- Red Rock Policy 20-102, Inmate/Resident Services and Programs, Chaplain/Religious Services, dated March 15, 2008 (DAVIS_RRCC000019-21)
- Red Rock "Vendors for the Chapel" (DAVIS_RRCC0002192)

## Deposition Transcripts

- Deposition Transcript of Warden Gregory Todd Thomas, conducted April 5, 2013, and exhibits
- Deposition Transcript of Warden Bruno Stolc, conducted April 3, 2013, and exhibits
- Deposition Transcript of Shari Kimoto, conducted March 11, 2013, and exhibits
- Deposition Transcript of Kaiana Haili, Vol I, conducted May 8, 2013 , and exhibits
- Deposition Transcript of Kaiana Haili, Vol II, conducted May 31, 2013, and exhibits
- Deposition Transcript of Ted Sakai, conducted May 7, 2013, and exhibits