IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RICHARD KAPELA DAVIS, TYRONE GALDONES, MICHAEL HUGHES, DAMIEN KAAHU, ROBERT A. HOLBRON, JAMES KANE, III, ELLINGTON KEAWE, and KALAI POAHA,<br><br>Plaintiffs,<br><br>vs.<br><br>TED SAKAI, in his official capacity as Director of the Hawaii Department of Public Safety, CORRECTIONS CORPORATION OF AMERICA,<br><br>Defendants. | CIVIL NO. 11-00144 LEK/BMK<br>(Declaratory and Injunctive Relief and Other Civil Action)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' RENEWED MOTION TO COMPEL ENTRY ONTO DESIGNATED LAND AND MOTION FOR LEAVE TO SUPPLEMENT EXPERT REPORTS** |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' RENEWED MOTION TO COMPEL ENTRY ONTO DESIGNATED LAND AND MOTION FOR LEAVE TO SUPPLEMENT EXPERT REPORTS**

### I. **INTRODUCTION**

Plaintiffs hereby renew their previously-filed motion for a site inspection on all the grounds previously asserted. (The previously-filed motion is attached hereto as Exhibit A). Magistrate Judge Kurren denied this motion without prejudice because at the time of its filing, a motion for summary judgment was

pending. (A transcript of this hearing is attached as Exhibit B to this Motion). At that hearing, Magistrate Judge Kurren stated:

> So I think the issues are well defined for purposes of summary judgment. Let's see where you are on that. If the case moves further beyond that and is going to go to trial, then come back and see me if you can't an agreement. Frankly, I think with the kind of inspection that you're actually interested in, this is something that you folks should agree upon, because if you don't, then I will, you know, probably order it and require that you work out, you know, some way of doing it in an appropriate manner that meets the needs of everyone, but right now, no.

Exhibit B, p. 9. Plaintiffs' claims for outdoor group worship and access to some sacred items survived summary judgment. Nonetheless, Defendants' refuse to agree to permit a site inspection because the stone alter claim was dismissed.

The dismissed stone alter claim is not the only claim that places the physical plant of Saguaro at issue. The merit of the outdoor group worship claim turns in part on whether it is viable for Defendants to accommodate group worship on a daily basis. Defendants repeatedly argued throughout the summary judgment briefing that the physical plant of Saguaro is a constraint on Plaintiffs' religious exercises. Even in moving for partial reconsideration of the summary judgment ruling, Defendants argued:

> The facility's recreation yards are already in almost constant use throughout the day and cannot accommodate daily group worship of 179 inmates outdoors at sunrise regardless of whether a NHRP pod could safely be operated **based upon the physical plant** and classification **concerns discussed above**.

2

Defendants' Motion for Partial Reconsideration (Doc. No. 500), p. 8 (emphasis added).  Their defense against Plaintiffs' claims rests almost entirely on the prison's physical characteristics.  They assert that they cannot monitor "designated space" for Native Hawaiian group worship; and that there are "security problems of allowing inmates to move between the yard and their cells at sunrise (and other times)" and addressing "concerns of escape and contraband smuggling caused by such movement."  *Id.*, p. 9.  They also assert that Plaintiffs' group worship request would require the use of 7 different recreation yards.  *Id.*, p. 10.

     Plaintiffs will be at a severe disadvantage at trial if their experts and their attorneys are not permitted to examine the prison to test these assertions.  Richard Subia, Plaintiffs' expert witness, must conduct a site inspection because "[a] schematic cannot show whether an outside area can address security concerns such as appropriate lighting, blind spots on the yard, and what lines of site available to correctional officers tasked with supervising an outdoor area."  Subia Decl. ¶ 5.  This inspection is also necessary to test Defendants' assertions about inmate movements and the possibility that contraband could be smuggled around the prison during these movements.

     In sum, although the court ruled that Plaintiffs' claims for a sacred outdoor space with a stone altar did not survive summary judgment, a site inspection is still necessary as a result of the court's decision to allow their daily, outdoor group

3

worship and sacred items claims to proceed to trial. The timing concerns presented during the court's initial hearing are no longer present. Accordingly, a site inspection should be permitted in order to allow Plaintiffs' security experts to adequately prepare to rebut Defendants arguments at trial.

## II.  PROCEDURAL HISTORY

The court's original rule 16 scheduling order was vacated in late 2012 following repeated discovery delays on the part of Defendants. On July 31, 2013, Defendants filed their Motion for Summary Judgment. (Doc. 361). This dispositive motion was filed while discovery requests from Plaintiffs were actively pending, and before trial or other discovery deadlines were set by the court.

In order to preserve their right to respond to Defendants' motion with expert testimony, Plaintiffs disclosed their expert witness reports on September 5, 2013 and October 14, 2013, respectively. (Docs. 385, 403). These reports were based solely on the documentary evidence available at that point in time. However, the Plaintiffs' experts reserved the right to supplement their reports as new facts or evidence became available, as discovery was ongoing at this time.

On September 7, 2013, Plaintiffs contacted Defendants to arrange a site inspection but Defendants refused to entertain the request. At the hearing on Plaintiffs' Motion to Compel Entry, held on October 25, 2013, Judge Kurren determined that a site inspection was impractical due to the briefing schedule on

Defendants' pending summary judgment motion. Exhibit B, p.9. However, Judge Kurren indicated that following summary judgment Defendants should permit a site inspection as relevant to Plaintiffs' remaining claims. *Id.*

On March 31, 2014, Judge Kobayashi issued an order granting in part and denying in part Defendants' Motion for Summary Judgment and granting in part and denying in part Plaintiffs' Motion for Partial Summary Judgment. (Doc. 497). This order determined that Plaintiffs' daily outdoor worship claim and aspects of the sacred items claims should be decided by a jury. The court also denied summary judgment as to Plaintiff Robert Holbron's segregation claims.

On April 21, 2014, Judge Kobayashi set Plaintiffs' case for trial and ordered August 1, 2014 as the discovery cut-off date. (Doc. 510, Exhibit C). Several days later, Plaintiffs' renewed their request for a site inspection. Exhibit D. Defendants refused to accommodate the request based upon Judge Kobayashi's scheduling order and the representation that the physical plant is not at issue in this case. Exhibit E, p. 5.

### III.  ARGUMENT

    **A. This Court Should Issue an Order Compelling Defendants to Accommodate a Site Inspection of Saguaro by Plaintiffs' Security Experts and Two Attorneys of Record**

The court should grant Plaintiffs' motion based on the same authorities cited in Plaintiffs' previous motion. Exhibit A. As explained by expert witness Richard

5

Subia, a physical inspection of the premises is necessary to assess the security concerns proffered by Defendants' in their Motion for Summary Judgment on Plaintiffs' daily outdoor worship claim, and to assess the accommodations made for other similarly situated religious groups.

Contrary, to the position assumed by counsel for Defendants' in response to Plaintiffs' recent request for a site inspection, Defendants' outdoor worship arguments clearly place the physical plant at Saguaro- both recreation yards and 'dead space'- at issue.[1]  Assuming *arguendo* that Defendants' intend to proceed to trial solely on staffing concerns, a site inspection is relevant to assessing these concerns as well.  As explained in Subia's declaration, prison staffing needs depend on physical plant limitations- such as the location of cameras and the lines of sites available to on-duty officers- which cannot be adequately assessed using two-dimensional renderings.  Subia Decl. ¶ 5.  Additionally, Defendants refuse to produce any two-dimensional renderings of the physical plant based on their safety

---

[1] Summary Judgment Declaration of Warden Todd Thomas at ¶ 38 (emphasis added):
> [The building schedule] does not allow the addition of daily Native Hawaiian outdoors worships that would require controlling other inmate movement so as to exclude them from the **recreation yard** during that time . ..  What Plaintiffs advance would require SCC to hire six additional staff for 365 days a year. Additionally, SCC's **physical plant** does not have space to build the Native Hawaiian practitioner group a separate yard for daily outdoor worship and their alter to accommodate 150 plus practitioners.

(Doc. 361-23).

and security concerns. Thus, a site inspection is imperative to assess Defendants' physical plant assertions.

In short, Judge Kobayashi's summary judgment order does not alter the balance of interests weighing in favor of an order compelling Defendants' to permit inspection of the Saguaro facility. Rather, the court's order moots out the timing concerns previously raised by Judge Kurren at the October hearing.[2] Pre-trial discovery does not close until August 1, 2014, 77 days out from the filing of this renewed motion. This timeline provides ample time for Plaintiffs to complete an inspection of the Saguaro facility and to file an amended report, and for Defendants' to depose Plaintiffs' security experts on the content of those amended reports. Additionally, as Defendants have requested to depose the Plaintiffs, a site inspection can reasonably be accommodated at the same time.

### B. The Court Should Grant Plaintiffs Leave to Supplement/Amend Their Expert Witness Reports to Address Facts Discovered During the Site Inspection

The court should grant Plaintiffs' request for leave to supplement their expert witness reports to address facts discovered during the site inspection. Under

---

[2] Plaintiffs' Motion to Compel Entry Onto Designated Land was heard by Judge Kurren on October 25, 2014. At that point in time, Defendants' Motion for Summary Judgment was set for hearing on December 2, 2014 (38 days out from the date of the hearing). Subsequent to the hearing, Plaintiffs filed their Motion for Partial Summary Judgment. (Doc. 420). On November 11, 2014, court set both summary judgment motions for hearing was continued on January 13, 2014. (Doc. 421, 422).

the Federal Rules of Civil Procedure, the default deadline for disclosing expert witness reports is 90 days before trial, and the deadline for disclosing rebuttal witnesses is 30 days after the witness disclosure deadline. Fed. R. Civ. P. 26(a)(2)(D)(i). Because there was no scheduling order in place at the time Plaintiffs filed their expert witness reports last fall, these reports were timely under the default rules. Further, as evidenced by Plaintiffs' motion to compel a site inspection that was filed last October, Plaintiffs had every intention of amending the expert reports to address Saguaro's physical plant restrictions well in advance of the operative discovery deadlines. Therefore, supplementation should be permitted as timely under Rule 26(e). In the alternative, assuming *arguendo* that this request is untimely, amendment should be permitted because it is substantially justified and harmless.

### 1. Amendment Is Proper Under Rule 26(e)

Rule 26 requires parties to disclose the identity of their expert witnesses "accompanied by a written report prepared and signed by the witness." Fed. R. Civ. P. 26(a)(2)(B). Rule 26(e) permits supplementation of an expert report "in a timely manner if the party learns that in some material respect the disclosure . . . is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). The default deadline for disclosing experts

is 90 days before trial and the default deadline for disclosing rebuttal experts is 30 days after the expert witness disclosure deadline. Fed. R. Civ. P. 26(a)(2)(D). The trial court may alter the timing and sequence of expert disclosures. *Id.*

Plaintiffs should be permitted to amend their expert reports as a matter of course under the federal rules because the physical plant limitations qualify as "information . . . not otherwise made known to [Plaintiffs] during the discovery process." Fed. R. Civ. P. 26(e)(1)(A). Until their summary judgment motion was filed, Defendants relied primarily on the position that they are not required to accommodate practices that are not "central tenets" of the Native Hawaiian religion.[3] Although Warden Thomas mentioned space restrictions at his April deposition, he relied primarily on the fact that Plaintiffs requested to go outside "in

---

[3] See Defendant Corrections Corporation of America's Responses to Plaintiffs Richard Davis et al.'s Request for Admissions to Defendant Corrections Corporation of America, dated February 2, 2012 (Attached as Exhibit F). In their Response, Defendants repeatedly assert that "CCA's accommodations for Native Hawaiian cultural practices are reasonable considering the unique security concerns presented by the correctional setting and any modifications are within the parameters set forth by tenets of the traditional Native Hawaiian religion and conform to ACA standards."; Defendants Answer to Second Amended Complaint stating that "Defendants admit only that, upon information and belief, spiritual beliefs and practices within the Native Hawaiian culture and community vary greatly and are interpreted widely and with fluidity. Defendants further affirmatively allege that CCA's accommodations for Native Hawaiian cultural practices are reasonable considering the unique security concerns presented by the correctional setting and any modifications are within the parameters set forth by tenets of the traditional Native Hawaiian religion. Defendants deny that the Native Hawaiian religion is governed by "central tenets" or "critical tenets." (Doc. 173 at ¶¶ 46, 47, 50, 51, 52).

the dark"[4] and that sunrise services are not "required" by DPS.[5]  Expert witness Richard Subia addressed the lighting argument in his expert report.  However, during the course of summary judgment, Defendants came to rely much more heavily on staffing patterns, inmate movements, and the physical plant restrictions.  (In fact, Defendants now assert that they are relying exclusively on staffing and inmate movement concerns. Exhibit E).  It would be unfair to Plaintiffs to penalize them for Defendants' shifting position by characterizing the physical plan restrictions as information disclosed by Defendants in advance of their summary judgment filings.

   Judge Kobayashi's decision in *Lidner v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625, 640 (D. Haw. 2008), is not to the contrary.  In that decision, Judge Kobayashi ruled that supplementation of an expert report was not necessary where "Plaintiff could have conducted the additional field work prior to his original expert disclosure deadline or before the June 2007 rebuttal reports and Plaintiff should have known at that time that such additional field work would be relevant." *Id.* (citing *Allgood v. Gen Motors Corp.*, No. 1:02-cv-1077-DFH-TAB, 2007 U.S. Dist. LEXIS 8123, 2007 WL 647496, at*3 (S.D. Ind. Feb. 2, 2007).

---

[4] Thomas Tr. 284:25-287:22, Exhibit G.
[5] Thomas Tr. 288:11-14 "No, for the fifth time, I didn't consider it, have not considered it for any religion, because it's not needed or required, unless you can show me a document that says otherwise. I've said no five times." Exhibit G.

*Lidner* is distinguishable in two important ways. First, in *Lidner*, the field work concerned the adequacy of lessee Meadow Gold's previous efforts to remediate Plaintiff's property, an issue of central relevance to Plaintiff's claims. 249 F.R.D. at 631-32, Thus, the trenching activity which formed the basis of the expert's supplemental report, was foreseeable from the outset of the case. *Id*. at 629-32. In contrast, the site inspection request here is to respond to Defendants' defenses which, as explained above have been a moving target.

Second, the Plaintiff in *Lidner* was operating under a scheduling order that provided advance notice of upcoming deadlines. In that situation, the judge ruled it would be an abuse of the discovery rules for Plaintiff to "supplement" a report with field work that the experts could have conducted in advance of filing their initial reports. 249 F.R.D. at 640. Here, in comparison, Plaintiffs did not violate any deadlines or orders of the court. In fact, Plaintiffs disclosed their experts voluntarily, to give Defendants advance notice that expert testimony would be included in the summary judgment briefs.

In short, Plaintiffs have not violated any court orders or default deadlines concerning disclosure of expert witnesses and should not be penalized for their efforts to respond to arguments made in Defendants' summary judgment motion. Further, because Plaintiffs' expert witnesses have already been previously disclosed to Defendants, supplementation will not violate Judge Kobayashi's

11

scheduling order concerning disclosure.  Finally, discovery is ongoing and Defendants have not yet deposed Plaintiffs' expert witnesses.  Accordingly, supplementation will not incur additional costs or displace the court's scheduling order.  Therefore, supplementation should be permitted under rule 26(e).  Fed. R. Civ. P. 26(e).

### 2. The Addition of the New Information is Substantially Justified and Harmless

Rule 37(c)(1) excludes untimely expert witness testimony, unless the "parties' failure to disclose the required information is substantially justified **or** harmless."  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp*., 259 F.3d 1101, 1106 (9th Cir. 2001) (emphasis added); *see also Carson Harbor Vill., Ltd. v. Unocal Corp*., 2003 U.S. Dist. LEXIS 14438, 2003 WL 22038700, *2 (C.D. Cal. 2003).  Assuming *arguendo* that amendment of the expert report is untimely, Plaintiffs' motion should be granted because amendment is both substantially justified **and** harmless.

As explained above, amendment is substantially justified because need for a site inspection could not have been reasonably anticipated before Defendants filed their summary judgment motion.  In answering the complaint, Defendants relied primarily on their understanding of the Native Hawaiian religion and their belief that only "central tenets" of the religion need to be accommodated.  At deposition, the warden of Saguaro relied on lighting and a religious litmus test to explain his

decision. The federal rules do not support the principle that Plaintiffs' must anticipate and rebut Defendants argument in advance of these arguments being made by the opposing party. On the contrary, courts will sanction parties who attempt to address an element of their case in chief though supplementation or amendment. *Wong v. Regents of the Univ. of Cal.*, 410 F.3d 1052, 1061-62 (9th Cir. 2005) (leave to amend denied where expert's report failed to address whether Plaintiff was "disabled" in an ADA action). Plaintiffs are justified in timely seeking access to Saguaro to rebut Defendants' revised argument concerning their request for sunrise worship.

Additionally, amendment is harmless because Defendants will not suffer any prejudice if Plaintiffs are permitted to amend their expert witness reports. As stated above, discovery does not close in this case for another 77 days. This timeline provides Defendants' with sufficient time to depose Plaintiffs' security experts in advance of the court's discovery deadlines. Additionally, amendment does not post any duplicative cost concerns because Plaintiffs security experts have not yet been deposed by Defendants. Further, a site inspection can be accommodated concurrently with deposition of Plaintiffs which will require counsel for Plaintiffs to travel to Arizona.

## IV. The Court Should Grant Plaintiffs' Fees and Costs Incurred in Bringing This Motion

Under the Federal Rules, "the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). However, the court must not order payment if (a) the moving party did not attempt to resolve the dispute in good faith before seeking judicial intervention, (b) the responding party's nonresponse, objection, or nondisclosure was substantially justified, or (c) other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii).

Plaintiffs attempted to resolve this discovery dispute informally, based upon the transcript of the previous hearing in which the parties were instructed to come to an agreement without the intervention of the court. Defendants are not substantially justified in arguing that the outdoor daily worship claim does not implicate the exact same issues briefed by the parties in October of last year. The parties and the court have all operated under the understanding that the stone alter request and the outdoor daily worship request substantially overlap as to the Defendants' concerns with accommodating these practices. Therefore, Defendants did not act in good faith in making this argument and should pay the attorneys' fees incurred in bringing this motion.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this court (1) issue an order compelling Defendant CCA to permit Plaintiffs' experts entry to Saguaro Correctional Facility to conduct a site visit as detailed in Plaintiffs' motion (2) grant Plaintiffs leave to amend their expert witness reports and (3) grant Plaintiffs their fees and costs in bringing this motion.

DATED:  Honolulu, Hawaii, May 15, 2014.

/s/Leina`ala L. Ley
SHARLA MANLEY
LEINA`ALA L. LEY
JAMES KAWAHITO
SHAWN C. WESTRICK
Attorneys for Plaintiffs