IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

RICHARD KAPELA DAVIS, MICHAEL )    CIVIL NO. 11-00144 LEK-BMK
HUGHES, DAMIEN KAAHU, ROBERT )
A. HOLBRON, JAMES KANE, III, )
ELLINGTON KEAWE, KALAI POAHA, )
TYRONE KAWAELANILUA`OLE )
NA`OKI GALDONES, )
                             )
         Plaintiffs, )
                             )
    vs. )
                             )
NEIL ABERCROMBIE, in his )
official capacity as the )
Governor of the State of )
Hawaii; TED SAKAI, in his )
official capacity as the )
Director of the Hawaii )
Department of Public Safety; )
CORRECTIONS CORPORATIONS OF )
AMERICA, )
                             )
         Defendants. )
_____ )

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT RE: SOVEREIGN IMMUNITY/DAMAGES**

        On May 13, 2014, Defendants Ted Sakai, in his official

capacity as the Director of the Hawai`i Department of Public

Safety ("Defendant Sakai" and "DPS"), and Corrections Corporation

of America ("CCA", collectively "Defendants") filed their Motion

for Summary Judgment Re: Sovereign Immunity/Damages ("Motion").

[Dkt. no. 519.]  Plaintiffs Richard Kapela Davis,

Tyrone K.N. Galdones, Robert A. Holbron, Michael Hughes,

Damien Kaahu, James Kane, III, Ellington Keawe, and

Kalani K. Poaha (collectively "Plaintiffs") filed their

memorandum in opposition on June 16, 2014.  [Dkt. no. 545.]

Defendants filed their reply on June 23, 2014.  [Dkt. no. 553.]
This matter came on for hearing on July 7, 2014.

On July 14, 2014, Plaintiffs filed a submission of new
evidence in opposition to the Motion ("7/14/14 Submission").
[Dkt. no. 580.]  On July 21, 2014, Defendants filed an opposition
to the 7/14/14 Submission.  [Dkt. no. 585.]  After careful
consideration of the Motion, supporting and opposing documents,
and the arguments of counsel, Defendants' Motion is HEREBY
GRANTED IN PART AND DENIED IN PART for the reasons set forth
below.

## BACKGROUND

The relevant factual and procedural background in this
case is set forth in this Court's June 13, 2014 Amended Order
Granting in Part and Denying in Part Defendants' Motion for
Summary Judgment; Granting in Part and Denying in Part Plaintiff
Robert Holbron's Counter-motion for Summary Judgment on His
Claims; and Granting in Part and Denying in Part Plaintiffs'
Motion for Partial Summary Judgment Against Defendants as to
Their Claims under the Religious Land Use and Institutionalized
Persons Act ("6/13/14 Summary Judgment Order").  [Dkt. no. 544.[1]]

---

[1] The 6/13/14 Summary Judgment Order is also available at
2014 WL 2716856.  This Court filed the original order on
March 31, 2014 ("3/31/14 Summary Judgment Order").  2014 WL
1321006.  Defendants subsequently moved for reconsideration on
April 14, 2014.  [Dkt. no. 500.]  On June 2, 2014, this Court
issued an order granting in part and denying in part Defendants'
(continued...)

This Court incorporates the background section of the 6/13/14 Summary Judgment Order in the instant order.

This Court limited the scope of the 6/13/14 Summary Judgment Order to Plaintiffs' claims seeking prospective declaratory and injunctive relief.  2014 WL 2716856, at *3.  This Court directed Defendants

> to file a motion for summary judgment addressing:
> 1) whether sovereign immunity and the 42 U.S.C.
> § 1983 definition of a "person" precludes
> Plaintiffs' claims seeking either damages or
> retrospective equitable relief against Defendant
> Sakai; and 2) whether CCA stands in the shoes of
> DPS for purposes of the sovereign immunity
> analysis and the § 1983 "person" analysis.

Id.  Defendants filed the instant Motion in response to that order.

The 6/13/14 Summary Judgment Order granted summary judgment in favor of Plaintiffs insofar as this Court ruled that:[2]

---

[1](...continued)
motion for reconsideration ("6/2/14 Reconsideration Order"), 2014 WL 2468348, and this Court issued the 6/13/14 Summary Judgment Order to incorporate the rulings in the Reconsideration Order. Defendants filed the instant Motion before this Court issued either the 6/2/14 Reconsideration Order or the 6/13/14 Summary Judgment Order.

[2] This Court has only listed the relevant rulings.  Some of the rulings regarding Plaintiffs' religious exercise were ultimately irrelevant because this Court granted summary judgment in favor of Defendants on that claim.

- as to the Daily Outdoor Worship Plaintiffs,[3] group worship outdoors, on a daily basis, is a religious exercise for purposes of the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc, *et seq.* ("RLUIPA"); id. at *11;

- Plaintiffs' use of each of the sacred items at issue in Count XXIV (Plaintiffs' RLUIPA claim regarding access to sacred items) is a religious exercise for purposes of RLUIPA; id. at *17;

- the Outdoor Altar Plaintiffs'[4] use of a sacred outdoor space, with a stone altar, is a religious exercise for purposes of RLUIPA (but this Court denied summary judgment to Plaintiffs as to the size and composition of the outdoor space and the altar); id. at *18;

- the Spiritual Advisor Plaintiffs'[5] regular access to a spiritual advisor is a religious exercise for purposes of their RLUIPA claim (but this Court denied summary judgment to Plaintiffs as to the question of what constitutes "regular" access and the question of what type of access is necessary for the Spiritual Advisor Plaintiffs' religious exercise); id. at *20.

The 6/13/14 Summary Judgment Order granted summary judgment in favor of Defendants as to:

- Plaintiffs' claims seeking prospective equitable relief regarding Red Rock Correctional Center; id. at *4;

- Plaintiff Poaha's claims seeking prospective equitable relief; id. at *5;

---

[3] In the 6/13/14 Summary Judgment Order, "the Daily Outdoor Worship Plaintiffs" refer to Plaintiffs Davis, Galdones, Hughes, Kaahu, and Kane.  2014 WL 2716856, at *10 n.15.

[4] In the 6/13/14 Summary Judgment Order, "the Outdoor Altar Plaintiffs" refer to Plaintiffs Davis, Galdones, Hughes, Kaahu, and Kane.  Id. at *17 n.23.

[5] In the 6/13/14 Summary Judgment Order, "the Spiritual Advisor Plaintiffs" refer to Plaintiffs Holbron, Kane, and Keawe. Id. at *19 n.24.

- Count XXIII (Plaintiffs' RLUIPA claim regarding the observance of Makahiki), Counts II and XII (Plaintiffs' federal and state free exercise claims regarding the observance of Makahiki), and Counts VII and XVII (Plaintiffs' federal and state equal protection claims regarding the observance of Makahiki); id. at *29;

- all items at issue in Count XXIV, Counts III and XII (Plaintiffs' federal and state free exercise claims regarding access to sacred items), except for the portions of those claims based on lack of daily access to personal amulets and `ohe hano ihu (bamboo nose flute); id. at *35, *37;

- the portions of Counts VIII and XVIII (Plaintiffs' federal and state equal protection claims regarding access to sacred items) as to: ti leaf, lei, block of lama wood, pa`akai (sea salt), kapa (cloth), `apu (coconut shell bowl), kala (seaweed), ti shoots, `olena (yellow ginger), pahu (tree stump drum), ipu (gourd drum), ipu heke (double gourd drum), `ohe ka eke`eke (percussion instrument), pu niu (small knee drum), and moena (floor mats made of woven lauhala grasses, or natural fibers); id. at *36-37;

- Count XXV (the Outdoor Altar Plaintiffs' RLUIPA claim regarding access to a sacred space with a stone altar), Counts IV and XIV (the Outdoor Altar Plaintiffs' federal and state free exercise claims regarding access to a sacred space with a stone altar), and Counts IX and XIX (the Outdoor Altar Plaintiffs' federal and state equal protection claims regarding access to a sacred space with a stone altar); id. at *39-40; and

- Count XXVI (the Spiritual Advisor Plaintiffs' RLUIPA claim), Counts V and XV (the Spiritual Advisor Plaintiffs' federal and state free exercise claims), and Counts X and XX (the Spiritual Advisor Plaintiffs' federal and state equal protection claims); id. at *41-42.

Thus, of Plaintiffs' claims seeking prospective relief, only the following remain: all of Counts I, VI, XI, XVI, and XXII; the portions of Counts III, XIII, and XXIV related to lack of daily access to a personal amulet and to `ohe hano ihu; and the portions of Counts VIII and XVIII related to a personal amulet,

5

*malo, kihei* and *pau* (native garments), a *kahili* (pole with cylindrical top covered with feathers, cloth, flora and/or painted), *pu kani* (conch shell), *pu ohe* (bamboo shell horn).

In the instant Motion, Defendants ask this Court to grant summary judgment in their favor as to: all of Plaintiffs' claims against Defendant Sakai; Plaintiffs' RLUIPA claims against CCA; Plaintiffs' claims against CCA for violation of the Hawai`i State Constitution; and Plaintiff Galdones's request for punitive damages associated with his state law retaliation claim.

**DISCUSSION**

**I.   Damages and Retrospective Relief Against Defendant Sakai**

Defendants first argue that they are entitled to summary judgment as to all of Plaintiffs' § 1983 claims against Defendant Sakai for damages and retrospective relief because Defendant Sakai is not a "person" for purposes of such claims. Plaintiffs respond that "Defendant Sakai is liable in his official capacity as director of the Department of Public Safety for injunctive and prospective declaratory relief.  Having named Sakai in his official capacity, Plaintiffs are not pursuing damages against the director in his individual capacity."  [Mem. in Opp. at 1 n.1.]

Based on Plaintiffs' representation, and based upon the same analysis set forth in this Court's September 13, 2013 Order Granting Defendant Neil Abercrombie's Motion for Judgment on the

Pleadings ("9/13/13 Order"), 2013 WL 5204982, at *12-13,[6] this Court concludes that Defendants are entitled to summary judgment as to any claims in the Plaintiffs' Second Amended Complaint for Damages and for Classwide Declaratory and Injunctive Relief ("Second Amended Complaint"), [filed 8/22/12 (dkt. no. 145),] seeking damages and retrospective relief against Defendant Sakai. Defendant's Motion is GRANTED as to Plaintiffs' claims for damages and retrospective relief against Defendant Sakai.

## II. **Prospective Relief Against Defendant Sakai**

Defendants next argue that they are entitled to summary judgment as to all of Plaintiffs' § 1983 claims against Defendant Sakai for prospective relief because he was not involved in the decision-making regarding the religious programming at issue, and he does not have the authority to carry out the requested injunctive relief.

First, in the 9/13/13 Order, this Court ruled "if Plaintiffs prevail in this case, it is Defendant Sakai (as DPS director) who has the statutory authority to execute the requested injunctive relief and to remedy any violations identified in any declaratory relief." 9/13/13 Order, 2013 WL 5204982, at *14. In so ruling, this Court stated:

> Haw. Rev. Stat. § 353C-2 sets forth the powers and duties of the director of DPS and states, in pertinent part:

---

[6] The 9/13/13 Order is also available as docket number 390.

> [[(a)] **The director of public safety** shall
> administer the public safety programs of the
> department of public safety and **shall be
> responsible for the formulation and
> implementation of state goals and objectives
> for correctional and law enforcement
> programs, including ensuring that
> correctional facilities and correctional
> services meet the present and future needs of
> persons committed to the correctional
> facilities.** In the administration of these
> programs, the director may:
>
> > . . . .
> >
> > (2) Train, equip, maintain, and
> > supervise the force of public safety
> > officers, including law enforcement and
> > correctional personnel, and other
> > employees of the department;
> >
> > . . . .
> >
> > (4) Perform other duties as may be
> > required by law;
> >
> > (5) Adopt, pursuant to chapter 91, rules
> > that are necessary or desirable for the
> > administration of public safety
> > programs; and
> >
> > (6) Enter into contracts in behalf of the
> > department and take all actions deemed
> > necessary and appropriate for the proper
> > and efficient administration of the
> > department.
>
> (Emphasis added.) In addition, it is the director
> of DPS who has the authority to "effect the
> transfer of a committed felon to any correctional
> institution located in another state. . . ." Haw.
> Rev. Stat. § 353-16.2(a); Haw. Rev. Stat.
> § 353-1. . . .

Id. (emphases and some alterations in 9/13/13 Order). Defendants

did not seek reconsideration of the 9/13/13 Order. In the

6/13/14 Summary Judgment Order, this Court relied on the analysis in the 9/13/13 Order and denied summary judgment to Defendants as to Plaintiffs' claims for prospective equitable relief against Defendant Sakai. 2014 WL 2716856, at *4.

Thus, this Court's ruling that Defendant Sakai is the proper State official to ensure the execution of any prospective equitable relief ordered is the law of the case. "Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." United States v. Jingles, 702 F.3d 494, 499 (9th Cir. 2012) (citation omitted), *cert. denied*, 133 S. Ct. 1650 (2013). However, due to the importance of the issue, this Court will address the merits of Defendants' current argument regarding Plaintiffs' claims for prospective relief against Defendant Sakai.

This Court first notes that Plaintiffs do not argue that Defendant Sakai personally made the religious programming decisions which allegedly violated Plaintiffs' rights under RLUIPA, the United States Constitution, and the Hawai`i State Constitution. In the 9/13/13 Order, this Court stated:

> The Ninth Circuit has recognized that the proper state defendant in a § 1983 action seeking prospective injunctive relief is the one who "would be responsible for ensuring that injunctive relief was carried out, **even if he was not personally involved in the decision giving rise to [the plaintiff's] claims**." Pouncil v. Tilton, 704 F.3d 568, 576 (9th Cir. 2012) (citing Gonzalez v.

9

> Feinerman, 663 F.3d 311, 315 (7th Cir. 2011) (the
> prison warden was the proper defendant for a claim
> of injunctive relief, notwithstanding his lack of
> personal involvement in the challenged conduct,
> because he would be responsible for ensuring that
> the injunctive relief was carried out)), *petition
> for cert. filed*, 81 U.S.L.W. 3643 (Apr. 25, 2013);
> see also Hartmann v. Cal. Dep't of Corr. & Rehab.,
> 707 F.3d 1114, 1127 (9th Cir. 2013) (holding that
> official who the defendants admitted was "the
> 'most appropriate' defendant to execute
> court-ordered injunctive relief" and the official
> who "would have the authority to ensure execution
> of any order issued" were "proper
> official-capacity defendants for Plaintiffs'
> Establishment Clause claim").

2013 WL 5204982, at *14 (alteration in 9/13/13 Order) (emphasis

added). Although both Pouncil and Hartmann involved motions to

dismiss, Pouncil, 704 F.3d at 570; Hartmann, 707 F.3d at 1120-21,

the legal principles articulated in those cases are still

applicable to the issue before this Court in the instant Motion.

If there is a genuine issue of material fact as to whether

Defendant Sakai would be responsible for ensuring that any

injunctive relief was carried out, Defendants would not be

entitled to judgment as a matter of law. See Fed. R. Civ. P.

56(a) (stating that a movant is entitled to summary judgment "if

the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter

of law"). In determining whether there is a genuine issue of

material fact, this Court must view the current record in the

light most favorable to Plaintiffs. See Crowley v. Bannister,

734 F.3d 967, 976 (9th Cir. 2013) ("We review a grant of summary

judgment de novo and must determine, viewing the facts in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." (citations and quotation marks omitted)).

Defendants argue that Defendant Sakai does not have the authority to ensure that Saguaro Correctional Center ("Saguaro") carries out any injunctive relief that this Court orders.  They contend that CCA is the only party with the authority to make any changes required by an award of injunctive relief.  Defendants acknowledge that CCA and the DPS director have a contractual relationship regarding the housing of Hawai`i inmates at Saguaro. Defendants argue that, subject to constitutional restrictions, DPS defers to CCA's autonomy and discretion over Saguaro's day-to-day operations.  In this case, Plaintiffs allege that their constitutional rights are being violated, and this Court previously denied summary judgment to Defendants as to Plaintiffs' claims for prospective relief for violations of their federal and state constitutional claims regarding daily worship practices and regarding access to certain sacred items.  If Plaintiffs ultimately establish that there were violations of their constitutional rights, Defendant Sakai would have the authority to ensure CCA's compliance with the prospective relief

this Court orders because the constitutional violations would be outside of the scope of the discretion that DPS allows CCA.

Second, Saguaro Warden Todd Thomas has stated that DPS personnel "monitor correctional services agreement compliance as to [Saguaro's] operations[.]" [Motion, Defs.' Concise Statement of Facts in Supp. of Motion ("Defs.' CSOF"), Decl. of Warden Thomas ("Thomas Decl.") at ¶ 21.[7]] Plaintiffs argue that CCA's contracts with DPS require CCA to comply with all federal and state laws. The Scope of Services Attachment to the "contract for Health and Human Services, Competitive Purchase Services, dated June 2011" ("June 2011 Contract"), [Pltfs.' Joint Separate Concise Statement of Facts in Opp. to Motion, filed 6/16/14 (dkt. no. 546) ("Pltfs.' CSOF"), Decl. of Sharla Manley ("Manley Decl.") at ¶ 7,] states, in pertinent part:

> 9.   All Inmates shall be confined and treated in a facility which:
>
>      a.   Provides a level of program activity for the Inmate that is suitable to allow every Inmate in general population who meet the relevant criteria to participate in meaningful educational, vocational training, drug and other treatment and counseling programs; and
>
>      b.   Does so in a matter that meets and does not violate any rights provided under the laws and Constitution of the United

---

[7] The version of the Thomas Declaration filed with Defendants' CSOF is unsigned, but it states that it was approved by telephone. [Thomas Decl. at pg. 4.] Defendants filed the signed version on May 21, 2014. [Dkt. no. 525.]

States or of the States of Hawaii and
Arizona.

[Id., Exh. 5 at 11.]  Similarly, the General Conditions for

Health & Human Services Contracts, which are part of the June

2011 Contract, [Manley Decl. at ¶ 8,] states:

> 1.2  Representations of the PROVIDER.  As a
> necessary condition to the formation of this
> Contract, the PROVIDER makes the
> representations contained in this paragraph,
> and the STATE relies upon such
> representations as a material inducement to
> entering into this Contract.
>
>> 1.2.1    Compliance with Laws.  As of the
>> date of this Contract, the PROVIDER
>> complies with all federal, state,
>> and county laws, ordinances, codes,
>> rules, and regulations, as the same
>> may be amended from time to time,
>> that in any way affect the
>> PROVIDER's performance of this
>> Contract.
>
> . . . .
>
> 1.3  Compliance with Laws.  The PROVIDER shall
> comply with all federal, state, and county
> laws, ordinances, codes, rules, and
> regulations, as the same may be amended from
> time to time, that in any way affect the
> PROVIDER's performance of this
> Contract . . . .

[Id., Exh. 6 at DAVIS_HIDPS003494.]  Insofar as CCA's contract

with DPS requires CCA to comply with, inter alia, all applicable

federal laws, if this case ultimately results in a finding that

CCA violated Plaintiffs' rights under RLUIPA, DPS can also ensure

CCA's compliance with any prospective equitable relief ordered as

part of DPS's monitoring of CCA's contract compliance.

Plaintiffs also assert that DPS has the authority to ensure CCA's compliance with any prospective equitable relief ordered in this case, as evidenced by the fact that CCA already relies upon DPS's polices to make decisions regarding accommodations for inmate practitioners of the Native Hawaiian religion. Plaintiffs rely on a July 17, 2008 memorandum from Shari Kimoto, the DPS Mainland Branch Administrator, to Warden Thomas transmitting the "PSD Makahiki Basic Guidelines and Retention List for In-State and Out-of-State Correctional Facilities." [Manley Decl., Exh. 9.[8]] The transmittal memo states, in pertinent part:

> Attached is the approved **Department's basic guidelines** for the Makahiki season **to be implemented in both in-state and out-of-state facilities**.
>
> . . . .
>
> Also attached is a retention list of religious items that have been verified by Kaiana Haili. Please be advised that the retention item of Alae Salt (Hawaiian Salt) due to its clear, crystal form, **may** be brought into the facility for ceremonial purposes only upon your approval and must be taken out of the facility upon the completion of the ceremony.

_____

[8] This Court will refer to pages 2 and 3 of Exhibit 9 as "the Makahiki Guidelines," and to pages 4 and 5 of Exhibit 9 as "the Retention List." Defendant Sakai described these as "akin to like a – it's something we would use to carry out a facility policy or to clarify a facility policy." [Manley Decl., Exh. 10 (Excerpts of Trans. of 5/7/13 Depo. of Theodore Sakai) ("Pltfs.' Excerpts of Sakai Depo.") at 66.]

> For the purposes of weekly meetings, it should be
> a minimum of 1-hour meetings; however, what you
> have in place (Wednesdays) is more than
> acceptable.  A Native Hawaiian Religious
> curriculum has been provided for the purposes of
> structure within the meetings.

[Id. at 1 (some emphases added).]  Plaintiffs assert that DPS

sent the document "in response to CCA's request for a policy that

it could follow on Native Hawaiian religion."  [Pltfs.' CSOF at

¶ 37 (some citations omitted) (citing Manley Decl., Exh. 15

(Excerpts of Trans. of 4/5/13 Depo. of Warden Todd Thomas)

("Thomas Depo.") at 104-05, 110).]  Warden Thomas described a

meeting in Hawai`i during which he discussed the Native Hawaiian

religion with several DPS officials to help develop guidelines.

[Thomas Depo. at 105, 110.]  During the meeting, he asked the DPS

officials: "'Is there a policy?  Is there a document?  Is there

something I can follow?'"  [Id. at 105.]  He also asked, "'can we

get a document what is [sic] expected?'"  [Id.]  He stated:

"'Write it down; we'll follow it to a T.  And if we have

questions, we will contact you.'  And every year since that time,

we followed it to a T."  [Id. at 106.]  According to Warden

Thomas, the Makahiki Guidelines and the Retention List arose out

of that meeting.  [Id.]

Warden Thomas also testified:

> Q.  Okay.  What decisions regarding the
> administration of Saguaro do you have to seek
> approval from your superior before enacting?
>
>           . . . .

THE WITNESS:  Well, as simple as changing a policy or as complex as anything else out of the norm.  But if I was going to change a policy, something in writing, I've got to submit a request through policy and procedure that would go to P and P, policy and procedure, in Nashville, and then that would be reviewed by legal, operations, vice presidents, and ultimately, I'm sure the chief operating officer signs off on it from the CCA standpoint.

From Hawaii's standpoint, I've got to submit it through [redacted] Kimoto, and I'm sure she would submit it through her chain of command.  It would take approval from both entities to make that happen.

BY MR. KAWAHITO:

Q.  For, let's say, religious programs, in order to change any of the policies that relate to religious programs, you would have to get approval from your superior at CCA as well as Shari Kimoto in Hawaii.  Is that correct?

A.  Correct.

[Id. at 125-26.]

Moreover, in denying Plaintiffs' written requests for religious accommodations, Saguaro officials cited DPS policies. For example, in denying one of Plaintiff Davis's requests regarding items and services for the observance of the Makahiki season, the Saguaro official stated, *inter alia*: "Here at Saguaro we operate under the current policy which or and has approved by [DPS] in the area of Native Hawaiian Spiritual leaders."  [Manley

Decl., Exh. 22 at DAVIS_SCC000394-95.[9]]  In responding to one of

Plaintiff Davis's requests regarding registration as a

practitioner of the Native Hawaiian religion, the Saguaro

official stated, *inter alia*: "We are going to operate under the

current policy that has been approved by [DPS] . . . ."  [Id. at

DAVIS_SCC000389-90.[10]]  While Plaintiffs' claims for prospective

equitable relief regarding the observance of the Makahiki season

and access to a spiritual advisor are no longer before this

Court, Saguaro's responses to Plaintiff Davis's requests support

Plaintiffs' position that DPS has the authority to ensure that

CCA complies with any prospective equitable relief ordered in

this case.

　　　This Court therefore finds that there are genuine

issues of material fact as to whether Defendant Sakai has the

authority to ensure CCA's compliance with any prospective

equitable relief ordered in this case.

---

[9] Exhibit 22 is the Affidavit of Juan Valenzuela in Support
of Defendants' Motion to Dismiss ("Valenzuela Affidavit"), with
Attachments A-R, originally filed in this case on
December 31, 2012 as docket number 220-3.  Pages DAVIS_SCC000394
and DAVIS_SCC000395 are the Informal Resolution form for one of
Plaintiff Davis's August 3, 2010 requests (DAVIS_SCC000396).
Both the Inmate Resolution form and the request are part of
Attachment F to the Valenzuela Affidavit.

[10] Pages DAVIS_SCC000389 and DAVIS_SCC000390 are the
Informal Resolution form, and DAVIS_SCC000391 is Inmate Request
Form.  Both are part of Attachment G to the Valenzuela Affidavit.

Further, in this Court's view, accepting Defendants'
argument that DPS has no authority to ensure that CCA remedies
any constitutional and statutory violations found in this case
would lead to an absurd result and would require an illogical
interpretation of the applicable state statutes governing DPS's
authority over Hawai`i inmates.  This would be a violation of the
well-established rules of statutory construction that the courts
follow in interpreting Hawai`i statutes.  See Haw. Gov't Emps.
Ass'n, AFSCME Local 152, AFL-CIO v. Lingle ("HGEA"), 124 Hawai`i
197, 207-08 n.16, 239 P.3d 1, 11-12 n.16 (2010).[11]  This Court
therefore concludes that Defendants are not entitled to judgment
as a matter of law and DENIES Defendants' Motion as to the claims
against Defendant Sakai for prospective equitable relief.

---

[11] In HGEA, the Hawai`i Supreme Court stated:

> "the legislature is presumed not to intend an
> absurd result, and legislation will be construed
> to avoid, if possible, inconsistency,
> contradiction, and illogicality." Gray v.
> Administrative Dir. of the Court, 84 Hawai`i 138,
> 148, 931 P.2d 580, 590 (1997) (citation and
> internal quotation marks omitted).  "[A] rational,
> sensible and practicable interpretation of [a
> statute] is preferred to one which is unreasonable
> or impracticable[.]" Keliipuleole v. Wilson, 85
> Hawai`i 217, 221-22, 941 P.2d 300, 304-05 (1997)
> (brackets added and in original) (citation and
> internal quotation marks omitted).

124 Hawai`i at 207-08 n.16, 239 P.3d at 11-12 n.16 (alterations
in HGEA).

**III. <u>Effect of the Prison Litigation Reform Act</u>**

Defendants next argue that, pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e), Plaintiffs cannot recover for any mental or emotional injury unless they can also establish physical injury. According to Defendants, Plaintiffs have only alleged spiritual injury, and there is no suggestion that they have suffered any physical injuries. Defendants assert that spiritual injury is legally equivalent to emotional or mental injury. Thus, Defendants argue that Plaintiffs can only recover nominal damages for their remaining § 1983 claims regarding outdoor group worship and access to sacred items. [Mem. in Supp. of Motion at 8-9.]

Under § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ." First, insofar as § 1997e(e) specifically addresses federal claims, Defendants acknowledge that it does not apply to Plaintiffs' state law claims.[12] [Mem. in Supp. of Reply at 3.] This district court has stated:

> In <u>Oliver v. Keller</u>, 289 F.3d 623, 627 (9th Cir. 2002), the Ninth Circuit considered the standard in interpreting the "physical injury"

---

[12] Although § 1997e(e) does not limit a plaintiff's state law claims, Plaintiffs' claims for damages under the Hawai`i State Constitution fail for other reasons. <u>See</u> *infra* § V.

19

requirement of § 1997e(e) and whether that "physical injury" requirement applies to claims other than those for mental and emotional injury. The court concluded that, "[t]o the extent [a plaintiff] has actionable claims for compensatory, nominal or punitive damages—premised on violations of his Fourteenth Amendment rights, and not on any alleged mental or emotional injuries—we conclude the claims are not barred by 1997e(e)."  289 F.3d at 629–30.

. . . As governed by <u>Oliver</u>, while Plaintiff's constitutional claims under the Fourth and Fourteenth Amendments may have little financial value, they are still cognizable.  <u>See Cockcroft v. Kirkland</u>, 548 F. Supp. 2d 767, 776–77 (N.D. Cal. 2008); <u>see also</u> <u>Greene v. Rourk</u>, 2009 WL 1759638, at *9 (E.D. Cal. June 22, 2009) (allowing compensatory, nominal, or punitive damage claims under Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the First and Fourteenth Amendments, and state law to proceed); <u>Curtis v. Benda</u>, 2009 WL 1065204 at *2 (W.D. Wash. Apr. 20, 2009) (concluding that Fourteenth Amendment claim for compensatory, nominal, and punitive damages is not barred by § 1997e(e)); <u>Hill v.. [sic] Arpaio</u>, 2007 WL 1120305, at *4 (D. Ariz. Apr. 11, 2007) (same).

While Plaintiff cannot recover damages on his claims for humiliation and embarrassment, under <u>Oliver</u> and its progeny he may recover compensatory, punitive, and/or nominal damages for the violation of his Fourth and Fourteenth amendment rights, if he can establish a violation. . . .

<u>Hammond v. Dep't of Pub. Safety</u>, Civ. No. 09-00596 JMS/KSC, 2011 WL 6210869, at *3-4 (D. Hawai`i Dec. 14, 2011) (some alterations in <u>Hammond</u>).

Defendants acknowledge that the PLRA physical injury requirement does not bar either claims for compensatory damages

for loss of property or claims for nominal damages.[13]  [Mem. in
Supp. of Reply at 3-4.]  Thus, Defendants only seek a ruling that
the PLRA bars Plaintiffs' § 1983 claims and Plaintiffs' RLUIPA
claims for damages based on their alleged spiritual injuries.[14]
Plaintiffs argue that "the Ninth Circuit has consistently held
that claims for the violation of constitutional rights are not
actions 'for mental or emotional injury,' and thus the physical
injury requirement of § 199[7]e(e) does not apply" and therefore
§ 1997(e)e does not apply to claims alleging violations of the
First Amendment or the Fourteenth Amendment.  [Mem. in Opp. at
26-27 (citing Canell v. Lightner, 143 F.3d 1210, 1213 (9th Cir.
1998); Oliver v. Keller, 289 F.3d 623, 630 (9th Cir. 2002)).]

---

[13] Defendants also acknowledge that the PLRA physical injury
requirement does not bar claims for punitive damages, but they
point out that the Second Amended Complaint does not seek
punitive damages.  [Mem. in Supp. of Reply at 3-4 & n.6 (citing
Second Amended Complaint at pg. 129, ¶ 15).]  Plaintiff Galdones
seeks punitive damages for his state law retaliation claim.
[Suppl. Complaint for Damages and for Classwide Declaratory &
Injunctive Relief, filed 8/22/12 (dkt. no. 146), at pg. 33,
¶ 18.]  As noted *supra*, the PLRA physical injury requirement does
not apply to state law claims.

[14] Defendants argue that "Plaintiffs fail to establish any
'property loss' other than Davis' confiscated kukui nut,
legitimately confiscated and for which preliminary-injunction was
denied.  Because Plaintiffs' counsel has Davis' kukui nut, the
possibility of compensable damages is attenuated at best."  [Mem.
in Supp. of Reply at 3 (footnotes and citations omitted).]  This
Court, however, does not construe Defendants' Motion as seeking
summary judgment on Plaintiffs' federal claims seeking damages
for property loss.

Oliver, however, does not stand for the proposition that § 1997e(e) is inapplicable to any claim alleging a violation of the Fourteenth Amendment. The Ninth Circuit held that

> § 1997e(e) applies only to claims for mental and emotional injury. To the extent that appellant's claims for **compensatory, nominal or punitive damages are premised on alleged Fourteenth Amendment violations**, and not on emotional or mental distress suffered as a result of those violations, § 1997e(e) is inapplicable and those claims are not barred.

Oliver, 289 F.3d at 630 (emphasis added). In Canell, however, the Ninth Circuit held:

> Canell is not asserting a claim for "mental or emotional injury." He is asserting a claim for a violation of his First Amendment rights. The deprivation of First Amendment rights entitles a plaintiff to judicial relief wholly aside from any physical injury he can show, or any mental or emotional injury he may have incurred. Therefore, **§ 1997e(e) does not apply to First Amendment Claims regardless of the form of relief sought**.

143 F.3d at 1213 (footnote omitted) (emphasis added). The Ninth Circuit has not addressed the apparent conflict between Oliver and Canell. This Court will follow Oliver because it is the more recent authority. See, e.g., Joseph v. Parciasepe, No. 2:14-cv-00414 AC P, 2014 WL 2807654, at *3 (E.D. Cal. June 20, 2014) (stating that § 1997e(e) "'requires a prior showing of physical injury that need not be significant but must be more than de minimus'" (some citations omitted) (quoting Oliver v. Keller, 289 F.3d 623, 627 (9th Cir. 2002), and citing Canell v. Lightner, 143 F.3d 1210 (9th Cir. 1998), as contrary

authority)).[15]  This Court therefore concludes that the PLRA physical injury requirement applies to Plaintiffs' § 1983 claims.

Plaintiffs also argue that the PLRA physical injury requirement does not apply to RLUIPA claims.  [Mem. in Opp. at 27 (citing Rupe v. Cate, 688 F. Supp. 2d 1035, 1044 (E.D. Cal. 2010) ("Because Plaintiff alleges RLUIPA violations, and not mental or emotional injuries, § 1997e(e) does not bar his claims")).]  The district court in Rupe, however, relied on Oliver for the proposition that § 1997e(e) "applies only where a plaintiff alleges mental or emotional injuries.  If a plaintiff claims violations of constitutional or statutory rights, this section does not bar claims for money damages."  688 F. Supp. 2d at 1044 (citing Oliver v. Keller, 289 F.3d 623, 630 (9th Cir. 2002)).  To the extent that the district court in Rupe ruled that § 1997e(e) is inapplicable to all claims alleging RLUIPA violations, that is an incorrect application of Oliver, and this Court does not consider Rupe persuasive.  This Court agrees with the district court in Greene, 2009 WL 1759638, at *9 (cited in Hammond, supra), that § 1997e(e) applies to RLUIPA claims.

Plaintiffs do not expressly claim mental or emotional injuries; they assert that they have suffered, and are suffering, various spiritual injuries.  See, e.g., 6/13/14 Summary Judgment

---

[15] The plaintiff in Joseph alleged three § 1983 claims, two based on violations of the Eighth Amendment and a First Amendment retaliation claim.  2014 WL 2807654, at *2-3.

Order, 2014 WL 2716856, at *22 & n.27 (discussing spiritual injuries regarding the inability to engage in daily, outdoor, group worship).  Although this Court by no means minimizes the importance of the federal rights that Plaintiffs allege were violated, it is well established that "damages based on the abstract 'value' or 'importance' of constitutional rights are not a permissible element of compensatory damages in [§ 1983] cases." Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 310 (1986). This Court finds that the spiritual injuries that Plaintiffs allege in this case are comparable to humiliation, embarrassment, or disappointment and are therefore mental or emotional injuries subject to § 1997e(e).  Plaintiffs cannot pursue claims for damages based on their spiritual injuries without a prior showing of physical injury.

Under Oliver, "a prior showing of physical injury . . . need not be significant but must be more than de minimis."  289 F.3d at 627 (footnote omitted).  Plaintiffs have conceded that they have not suffered any physical injuries as a result of the alleged violations of the United States Constitution and RLUIPA. Defendants' CSOF states: "Plaintiffs have not alleged a physical injury as a result of any restriction on their religious activities.  According to Plaintiffs' declarations, the **only** injury they have allegedly suffered from the denial of their religious exercise, . . . were [sic] 'spiritual injury.'"

24

[Defs.' CSOF at ¶ 2 (emphasis in original) (citations omitted).]
Plaintiffs respond: "DISPUTED. The most critical onus on
Plaintiffs' religious exercises was the confiscation of Hawaiian
sacred items pursuant to CCA and State policy, practice, and
custom." [Pltfs.' CSOF at ¶ 2.] Plaintiffs' failure to respond
to Defendants' statement regarding a lack of physical injury
renders that statement admitted. See Local Rule LR56.1(g)
("material facts set forth in the moving party's concise
statement will be deemed admitted unless controverted by a
separate concise statement of the opposing party"). This Court
therefore concludes that § 1997e(e) bars Plaintiffs' § 1983
claims and RLUIPA claims for damages arising from their alleged
spiritual injuries because Plaintiffs have not made the required
showing of physical injury.

Defendants' Motion is GRANTED insofar as this Court
rules that, pursuant to § 1997e(e), Plaintiffs' remaining § 1983
claims and RLUIPA claims for damages are limited to compensatory
damages and nominal damages.

IV. **Whether Plaintiffs Can Pursue RLUIPA Claims Against CCA**

Defendants next argue that CCA is entitled to summary
judgment on all of Plaintiffs' remaining RLUIPA claims against it
because: 1) CCA is not "the government" for purposes of RLUIPA;
and 2) Plaintiffs cannot pursue RLUIPA claims against CCA because
it does not receive federal funds for housing Hawai`i inmates.

42 U.S.C. § 2000cc-1 states:

(a)  General rule

No government shall impose a substantial burden on
the religious exercise of a person residing in or
confined to an institution, as defined in section
1997 of this title, even if the burden results
from a rule of general applicability, unless the
government demonstrates that imposition of the
burden on that person -

> (1) is in furtherance of a compelling
> governmental interest; and

> (2) is the least restrictive means of
> furthering that compelling governmental
> interest.

(b) Scope of application

This section applies in any case in which -

> (1) the substantial burden is imposed in a
> program or activity that receives Federal
> financial assistance; or

> (2) the substantial burden affects, or
> removal of that substantial burden would
> affect, commerce with foreign nations, among
> the several States, or with Indian tribes.

In addition, RLUIPA provides that: "A person may assert a

violation . . . as a claim . . . in a judicial proceeding and

obtain appropriate relief against a government."  42 U.S.C.

§ 2000cc-2(a).

**A.**    **The Government**

Under RLUIPA:

The term "government" -

> (A) means -

> (i) a State, county, municipality, or other governmental entity created under the authority of a State;
>
> (ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (i); and
>
> (iii) any other person acting under color of State law[.]

42 U.S.C. § 2000cc-5(4). The Ninth Circuit applies the § 1983 "color of state law" analysis in the § 2000cc-5(4)(A)(iii) analysis. <u>Florer v. Congregation Pidyon Shevuyim, N.A.</u>, 639 F.3d 916, 922 (9th Cir. 2011). In <u>Florer</u>, the Ninth Circuit stated:

> The Supreme Court has explained that "[t]he traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" <u>West v. Atkins</u>, 487 U.S. 42, 49, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988) (quoting <u>United States v. Classic</u>, 313 U.S. 299, 326, 61 S. Ct. 1031, 85 L. Ed. 1368 (1941)). To determine whether actions that allegedly caused the deprivation of a right are fairly attributable to the state even though they were committed by private actors, we follow a two-part approach: "First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible." <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 937, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982). "Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor." <u>Id.</u> We start with the presumption that conduct by private actors is not state action. <u>Sutton [v. Providence St. Joseph Med. Ctr.]</u>, 192 F.3d [826,] 835 [(9th Cir. 1999)]. Florer bears the burden of establishing that Defendants were state actors. <u>See Flagg Bros., Inc. v. Brooks</u>,

436 U.S. 149, 156, 98 S. Ct. 1729, 56 L. Ed. 2d
                    185 (1978).

Id. (some alterations in original).

        Florer also describes the first step of the Lugar

analysis as "whether the deprivation is the result of a

governmental policy." Id. (some citations omitted) (citing

Lugar, 457 U.S. at 937, 102 S. Ct. 2744). For the same reasons

set forth in the discussion of whether Defendant Sakai is a

proper party in Plaintiffs' claims for prospective equitable

relief, see supra § II., this Court finds that there are genuine

issues of material fact as to the issue of whether the alleged

RLUIPA violations are the result of a governmental policy.

        As to the second Lugar factor - whether the defendant

can fairly be considered a state actor - the Ninth Circuit has

stated:

            "In order for private conduct to constitute
            governmental action, 'something more' must be
            present." Sutton, 192 F.3d at 835. The Supreme
            Court has instructed that "state action may be
            found if, though only if, there is such a 'close
            nexus between the State and the challenged action'
            that seemingly private behavior 'may be fairly
            treated as that of the State itself.'" Brentwood
            Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531
            U.S. 288, 295, 121 S. Ct. 924, 148 L. Ed. 2d 807
            (2001) (quoting Jackson v. Metro. Edison Co., 419
            U.S. 345, 351, 95 S. Ct. 449, 42 L. Ed. 2d 477
            (1974)). Courts have employed various approaches
            to determine whether a person may fairly be
            considered a state actor. Lee v. Katz, 276 F.3d
            550, 554 (9th Cir. 2002). . . .

            "Because of the fact-intensive nature of the
            inquiry, courts have developed a variety of

                                28

approaches" to assess whether a private party has acted under color of state law. <u>Lee</u>, 276 F.3d at 554. The Supreme Court has identified at least seven such approaches. <u>Brentwood Acad.</u>, 531 U.S. at 296, 121 S. Ct. 924. "Satisfaction of any one test is sufficient to find state action, so long as no countervailing factor exists." <u>Kirtley v. Rainey</u>, 326 F.3d 1088, 1092 (9th Cir. 2003).

<u>Florer</u>, 639 F.3d at 924 (some alterations in <u>Florer</u>) (footnote omitted). One such test is the "public function" test.

"Under the public function test, when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." <u>Lee</u>, 276 F.3d at 554-55 (internal quotation marks omitted). "The public function test is satisfied only on a showing that the function at issue is 'both traditionally and exclusively governmental.'" <u>Kirtley</u>, 326 F.3d at 1093 (quoting <u>Lee</u>, 276 F.3d at 555).

<u>Id.</u> at 924-25. As to the issue of whether CCA can fairly be considered a state actor under the public function test, this Court is persuaded by the analysis in <u>Knows His Gun v. Montana</u>, 866 F. Supp. 2d 1235 (D. Mont. 2012). In that case, the district court ruled that CCA, the correctional center, and the warden were "the government" for purposes of RLUIPA, stating:

The CCA Defendants' actions are fairly attributable to the state. They were caused by the exercise of the state's exclusive power to incarcerate prisoners. <u>Rendell-Baker v. Kohn</u>, 457 U.S. 830, 842, 102 S. Ct. 2764, 73 L. Ed. 2d 418 (1982) (imprisonment is "traditionally the exclusive prerogative" of government); <u>West v. Atkins</u>, 487 U.S. 42, 49-51, 57, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988) (a private prison's power to engage in this public function is "possessed by virtue of state law and made possible only because

[it] is clothed with the authority of state law"). Prisoners must be provided reasonable opportunities to exercise religious freedom. Florer, 639 F.3d at 925. Here, the Montana Department of Corrections delegated this responsibility to the CCA Defendants. Thus, the CCA Defendants may fairly be said to be state or "government" actors under RLUIPA. West, 487 U.S. at 55–57, 108 S. Ct. 2250 (a private person "fully vested with state authority to fulfill essential aspects of the [State's] duty" is a state actor); Florer, 639 F.3d at 925; Giron v. Corrections Corp. of Am., 14 F. Supp. 2d 1245, 1249–1251 (D.N.M. 1998) (a private prison serves a public function delegated to it by the state and is thus a state actor with respect to performance of that function). . . .

Id. at 1244-45 (some alterations in Knows His Gun). This Court adopts that analysis in the instant case and finds that, for purposes of Plaintiffs' RLUIPA claims, CCA can fairly be considered a state actor under the public function test.

Insofar as Defendants' Motion seeks a ruling that CCA is not "the government" for purposes of Plaintiffs' RLUIPA claims, Defendants' Motion is DENIED.

**B.** **Spending Clause Authority**

This Court now turns to Defendants' argument that Plaintiffs' RLUIPA claims against CCA fail because CCA does not receive federal funds for housing Hawai`i inmates.

In accordance with other circuits, the Ninth Circuit has held RLUIPA is a valid extension of Congress's Spending Clause authority under Article I of the Constitution, which allows Congress to condition acceptance of federal funds by states under certain circumstances. See, e.g., Mayweathers v. Newland, 314 F.3d 1062, 1066 (9th Cir. 2002); Madison v. Virginia, 474 F.3d 118, 124

>(4th Cir. 2006); <u>Cutter v. Wilkinson</u>, 423 F.3d
>579, 584-90 (6th Cir. 2005); <u>Benning v. Georgia</u>,
>391 F.3d 1299, 1305-08 (11th Cir. 2004); <u>Charles
>v. Verhagen</u>, 348 F.3d 601, 606-11 (7th Cir. 2003);
><u>Sossamon v. Texas</u>, 560 F.3d 316, 328-29 (5th Cir.
>2009); <u>Smith v. Allen</u>, 502 F.3d 1255, 1270, 1274
>n.9 (11th Cir. 2007); <u>Van Wyhe v. Reisch</u>, 581 F.3d
>639, 649 (8th Cir. 2009).  Pursuant to Congress's
>Spending Clause authority, Congress has
>conditioned a state's acceptance of federal
>financial assistance for "program[s] or
>activit[ies]" involving institutionalized persons
>on acceptance of the religious protections
>afforded under RLUIPA.  42 U.S.C. § 2000cc-1.

<u>Alvarez v. Hill</u>, No. CV 04-884-BR, 2010 WL 582217, at *10 (D. Or. Feb. 12, 2010) (alterations in <u>Alvarez</u>).

Under RLUIPA, "[t]he term 'program or activity' means all of the operations of any entity as described in paragraph (1) or (2) of" 42 U.S.C. § 2000d-4a.  Section 2000d-4a states, in pertinent part:

>the term "program or activity" and the term
>"program" mean all of the operations of--
>
>>(1)(A) a department, agency, special purpose
>>district, or **other instrumentality of a State**
>>or of a local government; or
>
>>. . . .
>
>**any part of which is extended Federal financial
>assistance.**

(Emphases added.)

For the same reasons set forth in the discussion of whether Defendant Sakai is a proper party in Plaintiffs' claims for prospective equitable relief and in the discussion of whether the alleged RLUIPA violations are the result of a governmental

policy, see supra §§ II., IV.A., this Court finds that there are genuine issues of material fact as to the issue of whether CCA is an instrumentality of DPS for purposes of § 2000d-4a(1)(A).

Further, Plaintiffs have provided excerpts of DPS's 2012 Annual Report. It includes an Annual Expenditure Report for Fiscal Year 2012, which reflects that DPS Corrections Programs received a total of $828,521 in federal funds. [Manley Decl., Exh. 18 at 88.] Plaintiffs have also presented evidence that CCA receives federal funds for the incarceration of inmates on behalf of the United States Marshal Service at Saguaro. [Manley Decl, Exh. 28 at ¶ 5.[16]] It is irrelevant that the federal funds DPS receives are not allocated for out-of-state corrections facilities, and it is irrelevant that the federal funds CCA receives are not allocated for Hawai`i inmates, because § 2000d-4a expressly provides that a state department or an instrumentality of a state is a program or activity if any part of the department receives federal funds.

This Court finds, for purposes of the instant Motion, that DPS is a program or activity under RLUIPA. Further, insofar as this Court has found that there are genuine issues of material fact as to whether CCA is an instrumentality of DPS as to the

_____

[16] Exhibit 28, [dkt. no. 548-2,] consists of Plaintiffs' excerpts of the Declaration of Warden Thomas dated July 30, 2013. Defendants originally filed the declaration as part of their July 31, 2013 motion for summary judgment ("2013 Motion"). [Dkt. no. 361.]

religious accommodations at issue in this case, this Court finds
that there are genuine issues of material fact as to whether CCA
is a program or activity for purposes of RLUIPA.

This Court agrees with the reasoning in <u>Dean v.
Corrections Corp. of America</u>, 540 F. Supp. 2d 691 (N.D. Miss.
2008), which addressed whether RLUIPA applied in a case involving
a Hawai`i DPS inmate housed at a CCA facility.  The district
court in <u>Dean</u> stated:

> as shown by the documents provided by the
> defendants during briefing, the federal government
> provides aid to the state of Hawaii's Department
> of Public Safety, which is responsible for
> administering corrections in Hawaii.  As such, the
> Hawaii Department of Public Safety is a
> subdivision of Hawaii's state government that
> receives and distributes federal assistance for
> corrections—and thus falls under the definition of
> "program" or "activity."  In addition, the state
> of Hawaii, through its Department of Public
> Safety, entered into a contract with Corrections
> Corporation of America to take custody of various
> Hawaii inmates for the state.  As such, for the
> purposes of RLUIPA, Corrections Corporation of
> America and the Tallahatchie County Correctional
> Facility are simply an instrumentality of the
> Hawaii Department of Public Safety.  Hence, under
> RLUIPA, the program or activity placing a burden
> on the plaintiff's exercise of his religion is the
> Hawaii Department of Public Safety, which receives
> federal financial assistance.  The court therefore
> has jurisdiction to hear the plaintiff's claims
> against the defendants under Religious Land Use
> and Institutionalized Persons Act.
>
> This holding is consistent with the intent of
> the drafters of RLUIPA, who included a provision
> requiring broad interpretation of the statute to
> provide the most protection for religious
> exercise: "This chapter shall be **construed in
> favor of a broad protection of religious exercise**,

> to the maximum extent permitted by the terms of
> this chapter and the Constitution." 42 U.S.C.
> § 2000cc-3 (g) (emphasis added). Under that broad
> interpretation, the court finds that a state
> government accepting federal funds for prisons may
> not dispense with requirements of RLUIPA simply by
> contracting with third parties to carry out the
> state function of operating prisons.

540 F. Supp. 2d 691 at 693-94 (emphasis in <u>Dean</u>).

Pursuant to the analysis in <u>Dean</u>, which this Court adopts, if CCA was acting as an instrumentality of DPS in the decisions at issue in this case, both CCA and DPS placed burdens upon Plaintiffs' religious exercise. As previously stated, Plaintiffs have at least raised a genuine issue of material fact for trial as to whether any part of CCA receives federal funds. Thus, this Court finds that there are genuine issues of material fact as to the issue of whether CCA is a program or activity under § 2000d-4a, and therefore whether RLUIPA applies to CCA. Insofar as Defendants' Motion seeks a ruling that Plaintiffs' RLUIPA claims against CCA fail as a matter of law because RLUIPA does not apply to CCA, Defendants' Motion is DENIED.[17]

---

[17] Because this Court has found that there are triable issues of fact as to the question of whether RLUIPA is enforceable against CCA pursuant to Congress's Spending Clause authority, this Court does not reach Plaintiffs' alternate arguments that RLUIPA is enforceable against CCA pursuant to Congress's Commerce Clause authority or Congress's Enforcement Clause authority.

**V.**   **Claims for Damages for Violations of the State Constitution**

Defendants next argue that they are entitled to summary judgment on all of Plaintiffs' claims seeking damages for violations of the Hawai`i State Constitution because Hawai`i law does not recognize a direct cause of action under the Hawai`i State Constitution.  Plaintiffs respond that there is no Hawai`i case law prohibiting such claims.

In <u>Gonzalez v. Okagawa</u>, the district court ruled, "to the extent Plaintiff is bringing this claim directly under the Hawaii Constitution, Hawaii courts have declined to recognize a direct private cause of action for violation of rights guaranteed under the provisions of the Hawaii Constitution listed by Plaintiffs."  Civil No. 12-00368 RLP, 2013 WL 2423219, at *10 (D. Hawai`i June 4, 2013) (some citations omitted) (citing <u>Makanui v. Dep't of Educ.</u>, 6 Haw. App. 397, 721 P.2d 165, 170 n.2 (Haw. App. 1986) ("We do not decide whether Hawaii recognizes a cause of action for damages for deprivation of rights under the state's constitution or laws."); <u>Maizner v. Hawaii Dep't of Educ.</u>, 405 F. Supp. 2d 1225, 1240 (D. Haw. 2005); <u>Galario v. Adewundmi</u>, Civ. No. 07-00159 DAE-KSC, 2009 WL 1227874, at *11 (D. Haw. May 1, 2009) (granting summary judgment against a plaintiff because such a cause of action has not been recognized)).

Similarly, the district court in <u>Ilae v. Tenn</u> stated:

> Hawai`i does not have a statute or other case-law equivalent to 42 U.S.C. § 1983.  <u>Alston v. Read</u>,

678 F. Supp. 2d 1061, 1074 (D. Haw. 2010) (citing
Mow by Mow v. Cheeseborough, 696 F. Supp. 1360,
1365 (D. Haw. 1988)).  The Hawai`i courts thus far
have declined to recognize a private cause of
action for damages for violations of rights
guaranteed under the state constitution.  Galario
v. Adewundmi, Civ. No. 07-00159 DAE-KSC, 2009 WL
1227874 at *11 (D. Haw. 2009) (reversed on other
grounds by Galario v. Adewundmi, 2013 WL 3157511
(9th Cir. 2013)) (citing Makanui v. Dep't. of
Educ., 6 Haw. App. 397, 403 (1986)).  Plaintiff
does not cite to any legal authority in support of
such a claim, and this Court declines to infer
that such a cause of action exists under the
Hawai`i Constitution.

Civ. No. 12-00316 ACK-KSC, 2013 WL 4499386, at *17 (D. Hawai`i

Aug. 20, 2013) (some citations omitted).

This Court has supplemental jurisdiction over

Plaintiffs' claims alleging violations of the Hawai`i State

Constitution.  See 28 U.S.C. § 1367(a).  "When a district court

sits in diversity, or hears state law claims based on

supplemental jurisdiction, the court applies state substantive

law to the state law claims."  Mason & Dixon Intermodal, Inc. v.

Lapmaster Int'l LLC, 632 F.3d 1056, 1060 (9th Cir. 2011).  This

Court has recognized that:

When interpreting state law, a federal court is
bound by the decisions of a state's highest court.
Trishan Air, Inc. v. Fed. Ins. Co., 635 F.3d 422,
427 (9th Cir. 2011).  In the absence of a
governing state decision, a federal court attempts
to predict how the highest state court would
decide the issue, using intermediate appellate
court decisions, decisions from other
jurisdictions, statutes, treatises, and
restatements as guidance.  Id.; see also
Burlington Ins. Co. v. Oceanic Design & Constr.,
Inc., 383 F.3d 940, 944 (9th Cir. 2004) ("To the

36

> extent this case raises issues of first
> impression, our court, sitting in diversity, must
> use its best judgment to predict how the Hawai`i
> Supreme Court would decide the issue." (quotation
> and brackets omitted)).

Evanston Ins. Co. v. Nagano, 891 F. Supp. 2d 1179, 1189 (D.

Hawai`i 2012) (some citations omitted).

This Court agrees with the analysis in Gonzalez and

Ilae, and predicts that the Hawai`i Supreme Court would not

recognize a claim for damages arising directly under the Hawai`i

State Constitution.  This Court therefore concludes that

Defendants are entitled to judgment as a matter of law and GRANTS

Defendants' Motion as to all of Plaintiffs' claims for damages

arising directly under the Hawai`i State Constitution.

## VI.  Plaintiff Galdones's Claim Seeking Punitive Damages

In their Reply, Defendants ask this Court to grant

summary judgment on Plaintiff Galdones's request for punitive

damages associated with his state law retaliation claim.

Defendants contend that they are entitled to summary judgment

because Plaintiff Galdones has not presented sufficient evidence

of an evil mind or reckless indifference to create a triable

issue of fact.  [Reply at 17-19.]  Plaintiffs filed a motion to

strike this argument from the Reply, arguing that it was improper

for Defendants to raise a new argument that Defendants did not

address in the Motion.  [Motion to Strike New Arguments and New

Affidavit in Defendants' Reply on Motion for Summary Judgment Re:

Sovereign Immunity/Damages, filed 7/3/14 (dkt. no. 567).] This Court denied the motion to strike, ruling that, in light of the timing of the Motion in relation to the filing of the 6/2/14 Reconsideration Order and the 6/13/14 Summary Judgment Order, and in light of the fact that Plaintiffs previously had a full opportunity to brief the issue, it was proper for Defendants to renew their request for summary judgment on the punitive damages issue in the Reply. [EO, filed 7/10/14 (dkt. no. 575).]

First, insofar as Plaintiff Galdones's state law retaliation claim seeks damages directly under the Hawai`i State Constitution, the claim fails for the reasons set forth *supra* § V. Further, even if there is an independent legal basis for Plaintiff Galdones's state law retaliation claim other than the Hawai`i State Constitution, he has not identified sufficient evidence to create a genuine issue of material fact for trial as to his entitlement to punitive damages.

> [T]o prove he or she is entitled to punitive
> damages, a plaintiff "must prove by clear and
> convincing evidence that the defendant has acted
> wantonly or oppressively or with such malice as
> implies a spirit of mischief or criminal
> indifference to civil obligations, or where there
> has been some wilful misconduct or that entire
> want of care which would raise the presumption of
> a conscious indifference to consequences."

Fisher v. Grove Farm Co., Inc., 123 Hawai`i 82, 123, 230 P.3d 382, 423 (Ct. App. 2009) (quoting Masaki v. General Motors Corp., 71 Haw. 1, 16–17, 780 P.2d 566, 575 (1989)).

Defendants' 2013 Motion argued both that Plaintiff
Galdones's state law retaliation claim was meritless and, even if
the claim itself survived summary judgment, his request for
punitive damages was meritless.  [Mem. in Supp. of 2013 Motion at
53-58.]  In their memorandum in opposition to the 2013 Motion,
Plaintiffs argued that this Court should deny the 2013 Motion as
to Plaintiff Galdones's state law retaliation claim because "a
trier of fact could conclude that protected activity was a
'substantial' factor in the write-up of Galdones."  [Mem. in Opp.
to 2013 Motion, filed 1/6/14 (dkt. no. 465), at 40.]
Plaintiffs's memorandum in opposition to the 2013 Motion did not
address Defendants' punitive damages argument.  As to Plaintiff
Galdones's state law retaliation claim, Plaintiffs' concise
statement of facts in opposition to the 2013 Motion ("Plaintiffs'
CSOF in Opposition to 2013 Motion") states only that he "was
falsely disciplined for using the Hawaiian classes as a 'legal
medium.'"  [Filed 1/6/14 (dkt. no. 466), at ¶ 155 (citing Pltfs.'
CSOF in Opp. to 2013 Motion, Decl. of Sharla Manley, Exh. 79).[18]]
Exhibit 79 includes Plaintiff Galdones's CCA Inmate/Resident
Disciplinary Report, which ultimately led to the disciplinary
segregation at issue in his state law retaliation claim.  In
their memorandum in opposition to Defendants' motion for
reconsideration of the 3/31/14 Summary Judgment Order, Plaintiffs

---

[18] Exhibit 79 is docket number 470-1.

argued that, on its face, Exhibit 79: "raises a reasonable inference that Galdones was charged with a disciplinary violation because Defendants thought that Galdones had spoken in favor of this lawsuit to other inmates in the Native Hawaiian religious classes[;]" and "raises a reasonable inference that Galdones was charged with a disciplinary violation because Defendants believed that he was deviating from the religious protocol suggested by the spiritual advisor from Hawaii." [Mem. in Opp. to Motion for Reconsideration, filed 4/28/14 (dkt. no. 511), at 13 & n.8.] Plaintiffs also argued that Defendants' position that Plaintiff Galdones was placed in disciplinary segregation because he disrupted an inmate head count is inconsistent with Exhibit 79, which does not mention the head count incident. Plaintiffs argued that the inconsistencies suggest that the stated reasons for Plaintiff Galdones's placement in disciplinary segregation were pretextual. [Id. at 4 & nn.9-10.]

Even if this Court accepts Plaintiffs' interpretation of Exhibit 79, the exhibit does not provide evidence that the disciplinary segregation was imposed so "wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, or where there has been some wilful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences." See Fisher, 123 Hawai`i at 123, 230 P.3d at 423 (internal

quotation marks omitted).  Plaintiff Galdones has not identified
any other evidence that supports his request for punitive
damages.  This Court therefore finds that, even viewing the
record in the light most favorable to Plaintiff Galdones, he has
failed to identify sufficient evidence to raise a genuine issue
of fact for trial as to his entitlement to punitive damages for
his state law retaliation claim.

This Court finds that there are no genuine issues of
material fact as to Plaintiff Galdones's request for punitive
damages and concludes that Defendants are entitled to judgment as
a matter of law.  To the extent that any portion of Plaintiff
Galdones's state law retaliation claim remains, Defendants'
Motion is GRANTED as to Plaintiff Galdones's request for punitive
damages.

<u>**CONCLUSION**</u>

On the basis of the foregoing, Defendants' Motion for
Summary Judgment Re: Sovereign Immunity/Damages, filed May 13,
2014, is HEREBY GRANTED IN PART AND DENIED IN PART.  Defendants'
Motion is GRANTED insofar as this Court rules that: 1) Defendant
Sakai is entitled to summary judgment as to any of Plaintiffs'
§ 1983 claims against him seeking damages or retrospective
relief; 2) Plaintiffs' remaining § 1983 claims and RLUIPA claims
for damages are limited to compensatory damages and nominal
damages; 3) Defendants are entitled to summary judgment as to

Plaintiffs' claims seeking damages or retrospective relief directly under the Hawai`i State Constitution; and 4) to the extent that any portion of Plaintiff Galdones's state law retaliation claim remains, Defendants are entitled to summary judgment as to his request for punitive damages. Defendants' Motion is DENIED in all other respects.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, July 31, 2014.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

RICHARD KAPELA DAVIS, ET AL. V. NEIL ABERCROMBIE, ET AL.; CIVIL NO. 11-00144 LEK-BMK; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE: SOVEREIGN IMMUNITY/DAMAGES