IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| RICHARD KAPELA DAVIS, MICHAEL HUGHES, DAMIEN KAAHU, ROBERT A. HOLBRON, JAMES KANE, III, ELLINGTON KEAWE, KALAI POAHA, TYRONE KAWAELANILUA`OLE NA`OKI GALDONES, | ) ) ) ) ) ) ) | CIVIL NO. 11-00144 LEK-BMK |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| NEIL ABERCROMBIE, in his official capacity as the Governor of the State of Hawaii; TED SAKAI, in his official capacity as the Director of the Hawaii Department of Public Safety; CORRECTIONS CORPORATIONS OF AMERICA, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFFS' AMENDED SECOND MOTION FOR CLASS CERTIFICATION**

On July 1, 2014, Plaintiffs Richard Kapela Davis,

Tyrone K.N. Galdones, Robert A. Holbron, Michael Hughes,

Damien Kaahu, James Kane, III, Ellington Keawe, and

Kalai K. Poaha (collectively "Plaintiffs") filed their Amended

Second Motion for Class Certification ("Motion"). [Dkt. no.

560.[1]] Defendants Ted Sakai, in his official capacity as the

_____

[1] This Court granted Plaintiffs leave to incorporate by
reference the supporting documents that they submitted with their
Motion for Class Certification, filed on June 4, 2013 ("2013
Certification Motion"). [Dkt. nos. 310, 311, 312, 314 through
(continued...)

Director of the Hawai`i Department of Public Safety ("Defendant Sakai" and "DPS"), and Corrections Corporation of America ("CCA," collectively "Defendants") filed their memorandum in opposition on July 29, 2014, and Plaintiffs filed their reply on August 7, 2014. [Dkt. nos. 589,[2] 614.] The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.2(d) of the Local Rules of Practice of the United States District Court for the District of Hawai`i ("Local Rules"). The Court issued its preliminary ruling on the Motion on August 21, 2014. [Dkt. no. 630.] The instant Order is this Court's decision on the Motion, and this Order supersedes the August 21, 2014 preliminary ruling.

After careful consideration of the Motion, supporting and opposing memoranda, and the relevant legal authority, Plaintiffs' Motion is HEREBY GRANTED IN PART AND DENIED IN PART for the reasons set forth below.

---

[1](...continued)
320.] On July 2, 2014, Plaintiffs filed a motion seeking leave to file publicly Exhibits 44 through 55 in support of the Motion, which this Court granted in part and denied in part on August 7, 2014. [Dkt. nos. 563, 613.] Plaintiffs filed the exhibits on August 14, 2014. [Dkt. no. 623, 628 (unredacted version of Exh. 44 filed under seal).]

[2] On July 29, 2014, Defendants filed a motion seeking leave to file publicly their memorandum of law, Table 1, and Exhibits 4 through 11. This Court granted the motion on August 7, 2014. [Dkt. nos. 588, 612.] Defendants filed the documents on August 8, 2014. [Dkt. no. 615.]

## BACKGROUND

The relevant factual and procedural background in this case is set forth in this Court's June 13, 2014 Amended Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Granting in Part and Denying in Part Plaintiff Robert Holbron's Counter-motion for Summary Judgment on His Claims; and Granting in Part and Denying in Part Plaintiffs' Motion for Partial Summary Judgment Against Defendants as to Their Claims under the Religious Land Use and Institutionalized Persons Act ("6/13/14 Summary Judgment Order") and in this Court's July 31, 2014 Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment Re: Sovereign Immunity/Damages ("7/31/14 Summary Judgment Order"). [Dkt. nos. 544, 596.[3]] This Court incorporates the background sections of the 6/13/14 Summary Judgment Order and the 7/31/14 Summary Judgment Order in the instant Order.

In their Motion, Plaintiffs seek certification of two classes, one addressing prospective relief and one addressing damages.

## I. Prospective Relief

Plaintiffs seek certification pursuant to Fed. R. Civ. P. 23(b)(2) of a class of persons pursuing prospective and

_____

[3] The 6/13/14 Summary Judgment Order is available at 2014 WL 2716856, and the 7/31/14 Summary Judgment Order is available at 2014 WL 3809499.

declaratory relief against Defendants ("Prospective Relief Class"). Plaintiffs propose the following definition of the Prospective Relief Class:

> (a) all persons who were convicted of violating crimes under the laws of the state of Hawaii and were residents of the state of Hawaii; (b) who are and/or will be confined to Saguaro Correctional Center; (c) in general population; and (d) who declare that Native Hawaiian religion is their faith.

[Motion at 4.] The Prospective Relief Class would pursue the following claims from Plaintiffs' Second Amended Complaint for Damages and for Classwide Declaratory and Injunctive Relief ("Second Amended Complaint") [filed 8/22/12 (dkt. no. 145)]:

• Counts I (federal free exercise), VI (federal equal protection), XI (state free exercise), XVI (state equal protection), and XXII (Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc, *et seq.* ("RLUIPA")) regarding daily, outdoor, group worship;

• Counts III (federal free exercise), XIII (state free exercise), and XXIV (RLUIPA) regarding lack of daily access to personal amulets and `*ohe hano ihu* (bamboo nose flute); and

• Counts VIII (federal equal protection) and XVIII (state equal protection) regarding lack of daily access to personal amulets, `*ohe hano ihu*, coconut oil, and *malo*, *kihei*, and *pau* (native garments).

[Motion at 4-5.]

Plaintiffs also propose three Rule 23(b)(2) subclasses of persons seeking prospective relief against Defendants (collectively "Prospective Relief Subclasses").

## A.  **Administrative Segregation**

Plaintiffs propose the following definition of the

"Administrative Segregation Prospective Relief Subclass:"

> (a) all persons who were convicted of violating
> crimes under the laws of the state of Hawaii and
> were residents of the state of Hawaii; (b) who are
> and/or will be confined to Saguaro Correctional
> Center; (c) in administrative segregation; and (d)
> who declare that Native Hawaiian religion is their
> faith.

[Id. at 5.]  The Administrative Segregation Prospective Relief

Subclass would pursue the following claims from the Second

Amended Complaint:

- Counts II (federal free exercise), VII (federal equal
    protection), XII (state free exercise), XVII (state equal
    protection), and XXIII (RLUIPA) regarding the observance of
    Makahiki in administrative segregation;

- Counts III, VIII, XIII, XVIII, and XXIV regarding lack of daily
    access to sacred items in administrative segregation; and

- Counts V (federal free exercise), X (federal equal protection),
    XV (state free exercise), XX (state equal protection), and
    XXVI (RLUIPA) regarding access to a spiritual advisor in
    administrative segregation.[4]

[Id. at 5-6.]

## B.  **SHIP**

Plaintiffs propose the following definition of the

"SHIP Prospective Relief Subclass:"

_____

[4] Plaintiffs also include Count XXV in the list of claims
regarding access to a spiritual advisor in restricted custody,
but that appears to be an error because Count XXV relates to
access to a sacred space.

> (a) all persons who were convicted of violating
> crimes under the laws of the state of Hawaii and
> were residents of the state of Hawaii; (b) who are
> and/or will be confined to Saguaro Correctional
> Center; (c) in the Special Housing Incentive
> Program ("SHIP"); and (d) who declare that Native
> Hawaiian religion is their faith.

[Id. at 6.]  The SHIP Prospective Relief Subclass would pursue

the same claims as the Administrative Segregation Prospective

Relief Subclass.  [Id.]

### C.  **Protective Custody**

Plaintiffs propose the following definition of the

"Protective Custody Prospective Relief Subclass:"

> (a) all persons who were convicted of violating
> crimes under the laws of the state of Hawaii and
> were residents of the state of Hawaii; (b) who are
> and/or will be confined to Saguaro Correctional
> Center; (c) in protective custody; and (d) who
> declare that Native Hawaiian religion is their
> faith.

[Id. at 7.]  The Protective Custody Prospective Relief Subclass

would pursue the following claims from the Second Amended

Complaint:

• Counts I, VI, XI, XVI, and XXII regarding daily, outdoor, group
    worship;

• Counts III, XIII, and XXIV regarding lack of daily access to
    personal amulets and `ohe hano ihu and lack of access to
    communal sacred items; and

• Counts VIII and XVIII regarding lack of access to personal
    amulets, `ohe hano ihu, coconut oil, and malo, kihei, and
    pau and lack of access to communal sacred items.

[Id. at 7-8.]

6

## II. **Damages**

Plaintiffs seek certification pursuant to Rule 23(b)(3) of a class of persons pursuing damages against CCA ("Damages Class"). Plaintiffs propose the following definition of the Damages Class:

> (a) all persons who were convicted of violating crimes under the laws of the state of Hawaii and were residents of the state of Hawaii; (b) who are or were confined to Saguaro or Red Rock Correctional Center at any time within four years prior to the filing of this Complaint until the resolution of this lawsuit; (c) in general population; and (d) who declare that Native Hawaiian religion is their faith.

[Motion at 8.]

Plaintiffs also propose three Rule 23(b)(3) subclasses of persons seeking damages against CCA (collectively "Damages Subclasses").

### A. **Administrative Segregation**

Plaintiffs propose the following definition of the "Administrative Segregation Damages Subclass:"

> (a) all persons who were convicted of violating crimes under the laws of the state of Hawaii and were residents of the state of Hawaii; (b) who are or were confined to Saguaro Correctional Center at any time within four years prior to the filing of this Complaint until the resolution of this lawsuit; (c) in administrative segregation; and (d) who declare that Native Hawaiian religion is their faith.

[Id.]

**B.    SHIP**

Plaintiffs propose the following definition of the "SHIP Damages Subclass:"

> (a) all persons who were convicted of violating crimes under the laws of the state of Hawaii and were residents of the state of Hawaii; (b) who are or were confined to Saguaro Correctional Center at any time within four years prior to the filing of this Complaint until the resolution of this lawsuit; (c) in the SHIP; and (d) who declare that Native Hawaiian religion is their faith.

[Id. at 9.]

**C.    Protective Custody**

Finally, Plaintiffs propose the following definition of the "Protective Custody Damages Subclass:"

> (a) all persons who were convicted of violating crimes under the laws of the state of Hawaii and were residents of the state of Hawaii; (b) who are or were confined to Red Rock at any time within four years prior to the filing of this Complaint until the resolution of this lawsuit; (c) in protective custody; and (d) who declare that Native Hawaiian religion is their faith.

[Id.]

### STANDARD

"[T]he district court facing a class certification motion is required to conduct 'a rigorous analysis' to ensure that the Rule 23 requirements are satisfied." Conn. Ret. Plans & Trust Funds v. Amgen Inc., 660 F.3d 1170, 1175 (9th Cir. 2011) (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161, 102 S. Ct. 2364, 72 L. Ed .2d 740 (1982)).  "Parties seeking class

certification bear the burden of demonstrating that they have met each of the four requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b)." <u>Ellis v. Costco Wholesale Corp.</u>, 657 F.3d 970, 979-80 (9th Cir. 2011) (citations omitted). In the instant case, Plaintiffs seek certification pursuant to Rule 23(b)(2) and (b)(3). Rule 23 states, in pertinent part:

> (a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> > (1) the class is so numerous that joinder of all members is impracticable;
> >
> > (2) there are questions of law or fact common to the class;
> >
> > (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> >
> > (4) the representative parties will fairly and adequately protect the interests of the class.
>
> (b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:
>
> > . . . .
> >
> > (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
> >
> > (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action

is superior to other available methods for
fairly and efficiently adjudicating the
controversy.  The matters pertinent to these
findings include:

> (A)  the class members' interests in
> individually controlling the prosecution
> or defense of separate actions;
>
> (B)  the extent and nature of any
> litigation concerning the controversy
> already begun by or against class
> members;
>
> (C)  the desirability or undesirability
> of concentrating the litigation of the
> claims in the particular forum; and
>
> (D)  the likely difficulties in managing
> a class action.

The Rule 23(a) requirement are known as: "(1) numerosity;
(2) commonality; (3) typicality; and (4) adequacy of
representation."  Parsons v. Ryan, 754 F.3d 657, 674 (9th Cir.
2014) (footnote omitted).

Where the party also seeks certification of subclasses,
each subclass "must **independently** meet Rule 23's prerequisites."
Baker v. Castle & Cooke Homes Hawaii, Inc., Civil No. 11-00616
SOM-RLP, 2014 WL 1669158, at *16 (D. Hawai`i Apr. 28, 2014)
(emphasis in Baker) (citing Betts v. Reliable Collection Agency,
Ltd., 659 F.2d 1000, 1005 (9th Cir. 1981) (noting that a subclass
"must independently meet all of rule 23's requirements for
maintenance of a class action")).

This district court has recognized that:

> "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are **in fact** sufficiently numerous parties, common questions of law or fact, etc." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011) (emphasis in original). Analyzing whether Rule 23's prerequisites have been met will "frequently entail overlap with the merits of the plaintiff's underlying claim . . . [because] class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013).

Id. at *3-4 (alterations in Baker).

## DISCUSSION

## I. Prejudicial Delay

Defendants first argue that this Court must deny Plaintiffs' Motion because the ruling comes three and a half years after the filing of the original Complaint and only weeks before the September 30, 2014 scheduled trial date. Defendants argue that they have been prejudiced by the delay, and this Court should deny the Motion on that basis without even reaching the analysis of Rule 23(a) and (b).

Rule 23(c)(1) states: "At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Plaintiffs filed the original Complaint on February 7, 2011 in state court, and Defendants removed the

11

action on March 8, 2011. [Dkt. no. 1.] On March 22, 2012, Plaintiffs filed a Motion to Compel Class Certification. Plaintiffs sought an order compelling Defendants to produce discovery that Plaintiffs argued was indispensable in identifying the putative class. [Dkt. no. 66.] On May 11, 2012, the magistrate judge issued an order granting the motion in part and, on May 25, 2012, Defendants moved to reconsider the order. [Dkt. nos. 85, 89.] The magistrate judge orally denied the motion for reconsideration on July 31, 2012.[5] [Minutes (dkt. no. 122).]

On August 8, 2012, the magistrate judge orally ordered Plaintiffs to file their motion for class certification by October 31, 2012. [Minutes (dkt. no. 133).] On October 18, 2012, however, the magistrate judge vacated that deadline. [Minutes (dkt. no. 195).] By the November 15, 2012 status conference, Defendants had just sent their production of class discovery to Plaintiffs, and the magistrate judge ordered Defendants to produce, *inter alia*, a privilege log to Plaintiffs by December 6, 2012. [Minutes (dkt. no. 211).] The parties were still addressing issues related to the privilege log in February 2013. [Minutes, filed 2/7/13 (dkt. no. 228).]

As previously noted, Plaintiffs filed their 2013 Certification Motion on June 4, 2013. This Court ruled that, in

---

[5] The magistrate judge issued a written order denying the motion for reconsideration on September 20, 2012. [Dkt. no. 171.]

the interests of judicial economy, the parties should not brief the 2013 Certification Motion until this Court ruled on Defendants' pending motion for summary judgment. [EO, filed 7/31/13 (dkt. no. 364).] This Court later deemed the 2013 Certification Motion withdrawn and gave Plaintiffs leave to re-file it after the hearing on Defendants' motion for summary judgment. [EO, filed 8/21/13 (dkt. no. 373).] On January 27, 2014, this Court held a hearing on, *inter alia*, Defendants' motion for summary judgment, and this Court issued its written order addressing that motion, and others, on March 31, 2014 ("3/31/14 Summary Judgment Order"). [Dkt. no. 497.[6]]

On April 8, 2014, Plaintiffs filed their Second Motion for Class Certification ("2014 Certification Motion"). [Dkt. no. 498.] This Court continued the hearing on the 2014 Certification Motion from June 30, 2014 to August 11, 2014. [Minutes, filed 4/21/14 (dkt. no. 508).] The instant Motion is the amended version of the 2014 Certification Motion to address the 6/13/14 Summary Judgment Order. [Motion at 2.] This Court later vacated the hearing and decided to consider the Motion as a non-hearing motion. [EO, filed 8/4/14 (dkt. no. 603).]

---

[6] The 3/31/14 Summary Judgment Order, which is available at 2014 WL 1321006, is the original version of the 6/13/14 Summary Judgment Order. This Court amended the 3/31/14 Summary Judgment Order after granting in part and denying in part Defendants' motion for reconsideration of the 3/31/14 Summary Judgment Order. [Dkt. nos. 500 (motion), 529 (order).]

Under the circumstances of this case, the Court finds that Plaintiffs did not unduly delay seeking class certification. Further, a significant portion of Defendants' prejudice argument addresses Plaintiffs' request to certify the Damages Class and the Damages Subclasses. In light of this Court's rulings imposing significant limitations on the damages class and subclasses that this Court ultimately certifies, CCA will not suffer undue prejudice as a result of certification. Defendants also argue that class certification at this time would be prejudicial to them because "the parties have a firm trial set for September 30, 2014," and there will be insufficient time to notify absent class members. [Mem. in Opp. at 6.] Defendants are mistaken. In fact, on August 21, 2014, this Court vacated the September 30, 2014 trial date in light of a criminal case scheduled to begin on September 23, 2014 and expected to conclude at the end of the October. [Dkt. no. 631.] The trial in the instant case is currently scheduled to begin on March 17, 2015. [Second Amended Rule 16 Scheduling Order, filed 8/28/14 (dkt. no. 638), at ¶ 1.] In light of the continuance of the September 30, 2014 trial date, which was unrelated to class certification issues, Defendants have not identified any prejudice that warrants denial of class certification.

This Court therefore finds that this is the earliest practicable time that it could consider whether class

certification was appropriate.

## II.  Class Certification as to Claims for Prospective Relief

This Court first turns to the Rule 23(a) analysis.

### A.  Numerosity

This Court has recognized that:

> The numerosity inquiry "requires examination of the specific facts of each case and imposes no absolute limitations." Gen. Tel. Co. of the Nw., Inc. v. E.E.O.C., 446 U.S. 318, 330, 100 S. Ct. 1698, 64 L. Ed. 2d 319 (1980).  Courts, however, have found the numerosity requirement to be satisfied when a class includes at least 40 members.  See Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir 1995) (noting that "numerosity is presumed at a level of 40 members") (citation omitted); In re Nat'l W. Life Ins. Deferred Annuities Litig., 268 F.R.D. 652, 660 (S.D. Cal. 2010) (noting that "[c]ourts have found joinder impracticable in cases involving as few as forty class members") (citations omitted); E.E.O.C. v. Kovacevich "5" Farms, No. CV-F-06-165 OWW/TAG, 2007 WL 1174444, at *21 (E.D. Cal. Apr. 19, 2007) (noting that "[c]ourts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members"); Ikonen v. Hartz Mountain Corp., 122 F.R.D. 258, 262 (S.D. Cal. 1988) (noting that "[a]s a general rule, classes of 20 are too small, classes of 20-40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough").

Davis v. Four Seasons Hotel Ltd., 277 F.R.D. 429, 435 (D. Hawai`i

2011) (alterations in Davis).

### 1.  Prospective Relief Class

As this Court noted in the 6/13/14 Order, there are 179

inmates at Saguaro Correctional Center ("Saguaro") that have

registered as practitioners of the Native Hawaiian religion. 2014 WL 2716856, at *23. Defendants do not challenge the numerosity requirement as to the Prospective Relief Class's claims regarding daily, outdoor, group worship. Defendants, however, argue that the Prospective Relief Class does not meet the numerosity requirement as to their claims regarding access to sacred items. [Mem. in Opp. at 8.]

In support of the instant Motion, Plaintiffs have provided declarations by Plaintiffs Davis, Kane, Hughes, and Keawe, [2013 Certification Motion, Decl. of Sharla Manley ("Manley 2013 Decl."), Exhs. 30, 32-36,[7]] as well as Plaintiff Holbron and more than thirty putative members of the classes and/or subclasses [2013 Certification Motion (dkt. nos. 320, 320-1 to 320-40)]. Defendants argue that the Prospective Relief Class does not meet the numerosity requirement as to the claims regarding access to sacred items because: only five "challeng[e] or complain[] against the denial of a personal amulet[;]" none of the named Plaintiffs or the putative class members who submitted declarations "even mentions coconut oil[;]" and "only eight inmates stated a desire for in-cell daily access to bamboo nose

---

[7] The Manley 2013 Declaration is docket number 310-3. Exhibits 30 and 33 are declarations by Plaintiff Davis. [Dkt. nos. 318-7, 318-10.] Exhibits 32 and 35 are declarations by Plaintiff Kane. [Dkt. nos. 318-9, 319-1.] Exhibit 34 is a declaration by Plaintiff Hughes, [dkt. no. 319,] and Exhibit 36 is a declaration by Plaintiff Keawe [dkt. no. 319-2].

flutes." [Mem. in Opp. at 9-10.]

Plaintiffs argue that their submissions do not represent "an exhaustive list of every incident involving the denial of access to an amulet or another sacred item. Rather, they are illustrative[.]" [Reply at 4.] Plaintiffs argue that the Prospective Relief Class are all "subject to the same discriminatory and unlawful set of policies and face a risk that their rights will be violated." [Id. at 3.] This Court agrees.

In the 6/13/14 Summary Judgment Order, this Court stated that:

> Saguaro has a list of the types of religious items that all inmates are permitted to keep in their cells ("the Retention List"). Pursuant to the Retention List, practitioners of the Native Hawaiian religion may keep the following items in their cells: "sea salt, a ti leaf lei, coconut oil, a lava lava and an amulet." [Thomas Decl. at ¶ 52.] In addition, they may keep "written religious materials to include books, genealogy, chants and prayers. General population Native Hawaiian practitioners may also check out a ukulele from the chapel." [Thomas Reply Decl. at ¶ 122.] Saguaro "is working to identify a vendor for the amulets and is also working to locate a vendor for coconut oil." [Thomas Decl. at ¶ 52.] . . .

2014 WL 2716856, at *29.[8] All of Saguaro's inmates who are in

---

[8] The document that the 6/13/14 Summary Judgment Order referred to as the "Thomas Decl." is the Declaration of Warden Thomas, submitted with the Concise Statement of Facts in Support of Defendants' Motion for Summary Judgment, filed July 31, 2013. [Dkt. no. 361-23.] The document referred to as the "Thomas Reply Decl." is the Declaration of Warden Thomas, submitted with the reply in support of Defendants' Motion for Summary Judgment,
(continued...)

the general population and who are practitioners of the Native Hawaiian religion are subject to the Retention List, and the policies, procedures, and practices associated therewith. Plaintiffs allege that Defendants' conduct with regard to the sacred items remaining at issue in this case is unconstitutional and/or violates RLUIPA. Thus, all of Saguaro's inmates who are in the general population and who are practitioners of the Native Hawaiian religion are arguably at risk of the same violation of their rights.

This Court therefore FINDS that the Prospective Relief Class satisfies the numerosity requirement as to both the remaining claims regarding daily, outdoor, group worship and the remaining claims regarding access to sacred items.

### 2. **Prospective Relief Subclasses**

First this Court notes that, although the Motion requests certification of the Administrative Segregation Prospective Relief Subclass, the SHIP Prospective Relief Subclass, and the Protective Custody Prospective Relief Subclass, Plaintiffs' Memorandum in Support of the Motion blurs the distinction between these three subclasses. <u>See, e.g.</u>, Mem. in Supp. of Motion at 5 ("segregation and protective custody subclasses should be certified"), 10 ("Common questions arise

---

[8](...continued)
filed January 13, 2014. [Dkt. no. 483-10.]

from the disparate treatment of Native Hawaiian religious practitioners in restrictive custody."). Insofar as Plaintiffs have expressly moved for certification of a subclass for each group, this Court will begin its analysis by examining each proposed subclass separately.

### a. **SHIP Prospective Relief Subclass**

In the Motion, Plaintiffs assert that "[t]he proposed segregation subclass consists of more than 20 inmates." [Mem. in Supp. of Motion at 20 (citing Decl. of Robert A. Holbron, filed 12/20/13 (dkt. no. 436-4) ("Holbron Summary Judgment Decl."),[9] at ¶ 34).] Plaintiff Holbron was in administrative segregation from July 17, 2007, until he was assigned to SHIP around April 10, 2009. Holbron remained in SHIP until February 2012. [Holbron Summary Judgment Decl. at ¶ 9.] He states that, "in all the time that [he] was in segregation/SHIP at Saguaro, [he] can recall only one limited Makahiki Service being permitted for him in segregation. At this Makahiki service, more than 20 other Native Hawaiian inmates gathered in the unit's dayroom." [Id. at ¶ 34.]

Although the declaration is ambiguous, Plaintiff Holbron must have been referring to a Makahiki service for SHIP

---

[9] The Holbron Declaration was part of his Opposition to Defendants' Motion for Summary Judgment and Counter-Motion for Summary Judgment on His Federal Claims. The version of the Holbron Declaration filed on December 20, 2013 was undated and unsigned. Plaintiffs filed the original version on December 27, 2013. [Dkt. no. 456-1.] It is signed and dated December 23, 2013.

inmates because SHIP II inmates are permitted to socialize with other SHIP II inmates in a dayroom pod for one hour a day, five times a week. SHIP III inmates also have dayroom pod time for two hours a day, five day times a week (at separate times from the SHIP II inmates). Inmates in administrative segregation, however, are not allowed to gather with inmates from the general population, SHIP, or protective custody, and apparently administrative segregation inmates are not permitted dayroom time when they can gather with one another. Inmates in SHIP I have the same restrictions as the inmates in administrative segregation. [Letter dated 8/28/14 to this Court from Defendants' counsel transmitting the parties' joint descriptions of Saguaro's administrative segregation, SHIP, and protective custody program, filed 9/16/14 (dkt. no. 641).[10]] Further, the Reply clarifies that the twenty inmates that Plaintiffs refer to are inmates in SHIP. [Reply at 5.] Defendants do not contest Plaintiffs' assertion that there are "20 segregation inmates registered as Native Hawaiians." [Mem. in Opp. at 8.] This Court therefore finds, for purposes of the instant Motion, that there are twenty potential members of the SHIP Prospective Relief

_____

[10] This Court will refer to the descriptions, each of which is one page, as the "Administrative Segregation Description," the "SHIP Description," and the "Protective Custody Description." The parties filed these descriptions pursuant to this Court's preliminary ruling on the Motion. [Filed 8/21/14 (dkt. no. 630).]

Subclass.

Defendants argue that a class of twenty is too small to satisfy the numerosity requirement, emphasizing that the United States Supreme Court has indicated that a class of fifteen would be too small. [Id. (citing Gen. Tel. Co. of Nw. v. EEOC, 446 U.S. 318, 330 (1980)).] Plaintiffs argue that twenty SHIP inmates is sufficiently numerous to render joinder impractical, particularly because the group of potential class members is fluid. See, e.g., Reply at 5 (stating that, "at any given time, there are at least 20 Native Hawaiian practitioners" in SHIP).

Other district courts have recognized that the fluidity of a class of inmates supports a finding that joinder is impracticable. See, e.g., Decoteau v. Raemisch, Civil Action No. 13-cv-3399-WJM-KMT, 2014 WL 3373670, at *2 (D. Colo. 2014) (citing U.S. ex rel. Green v. Peters, 153 F.R.D. 615, 618 (N.D. Ill. 1994); Andre H. v. Ambach, 104 F.R.D. 606, 611 (S.D.N.Y. 1985); Arthur v. Starrett City Assocs., 98 F.R.D. 500, 505–06 (E.D.N.Y. 1983)). According to the SHIP Description:

> SHIP is a pro-social behavioral modification step-down program utilized to transition inmates from administrative segregation to general population. Privileges are introduced as inmates progress from the first to the last step: SHIP I, SHIP II, and SHIP III. Each step lasts six months but an inmate can be returned to a previous step for engaging in rules violations or non-pro-social behavior. . . .

21

In light of the fact that the intended duration of SHIP is eighteen months, this Court cannot find that the SHIP Prospective Relief Subclass is so fluid as to overcome the fact that there are only twenty potential members. This Court therefore FINDS that the SHIP Prospective Relief Subclass does not meet the numerosity requirement, *i.e.* the subclass is not so numerous that joinder is impracticable.[11]

### b. Administrative Segregation Prospective Relief Subclass

Plaintiffs have not identified any evidence of the number of prospective members of the Administrative Segregation Prospective Relief Subclass. This Court therefore FINDS that Plaintiffs have failed to meet their burden of establishing that the Administrative Segregation Prospective Relief Subclass satisfies the numerosity requirement.

Plaintiffs may argue that a combined subclass of inmate practitioners of the Native Hawaiian religion in both administrative segregation and SHIP would meet the numerosity requirement. Insofar as Plaintiffs have not identified evidence of the number of potential members in the Administrative Segregation Prospective Relief Subclass, this Court cannot determine whether a combined subclass would meet the numerosity

---

[11] This Court notes that the deadline to add parties has passed. [Second Amended Rule 16 Scheduling Order, filed 8/28/14 (dkt. no. 638), at ¶ 5.] That, however, does not render joinder impracticable for purposes of Rule 23(a)(1).

requirements.  Further, for the reasons set forth *infra*

Discussion Sections II.B.2.a., C.2.a., and D.2.a., this Court

finds that it is not appropriate to combine the Administrative

Segregation Prospective Relief Subclass and the SHIP Prospective

Relief Subclass.

### c. Protective Custody Prospective Relief Subclass

Plaintiffs assert that the proposed Protective Custody

Prospective Relief Subclass consists of at least thirty-seven

inmates.  The Motion, however, did not cite any evidence for this

representation.  [Mem. in Supp. of Motion at 20.]  In the Reply,

Plaintiffs state, again without citing any supporting evidence,[12]

that "there were 37-43 inmates who were practicing Native

Hawaiian religion at any given time" in protective custody at Red

Rock.[13]  [Reply at 5.]  Defendants, however, do not contest that

_____

[12] Although not cited in the Memorandum in Support of the
Motion, Ms. Manley's declaration states that she has reviewed the
records that Defendants produced in response to a court order
compelling class discovery [filed 5/11/12 (dkt. no. 85)].  She
states that, according to these records, "there are at least 37
inmates who have participated in Native Hawaiian religious
programming at Red Rock" Correctional Center ("Red Rock").
[Motion, Decl. of Sharla Manley ("Manley 2014 Decl.") at ¶¶ 10-
11.]  Plaintiffs, however, did not attach any of these records as
exhibits, and Ms. Manley only identifies the records by bates-
stamp numbers because they "have been designated attorneys' eyes
only under that order."  [Id.]  This Court notes that Plaintiffs
could have filed a motion for leave to file those exhibits under
seal.  This Court therefore declines to consider Ms. Manley's
representations about the content of the class discovery.

[13] As this Court noted in the 6/13/14 Order, by May 30,
(continued...)

there are thirty-seven potential members of the Protective Custody Prospective Relief Subclass.  Instead, they argue that thirty-seven is not sufficient to meet the numerosity requirement.  [Mem. in Opp. at 8.]  This Court therefore finds, for purposes of the instant Motion, that there are thirty-seven potential members of the Protective Custody Prospective Relief Subclass.

According to the Protective Custody Description, "[p]rotective custody ('PC') is a housing classification utilized to segregate inmates who require protection from other inmates at the same facility. . . .  PC is a non-punitive type of segregation."  Because there is no specified duration of time that a protective custody inmate may be in that program, this Court finds that the Protective Custody Prospective Relief Subclass is a fluid class for purposes of the numerosity analysis.  This Court also emphasizes that the number of potential members of this subclass is very close to the number that is generally considered presumptively sufficient for the numerosity analysis.  This Court therefore FINDS that the Protective Custody Prospective Relief Subclass satisfies the numerosity requirement.

---

[13](...continued)
2013, all of the Hawai`i inmates who were assigned to Red Rock were permanently transferred to Saguaro.  2014 WL 2716856, at *2 n.4 (citations omitted).

**B.** **Commonality**

The United States Supreme Court has stated that, in order to meet the commonality requirement, the proposed class members' claims

> must depend upon a common contention . . . . That common contention, moreover, must be of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

> "What matters to class certification . . . is not the raising of common 'questions' — even in droves — but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."

Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011) (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009)).

> Plaintiffs need not show, however, that "every question in the case, or even a preponderance of questions, is capable of class wide resolution. So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." Wang [v. Chinese Daily News, Inc.], 737 F.3d [538,] 544 [(9th Cir. 2013)] (quoting Wal-Mart, 131 S. Ct. at 2556); see also Mazza v. Am. Honda Motor Co., Inc., 666 F.3d 581, 589 (9th Cir. 2012) (noting that "commonality only requires a single significant question of law or fact"). Thus, "[w]here the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class, commonality exists." Evon v. Law Offices of Sidney Mickell, 688 F.3d 1015, 1029

(9th Cir. 2012) (quotation marks and citation omitted).

Parsons v. Ryan, 754 F.3d 657, 675 (9th Cir. 2014) (footnote omitted).

## 1. **Prospective Relief Class**

Defendants argue that the Prospective Relief Class does not meet the commonality requirement because "the existence of CCA policies or practices is not in serious dispute," and

> [t]he success or failure of Plaintiffs' RLUIPA and First Amendment claims necessarily turns on individual inquiries — whether a Native-Hawaiian practice is sincerely held by a given practitioner, the subject security classification implicated by the practice (whether it is an inmate's desire to retain an amulet despite his history of contraband, or a combative or peaceful inmate's desire to attend outdoor, group worship), and whether the CCA practices are based on compelling security interests without a less-restrictive alternative. . . .

[Mem. in Opp. at 15 (footnote omitted).] The Ninth Circuit, however, has rejected this type of argument.

In Parsons v. Ryan, the defendants - Arizona Department of Corrections ("ADC") officials - appealed the certification of a class and subclass of Arizona prison inmates who alleged that they were subjected to systemic Eighth Amendment violations. 754 F.3d 657, 662 (9th Cir. 2014). The defendants argued that the plaintiffs did not satisfy the commonality requirement because "a systemic constitutional violation [of the sort alleged here] is a collection of individual constitutional violations, each of which

hinges on the particular facts and circumstances of each case."
Id. at 675 (alteration in Parsons) (footnote, citation, and
internal quotation marks omitted).  The Ninth Circuit rejected
this argument, noting that "[t]he Complaint does not allege that
the care provided on any particular occasion to any particular
inmate (or group of inmates) was insufficient, but rather that
ADC policies and practices of statewide and systemic application
expose all inmates in ADC custody to a substantial risk of
serious harm."  Id. at 676 (citation omitted).

Similarly, in the instant case, the claims of the
proposed Prospective Relief Class - as opposed to the proposed
Damages Class - do not allege that a particular inmate's RLUIPA
or constitutional rights were violated on a particular occasion.
The Prospective Relief Class would litigate claims that
Defendants' policies and practices at Saguaro expose all class
members to ongoing and/or potential violations of their rights
under RLUIPA and the state and federal constitutions.

It is undisputed that, pursuant to Defendants' policies
and procedures, inmates in Saguaro's general population who
practice the Native Hawaiian religion cannot have daily, outdoor,
group worship.  It is also undisputed that Saguaro has a
Retention List identifying the religious items that inmates can
possess.  Further, although Saguaro theoretically allows inmates
in the general population who practice the Native Hawaiian

27

religion to have a personal amulet in their cells, Saguaro also requires that the amulet be provided by an approved vendor. Saguaro has been unable to identify a vendor for such items. There are questions of law and fact common to the proposed Prospective Relief Class, such as whether the policies are the least restrictive means available and whether Saguaro enforces comparable policies on inmate practitioners of other religions. There may be some factual differences among the potential class members, such as whether Saguaro can impose additional limitations on inmates who are in the general population but who have a history of violent infractions. These differences, however, do not defeat commonality because commonality does not require "complete congruence." See Rodriquez v. Hayes, 591 F.3d 1105, 1122 (9th Cir. 2010) (citation and quotation marks omitted).

This Court therefore FINDS that the claims of the proposed Prospective Relief Class have enough common questions of law and fact to meet the commonality requirement.

### 2. **Subclasses**

#### a. **Administrative Segregation and SHIP Prospective Relief Subclasses**

Insofar as Plaintiffs have failed to establish the numerosity requirement for the proposed Administrative Segregation Prospective Relief Subclass or the proposed SHIP Prospective Relief Subclass, this Court does not need to address

the issue of whether those individual subclasses satisfy the
other Rule 23(a) requirements.  As to the possible subclass of
both administrative segregation practitioners and SHIP
practitioners, the two programs share the common element that the
inmates in each group are not allowed to have communal gatherings
with inmates of any other group.  SHIP I inmates have the same
restrictions as inmates in administrative segregation.  However,
SHIP II inmates are allowed to "recreate as a group on the
SHIP II . . . group recreation yard" in the "dayroom pod,"
although.  SHIP III inmates also have group recreation time,
although at different times from the SHIP II inmates.  SHIP II
inmates and SHIP III inmates are also allowed to participate in
educational classes in their housing unit.  Thus, a combined
subclass of administrative segregation inmates and SHIP inmates
would not have common questions of law or fact regarding the
claims involving group gatherings.

In addition, although administrative segregation
inmates and SHIP inmates who are registered as practitioners of
the Native Hawaiian religion may possess the same religious items
in their cells, SHIP II and SHIP III inmates have less security
risks, and therefore more privileges, regarding the retention of
personal items in their cells.  Further, because of the SHIP II
and SHIP III inmates' ability to engage in group activity,
including attending education classes, they may argue in favor of

access to communal sacred items.  Because of those distinctions, a combined subclass of administrative segregation inmates and SHIP inmates would not have common questions of law or fact as to claims regarding access to additional sacred items.[14]

According to the Administrative Segregation Description and the SHIP Description, Defendants represent that the policies and procedures for an individual inmate's access to the chaplain or other religious advisors are the same for both groups.  As to both groups, however, Plaintiffs dispute what Saguaro actually allows.  Thus, it appears that the same policies and practices regarding individual access to a chaplain or other spiritual advisor apply to the administrative segregation inmates and the SHIP inmates.  Although there may be some factual issues regarding individual access to a spiritual advisor that differ from one inmate to another, a combined subclass of administrative segregation inmates and SHIP inmates would have common questions of law and fact.

This Court therefore FINDS that a combined subclass of administrative segregation inmates and SHIP inmates would meet the commonality requirement, but only as to the claims regarding

---

[14] This Court also notes that, because of the sharp distinction in the restrictions on SHIP I inmates in comparison to SHIP II inmates and SHIP III inmates, this Court would also find that the proposed SHIP Prospective Relief Subclass, by itself, would not meet the commonality requirement as to the claims involving group gatherings or as to the claims regarding access to sacred items.

individual access to a spiritual advisor.

### b. Protective Custody
### Prospective Relief Subclass

Based on the Protective Custody Description, the
members of the proposed Protective Custody Prospective Relief
Subclass are all subject to the same policies and procedures
affecting their practice of the Native Hawaiian religion.
Although there may be some factual issues that differ from one
inmate to another, the proposed Protective Custody Prospective
Relief Subclass has common questions of law and fact. The common
questions are similar to the common questions for the Prospective
Relief Class, but a subclass is required because the prospective
custody inmates are kept separated at all times from the general
population inmates. This Court therefore FINDS that the proposed
Protective Custody Prospective Relief Subclass meets the
commonality requirement.

### C. Typicality

This Court has stated that:

> The typicality requirement is satisfied "when
> each class member's claim arises from the same
> course of events, and each class member makes
> similar legal arguments to prove the defendant's
> liability." Rodriquez v. Hayes, 591 F.3d 1105,
> 1124 (9th Cir. 2010) (citation and quotation marks
> omitted). Under this standard, the class
> representatives' claims need only be "reasonably
> coextensive with those of absent class members;"
> they need not be "identical or substantially
> identical to those of the absent class members."
> Staton v. Boeing Co., 327 F.3d 938, 957 (9th Cir.
> 2003) (citations and quotation marks omitted).

31

<u>Davis</u>, 277 F.R.D. at 436-37.  Further, the United States Supreme

Court has noted that:

> [t]he commonality and typicality requirements of
> Rule 23(a) tend to merge.  Both serve as
> guideposts for determining whether under the
> particular circumstances maintenance of a class
> action is economical and whether the named
> plaintiff's claim and the class claims are so
> interrelated that the interests of the class
> members will be fairly and adequately protected in
> their absence.  Those requirements therefore also
> tend to merge with the adequacy-of-representation
> requirement, although the latter requirement also
> raises concerns about the competency of class
> counsel and conflicts of interest.  <u>General
> Telephone Co. of Southwest v. Falcon</u>, 457 U.S.
> 147, 157–158, n.13, 102 S. Ct. 2364, 72 L. Ed. 2d
> 740 (1982). . . .

<u>Wal-Mart</u>, 131 S. Ct. at 2551 n.5 (some alterations in <u>Wal-Mart</u>).

## 1.  **Prospective Relief Class**

In the commonality analysis, this Court noted that the

members of the proposed Prospective Relief Class are subject to,

*inter alia,* the same prohibition on daily, outdoor, group worship

and the same requirement that personal amulets must be purchased

from an approved vendor, and Saguaro has been unable to identify

one.  The members of the proposed class make the same legal

arguments about Defendants' liability based on these, and other

related, policies and procedures.  There are undoubtedly some

differences, based on things like prior history of violence or

other rule infractions, affecting the individual class members'

abilities to participate in the requested worship sessions or to

have the requested access to sacred items.  Further, some of the

32

class members may believe certain religious items to be more significant than others. Those factual differences, however, are minor in comparison to the similarities in the class members' legal arguments. The crux of the legal arguments relevant to each member of the proposed Prospective Relief Class is that Defendants' policies and procedures regarding group worship and access to sacred items for practitioners of the Native Hawaiian religion violate their rights under RLUIPA and the federal and state constitutions.

This Court therefore FINDS that Plaintiffs' claims are "reasonably coextensive with those of absent class members," see Staton, 327 F.3d at 957, and that the proposed Prospective Relief Class satisfies the typicality requirement.

### 2. Subclasses

#### a. Administrative Segregation and SHIP Prospective Relief Subclasses

As previously noted, there are fewer security risks associated with, and therefore more privileges accorded to, SHIP II inmates and SHIP III inmates, as compared to SHIP I inmates and inmates in administrative segregation. Thus, the policies and procedures regarding group activity and access to additional sacred items that are applicable to SHIP II inmates and SHIP III inmates have significant differences from the policies and procedures on those subjects that are applicable to SHIP I inmates and inmates in administrative segregation. See *supra*

Discussion Section II.B.2.a.  Because of those distinctions, each member of a combined subclass of administrative segregation inmates and SHIP inmates would not make similar legal arguments as to Defendants' liability regarding claims involving either group activity or access to additional sacred items.[15]

As to individual inmate access to spiritual advisors, for the same reasons as set forth in the commonality analysis, see id., this Court finds that the members of a combined subclass of administrative segregation inmates and SHIP inmates would make similar legal arguments as to Defendants' liability.

This Court therefore FINDS that a combined subclass of administrative segregation inmates and SHIP inmates would meet the typicality requirement, but only as to the claims regarding individual access to a spiritual advisor.

### b.    Protective Custody Prospective Relief Subclass

Similarly, for the same reasons as set forth in the commonality analysis, see supra Discussion Section II.B.2.b., this Court finds that the members of the proposed Protective Custody Prospective Relief Subclass would make similar legal

---

[15] This Court also notes that the legal arguments that SHIP I inmates would raise would not be similar to the legal arguments that SHIP II inmates and SHIP III inmates would raise.  Thus, this Court would find that the proposed SHIP Prospective Relief Subclass, by itself, would not meet the typicality requirement as to the claims involving group activity or the claims regarding access to sacred items.

arguments as to Defendants' liability.  This Court therefore

FINDS that the proposed Protective Custody Prospective Relief

Subclass meets the typicality requirement.

**D.   <u>Adequacy</u>**

This Court has stated that:

> In determining whether the named plaintiffs
> will fairly and adequately protect the interests
> of the class, courts in the Ninth Circuit ask two
> questions: "(1) Do the representative plaintiffs
> and their counsel have any conflicts of interest
> with other class members, and (2) will the
> representative plaintiffs and their counsel
> prosecute the action vigorously on behalf of the
> class?" <u>Staton</u>, 327 F.3d at 957 (citing <u>Hanlon v.
> Chrysler Corp.</u>, 150 F.3d 1011, 1020 (9th Cir.
> 1998)).  This requirement is satisfied as long as
> one of the class representatives is an adequate
> class representative.  <u>Local Joint Exec. Bd. of
> Culinary/Bartender Trust Fund v. Las Vegas Sands,
> Inc.</u>, 244 F.3d 1152, 1162 n.2 (9th Cir. 2001).

<u>Davis</u>, 277 F.R.D. at 437.  "Adequate representation depends on,

among other factors, an absence of antagonism between

representatives and absentees, and a sharing of interest between

representatives and absentees."  <u>Ellis v. Costco Wholesale Corp.</u>,

657 F.3d 970, 985 (9th Cir. 2011) (citations omitted).

This Court will first address the adequacy of the

representation that Plaintiffs' counsel would provide, because

that analysis is the same for all proposed classes and

subclasses.

Plaintiffs' counsel, Sharla Manley, Esq., is a staff attorney with the Native Hawaiian Legal Corporation ("NHLC").[16] She states that NHLC is the only law firm in the country that specializes in cases involving Native Hawaiian rights. [Manley 2014 Decl. at ¶¶ 2, 6.] Ms. Manley also states that co-counsel for Plaintiffs, the law firm of Kawahito, Shraga and Westrick, "has developed an established class action practice." [Id. at ¶ 7.] Specifically, James Kawahito, Esq.,[17] and Shawn Westrick, Esq., "have litigated numerous class action lawsuits, in various stages on both the plaintiff and defense side." [Id.] Over the past five years, Plaintiffs' counsel have conducted extensive interviews at Saguaro and Red Rock, in addition to interviewing Plaintiffs, consulted with experts, and researched a myriad of factual and legal issues. Further, Plaintiffs' counsel has engaged in extensive discovery and dispositve motions practice for this case. Thus, Plaintiffs' counsel have, and will continue to, devote significant resources to this case. [Id. at ¶¶ 3-5, 9.]

---

[16] Plaintiffs' counsel, David Keith Kopper, Esq., and Moses Haia, III, Esq., are also with NHLC.

[17] This Court notes that, although Mr. Kawahito is a member of the bar in Hawai`i, and Plaintiffs have listed his name on some of their filings, he has never filed a notice of appearance in this case. He therefore is not listed on the district court's docket as counsel of record.

Defendants do not challenge the competence of Plaintiffs' counsel, or their zeal for the case. Defendants, however, argue that the "motives and strategies" of Plaintiffs' counsel "present the specter of divergent interests with absent class members," and that counsel have placed their interests and the interests of Plaintiffs ahead of the interests of the other members of the proposed classes and subclasses. [Mem. in Opp. at 22-23.] Defendants argue that Plaintiffs' counsel unduly delayed bringing the instant Motion and in asserting that Plaintiffs were pursuing claims for damages, instead of only declaratory and injunctive relief. This Court, however, has already found that Plaintiffs did not unduly delay seeking class certification. See supra Discussion Section I. Further, the Second Amended Complaint clearly prays for an award of compensatory damages for "Plaintiffs and all other class members." [Second Amended Complaint at pg. 129, ¶ 15.]

Defendants also argue that the fact that Plaintiffs' counsel presented some claims and arguments that were unsuccessful proves that counsel's interests have diverged from the class members' interests. Defendants point to: the inclusion of the Governor as a defendant; the inclusion of a claim based on Native Hawaiian gathering rights; and the argument in favor of per-diem damages rates. Although this Court ultimately found

that these claims and arguments were without merit,[18] this Court

does not find that the mere fact that Plaintiffs' counsel raised

these claims and arguments indicates that there are conflicts of

interest between counsel and the class members.

Finally, Defendants argue that Plaintiffs' counsel will

not adequately represent the proposed classes and subclasses

because Plaintiffs' counsel have pursued political agendas in

this case.  This Court emphasizes that political or legislative

questions are beyond the scope of this case.  Further, this Court

cannot find that Plaintiffs' counsel have engaged in anything

improper regarding political or legislative issues that may be

related to this case.

There is no evidence that Plaintiffs' counsel have a

conflict of interest with the members of any of the proposed

classes or subclasses.  This Court therefore FINDS that

Plaintiffs' counsel would provide adequate representation to any

class or subclass certified in this case.  This Court now turns

to the question of whether Plaintiffs are adequate

---

[18] In this Court's Order Granting Defendant Neil
Abercrombie's Motion for Judgment on the Pleadings, this Court
dismissed all of the claims against Governor Abercrombie in the
Second Amended Complaint and the Supplemental Complaint with
prejudice.  This Court also dismissed with prejudice Plaintiffs'
claim based on gathering rights.  <u>Davis v. Abercrombie</u>, Civil No.
11-00144 LEK-BMK, 2013 WL 5204982, at *23 (D. Hawai`i Sept. 13,
2013) ("9/13/13 Order").  In the 7/31/14 Summary Judgment Order,
this Court ruled that the potentially available damages for
Plaintiffs' remaining § 1983 claims and RLUIPA claims are limited
to compensatory and nominal damages.  2014 WL 3809499, at *18.

representatives for the proposed Prospective Relief Class and Subclasses.

### 1. **Prospective Relief Class**

The proposed representatives of the Prospective Relief Class are Plaintiffs Davis, Galdones, Hughes, Kane, and Keawe. [Motion at 2.] In the 6/13/14 Summary Judgment Order, however, this Court noted that it previously dismissed Plaintiff Keawe's federal claims based on daily religious congregation for failure to exhaust his administrative remedies. 2014 WL 2716856, at *10 n.15 (citing <u>Davis v. Abercrombie</u>, Civil No. 11-00144 LEK–BMK, 2013 WL 1568425, at *13 (D. Hawai`i Apr. 11, 2013)).[19] Because Plaintiff Keawe cannot pursue the RLUIPA and § 1983 claims regarding daily group worship, this Court finds that his interests are distinct from the interests of Plaintiffs Davis, Galdones, Hughes, and Kane, and from the interests of the other members of the proposed Prospective Relief Class. This Court therefore finds that Plaintiff Keawe would not be an adequate representative of the Prospective Relief Class.

Defendants first argue that Plaintiffs Davis, Galdones, Hughes, and Kane would not be adequate representatives of the Prospective Relief Class because they "have divergent interests from one another and the class, as evidenced by the 40-page

---

[19] This Court will refer to the April 11, 2013 order as the "4/11/13 Exhaustion Order."

'Tentative Settlement Agreement' 16 inmates (including 4

Plaintiffs) proposed." [Mem. in Opp. at 20 (footnote omitted).]

Sixteen Saguaro inmates, who declared themselves to be

practitioners of the Native Hawaiian religion, signed a notice

stating that the Tentative Settlement Agreement

> presents a comprehensive compilation of the Native
> Hawaiian Religious programs [they] seek to have
> established at all CCA and PSD facilities to
> protect [their] State and Federal Constitutional
> Rights to freely express [their] religious beliefs
> and present [them] with the opportunity to
> practice the Native Hawaiian religion within
> correctional facilities while balancing the
> legitimate penalogical interests of
> Administrations with these rights.

[Mem. in Opp., Decl. of Rachel Love ("Love Decl."), Exh. 1 at

PLAINTIFFS_0000320.[20]] The Tentative Settlement Agreement was

transmitted with a memorandum dated March 19, 2009 to "Interested

Native Hawaiian Religious Authority, Kapuna and Na Kahu" from

"Native Hawaiian Religious, Spiritual and Cultural Group, Saguaro

Correctional Center." [Id. at PLAINTIFFS_0000318.] It is signed

by Myles S. Breiner, and it asks the recipients to "evaluate and

critique the attached proposal." [Id.]

Defendants have not identified any specific part of the

Tentative Settlement Agreement that indicates that Plaintiffs

Galdones and Hughes's interests diverge from the interests of

---

[20] Plaintiffs Galdones and Hughes, proposed representatives
of the Prospective Relief Class, signed the notice, as did
Plaintiffs Kaahu and Poaha. [Love Decl., Exh. 1 at
PLAINTIFFS_0000320.]

Plaintiffs Davis and Kane or the members of the proposed
Prospective Relief Class.  Nor have Defendants presented any
evidence that the Tentative Settlement Agreement was ever
memorialized into an agreement that is legally binding upon
Plaintiffs Galdones and Hughes.  In addition, this Court
emphasizes that the Tentative Settlement Agreement was not
prepared in connection with the instant case, and it was
apparently drafted approximately two years before Plaintiffs
filed this action.  This Court therefore cannot find that
anything that in the Tentative Settlement indicates that
Plaintiffs Galdones and Hughes's interests in the instant case
diverge from the interests of Plaintiffs Davis and Kane or the
proposed Prospective Relief Class.

        In a related argument, Defendants assert that
Plaintiffs Davis and Galdones are not adequate representatives of
the Prospective Relief Class because: they previously filed other
legal actions challenging Saguaro's programming for the
practitioners of the Native Hawaiian religion;[21] and Plaintiff
Galdones is pursuing a retaliation claim in this action.

_____

        [21] Defendants raise this argument regarding Plaintiffs Davis
and Holbron.  [Mem. in Opp. at 20 n.14 (some citations omitted)
(citing Davis v. Hawaii, CV09-1081-PHX-PGR (LOA) (D. Ariz. Sept.
24, 2009); Bush v. Hawaii, No. 04-00096 DAE-KSC, 2011 WL 563564
(D. Haw. Jan. 20, 2011)).]  The adequacy argument regarding
Plaintiff Holbron relates to the combined subclass.  Plaintiff
Galdones was also one of the plaintiffs in Bush, and this Court
assumes that Defendants also wish to apply this argument to him.

Defendants claim that the prior actions show that Plaintiffs

Davis and Galdones each "have his own agenda," and Plaintiff

Galdones's retaliation claim shows that "he might be motivated to

abandon class members to pursue his own interests." [Mem. in

Opp. at 20 n.14.] Again, Defendants do not identify any specific

aspect of those prior cases or Plaintiff Galdones's retaliation

claim that conflicts with the interests of the other proposed

representatives or the members of the proposed Prospective Relief

Class.

> The Ninth Circuit has stated that:

> a district court retains the flexibility to
> address problems with a certified class as they
> arise, including the ability to decertify.  "Even
> after a certification order is entered, the judge
> remains free to modify it in the light of
> subsequent developments in the litigation." <u>Gen.
> Tel. Co. of the Sw. v. Falcon</u>, 457 U.S. 147, 160,
> 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982); <u>see also
> Rodriquez v. West Publ'g Corp.</u>, 563 F.3d 948, 966
> (9th Cir. 2009) ("A district court may decertify a
> class at any time."); <u>Cummings [v. Connell]</u>, 316
> F.3d [886,] 896 [(9th Cir. 2003)] (finding "the
> district court's approach [to be] entirely
> appropriate" where the court determined that a
> potential class "conflict was too speculative at
> the time [of the certification motion] to prevent
> finding the named plaintiffs to be adequate
> representatives," but "remained willing to
> reconsider and decertify the class if . . . there
> was evidence of an actual conflict"); <u>Armstrong v.
> Davis</u>, 275 F.3d 849, 871 n.28 (9th Cir. 2001)
> ("Federal Rule of Civil Procedure 23 provides
> district courts with broad discretion to determine
> whether a class should be certified, and to
> revisit that certification throughout the legal
> proceedings before the court.").  What a district
> court may not do is to assume, *arguendo*, that
> problems will arise, and decline to certify the

> class on the basis of a mere potentiality that may
> or may not be realized. . . .

United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied

Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v.

ConocoPhillips Co., 593 F.3d 802, 809-10 (9th Cir. 2010) (some

alterations in United Steel).

This Court finds that Defendants' arguments about the conflict among Plaintiffs Davis, Galdones, Hughes, and Kane and between one or more of them and the members of the proposed Prospective Relief Class are too speculative to warrant denial of certification based on a failure to identify an adequate class representative. If, after certification of any class or subclass in this case, an actual conflict arises between the appointed representatives or between one or more of the appointed representatives and the class or subclass, Defendants may bring a motion for decertification.

Defendants also argue that Plaintiffs Davis, Galdones, Hughes, and Kane are not adequate representatives of the proposed Prospective Relief Class because

> Plaintiffs appear to have relinquished complete
> control of this litigation to Plaintiffs'
> counsel[,] . . . lack[] even a basic understanding
> of their duties as representative parties, [and]
> hav[e] little to no understanding of significant
> rulings made by the Court during the litigation or
> the claims that remain in this case after summary
> judgment rulings.

[Mem. in Opp. at 21.] This district court, however, has

43

recognized that:

> It is true that "class representative status may properly be denied where the class representatives have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys." <u>Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.</u>, 222 F.3d 52, 61 (2d Cir. 2000) (internal quotation omitted).  However, "[i]t is hornbook law . . . [that] in a complex lawsuit, [when] the defendant's liability can be established only after a great deal of investigation and discovery by counsel against a background of legal knowledge, the representative need not have extensive knowledge of the facts of the case in order to be an adequate representative." <u>Gunnells v. Healthplan Servs., Inc.</u>, 348 F.3d 417, 430 (4th Cir. 2003).  While the named Plaintiffs do not appear to know either the technical aspects of plumbing construction or the legal elements of some of their claims, the record does not suggest that they "have abdicated any role in the case beyond that of furnishing their names as plaintiffs." <u>Pryor v. Aerotek</u>, 278 F.R.D. 516, 529–530 (C.D. Cal. 2011). . . .

<u>Baker v. Castle & Cooke Homes Hawaii, Inc.</u>, Civil No. 11-00616 SOM-RLP, 2014 WL 1669158, at *10-11 (D. Hawai`i Apr. 28, 2014) (some alterations in <u>Baker</u>).  The district court emphasized that the proposed representatives were "sincere in their desire to explore any misconduct by [Defendant Castle & Cooke Homes Hawaii, Inc.]." <u>Id.</u> at *11 (citations omitted).

In arguing that Plaintiffs' counsel will not provide adequate representation because they are focused on obtaining monetary relief, Defendants state that "Plaintiffs' primary goal is to achieve greater religious practices" at Saguaro. [Mem. in

44

Opp. at 24.]  Thus, even Defendants concede that Plaintiffs

Davis, Galdones, Hughes, and Kane have a sincere desire to obtain

the relief sought by the proposed Prospective Relief Class.  This

Court therefore finds that their lack of understanding of the

legal and procedural aspects of this case is not a barrier to

their service as class representatives.

This Court FINDS that Plaintiffs Davis, Galdones,

Hughes, and Kane are adequate representatives of the proposed

Prospective Relief Class.

### 2.   <u>Subclasses</u>

#### a.   <u>Administrative Segregation and</u> <u>SHIP Prospective Relief Subclasses</u>

Plaintiff Holbron is the proposed representative of

both the Administrative Segregation Prospective Relief Subclass

and the SHIP Prospective Relief Subclass.  [Motion at 3.]

According to the Administrative Segregation Description and the

SHIP Description, no Plaintiff is currently assigned either to

administrative segregation or SHIP.  Plaintiff Holbron was in

administrative segregation from the date he was admitted to

Saguaro, on or around July 17, 2007, until he moved to SHIP.  He

was in SHIP from approximately April 10, 2009 to February 2012.

[Holbron Summary Judgment Decl. at ¶¶ 8-9.]  Thus, Plaintiff

Holbron has not been in administrative segregation in over five

years, and he has not been in SHIP for over two years.  This

Court therefore cannot find that he has shared interests with

inmates in either administrative segregation or inmates in SHIP.

Moreover, in the 6/13/14 Order, this Court stated:

> Plaintiff Holbron is apparently no longer in any
> form of restricted housing at Saguaro. Viewing
> the current record in the light most favorable to
> Plaintiff Holbron, this Court finds that there are
> genuine issues of material fact as to the
> existence of a reasonable expectation that he may
> be placed in a form of restricted custody at
> Saguaro in the future. If this Court ultimately
> finds that there is no reasonable expectation of
> such placement, Plaintiff Holbron's claims seeking
> prospective declaratory and injunctive relief
> regarding restricted custody at Saguaro will be
> moot.

2014 WL 2716856, at *5. Plaintiff Holbron may not be able to

pursue any claims for prospective relief regarding the practice

of the Native Hawaiian religion in administrative segregation or

SHIP.

This Court therefore FINDS that Plaintiff Holbron would

not be an adequate representative of: the proposed Administrative

Segregating Prospective Relief Subclass; the proposed SHIP

Prospective Relief Subclass; or a combined Prospective Relief

Subclass of administrative segregation inmates and SHIP

inmates.[22]

---

[22] This Court will not allow Plaintiffs additional time to
identify other potential representatives from administrative
segregation and SHIP. Plaintiff Holbron has not been in either
administrative segregation or SHIP since February 2012, and
Plaintiffs have known that he may not be able to prosecute any
claims for prospective declaratory and injunctive relief since
this Court filed the 3/31/14 Summary Judgment Order, 2014 WL
1321006. Thus, Plaintiffs have had ample time to identify an
(continued...)

### b. Protective Custody
### Prospective Relief Subclass

Plaintiffs Kane and Keawe are the proposed representatives of the Protective Custody Prospective Relief Subclass. [Motion at 3.] The parties' Protective Custody Description confirms that both are currently assigned to Saguaro's protective custody pod. For the reasons set forth *supra* Discussion Section II.D.1., this Court: finds that Plaintiff Keawe would not be an adequate representative of the Protective Custody Prospective Relief Subclass; and rejects Defendants' arguments challenging Plaintiff Kane's ability to serve as the representative of the subclass. This Court therefore FINDS that Plaintiff Kane would be an adequate representative of the proposed Protective Custody Prospective Relief Subclass.

### E. Summary of the Court's Rule 23(a) Findings

This Court FINDS that the proposed Prospective Relief Class, with Plaintiffs Davis, Galdones, Hughes, and Kane as the class representatives and Sharla Manley, David Keith Kopper, Moses Haia, Shawn Westrick, and James Kawahito[23] as class counsel, meets the requirements of Fed. R. Civ. P. 23(a).

---

[22](...continued)
alternative representative for each of those proposed subclasses.

[23] Mr. Kawahito's appointment as class counsel would be conditioned upon his filing of a formal notice of appearance in this case.

47

Further, this Court FINDS that the proposed Protective Custody Prospective Relief Subclass, with Plaintiff Kane as the representative of the subclass and Ms. Manley, Mr. Kopper, Mr. Haia, Mr. Westrick, and Mr. Kawahito as counsel for the subclass, meets the requirements of Rule 23(a).

This Court also FINDS that the proposed Administrative Segregation Prospective Relief Subclass and the SHIP Prospective Relief Subclass do not meet the requirements of Rule 23(a). This Court therefore DENIES Plaintiffs' Motion insofar as this Court declines to certify either the proposed Administrative Segregation Prospective Relief Subclass or the SHIP Prospective Relief Subclass. Further, this Court FINDS that a combined Prospective Relief Subclass of administrative segregation inmates and SHIP inmates would not satisfy the requirements of Rule 23(a).

This Court therefore turns to the Rule 23(b) analysis for the proposed Prospective Relief Class and the proposed Protective Custody Prospective Relief Subclass.

**F.    <u>Rule 23(b) Analysis</u>**

Plaintiffs' proposed class and subclass may satisfy Rule 23(b) by meeting the criteria in either Rule 23(b)(1), (b)(2), or (b)(3). Plaintiffs argue that both the proposed Prospective Relief Class and the proposed Protective Custody Prospective Relief Subclass satisfy Rule 23(b)(2). [Motion at 2-

3.] This district court has stated:

> "Class certification under Rule 23(b)(2) requires
> that the primary relief sought is declaratory or
> injunctive." _Rodriquez v. Hayes_, 578 F.3d 1032,
> 1051 (9th Cir. 2009) (internal quotations omitted)
> _superseded on other grounds by_ _Rodriquez v. Hayes_,
> 591 F.3d 1105 (9th Cir. 2010). "The rule does not
> require [a court] to examine the viability or
> bases of class members' claims for declaratory and
> injunctive relief, but only to look at whether
> class members seek uniform relief from a practice
> applicable to all of them." _Rodriquez_, 591 F.3d
> at 1125. "[I]t is sufficient to meet the
> requirements of Rule 23(b)(2) that 'class members
> complain of a pattern or practice that is
> generally applicable to the class as a whole.'"
> _Id._ (quoting _Walters v. Reno_, 145 F.3d 1032, 1047
> (9th Cir. 1998)). . . .

_R.P.-K. ex rel. C.K. v. Dep't of Educ., Hawaii_, 272 F.R.D. 541,

551 (D. Hawai`i 2011) (alterations in _R.P.-K._).

## 1.  **Prospective Relief Class**

The parties opposing class certification – CCA and

Defendant Sakai on behalf of DPS – have acted on grounds that

uniformly apply to all inmates in the general population at

Saguaro who have registered as practitioners of the Native

Hawaiian religion.  Plaintiffs seek prospective declaratory and

injunctive relief addressing Defendants' policies and procedures.

Thus, the relief that Plaintiffs seek would be appropriate for

the proposed class as a whole.  This Court therefore FINDS that

the proposed Prospective Relief Class meets the criteria set

forth in Rule 23(b)(2).

Insofar as this Court has found that the proposed Prospective Relief Class satisfies both Rule 23(a) and Rule 23(b), this Court GRANTS Plaintiffs' Motion as to the proposed Prospective Relief Class.

**2.    Protective Custody Prospective Relief Subclass**

Similarly, CCA and DPS have acted on grounds that uniformly apply to all inmates in protective custody at Saguaro who have registered as practitioners of the Native Hawaiian religion.  Plaintiffs seek prospective declaratory and injunctive relief addressing Defendants' policies and procedures.  Thus, the relief that Plaintiffs seek would be appropriate for the proposed subclass as a whole.  This Court therefore FINDS that the proposed Protective Prospective Relief Subclass meets the criteria set forth in Rule 23(b)(2).

Insofar as this Court has found that the proposed Protective Custody Prospective Relief Subclass satisfies both Rule 23(a) and Rule 23(b), this Court GRANTS Plaintiffs' Motion as to the proposed Protective Custody Prospective Relief Subclass.

This Court now turns to Plaintiffs' request to certify a class and subclasses addressing damages.

**III. Class Certification as to Claims for Damages**

At the outset, this Court emphasizes that, in the 7/31/14 Summary Judgment Order, it ruled that: Plaintiffs'

remaining § 1983 claims and RLUIPA claims for damages are limited

to compensatory damages and nominal damages; and Plaintiffs

cannot seek damages for their remaining claims based on the state

constitution.  2014 WL 3809499, at *18.  The 7/31/14 Summary

Judgment Order also stated:

> Although this Court by no means minimizes the
> importance of the federal rights that Plaintiffs
> allege were violated, it is well established that
> "damages based on the abstract 'value' or
> 'importance' of constitutional rights are not a
> permissible element of compensatory damages in
> [§ 1983] cases." <u>Memphis Cmty. Sch. Dist. v.
> Stachura</u>, 477 U.S. 299, 310 (1986).  This Court
> finds that the spiritual injuries that Plaintiffs
> allege in this case are comparable to humiliation,
> embarrassment, or disappointment and are therefore
> mental or emotional injuries subject to [42
> U.S.C.] § 1997e(e).  Plaintiffs cannot pursue
> claims for damages based on their spiritual
> injuries without a prior showing of physical
> injury.

<u>Id.</u> at *10 (some alterations in 7/31/14 Summary Judgment Order).

This Court also ruled that Plaintiffs could not seek damages for

their alleged spiritual injuries because they have not made the

required showing of physical injury.  <u>Id.</u>  Thus, this Court could

not certify class or subclass seeking damages for spiritual

injury, or any other form of mental or emotional injury, because

no Plaintiff would be an adequate representative.  This Court

will only address whether it is appropriate to certify the

proposed Damages Class and/or the proposed Damages Subclasses to

seek compensatory and nominal damages.

## A.   **Compensatory Damages**

Even assuming, *arguendo*, that Plaintiffs could satisfy the numerosity and adequacy requirements for the proposed Damages Class and/or the proposed Damages Subclasses, Plaintiffs could not satisfy the commonality and typicality requirements.  The determination of entitlement to, and the amount of, compensatory damages would require examination of an individual inmate's alleged deprivation of rights on specific occasions.  For example, examining whether an inmate was entitled to compensatory damages for the denial of access to a personal amulet would require the consideration of: the character of the individual amulet at issue; and whether there were case-specific reasons for its confiscation, such as history of violent use of the amulet or hiding contraband in the amulet.  See, e.g., Mem. in Opp. at 9 (noting that Plaintiff Davis's personal amulet was a kukui nut, and potential class members' personal amulets included hooks, niho mano, shells, kukui nut lei, and a necklace made of the inmate's hair (citing Doc. 466-1, ¶¶ 30-42; Doc. 320-9, ¶ 15; Doc. 320-2, ¶ 17; Doc. 320-4, ¶ 8; Doc. 320-39, ¶ 15)).[24]  Such inquiries are not capable of class-wide resolution, and the

---

[24] Docket number 466-1 is the Declaration of Richard Davis attached to the Amended Separate Concise Statement of Facts in Opposition to Defendants' Motion for Summary Judgment, filed January 6, 2014 ("Plaintiffs' Responsive CSOF").  Docket numbers 320-9, 320-2, 320-4, and 320-39 are declarations in support of the 2103 Certification Motion by, respectively: John DeCambra; Kekona Anthony; William Jackson Barnes; and Richard Taylor.

inmate's arguments, as a general rule, will not be reasonably coextensive with each other.

This Court therefore FINDS that Plaintiffs could not satisfy the commonality and typicality requirements as to any class or subclass seeking compensatory damages. In light of this finding, this Court need not conduct a detailed analysis of whether the proposed Damages Class and each of the proposed Damages Subclasses satisfies each of the Rule 23(a) requirements as to the claims for compensatory damages. This Court emphasizes that, although class certification is unwarranted as to compensatory damages, the named Plaintiffs may pursue their claims for compensatory damages on an individual basis, unless precluded by a prior order of this Court.

**B.    Nominal Damages**

This Court begins its analysis of whether Plaintiffs are entitled to certification of a damages class (and/or subclasses) by reviewing the nature and purpose of nominal damages. The Ninth Circuit has stated that:

> As distinguished from punitive and compensatory damages, nominal damages are awarded to vindicate rights, the infringement of which has not caused actual, provable injury.
>
> > Common-law courts traditionally have vindicated deprivations of certain "absolute" rights that are not shown to have caused actual injury through the award of a nominal sum of money. By making the deprivation of such rights actionable for nominal damages without proof of actual injury, the law

53

> recognizes the importance to organized
> society that those rights be scrupulously
> observed; but at the same time, it remains
> true to the principle that substantial
> damages should be awarded only to compensate
> actual injury or, in the case of exemplary or
> punitive damages, to deter or punish
> malicious deprivations of right.
>
> Carey[ v. Piphus], 435 U.S. [247,] 266, 98 S. Ct.
> 1042[, 55 L. Ed. 2d 252 (1978)]. Nominal damages,
> as the term implies, are in name only and
> customarily are defined as a mere token or
> "trifling." See, e.g., id. at 267, 98 S. Ct.
> 1042; Magnett v. Pelletier, 488 F.2d 33, 35 (1st
> Cir. 1973) (per curiam). Although the amount of
> damages awarded is not limited to one dollar, the
> nature of the award compels that the amount be
> minimal. See Romano v. U-Haul Intern., 233 F.3d
> 655, 671 (1st Cir. 2000). Nominal damages serve
> one other function, to clarify the identity of the
> prevailing party for the purposes of awarding
> attorney's fees and costs in appropriate cases.
> Cf. Farrar v. Hobby, 506 U.S. 103, 111–12, 113 S.
> Ct. 566, 121 L. Ed. 2d 494 (1992) (stating that "a
> plaintiff who wins nominal damages is a prevailing
> party under [42 U.S.C.] § 1988").

Cummings, 402 F.3d at 942-43. In Cummings, the Ninth Circuit

held that "when nominal damages are awarded in a civil rights

class action, every member of the class whose constitutional

rights were violated is entitled to nominal damages." Id. at

940. In other words, "[w]here a plaintiff proves a violation of

constitutional rights, nominal damages must be awarded as a

matter of law." Id. at 944 (citation omitted).

Plaintiffs' proposed Damages Class would include all

inmate practitioners of the Native Hawaiian religion at either

Saguaro or Red Rock at any time during the period from four years

54

prior to the filing of this action through the resolution of this case.  As stated *supra* Discussion Section III.A., the determination of whether an inmate's rights were violated in a particular instance – such as the confiscation of a sacred item or the exclusion from a specific religious activity – requires the determination of issues that are not suitable for class determination.  Thus, to the extent that the proposed Damages Class and the proposed Damages Subclasses would seek nominal damages based on specific incidents that allegedly violated the proposed members' rights under RLUIPA or the United States Constitution, Plaintiffs would not be able to satisfy the commonality and typicality requirements.

Plaintiffs, however, can also argue that all inmate practitioners of the Native Hawaiian religion at Saguaro or Red Rock within the relevant time period were subjected to the same CCA **policies and procedures** that allegedly violated their rights under RLUIPA and/or the United States Constitution.  In this respect, the analysis of Plaintiffs' proposed Damages Class and proposed Damages Subclasses is the same as the analysis of Plaintiffs' proposed Prospective Relief Class.  The claims pursued by the proposed Prospective Relief Class, however, were limited to prospective declaratory and injunctive relief because Plaintiffs bring those claims against CCA and Defendant Sakai. Plaintiffs cannot pursue claims for damages or other

retrospective relief against Defendant Sakai because he is not a person for purposes of § 1983 claims seeking damages or other retrospective relief.  However, the proposed Damages Class and the proposed Damages Subclasses would pursue claims against only CCA, and the prospective relief limitation would not apply. Plaintiffs, and any damages class or subclass certified, may also seek retrospective relief and nominal damages against CCA based on prior policies and procedures that are no longer in effect.[25] Whether the CCA policies and procedures violated RLUIPA or were unconstitutional are issues that are capable of class-wide resolution, and the class members' (or subclass members') arguments, as a general rule, would be reasonably coextensive with each other.  It is arguably possible for the proposed Damages Class and the proposed Damages Subclasses to satisfy the commonality and typicality requirements.  This Court therefore

_____

[25] With the exception of Count XXI (which was dismissed with prejudice), this Court has not issued any rulings as to the ultimate merit of any of Plaintiffs' claims for damages.  To the extent that this Court granted Defendants' Motion for Summary Judgment, [filed 7/31/13 (dkt. no. 361),] those rulings were limited to Plaintiffs' claims for prospective declaratory and injunctive relief.  See 6/13/14 Summary Judgment Order, 2014 WL 2716856, at *3 ("To the extent that any of the pending motions seek summary judgment as to any claims seeking damages or any claims seeking retrospective equitable relief, the motions are DENIED WITHOUT PREJUDICE." (emphasis in original)).  Further, the 7/31/14 Summary Judgment Order limited the type of damages available and ruled that damages were only available against CCA in Plaintiffs' claims alleging violation of RLUIPA or the United States Constitution.  That order did not contain any ruling on the merits of those claims.

turns to the analysis of whether the proposed Damages Class and each of the proposed Damages Subclasses meets each of the Rule 23(a) requirements.

### 1. **Damages Class**

#### a. **Numerosity**

As previously noted, there are 179 inmates at Saguaro that have registered as practitioners of the Native Hawaiian religion. 2014 WL 2716856, at *23. In addition, the Damages Class would include inmate practitioners who were previously incarcerated at Saguaro or Red Rock but are no longer at either facility. Thus, the Damages Class clearly satisfies the numerosity requirement.

#### b. **Typicality**

To the extent that the claims of the proposed Damages Class are limited to claims arising from the policies and procedures applicable at each facility, the proposed class members who are or were housed at Saguaro present common questions of law or fact, and the proposed class members who were housed at Red Rock presents common questions of law or fact. This Court, however, cannot say that the Damages Class as a whole present common questions of law or fact. Thus, separate damages classes - one class of inmates who are or were housed at Saguaro ("Saguaro Damages Class") and one class of inmates who were housed at Red Rock ("Red Rock Damages Class") - would meet the

commonality requirement.

A separate Saguaro Damages Class would also satisfy the
numerosity requirement. Based on the existing record, however,
this Court cannot find that a separate Red Rock Damages Class
would satisfy the numerosity requirement. When Red Rock housed
Hawai`i inmates, the average number was approximately fifty.
[Defs.' Reply in Supp. of Motion for Summary Judgment (Doc. 361),
Decl. of Warden Stolc, filed 1/13/14 (dkt. no. 483-17), at ¶ 4.]
Plaintiffs have not identified evidence establishing how many Red
Rock inmates (from Hawai`i or otherwise) registered as
practitioners of the Native Hawaiian religion. A Red Rock
Damages Class would not satisfy Rule 23(a).

### c.  **Commonality**

Insofar as this Court has limited the claims at issue
for the Saguaro Damages Class to claims asserting that Saguaro's
policies and procedures violated RLUIPA or the United States
Constitution, the claims of the representative Plaintiffs would
be typical of the class's claims. Thus, a Saguaro Damages Class
would satisfy the commonality requirement.

### d.  **Adequacy**

Plaintiffs were all proposed representatives of the
Damages Class. [Motion at 3.] Each is, or was previously,
incarcerated at Saguaro. [Manley 2013 Decl., Exh. 33 (Davis
Decl.) at ¶ 3, Exh. 34 (Hughes Decl.) at ¶ 3, Exh. 35 (Kane

Decl.) at ¶ 3, Exh. 36 (Keawe Decl.) at ¶ 3;[26] 2013 Certification

Motion, Decl. of Robert Holbron at ¶ 4; Pltfs.' Responsive CSOF,

Decl. of Tyrone Galdones at ¶ 3, Decl. of Damien Kaahu at ¶ 3,

Decl. of Kalai Poaha at ¶ 3.]

　　　　This Court previously dismissed, for failure to exhaust

his administrative remedies, Plaintiff Keawe's federal claims

based on: 1) daily religious congregation; and 2) access to an

outdoor altar.  4/11/13 Exhaustion Order, 2013 WL 1568425, at

*13.  This Court also dismissed Plaintiffs Davis, Galdones,

Hughes, Kaahu, and Poaha's federal claims regarding access to a

spiritual advisor on exhaustion grounds.  Id.  This Court has

ruled that Plaintiff Keawe's inability to pursue RLUIPA and

§ 1983 claims regarding daily group worship rendered him an

inadequate class representative for the Prospective Relief Class.

See supra Discussion Section II.D.1.  The analysis of who is an

adequate representative of the Saguaro Damages Class, however, is

distinguishable.  The Prospective Relief Class will seek relief

that is specific and unique to each group of claims (worship and

access to sacred items).  Thus, a proposed representative who

cannot pursue one group of claims has very distinct interests

from the proposed representative, and the members, of the

---

[26] Kane's Declaration and Keawe's Declaration, both dated in
February 2013, each states that he is incarcerated at Red Rock.
As previously noted, by May 30, 2013, all of the Hawai`i inmates
at Red Rock were transferred to Saguaro.  See supra note 13.

proposed class who are pursing both types of claims.

In contrast, the Saguaro Damages Class will seek nominal damages for violation of their rights under RLUIPA and/or the United States Constitution. If Plaintiffs prevail and establish a violation or multiple violations, Plaintiffs and each class member will be entitled to an award of nominal damages. The award, however, will be a general nominal damages award recognizing the violation their rights. They will not receive an award of nominal damages for each established violation. See Cummings, 402 F.3d at 936 (analyzing the plaintiffs' argument that the district court erred in awarding a general nominal damages award, affirming the district court's award of $1.00, and rejecting the plaintiffs argument that the district court should have awarded "separate nominal damages of $1.00 for each of the seventeen acts that resulted in a constitutional violation"). Thus, proposed class representatives who are not pursuing all of the claims that the other representatives - and the class members - are pursuing, have different interests. But, due to the nature of the relief sought, those differences are not significant and do not prevent them from being adequate class representatives.

For these reasons, and for the reasons set forth *supra* Discussion Section II.D.1., Plaintiffs would be adequate representatives of a Saguaro Damages Class. Further, for the reasons set forth *supra* Section II.D., Plaintiffs' counsel would

be adequate class counsel for a Saguaro Damages Class.

This Court therefore FINDS that a Saguaro Damages Class would satisfy the requirements of Rule 23(a).

### 2. Administrative Segregation Damages Subclasses

The Motion does not specifically address the Rule 23(a) factors as they apply to the proposed Damages Class and Damages Subclasses. Instead, Plaintiffs rely on their Rule 23(a) analysis of the proposed Prospective Relief Class and Prospective Relief Subclasses. [Mem. in Supp. of Motion at 31-32.] Plaintiffs have not identified any evidence of the number of inmate practitioners of the Native Hawaiian religion who are, or were, in administrative segregation at Saguaro or Red Rock. Thus, neither a Saguaro Administrative Segregation Damages Subclasses nor a Red Rock Administrative Segregation Damages Subclasses would meet the numerosity requirement.

This Court FINDS that neither a Saguaro Administrative Segregation Damages Subclass nor a Red Rock Administrative Segregation Damages Subclass would satisfy the requirements of Rule 23(a).[27]

_____

[27] In the analysis of the Proposed Prospective Relief Subclasses, this Court discussed the possibility of a combined subclass of administrative segregation practitioners and SHIP practitioners. The combination would not be appropriate for the proposed Damages Subclasses. Because SHIP is a Saguaro program, there is no Red Rock SHIP Damages Subclass to combine with the Red Rock Administrative Segregation Damages Subclasses. Further, the SHIP Damages Subclass for Saguaro is sufficiently numerous by
(continued...)

### 3. SHIP Damages Subclass

#### a. Numerosity

This Court has found that there are twenty potential members of the SHIP Prospective Relief Subclass, *i.e.* there are twenty inmate practitioners of the Native Hawaiian religion currently in SHIP. See *supra* Discussion Section II.A.2.a. In light of the fact that the intended duration of that program is eighteen months, this Court can reasonably infer that there were more than forty inmate practitioners of the Native Hawaiian religion in SHIP over the course of the relevant time period (four years prior the filing of this case until the resolution of the case). Thus, the SHIP Damages Subclass would satisfy the numerosity requirement.

#### b. Commonality and Typicality

For the same reasons set forth *supra* Discussion Sections II.B.2.a. and C.2.a., the proposed SHIP Damages Subclass would only meet the commonality requirement and the typicality requirement as to the claims regarding individual access to a spiritual advisor.

#### c. Adequacy

Plaintiff Holbron is the proposed representative of the SHIP Damages Subclass. He was in SHIP from approximately

---

[27](...continued)
itself.

April 10, 2009 to February 2012.  [Holbron Summary Judgment Decl. at ¶¶ 8-9.]  For this reason, and for the reasons set forth *supra* Discussion Section II.D.1., Plaintiff Holbron would be an adequate representative of the SHIP Damages Subclass.  Further, for the reasons set forth *supra* Section II.D., Plaintiffs' counsel would provide adequate representation for the SHIP Damages Subclass.

This Court therefore FINDS that the SHIP Damages Subclass would satisfy the requirements of Rule 23(a), but only as to the claims regarding individual access to a spiritual advisor.

### 4. <u>Protective Custody Damages Subclasses</u>

#### a. <u>Numerosity</u>

Again, Plaintiffs failed to identify any evidence of the number of inmate practitioners of the Native Hawaiian religion who are, or have been, in protective custody at Saguaro or Red Rock.  Based on Defendants' concession, this Court has found that there are thirty-seven potential members of the Protective Custody Prospective Relief Subclass.  <u>See</u> *supra* Discussion Section II.A.2.c.  This Court can reasonably infer that there were more than forty inmate practitioners of the Native Hawaiian religion in protective custody at Saguaro over the course of the relevant time period, which spans over seven years.  Thus, the Saguaro Protective Custody Damages Subclass

would satisfy the numerosity requirement.  The Red Rock
Protective Custody Damages Subclass, however, would not satisfy
the numerosity requirement.

### b.    Commonality and Typicality

For the same reasons set forth *supra* Discussion
Sections II.B.2.b. and C.2.b., the proposed Saguaro Protective
Custody Damages Subclass would meet the commonality and
typicality requirements.

### c.    Adequacy

Plaintiffs Kane and Keawe are the proposed
representatives of the Saguaro Protective Custody Damages
Subclass.  The parties' Protective Custody Description confirms
that Plaintiffs Kane and Keawe are currently housed in protective
custody at Saguaro.  For this reason, and for the reasons set
forth *supra* Discussion Section II.D.1.d., Plaintiffs Kane and
Keawe would be an adequate representatives of the Saguaro
Protective Custody Damages Subclass.  Further, for the reasons
set forth *supra* Section II.D., Plaintiffs' counsel would provide
adequate representation for the Saguaro Protective Custody
Damages Subclass.

This Court therefore FINDS that the Saguaro Protective
Damages Subclass satisfies the requirements of Rule 23(a).

This Court next turns to the issue of whether the
proposed Saguaro Damages Class, SHIP Damages Subclass, and

Saguaro Protective Custody Damages Subclass also meet the Rule 23(b) requirements.

## C. **Rule 23(b) Requirements**

Plaintiffs seek certification of the proposed Damages Class and the proposed Damages Subclasses pursuant to Rule 23(b)(3). The two requirements of Rule 23(b)(3) are predominance and superiority. Defendants raise the same objections as to all of the proposed Damages Class and Damages Subclasses.

### 1. **Predominance**

This district court has stated:

> "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623 (1997). "Though there is substantial overlap between the [commonality and predominance] tests, the [predominance] test is far more demanding" Wolin [v. Jaguar Land Rover N. Am., LLC], 617 F.3d [1168,] 1172 [(9th Cir. 2010)] (internal quotation omitted). A class cannot meet the predominance standard if questions relevant to individual claims "will inevitably overwhelm questions common to the class." Comcast [v. Behrend], 133 S. Ct. [1426,] 1433 [(2013)].

Baker v. Castle & Cooke Homes Hawaii, Inc., Civil No. 11-00616 SOM-RLP, 2014 WL 1669158, at *11 (D. Hawai`i Apr. 28, 2014) (some alterations in Baker).

Defendants argue that neither Plaintiffs' proposed Damages Class nor the proposed Damages Subclasses can satisfy the predominance requirement because the individualized issues of, for example, sincerity of belief and extent of the burden upon

the religious exercise, will predominate over the common issues subject to generalized proof. This Court has ruled that the Saguaro Damages Class, the SHIP Damages Subclass, and the Saguaro Protective Custody Damages Subclass would be limited to pursuing the portions of Plaintiffs' claims alleging that Saguaro's policies and procedures violated RLUIPA or the United States Constitution. Further, the recovery by the members of the class and subclasses will be limited to nominal damages. In light of those limitations, the issues that would otherwise require individualized evidence – such as sincerity and burden – can be established through generalized or representative proof. While it is true that the class (or subclass) members may differ in degree of sincerity and/or burden, those issues will not dominate the action in light of the limitations that this Court has placed on the damages class and subclasses.

The Saguaro Damages Class, the SHIP Damages Subclass, and the Saguaro Protective Custody Damages Subclass "are sufficiently cohesive to warrant adjudication by representation." See <u>Amchem</u>, 521 U.S. at 623. This Court therefore FINDS that they meet the predominance requirement.

### 2. <u>Superiority</u>

Rule 23(b)(3) "provides a nonexhaustive list of factors relevant to the superiority inquiry." <u>Baker</u>, 2014 WL 1669158, at *16. Again, the limitations that this Court has placed on the

damages class and subclasses are critical.  The limitation to
only nominal damages for the class members might suggest that
individual members would have an interest in controlling the
prosecution of separate actions.  Even in separate actions, those
individuals would still be limited to only compensatory damages
and nominal damages, unless they can prove physical injury.  See
supra Discussion Section III.A.  The relatively small amount of
damages that individual plaintiffs could recover in separate
actions and the complexities of this type of case would be strong
disincentives against pursing individual actions.  Similarly,
although the limitation of the class and subclasses to issues of
policies and procedures that violate RLUIPA or the United States
Constitution might suggest that individual inmates would have an
interest in presenting their individual violations in separate
actions, it would be difficult for individual inmates to litigate
cases similar to this one.  Thus, it is desirable to concentrate
these claims in a class action.

> This Court does not find that managing the damages
class/subclasses would be unusually difficult in this case
because Plaintiffs' counsel are knowledgeable and experienced in
class action litigation.  Defendants object that they cannot
cross-examine affidavits of class members who cannot be
physically present at trial, and that they will not have had the
opportunity to depose class members other than the named

Plaintiffs.  First, as noted in the predominance analysis,
individual issues - such as degree of sincerity, burden, and
prior history - have a limited role in light of the limitations
that this Court has placed on the damages class and subclasses.
Further, the parties can make other arrangements, such as having
other inmates testify at trial through video-conference.  In
light of the fact that the trial date in this case has been
continued to March 17, 2015, the parties may stipulate to, or
seek leave from the magistrate judge, to conduct a reasonable
amount of discovery - including depositions - necessary because
of class certification.

This Court recognizes that Plaintiffs filed this action
more than three years ago, and the litigation made substantial
progress prior to the consideration of this Motion.  These facts
weigh slightly against certification.  This Court, however, has
already found that Plaintiffs did not engage in undue delay in
seeking class certification.  The procedural history of this case
therefore does not preclude a finding of superiority.

Based upon this Court's analysis of the relevant
factors, a class action is superior to other available methods to
fairly and efficiently adjudicate the claims of the Saguaro
Damages Class, the SHIP Damages Subclass, and the Saguaro
Protective Custody Damages Subclass.  See Fed. R. Civ. P.
23(b)(3).  This Court therefore FINDS that they meet the

superiority requirement.

**D.**   **Summary**

This Court GRANTS Plaintiffs' Motion as to the Saguaro Damages Class, the SHIP Damages Subclass, and the Saguaro Protective Custody Damages Subclass.  The class and subclasses, however, are limited to claims seeking nominal damages on the grounds that CCA's policies and procedures at Saguaro violate RLUIPA and/or the United States Constitution.  In addition, the SHIP Damages Subclass is limited to claims regarding individual access to a spiritual advisor.

This Court DENIES all of Plaintiffs' other requests to certify a class or subclass as to damages.

## CONCLUSION

On the basis of the foregoing, Plaintiffs' Amended Second Motion for Class Certification, filed July 1, 2014, is HEREBY GRANTED IN PART AND DENIED IN PART.  This Court GRANTS Plaintiffs' Motion as follows:

1)   This Court CERTIFIES a class, seeking prospective declaratory and injunctive relief, as to Plaintiffs' remaining claims regarding daily, outdoor, group worship and the remaining claims regarding access to sacred items ("the Prospective Relief Class").  The Prospective Relief Class is defined as:

  a) all persons who were convicted of violating crimes under the laws of the State of Hawai`i and

69

were residents of the state of Hawai`i; b) who are
and/or will be confined to Saguaro Correctional
Center ("Saguaro"); c) in the general population;
and d) who have, according to Saguaro's
established procedures, declared that the Native
Hawaiian religion is their faith.

The representatives of the Prospective Relief Class shall be

Plaintiffs Richard Kapela Davis, Tyrone K.N. Galdones,

Michael Hughes, and James Kane, III.  The class counsel shall be

Sharla Manley, Esq., David Keith Kopper, Esq., Moses Haia, Esq.,

Shawn Westrick, Esq., and James Kawahito, Esq.[28]

2)    This Court CERTIFIES a subclass, seeking prospective

      declaratory and injunctive relief, with regard to: 1) the

      same claims described *supra* as to the Prospective Relief

      Class; and 2) the remaining state and federal claims

      regarding lack of access to communal sacred items in

      protective custody ("the Prospective Relief Subclass").  The

      Prospective Relief Subclass is defined as:

            a) all persons who were convicted of violating
            crimes under the laws of the State of Hawai`i and
            were residents of the state of Hawai`i; b) who are
            and/or will be confined to Saguaro; c) in
            protective custody; and d) who have, according to
            Saguaro's established procedures, declared that
            the Native Hawaiian religion is their faith.

The representative of the Prospective Relief Subclass shall be

Plaintiff Kane.  The class counsel shall be the counsel described

----

[28] Mr. Kawahito's appointment as class counsel is
conditioned upon his filing of a formal notice of appearance in
this case by no later than **October 6, 2014**.

*supra.*

3) This Court CERTIFIES a class, seeking nominal damages and other retrospective relief, as to Counts I through X, and XXII through XXVI ("the Damages Class"). The Damages Class is defined as:

> a) all persons who were convicted of violating crimes under the laws of the State of Hawai`i and were residents of the state of Hawai`i; b) who are or were confined to Saguaro at any time within four years prior to February 7, 2011 until the resolution of this lawsuit; c) in the general population; and d) who have, according to Saguaro's established procedures, declared that the Native Hawaiian religion is their faith.

The representatives of the Damages Class shall be Plaintiffs Davis, Galdones, Hughes, Kane, Damien Kaahu, Robert A. Holbron, Ellington Keawe, and Kalai K. Poaha. The class counsel shall be the counsel described *supra.*

4) This Court CERTIFIES a subclass, seeking nominal damages and other retrospective relief, as to Counts I, II, III, V, VI, VII, VIII, X, XXII, XXIII, XXIV, and XXVI ("the SHIP Damages Subclass"). The SHIP Damages Subclass is defined as:

> a) all persons who were convicted of violating crimes under the laws of the State of Hawai`i and were residents of the state of Hawai`i; b) who are or were confined to Saguaro at any time within four years prior to February 7, 2011 until the resolution of this lawsuit; c) in the Special Housing Incentive Program ("SHIP"); and d) who have, according to Saguaro's established procedures, declared that the Native Hawaiian religion is their faith.

The representative of the SHIP Damages Subclass shall be Plaintiff Holbron.  The class counsel shall be the counsel described *supra*.

5)     This Court CERTIFIES a subclass, seeking nominal damages and other retrospective relief, as to Counts I through X, and XXII through XXVI ("the Protective Custody Damages Subclass").  The Protective Custody Damages Subclass is defined as:

> a) all persons who were convicted of violating crimes under the laws of the State of Hawai`i and were residents of the state of Hawai`i; b) who are or were confined to Saguaro at any time within four years prior to February 7, 2011 until the resolution of this lawsuit; c) in protective custody; and d) who have, according to Saguaro's established procedures, declared that the Native Hawaiian religion is their faith.

The representatives of the Protective Custody Damages Subclass shall be Plaintiffs Keawe and Kane.  The class counsel shall be the counsel described *supra*.

Plaintiffs' Motion is DENIED in all other respects.

All other remaining claims shall be prosecuted on behalf of the named Plaintiffs only.

IT IS SO ORDERED.

//

//

//

//

DATED AT HONOLULU, HAWAII, September 30, 2014.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**RICHARD KAPELA DAVIS, ET AL. VS. NEIL ABERCROMBIE, ET AL.; ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' AMENDED SECOND MOTION FOR CLASS CERTIFICATION**