IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

RICHARD KAPELA DAVIS, MICHAEL ) CIVIL NO. 11-00144 LEK-BMK
HUGHES, DAMIEN KAAHU, ROBERT )
A. HOLBRON, JAMES KANE, III, )
ELLINGTON KEAWE, KALAI POAHA, )
TYRONE KAWAELANILUA`OLE )
NA`OKI GALDONES, )
)
            Plaintiffs, )
)
      vs. )
)
NEIL ABERCROMBIE, in his )
official capacity as the )
Governor of the State of )
Hawaii; Director of Public )
Safety of the State of )
Hawai`i NOLAN ESPINDA; )
CORECIVIC, )
)
            Defendants. )
_____ )


**<u>AMENDED ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>**

On February 24, 2016, Ted Sakai, in his official

capacity as Director of the Hawai`i Department of Public Safety,

and Corrections Corporation of America ("CCA") filed their Motion

for Preliminary Approval of Class Settlement Agreement Reached by

Counsel on May 14, 2015 and Request to Set Fairness Hearing

("Preliminary Approval Motion").[1] [Dkt. no. 778.] This Court

granted the Preliminary Approval Motion at a hearing on August 8,

---

[1] On May 16, 2017, this Court approved the parties'
stipulation to replace CCA with CoreCivic and Ted Sakai with
Director of Public Safety of the State of Hawai`i Nolan Espinda.
[Dkt. no. 873.] This Court will refer to CoreCivic and
Director Espinda collectively as "Defendants."

2016.  [Dkt. no. 800 (Minutes).]  On February 6, 2017, this
matter came before the Court for a final fairness hearing.  For
the reasons set forth below, and after due consideration of the
evidence and arguments presented by the parties and the record in
this case, the Court CONCLUDES that good cause exists to GRANT
final approval of the settlement in this action pursuant to Fed.
R. Civ. P. 23(e).

**BACKGROUND**

I.   **Procedural History**

        Plaintiffs Richard Kapela Davis, Michael Hughes,
Damien Kaahu, Robert A. Holbron, James Kane, III,
Ellington Keawe, and Kalai Poaha filed the Second Amended
Complaint for Damages and for Classwide Declaratory and
Injunctive Relief ("Second Amended Complaint") on August 22,
2012.  [Dkt. no. 145.]  Plaintiff Tyrone Galdones also filed his
Supplemental Complaint for Damages and for Classwide Declaratory
and Injunctive Relief ("Supplemental Complaint") on August 22,
2012.  [Dkt. no. 146.]

        Plaintiffs are all Hawai`i residents who were convicted
and sentenced for committing criminal violations of Hawai`i law.
The Second Amended Complaint alleges that, during all periods
relevant to the instant case, they were incarcerated at either
Saguaro Correctional Center ("Saguaro") or Red Rock Correctional

Center ("Red Rock").[2]  Each Plaintiff is of Native Hawaiian

ancestry and is a practitioner of the Native Hawaiian religion.

Saguaro and Red Rock are private prisons in Arizona, operated by

CoreCivic.  The State of Hawai`i houses inmates at CoreCivic's

facilities pursuant to various contracts.  [Second Amended

Complaint at ¶¶ 7-10, 12(c), 17-18; Supplemental Complaint at

¶¶ 7-10, 12(c), 17-18.]  In the instant case, Plaintiffs allege

that Defendants have prohibited them from exercising their

constitutional and statutory right to practice their faith.

        The Second Amended Complaint alleges the following

claims:

-Violation of Plaintiffs' right to the free exercise of their
      religion pursuant to the First and Fourteenth Amendments of
      the United States Constitution as to daily worship practices
      ("Count I"), the observance of Makahiki[3] ("Count II"),
      access to sacred items ("Count III"), access to sacred space
      ("Count IV"), and access to a spiritual advisor ("Count V");

-Violation of Plaintiffs' equal protection rights pursuant to the
      Fourteenth Amendment of the United States Constitution as to
      daily worship practices ("Count VI"), the observance of

---

[2] As of May 30, 2013, the Hawai`i inmates who were assigned
to Red Rock were permanently transferred to Saguaro.  [Defs.'
Concise Statement of Facts in Supp. of Motion for Summary
Judgment, filed 7/31/13 (dkt. no. 361-2), Decl. of Warden Thomas
at ¶ 5; id., Decl. of Warden Stolc at ¶ 5.]

[3] Plaintiffs allege that "[t]he Makahiki season is signaled
by the rising of the Makali`i (Pleiades) Constellation in
October-November of each year.  The Makahiki season ends by the
setting of Makali`i (Pleiades) Constellation in February-March of
each year."  [Second Amended Complaint at ¶ 47.]  There are
ceremonies, including customary and traditional activities,
marking the beginning and the end of the Makahiki season.  [Id.
at ¶ 48.]

Makahiki ("Count VII"), access to sacred items
("Count VIII"), access to sacred space ("Count IX"), and
access to a spiritual advisor ("Count X");

-Violation of Plaintiffs' right to free exercise of their
religion pursuant to Article I, § 4 of the Hawai`i State
Constitution as to daily worship practices ("Count XI"), the
observance of Makahiki ("Count XII"), access to sacred items
("Count XIII"), access to sacred space ("Count XIV"), and
access to a spiritual advisor ("Count XV");

-Violation of Plaintiffs' equal protection rights pursuant to
Article I, § 5 of the Hawai`i State Constitution as to daily
worship practices ("Count XVI"), the observance of Makahiki
("Count XVII"), access to sacred items ("Count XVIII"),
access to sacred space ("Count XIX"), and access to a
spiritual advisor ("Count XX");

-Violation of Plaintiffs' rights relating to native Hawaiian
customary and traditional practices pursuant to Article XII,
§ 7 of the Hawai`i State Constitution and Haw. Rev. Stat.
§ 1-1 as to the observance of Makahiki ("Count XXI");

-Violation of the Religious Land Use and Institutionalized
Persons Act, 42 U.S.C. § 2000cc, *et seq.* ("RLUIPA"), as to
daily worship practices ("Count XXII"), the observance of
Makahiki ("Count XXIII"), access to sacred items
("Count XXIV"), access to sacred space ("Count XXV"), and
access to a spiritual advisor ("Count XXVI").

The Supplemental Complaint states that Plaintiff

Galdones "hereby joins in and asserts COUNTS I through XXVI of

the Amended Complaint[4] on his own behalf and on behalf of all

those similarly situated." [Supplemental Complaint at ¶ 124.]

The Supplemental Complaint also asserted an additional claim

alleging that Defendants retaliated against him, in violation of

---

[4] Plaintiffs' Amended Complaint for Damages and for
Classwide Declaratory and Injunctive Relief, [filed 11/14/11
(dkt. no. 42),] alleged the same twenty-six claims that
Plaintiffs allege in the Second Amended Complaint.

both federal law and state law.  [Id. at ¶¶ 125-37.]  This Court

dismissed Galdones's retaliation claim under federal law for

failure to exhaust his administrative remedies.  [Order Granting

in Part and Denying in Part Defendants' Motion to Dismiss for

Failure to Exhaust, filed 4/11/13 (dkt. no. 286) ("4/11/13

Order"), at 28-29.[5]]  Plaintiff Galdones's state law retaliation

claim and the claims that are asserted in the Second Amended

Complaint remained.

On September 30, 2014, this Court issued its Order

Granting in Part and Denying in Part Plaintiffs' Amended Second

Motion for Class Certification ("9/30/14 Certification Order").

[Dkt. no. 644.[6]]  This Court certified:

-"a class, seeking prospective declaratory and injunctive relief,
    as to Plaintiffs' remaining claims regarding daily, outdoor,
    group worship and the remaining claims regarding access to
    sacred items ('the Prospective Relief Class')"; 9/30/14
    Certification Order, 2014 WL 4956454, at *28;

-"a subclass, seeking prospective declaratory and injunctive
    relief, with regard to: 1) the same claims described supra
    as to the Prospective Relief Class; and 2) the remaining
    state and federal claims regarding lack of access to
    communal sacred items in protective custody ('the
    Prospective Relief Subclass')"; id. at *29;[7]

_____

[5] The 4/11/13 Order is available at 2013 WL 1568425.

[6] The 9/30/14 Certification Order is also available at 2014
WL 4956454.

[7] The 9/30/14 Certification Order, however, mistakenly
refers to the Protective Custody Prospective Relief Subclass as
the "Prospective Relief Subclass."  2014 WL 4956454, at *29.

-"a class, seeking nominal damages and other retrospective relief, as to Counts I through X, and XXII through XXVI ('the Damages Class')"; <u>id.</u>;

-"a subclass, seeking nominal damages and other retrospective relief, as to Counts I, II, III, V, VI, VII, VIII, X, XXII, XXIII, XXIV, and XXVI ('the SHIP Damages Subclass')";[8] <u>id.</u>; and

-"a subclass, seeking nominal damages and other retrospective relief, as to Counts I through X, and XXII through XXVI ('the Protective Custody Damages Subclass')"; <u>id.</u>

## A. <u>Remaining Claims</u>

By the time of trial, which was scheduled for June 5, 2015, the following claims remained:

### 1. <u>Class Claims</u>

-Counts I (federal free exercise), VI (federal equal protection), XI (state free exercise), XVI (state equal protection), and XXII (RLUIPA) regarding daily, outdoor, group worship by the Prospective Relief Class and the Protective Custody Prospective Relief Subclass;

-Counts III (federal free exercise), XIII (state free exercise), and XXIV (RLUIPA) regarding lack of daily access to personal amulets and `ohe hano ihu (bamboo nose flute) by the Prospective Relief Class and the Protective Custody Prospective Relief Subclass;

-Counts VIII (federal equal protection) and XVIII (state equal protection) regarding lack of daily access to personal amulets, `ohe hano ihu, coconut oil, and malo, kihei, and pau (native garments) by the Prospective Relief Class and the Protective Custody Prospective Relief Subclass;

-Counts III, VIII, XIII, XVIII, and XXIV regarding lack of access to communal sacred items in protective custody by the Protective Custody Prospective Relief Subclass;

---

[8] "SHIP" refers to Saguaro's Special Housing Incentive Program. 9/30/14 Certification Order, 2014 WL 4956454, at *29.

-Counts I through V (federal free exercise), VI through X (federal equal protection), and XXII through XXVI (RLUIPA) by the Damages Class and the Protective Custody Damages Subclass; and

-Counts I, II, III, V, VI, VII, VIII, X, XXII, XXIII, XXIV, and XXVI by the SHIP Damages Subclass.

## 2. **Individual Claims**

The individual Plaintiffs had the following claims, in addition to the claims they were pursuing as class representatives.

-Plaintiff Galdones's state law retaliation claim, set forth in his Supplemental Complaint.

-Plaintiffs Kane and Keawe's federal claims for compensatory damages, nominal damages, and retrospective equitable relief based on alleged violations that occurred while they were in protective custody at Red Rock. See Order Granting in Part and Denying in Part Defs.' Motion for Summary Judgment Re: Sovereign Immunity/Damages, filed 7/31/14 (dkt. no. 596) ("7/31/14 Summary Judgment Order"), at 37, *available at* 2014 WL 3809499, at *11 (ruling that Plaintiffs' remaining claims under 42 U.S.C. § 1983 and RLUIPA claims for damages are limited to compensatory and nominal damages). These were the claims regarding: the observance of Makahiki (Counts II, VII, and XXII); access to sacred items (Counts III, VIII, and XXIV); and access to a spiritual advisor (Counts V, X, and XXVI).

-Plaintiffs Kane and Keawe's claims for prospective equitable relief regarding the observance of Makahiki in protective custody at Saguaro (Counts II, VII, XII, XVII, and XXII).

-Plaintiff Davis's federal claims for compensatory damages, nominal damages, and retrospective equitable relief based on the exclusion from certain Makahiki ceremonies (Counts II, VII, and XXII) on the ground that he allegedly had insufficient attendance at the Native Hawaiian religion classes that were a prerequisite to participation.

-Plaintiff Holbron's claims for prospective equitable relief regarding the practice of the Native Hawaiian religion in administrative segregation and SHIP. These are: the observance of Makahiki (Counts II, VII, XII, XVII, and

XXII); access to sacred items (Counts III, VIII, XIII, XVIII, and XXIV); and access to a spiritual advisor (Counts V, X, XV, XX, and XXVI).  However, his claims were subject to him establishing that there is a reasonable expectation that he may be placed in administrative segregation and/or SHIP in the future.  See Amended Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; Granting in Part and Denying in Part Plaintiff Robert Holbron's Counter-motion for Summary Judgment on His Claims; and Granting in Part and Denying in Part Plaintiffs' Motion for Partial Summary Judgment Against Defendants as to Their Claims under the Religious Land Use and Institutionalized Persons Act, filed June 13, 2014 ("6/13/14 Summary Judgment Order") (dkt. no. 544), *available at* 2014 WL 2716856, at *5.

**B.   Settlement**

On May 14, 2015, the magistrate judge held a settlement conference.  The case settled and the terms of the settlement were placed on the record ("Settlement on the Record"). [Minutes, filed 5/14/15 (dkt. no. 745).]  The magistrate judge stated:

> I understand we have now reached an agreement. This, of course, will be subject to the consent of members of the class, the plaintiffs.  We've discussed this at length during our settlement conference this afternoon, but perhaps this would be a good opportunity to put the material terms of the agreement on the record.
>
> I know that some work will be required to finalize a number of the details, but we should put the parameters of this on the record at this time, so that we can be set in place, and then, of course, call off the dogs on our trial prep, and trial date, and the like.

[Trans. of 5/14/15 proceedings ("5/14/15 Trans."), filed 6/5/15 (dkt. no. 751), at 3-4.]  After counsel placed the essential

terms of the agreement on the record, the magistrate judge
stated:

> This is an agreement that you all have reached,
> and I know the defendants are fully on board with
> this.  All we need to do is to get the class
> representatives to agree, and then of course
> notice out to the class.
>
> So at this point, I believe we have enough of
> an agreement to stop the process of preparing for
> trial and that's one of the incentives, of course,
> to, you know, reach this agreement at this
> time. . . .

[Id. at 15.]

## II.  **The Settlement**

Defendants describe the terms of the settlement reached
on May 14, 2015 as follows:

> **Religious Items:**
>
> - Registered Native Hawaiian practitioners in
>   [the general population ("GC")] and
>   [protective custody ("PC")] may: (1) retain
>   in-cell one each of lava lava (pau), kīhei,
>   and malo in a Ziploc bag with the inmate's
>   in-cell property; (2) retain previously
>   authorized pa`akai (sea salt), written
>   religious materials (chants/ genealogies),
>   and ti leaf; (3) check out a `ohe hano ihu
>   (bamboo nose flute) for religious use;
>   (4) have access to communal religious items
>   stored in the chapel during group
>   programming; (5) purchase a small amount of
>   coconut oil for in-cell religious use only;
>   and (6) purchase one approved amulet.
>
> - Kīhei, malo and lava to be made by [Saguaro]
>   Native Hawaiian practitioners in the GP
>   religious programming classes.  Parties to
>   work together to identify a vendor source for
>   materials, [Saguaro] to procure source

materials, inmates paying their pro rata
share for fabric cost through their inmate
accounts (donations restricted).

-   Bamboo nose flute loaner system to be
    implemented for the six flutes available in
    the [Saguaro] chapel for week long checkouts,
    subject to individualized safety/security
    restriction. [Saguaro] to purchase six
    additional flutes for the loaner system.

-   Counsel to work together to identify and
    approve vendor source for amulets, in five
    shapes, subject to [Saguaro] approval,
    inmates paying their pro rata cost for
    amulets through their inmate accounts.

-   [Saguaro] to source coconut oil in bulk from
    a Hawaiian company, inmates paying their pro
    rata share, with process to be put into place
    for frequency of refills.

-   Registered Native Hawaiian practitioners in
    administrative/ disciplinary segregation
    custody (including SHIP I/II/III), may
    retain: (1) one approved amulet; (2) pa`akai
    (sea salt); (3) written religious materials
    (chants/genealogies); and (4) either a lava
    lava, kīhei, or malo (Parties to work
    together to elect one standard item/no
    individual inmate election. No possession of
    coconut oil or bamboo nose flutes for
    safety/security reasons.

-   [Saguaro] agrees to publish in-cell retention
    list in [Saguaro] chapel and add list to
    [Saguaro] Policy 14-6.

-   While donations are restricted, replacement
    of communal use religious items may be
    requested and [Saguaro] agrees to work with
    inmate population to identify a source/vendor
    for replacement.

-   [Saguaro] agrees to publish a communal items
    list in [Saguaro] chapel and add list to
    [Saguaro] Policy 14-6.

**Religious Programming:**

-   Registered Native Hawaiian practitioners in
    GP: (1) permitted outdoor worship classes six
    times a year for 1.5 hours each time during
    regularly scheduled ritual class; and
    (2) permitted to participate in two
    solstice/equinox and two Makahiki
    celebrations each year.

-   Registered Native Hawaiian practitioners in
    PC: (1) permitted once a week group gathering
    for 1.5 hours in a secure location to be
    determined by the facility; (2) provided
    access to limited number of communal items
    stored in the chapel; and (3) permitted
    limited, two Makahiki celebrations each year
    within a few days of the GP Makahiki
    celebrations, provided the same food
    offerings permitted for GP.

-   Upon request and subject to availability,
    registered Native Hawaiian practitioners in
    segregation/SHIP I may request to meet with a
    spiritual advisor (if available) for
    Makahiki, the spiritual advisor may meet with
    the inmate through the cell door for
    approximately 15-20 minutes for non-
    disruptive ministry/prayers/chants.
    Ceremonial food offerings administered by the
    spiritual advisor through the cell door food
    slot and, by written advance request, inmate
    may receive (in-cell) the meal tray provided
    to GP inmates participating in Makahiki.

-   Upon request and subject to availability,
    registered Native Hawaiian practitioner
    inmates in SHIP II/III may request to meet
    with a spiritual advisor (if available) for
    Makahiki, the spiritual advisor may meet with
    the inmates in the dayroom of the SHIP II/III
    pods (separate gatherings) for non-disruptive
    chants/prayers/administering of ceremonial
    food offerings.  By written advance request,
    inmates may receive (in-cell) the meal tray
    provided to GP inmates participating in
    Makahiki.

- Participation in programming subject to restrictions for safety/security/operational risks based on an individualized assessment of an inmate's history/behavior.

**Waiver of Claims/Damages and Costs Payment:**

- The individual Plaintiffs and the Class waive and release all claims, including all claims for damages.

- Defendant [CoreCivic] agrees to pay a total amount of $70,000.00 to the Native Hawaiian Legal Corporation for costs incurred. Parties to incur their own attorneys' fees.

**Other Provisions:**

- Within sixty (60) days after the Court has approved the final Settlement Agreement, the agreed upon religious programming and items will be made available for [Saguaro] inmates registered as Native Hawaiian practitioners.

- If an inmate changes his religion from Native Hawaiian to another religion, he will no longer be allowed to possess the in-cell items, use any communal religious items, or participate in Native Hawaiian programming.

- The Parties agree there will be no consent decree or court-ordered monitoring, and the Court will not retain jurisdiction over enforcement of this Agreement.

[Mem. in Supp. of Preliminary Approval Motion at 12-15 (footnote and citations omitted).]

## III. Approval Process

The magistrate judge held two status conferences to address issues related to the settlement during May 2015. [Dkt. nos. 747, 749.] On October 16, 2015, the magistrate judge held a

further settlement conference.  He reiterated that the case had settled and stated that the parties were working on the settlement documents.  [Minutes, filed 10/16/15 (dkt. no. 765); Entering Order, filed 10/21/15 (dkt. no. 766) (clarifying deadlines in dkt. no. 765).]  The parties, however, had difficulty finalizing the settlement documents, and the magistrate judge held further status conferences to address issues related to the settlement.  [Dkt. nos. 769, 772, 776.]

As previously noted, Defendants filed their Preliminary Approval Motion on February 24, 2016.  Plaintiffs filed a memorandum in opposition on April 18, 2016, and Defendants filed a reply on April 25, 2016.  [Dkt. nos. 789, 790.]  This Court granted preliminary approval on August 8, 2016.

On September 7, 2016, this Court issued the Order Approving Notice of Proposed Class Action Settlement and Setting Final Fairness Hearing ("9/7/16 Notice Order").  [Dkt. no. 806.] The 9/7/16 Notice Order set the final fairness hearing for February 6, 2017 and approved the class notice attached to the 9/7/16 Notice Order as Exhibit A.  This Court ordered the parties to commence distribution of the approved notice within ten days of the filing of the 9/7/16 Notice Order and issued deadlines for the submission of objections from class members and the filing of the parties' briefs regarding whether class members could opt-out of the settlement.

On September 26, 2016, Defendants filed a notice attesting to their compliance with the notice provisions of the 9/7/16 Notice Order. [Dkt. no. 818.] On December 8, 2016, and December 15, 2016, Plaintiffs and Defendants filed their respective statements addressing the opt-out issue. [Dkt. nos. 860, 861.]

Prior to the final fairness hearing, this Court received fourteen letters of objection to the settlement. [Dkt. nos. 815-17, 821-22, 829, 835, 848-51, 857-59, 864.] These include a letter signed by nine inmates and a letter from Class counsel on behalf of Plaintiffs. [Dkt. nos. 857, 858.] Many of the objections expressed personal complaints that were outside of the scope of this litigation. The majority of the objections merely reiterated argument that have already been addressed by this Court.

**STANDARD**

Federal Rule of Civil Procedure 23(e) states, in pertinent part:

> The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
>
> (2) If the proposal would bind class members, the court may approve it only after a

hearing and on finding that it is fair,
reasonable, and adequate.

(3)  The parties seeking approval must file a
statement identifying any agreement made in
connection with the proposal.

(4)  If the class action was previously
certified under Rule 23(b)(3), the court may
refuse to approve a settlement unless it affords a
new opportunity to request exclusion to individual
class members who had an earlier opportunity to
request exclusion but did not do so.

(5)  Any class member may object to the
proposal if it requires court approval under this
subdivision (e); the objection may be withdrawn
only with the court's approval.

"The purpose of Rule 23(e) is to protect the unnamed members of

the class from unjust or unfair settlements affecting their

rights." In re Syncor ERISA Litig., 516 F.3d 1095, 1100 (9th

Cir. 2008) (citation omitted).

This Court must examine the parties' settlement as a

whole for overall fairness.  This Court must approve or reject

the settlement in this case in its entirety; this Court cannot

alter certain provisions.  See Hanlon v. Chrysler Corp., 150 F.3d

1011, 1026 (9th Cir. 1998).  Hanlon directs a district court

evaluating a proposed class action settlement to balance the

following factors:

the strength of the plaintiffs' case; the
risk, expense, complexity, and likely
duration of further litigation; the risk of
maintaining class action status throughout
the trial; the amount offered in settlement;
the extent of discovery completed and the
stage of the proceedings; the experience and

views of counsel; the presence of a
governmental participant; and the reaction of
the class members to the proposed settlement.

Id. (citations omitted).

## DISCUSSION

## I. Existence of a Settlement Agreement

At the outset, this Court must address Plaintiffs'
argument that the parties never actually reached a settlement
agreement.  Plaintiffs raised this argument in their memorandum
in opposition to the Preliminary Approval Motion, and this Court
has already rejected this argument in granting the motion.
However, Plaintiffs continue to raise this argument.  [Pltfs.'
Statement Regarding Allowing Individuals to Opt-out, filed
12/8/16 (dkt. no. 860), at 1 (asserting that "there is no
agreement that Defendants have signed and promised to be bound
by").]  This district court has stated:

> Federal courts apply state contract law
> principles to the construction and enforcement of
> settlement agreements, even if the underlying
> claims are federal.  See O'Neil v. Bunge Corp.,
> 365 F.3d 820, 822 (9th Cir. 2004); United
> Commercial Ins. Serv., Inc. v. Paymaster Corp.,
> 962 F.2d 853, 856 (9th Cir. 1992).  In order to be
> enforceable, a settlement agreement must have the
> traditional elements of a contract: offer,
> acceptance, consideration, and parties who have
> the capacity and authority to enter into the
> agreement.  See Amantiad v. Odum, 90 Hawai`i 152,
> 162, 977 P.2d 160, 170 (1999).  In addition, there
> must be mutual asset or a meeting of the minds as
> to all the essential elements of the contract.
> See Mednick v. Davey, 87 Hawai`i 450, 458, 959
> P.2d 439, 447 (Ct. App. 1998). . . .

16

> If all of the elements of a valid contract
> are established, the settlement agreement should
> be given full force and effect unless there is
> evidence of bad faith or fraud. See <u>Moran v.</u>
> <u>Guerreiro</u>, 97 Hawai`i 354, 371, 37 P.3d 603, 620
> (Ct. App. 2001) ("Generally, in the absence of bad
> faith or fraud, when parties enter into an
> agreement settling and adjusting a dispute,
> neither party is permitted to repudiate it."
> (quoting <u>Miller v. Manuel</u>, 9 Haw. App. 56, 63, 828
> P.2d 286, 291 (Ct. App. 1991)). . . .

<u>Kaina v. Cty. of Maui</u>, Civil No. 04-00608 DAE-LEK, 2008 WL
4108026, at *1 (D. Hawai`i Sept. 4, 2008); <u>accord</u> <u>Doe v. Washoe</u>
<u>Cty.</u>, 339 F. App'x 747, 748 (9th Cir. 2009) ("In determining
whether a conditional settlement agreement is binding, courts
look to whether the parties demonstrated an intent to be bound by
the circumstances and the terms of the agreement.").

Based upon counsel's statements during the Settlement
on the Record, this Court FINDS that: there was an offer,
acceptance, and agreed upon consideration; the parties who
participated in the settlement conference which resulted in the
Settlement on the Record had the capacity and authority to enter
into the settlement; and counsel agreed to the essential terms of
the settlement. Further, this Court rejects Plaintiffs' argument
that, because the parties never generated a signed written
agreement, Defendants are not bound by the terms stated during
the Settlement on the Record. The representations by Defendants'
counsel at the Settlement on the Record and in their subsequent
filings in the settlement approval process are sufficient

evidence of Defendants' agreement to the settlement.  If
Defendants fail to honor the terms of the settlement after this
Court grants final approval, Defendants' breach of the settlement
agreement would be actionable.  Finally, there is no evidence in
the record of bad faith or fraud by Defendants or their counsel
in the settlement process.  This Court therefore CONCLUDES that,
subject to the Court's approval, there is a valid and enforceable
settlement agreement between the parties.

## II.  __Request for Litigation Expenses__

Insofar as the settlement includes reimbursement of
Class counsel's litigation expenses, this Court must examine the
reasonableness of the award before it can grant final approval of
the settlement.  Fed. R. Civ. P. 23(h) states, *inter alia*: "In a
certified class action, the court may award reasonable attorney's
fees and nontaxable costs that are authorized by law or by the
parties' agreement."  Thus, pursuant to Rule 23(h), the parties'
settlement agreement alone is a sufficient basis for an award of
reasonable nontaxable costs to Plaintiffs.  The Court, however,
emphasizes that it has only relied upon the parties' agreement as
the basis for Plaintiffs' entitlement to the award; the Court has
not relied upon the parties' representation that the requested
award is reasonable.  The Court will independently review the
requested award for reasonableness.  See In re Bluetooth Headset
Prod. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011) (noting

that, even where the parties in a class action have agreed to an amount for attorneys' fees and costs, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable").  Based on this Court's knowledge of the proceedings in the case, which has been pending in this district court for over six years, this Court FINDS that the payment of $70,000.00 for the litigation costs incurred by Class counsel is reasonable.

The Court next turns the analysis of whether the parties' settlement meets the requirements set forth in Rule 23(e).

## III. __Rule 23(e) Requirements__

### A.    __Request for a Second Opt-out Period__

This Court certified the Saguaro Damages Class, the SHIP Damages Subclass, and the Saguaro Protective Custody Damages Subclass pursuant to Rule 23(b)(3).  <u>See</u> 9/30/14 Certification Order, 2014 WL 4956454, at *28.  Thus, pursuant to Rule 23(e)(4), this Court "**may** refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so."  (Emphasis added.)  Plaintiffs argue that the Class members should be allowed to opt out of the settlement because Rule 23(e) encourages it, and because it is necessary to protect the Class members' due process rights.

This Court disagrees with Plaintiffs that Rule 23(e)(4) encourages or favors allowing a post-settlement opt-out process. Rule 23(e)(4)'s use of the word "may" does not support Plaintiffs' position; it means that the decision to require a post-settlement opt-out process is within the court's sound discretion.  See, e.g., In re Washington Mut., Inc., No. 2:08-md-1919 MJP, 2015 WL 12803633, at *1 (W.D. Wash. June 22, 2015) ("[T]he Court will exercise its discretion under Rule 23(e)(4) and will not provide Class Members with a second opportunity to exclude themselves from the Class in connection with this Settlement."); Klein v. O'Neal, Inc., 705 F. Supp. 2d 632, 663 (N.D. Tex. 2010) ("Under Rule 23(e)(4), the decision whether to allow a second opt out is left to the court's discretion.").

Further, in a related context, the district court in Klein stated, "class members who object to a proposed settlement on due process grounds 'must allege constitutional violations with factual detail and particularity.'"  705 F. Supp. 3d at 663 (some citations and internal quotation marks omitted) (quoting Newby v. Enron Corp., 394 F.3d 296, 309 (5th Cir. 2004)).  While this Court does not conclude that Plaintiffs' argument in favor of a post-settlement opt-out process must meet this same standard, this Court does conclude that the facts and legal

arguments Plaintiffs have presented do not warrant ordering a
post-settlement opt-out process based on due process grounds.

Plaintiffs also argue that a second opt-out period is
necessary to protect the Class members' due process rights
because Defendants are seeking approval of a settlement that they
themselves are not bound to, and because Plaintiffs have not
actually agreed to the purported settlement.  This Court has
already rejected these arguments, and therefore CONCLUDES that
these arguments do not constitute grounds for a second opt-out
period.

Further, this Court notes that only the Damages Class
and subclasses were certified – to seek nominal damages only –
pursuant to Rule 23(b)(3).  See 9/30/14 Certification Order, 2014
WL 4956454, at *21 (finding that the Prospective Relief Class and
the Protective Custody Prospective Relief Subclass met the
Rule 23(b)(2) requirements).  "In a Rule 23(b)(2) class
action, . . . class members are not allowed to opt out." Frank
v. United Airlines, Inc., 216 F.3d 845, 851 (9th Cir. 2000).  The
fact that the Rule 23(b)(2) class and subclasses were not
entitled to an opt-out period in the fist instance and the fact
that the settlement does not include any award of damages weigh
against the requirement of a post-settlement opt-out process.

This Court, in the exercise of its sound discretion,
DECLINES to order a second opt-out period in the instant case.

**B.   Remaining Requirements**

Based on the class notification efforts described
above, the Court FINDS that, as required by Rule 23(e)(1), notice
of the settlement was directed in a reasonable manner to all
Class members who would be bound by the settlement.

Further, at the August 8, 2016 hearing, this Court
granted the Preliminary Approval Motion, finding that the
proposed settlement was "fair, reasonable, and adequate," as
required by Rule 23(e)(2).  Defendants' Preliminary Approval
Motion also satisfies Rule 23(e)(3)'s requirement of a statement
identifying the parties' agreement.

This Court received objections from Class members for
approximately three months prior to the final fairness hearing.
This Court FINDS that any Class member who objected to the
settlement had the opportunity to present his objections to this
Court, as required by Rule 23(e)(5).

In light of the foregoing, this Court FINDS that all of
the Rule 23(e) requirements have been satisfied in this case.
This Court now turns to the evaluation of the settlement under
the Hanlon analysis.

**IV.  Hanlon Factors**

As to the first Hanlon factor, the strength of the
plaintiffs' case, while Plaintiffs had multiple claims survive
summary judgment, at the time of the Settlement on the Record,

Defendants' motion for de-certification was pending, as were numerous motions in limine.[9]  The rulings on these motions could have had a significant effect on the course of the trial.  Based on the existing record, it is not clear that which side would have prevailed at trial.  This Court therefore FINDS that the first Hanlon factor weighs in favor of approving the settlement.

As to the second Hanlon factor, the risk, expense, complexity, and likely duration of the rest of the case, the trial was scheduled to begin on June 2, 2015.  The trial was expected to last approximately ten days.  [Minutes, filed 5/1/15 (dkt. no. 703) (final pretrial conference before the magistrate judge).]  This Court FINDS that the risk, expense, and complexity of the trial weighs in favor of approving the settlement.

As to the third Hanlon factor, the risk of maintaining class action status, Defendants' decertification motion was pending at the time of the Settlement on the Record.  This Court therefore FINDS that this factor weighs in favor of approving the settlement.

As to the fourth Hanlon factor, the amount offered in settlement, the settlement does not involve any monetary payments to the Class.  However, it involves significant policy and

---

[9] Defendants filed their Motion for Decertification of Class Action Claims on April 24, 2015.  [Dkt. no. 696.]  On May 11, 2015, Plaintiffs filed eleven motions in limine.  [Dkt. nos. 710-19, 729.]  On May 12, 2015, Defendants filed fourteen motions in limine.  [Dkt. nos. 723-28, 730-31, 734-36, 738, 741-42.]

programming changes at Saguaro that will benefit the members of the Class and will address many of the conditions challenged in this case. This Court therefore FINDS that the fourth <u>Hanlon</u> factor weighs in favor of approving the settlement.

As to the fifth <u>Hanlon</u> factor, the extent of discovery completed and the stage of the proceedings, the Settlement on the Record occurred less than three weeks prior to the start of trial. Compared to the significant amount of time the case had been pending and the extensive litigation practice that occurred prior to the Settlement on the Record, there was a relatively short time remaining until the expected end of the trial. However, settling the case avoided, not only the trial itself, but also the possibility of post-trial motions and appeals. This Court therefore FINDS that the fifth <u>Hanlon</u> factor is neutral.

As to the sixth <u>Hanlon</u> factor, it is undisputed that both the Class and Defendants are represented by experienced counsel who have specialized knowledge of cases such as this one. At the time of the Settlement on the Record, Class counsel and Defendants' counsel agreed to the terms of the settlement, which the magistrate judge described as "clearly in the best interest of all of the parties." [5/14/15 Trans. at 16-17.] Defendants have continued to advocate the reasonableness of the settlement. Although Class counsel filed objections to the settlement on behalf of Plaintiffs prior to the final fairness hearing, Class

counsel's current position must be viewed in light of their position at the time of the Settlement on the Record and in light of the fact that this Court has already rejected Plaintiffs' arguments that an agreement was never reached and that Defendants are not bound by the settlement of which they seek approval. This Court therefore FINDS that the sixth <u>Hanlon</u> factor weighs in favor of approving the settlement.

This Court FINDS that the seventh <u>Hanlon</u> factor, the presence of government participants, weighs in favor of approving the settlement because two of the defendants are State of Hawai`i officials sued in their official capacity. <u>See, e.g.</u>, <u>California v. eBay, Inc.</u>, Case No. 5:12–cv–05874–EJD, 2015 WL 5168666, at *5 (N.D. Cal. Sept. 3, 2015) (noting in its analysis of this <u>Hanlon</u> factor that "the State is charged with the trust of protecting the state and its citizens").

Finally, this Court must consider the Class members' reaction to the settlement. In the 9/30/14 Certification Order, this Court noted that "there are 179 inmates at Saguaro . . . that have registered as practitioners of the Native Hawaiian religion." 2014 WL 4956454, at *7. Although this Court received objections from more than twenty members of the Class (including Plaintiffs), the vast majority of the Class members who will be affected by the settlement have not objected. This Court

therefore FINDS that the final <u>Hanlon</u> factor weighs in favor of approving the settlement.

Thus, none of the <u>Hanlon</u> factors weigh against settlement approval, and the majority of the factors weigh in favor of approval. This Court FINDS that the settlement – including the reimbursement of Class counsel's litigation costs – is fair, reasonable, and adequate.

## CONCLUSION

On the basis of the foregoing, this Court HEREBY GRANTS final approval of the settlement and ORDERS the parties to implement the terms of the settlement. Pursuant to the terms of the settlement, all of the remaining claims in this case are HEREBY DISMISSED WITH PREJUDICE, with all parties to bear their own respective attorneys' fees and costs of suit, except as expressly provided in this Order.

There being no remaining claims in this case, the Court DIRECTS the Clerk's Office to close this case immediately.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, May 22, 2017.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**RICHARD KAPELA DAVIS, ET AL. VS. NEIL ABERCROMBIE, ET AL.; CIVIL NO. 11-00144 LEK-BMK; AMENDED ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT**